UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| FINJAN, INC., | Case No.: 17-cv-00183-CAB-BGS |
|---|---|
| Plaintiff, | **ORDER DENYING MOTION TO STRIKE AMENDED AFFIRMATIVE DEFENSES AND DISMISS COUNTERCLAIMS** |
| v. | |
| ESET, LLC and ESET SPOL. S.R.O., | |
| Defendants. | |
| | [Doc. No. 157] |

On July 24, 2017, the Court granted, with leave to amend, a motion to strike affirmative defenses and dismiss counterclaims filed by Plaintiff Finjan, Inc. ("Finjan"). [Doc. No. 137.] Finjan now moves to strike the most of the same affirmative defenses and to dismiss the same counterclaims, along with a new counterclaim, as pled in the amended answers and counterclaims filed by Defendants ESET, LLC and ESET SPOL. S.R.O. (collectively, "ESET"), respectively. The motion has been fully briefed, and the Court deems it suitable for submission without oral argument. As discussed below, the motion is denied.

**I.    Background**

Finjan is the owner of six patents which protect computers and networks from malicious code that may exist in content downloaded from the internet. [Doc. No. 1 ¶¶ 10-27.] Finjan alleges ESET has infringed on those patents and filed a complaint asserting

direct and indirect infringement of each of the six patents at issue here (collectively the "patents in suit"): U.S. Patent Nos. 6,154,844 (the "'844 Patent"); 6,804,780 (the "'780 Patent"); 7,975,305 (the "'305 Patent"); 8,079,086 (the "'086 Patent"); 9,189,621 (the "'621 Patent"); and 9,219,755 (the "'755 Patent").

The Court granted Finjan's motion to strike certain of ESET's affirmative defenses and to dismiss certain counterclaims, but the Court gave ESET leave to file an amended answer and counterclaims. [Doc. No. 137.] ESET filed an amended answer and counterclaims, and Finjan now moves to strike or dismiss many of the same counterclaims and affirmative defenses that were at issue in its prior motion.

## II. Motion to Strike Affirmative Defense of Acquiescence

### A. Legal Standard

A motion to strike an affirmative defense is allowable under Federal Rule of Civil Procedure 12(f), which provides that "a court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." *Simmons v. Navajo Cty.*, 609 F.3d 1011, 1023 (9th Cir. 2010). "Fair notice generally requires that the defendant state the nature and grounds for the affirmative defense." *Nguyen v. HOVG, LLC*, No. 14cv837, 2014 WL 5361935, at *1 (S.D. Cal. Oct. 20, 2014) (citation omitted). "It does not, however, require a detailed statement of facts." *Id*.

Motions to strike are generally disfavored and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Neveu v. City of Fresno*, 392 F.Supp. 2d 1159, 1170 (E.D. Cal. 2005) (citation omitted). "[C]ourts often require a showing of prejudice by the moving party before granting" a motion to strike, and "[u]ltimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Cal. Dept. of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) (citation omitted). In exercising its discretion, the court views the pleadings in the light most favorable to the

non-moving party, and "resolves any doubt as to the relevance of the challenged allegations or sufficiency of a defense in the defendant's favor." *Id.* "Even when the defense under attack presents a purely legal question, courts are reluctant to determine disputed or substantial questions of law on a motion to strike." *SEC v. Sands*, 902 F. Supp. 1149, 1166 (C.D. Cal. 1995).

### B.   Analysis

Finjan moves to strike ESET's amended eleventh affirmative defense of acquiescence. Finjan moved to strike the acquiescence defense that appeared in the original answer and counterclaims on the grounds that it did not provide fair notice of the defense. [Doc. No. 127-1 at 9.] In the original answer, ESET's eleventh affirmative defense provided in its entirety: "Plaintiff's claims and requested relief under Title 35 of the United States Code are barred by the equitable doctrine of acquiescence." [Doc. No. 118 at 24.] The Court agreed with Finjan, finding that this defense did not provide fair notice because it was a "mere reference to a legal doctrine. . . [which does not] provide [] fair notice of an affirmative defense absent some fact or argument explaining the defense." [Doc. No. 137 at 5]; *Stevens v. Corelogic, Inc.*, No. 14-cv-1158-BAS-JLB, 2015 WL 7272222, at *4 (S.D. Cal. Nov. 17, 2015) (quoting *Baker v. Ensign*, No. 11-cv-2060-BAS (WVG), 2014 WL 4161994, at *4 (S.D. Cal. Aug. 20, 2014)).

In the amended answers, ESET included additional allegations with its acquiescence defense. This time around, Finjan moves to strike the defense not because it does not provide fair notice, but because it is "facially implausible." [Doc. No. 157-1 at 8.] Facial implausibility, however, is akin to the standard for dismissal of a claim pursuant to Rule 12(b)(6); it is not grounds for striking an affirmative defense. As discussed above, to strike an affirmative defense, the Court must find that it does not give the plaintiff fair notice of the defense.[1] Finjan does not even argue that the amended answer does not provide fair

---

[1] District courts in the Ninth Circuit have reached different conclusions with respect to whether the pleading standards set by the Supreme Court in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007),

notice, and the Court finds that the additional allegations are sufficient to provide Finjan fair notice of ESET's acquiescence defense. Accordingly, Finjan's motion to strike this defense is denied.

### III. Motion to Dismiss Counterclaims

#### A. Legal Standard

Under Rule 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted).

---

and *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), apply to affirmative defenses. *See generally J & J Sports Prods., Inc. v. Scace,* No. 10CV2496-WQH-CAB, 2011 WL 2132723, at *1 (S.D. Cal. May 27, 2011) (discussing split and ultimately holding that the fair notice standard still applies). In cases since *Twombly* and *Iqbal*, however, the Ninth Circuit has at least implied that the fair notice standard still applies to the pleading of affirmative defenses. *See, e.g., Kohler v. Flava Enter., Inc.*, 779 F.3d 1016, 1019 (9th Cir. 2015) (noting when discussing whether an affirmative defense had been adequately pled that "the 'fair notice' required by the pleading standards only requires describing the defense in 'general terms.'"); *see also Bruno v. Equifax Information Servs., Inc.,* No. CV 2:17-0327 WBS EFB, 2017 WL 2833393, at *2 (E.D. Cal. June 30, 2017) ("This court [] has generally understood *Kohler* to have held that the "fair notice" standard applies to affirmative defenses."); *Roe v. City of San Diego*, 289 F.R.D. 604, 608 (S.D. Cal. 2013) ("[T]he Ninth Circuit has continued to recognize the 'fair notice' standard of affirmative defense pleading even after *Twombly* and *Iqbal*.") (citing *Simmons*, 609 F.3d at 1023, and *Schutte & Koerting, Inc. v. Swett & Crawford*, 298 Fed. Appx. 613, 615 (9th Cir. 2008)). Accordingly, the Court applies the fair notice standard here.

Even under the liberal pleading standard of Rule 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### B.  Counterclaim 13 (Affirmative Defense 12): Prosecution Laches

Finjan moves to dismiss ESET's amended counterclaim for declaratory judgment of unenforceability of the '305, '086, '621, and '755 patents due to prosecution laches. [Doc. No. 127-1 at 13.] "The doctrine [of prosecution laches] 'may render a patent unenforceable when it has issued only after an unreasonable and unexplained delay in prosecution' that constitutes an egregious misuse of the statutory patent system under the totality of the circumstances." *Cancer Research Tech. Ltd. v. Barr Labs., Inc.*, 625 F.3d 724, 728 (Fed. Cir. 2010) (quoting *Symbol Techs., Inc. v. Lemelson Med., Educ. & Research Found.*, 422 F.3d 1378, 1385-86 (Fed. Cir. 2005)). It also requires a showing of prejudice, which in turn requires "evidence of intervening rights, *i.e.,* that either the accused infringer or others invested in, worked on, or used the claimed technology during the period of delay." *Id.* at 729. "[T]here are no strict time limitations for determining whether continued refiling of patent applications is a legitimate utilization of statutory provisions or an abuse of those provisions. The matter is to be decided as a matter of equity, subject to the discretion of [the] district court . . . ." *Symbol Techs.*, 422 F.3d at 1385.

The first time around, the Court dismissed this counterclaim because ESET's allegations of unreasonable and unexplained delay were limited to a recitation of the number of years that lapsed between the time Finjan filed its application for the parent patent and the applications for the four patents at issue here. [Doc. No. 137 at 5-7] The

amended counterclaim for prosecution laches contains additional allegations about why Finjan's delay in filing the patents at issue was unreasonable. [Doc. No. 142 at ¶¶ 67-10.] Nevertheless, Finjan argues that these additional allegations are "entirely unsupported." [Doc. No. 157-1 at 10.] As ESET points out, Finjan's arguments are more appropriate to a motion for summary judgment than to a motion to dismiss. Whether the evidence will support Finjan's prosecution laches claim is not at issue here. Because ESET has sufficiently alleged why Finjan's delay was unreasonable, Finjan's motion to dismiss this counterclaim (and to strike the related defense) is denied.

### C. Counterclaim 14 (Affirmative Defense 5): Patent Misuse

Patent misuse is "the patentee's act of 'impermissibly broaden[ing] the "physical or temporal scope" of the patent grant with anticompetitive effect.'" *Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1328 (Fed. Cir. 2010) (alteration in original) (quoting *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1001 (Fed. Cir. 1986)). "[T]he basic rule of patent misuse [is] that the patentee may exploit his patent but may not 'use it to acquire a monopoly not embraced in the patent.'" *Id.* at 1327 (quoting *Transparent-Wrap Mach. Corp. v. Stokes & Smith Co.,* 329 U.S. 637, 643 (1947)). Patent misuse is an affirmative defense to patent infringement and an "accused infringer may invoke the doctrine of patent misuse to defeat the patentee's claim." *Id.* at 1328. However, the Federal Circuit has emphasized the "narrow scope of the doctrine" and clarified that even otherwise unlawful anticompetitive conduct does not establish patent misuse "unless the conduct in question restricts the use of that patent and does so in one of the specific ways that have been held to be outside the otherwise broad scope of the patent grant." *Id.* at 1329.

ESET's original counterclaim for declaratory judgment of unenforceability of the patents in suit due to patent misuse was based on allegations pertaining to a lawsuit Finjan filed in Germany for infringement of a European patent and allegations that Finjan "tied" a license to the European patent to licenses for the patents in suit. [Doc. No. 118 ¶¶ 72-73.] In the order dismissing this counterclaim, the Court held that "ESET's allegation that Finjan will not license the patents in suit unless it includes a license to Finjan's European

patent fails to state a claim because ESET has not alleged any restraint on competition." [Doc. No. 137 at 9.]

In its amended counterclaim, ESET clarifies that its patent misuse claim is based on Finjan's demand of "payment of royalties on Defendants' worldwide sales of products that are not covered by any intellectual property of Plaintiff," which, according to ESET constitutes per se misuse. [Doc. No. 142 at ¶ 81.] In other words, ESET is arguing that Finjan is impermissibly broadening the territorial scope of its patents by tying a *worldwide* license on sales of products that may be covered by a patent in some territories (either in the United States or Europe), but not worldwide, to licenses for the patents in suit. A product patented only in Europe would effectively be unpatented outside of Europe, so demanding a license based on sales in countries where the patent does not apply would constitute exploitation of the patent by using it "to acquire a monopoly not embraced in the patent." *Princo Corp.*, 616 F.3d at 1327 (quoting *Transparent–Wrap Mach. Corp. v. Stokes & Smith Co.*, 329 U.S. 637, 643 (1947)). At this stage, the Court finds that ESET has sufficiently alleged patent misuse based on this theory. If ESET can prove that Finjan tied licenses to the patents in suit to sales of products in jurisdictions where Finjan does not hold any patents, ESET may have a claim for patent misuse. Accordingly, Finjan's motion to dismiss this claim is denied.

### D. Counterclaims 15-17: Inequitable Conduct

#### 1. Legal Standards

Finjan moves to dismiss ESET's amended fifteenth, sixteenth, and seventeenth counterclaims for declaratory judgment of unenforceability of the '621 patent, the '086 patent, and the '755 patent, respectively, due to inequitable conduct. [Doc. No. 157-1 at 1.] "Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) (en banc). The elements of "inequitable conduct are: (1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or

7

submitted false material information; and (2) the individual did so with a specific intent to deceive the [Patent and Trademark Office ("PTO")]." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 n.3 (Fed. Cir. 2009).

"Intent and materiality are separate requirements." *Therasense*, 649 F.3d at 1290. The intent element requires a showing that "the patentee acted with the specific intent to deceive the PTO. A finding that the misrepresentation or omission amounts to gross negligence or negligence under a 'should have known' standard does not satisfy this intent requirement." *Id.* (internal citation omitted). Specific intent to deceive means an "intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.'" *Id.*

"[T]he materiality required to establish inequitable conduct is but-for materiality." *Id.* at 1291. "A misrepresentation or omission is but-for material '[i]f the PTO would not have allowed a claim had it been aware' of the undisclosed information or the falsity of the representation." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, No. 14-CV-2061-H (BGS), 2016 WL 7319533, at *15 (S.D. Cal. Feb. 10, 2016) (alteration in original) (quoting *Therasense*, 649 F.3d at 1291). In cases of alleged omissions of submissions of prior art to the PTO, "the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference." *Therasense*, 649 F.3d at 1291.

"An inequitable conduct counterclaim must be pled with 'particularity' under Federal Rule of Civil Procedure 9(b)." *Presidio*, 2016 WL 7319533, at *15. Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." In cases of inequitable conduct, the "particularity" in Rule 9(b) requires "identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1327.

> Moreover, although "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the

> falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

*Id.* at 1328-29. "A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." *Id.* at 1329 n.5.

### 2. The '621 patent

ESET's inequitable conduct counterclaim for the '621 patent is premised on Finjan's alleged concealment from the PTO of all of the details surrounding a decision in the District of Delaware (the "Delaware Decision") that invalidated a patent held by Finjan (the "'962 patent") that was in the priority chain for the '621 patent. The Court dismissed this counterclaim the first time around for two reasons. First, the Court found that Finjan was under no obligation to explain the significance the Delaware Decision to the PTO. Second, the Court held that ESET had failed to allege how either the fact that the Delaware Decision was later affirmed by the Federal Circuit or the "testimony or exhibits" from the Delaware Decision were material.

Finjan again moves to dismiss this counterclaim arguing that this counterclaim is facially implausible because it does not plead that Finjan or its counsel withheld material information from the patent examiner or that it did so with the intention to deceive the PTO. The Court is not persuaded. In the amended counterclaim, ESET more clearly articulates the alleged facts on which it premises this counterclaim. ESET alleges that Finjan never disclosed that the Federal Circuit had affirmed the invalidation of a claim in the '926 patent, even when the patent examiner had rejected a claim from Finjan's application for the '621 patent on the ground of "nonstatutory obviousness-type double patenting," noting that the claim in question from the '621 patent was not patentably distinct from the invalidated claim from the '926 patent. [Doc. No. 142 at ¶ 121.] ESET's allegations that Finjan proceeded with its patent application, including the submission of a terminal disclaimer, without informing the PTO that the Federal Circuit had affirmed the

invalidity of a claim that the examiner had found not patentably distinct from a claim in the '621 patent, or without making any effort to distinguish the new claim from the invalid claim, plausibly state a claim for inequitable conduct. The fact that Finjan included the Delaware Decision and other information related thereto amongst the materials it submitted to the examiner goes to the merits of whether the omitted information was material or whether there was an intent to deceive, but it does not justify dismissal of the inequitable conduct counterclaim. Accordingly, Finjan's motion to dismiss this counterclaim is denied.

### 3. The '086 patent

ESET's amended filing includes a new counterclaim for inequitable conduct related to the '086 patent. Finjan first argues that this counterclaim is untimely and improper because ESET was required to seek leave to add an entirely new counterclaim, as opposed to an amendment that only attempted to remedy the deficiencies in the counterclaims that were dismissed. Whether Finjan may be technically correct is irrelevant because even if the Court's July 24, 2017, order giving ESET leave to file an amended answer and counterclaim did not already permit the inclusion of this new counterclaim, the Court would have granted a separate motion for leave to include this counterclaim.

As for the substance of this counterclaim, ESET alleges that Finjan filed a Nonpublication Request during the prosecution of the application from which the '086 patent issued. The Nonpublication Request certified that "the invention disclosed in the attached application has not and will not be the subject of an application filed in another country, or under a multilateral international agreement, that requires publication at eighteen months after filing." [Doc. No. 142 at ¶ 91.] In fact, according to ESET, the invention had been the subject of a patent application filed in Europe (the "EP '094 patent"). [*Id.* at ¶ 98.] ESET alleges that Finjan made this false statement so that competitors could not submit prior art challenging the claims of the application for the '086 patent.

Finjan argues that the Nonpublication Request was not a misrepresentation because the invention disclosed in the application was different from the EP '094 patent, and because ESET does not allege materiality or intent to deceive. These arguments amount to a dispute as to whether the Nonpublication Request was in fact false, whether it was in fact material, and whether it was in fact made with the intent to deceive. Finjan is free to contest these allegations on summary judgment or at trial, but its arguments do not support dismissal of the counterclaim, which plausibly alleges these elements of inequitable conduct. Accordingly, Finjan's motion to dismiss ESET's inequitable conduct for the '086 patent is denied.

### 4. The '755 patent

In its amended counterclaim for inequitable conduct for the '755 patent, ESET alleges that because the '755 patent is a continuation of the '086 patent and a divisional of the '621 patent, which are themselves unenforceable for the reasons alleged (and discussed herein), the '755 patent is also unenforceable as the fruit of the poisonous tree and under the doctrine of infectious unenforceability. [Doc. No. 142 at ¶ 144.] Finjan argues only that this counterclaim should be dismissed because ESET did not state claims for inequitable conduct related to the '621 patent and '086 patent. Thus, because the Court has already found that ESET's inequitable conduct counterclaims for the '621 patent and '086 patent survive dismissal, Finjan's motion to dismiss this counterclaim is denied as well.

## IV. Conclusion

For the reasons set forth above, it is **HEREBY ORDERED** that Finjan's motion to strike the amended affirmative defenses and dismiss amended counterclaims is **DENIED**.

**IT IS SO ORDERED.**

Dated: October 2, 2017

Hon. Cathy Ann Bencivengo
United States District Judge