# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN, INC., <br><br> Plaintiff, <br><br> v. <br><br> ESET, LLC, a California Limited Liability and ESET SPOL. S.R.O., a Slovak Republic Corporation, <br><br> Defendants. | Case No.: 3:17-cv-0183-CAB-(BGS) <br><br> **CLAIM CONSTRUCTION ORDER** |

On September 25 and 26, 2017, the Court held a hearing to construe certain terms and phrases of the following patents: U.S. Patent Nos. 6,154,844; 6,804,780; 8,079,086; 9,189,621; 9,219,755; and 7,975,305. The parties submitted briefing in accordance with this District's local patent rules and the case management order. A tutorial was presented by both sides to assist the Court with the history and background of the patents.

The Court requested further briefing regarding certain terms. Having now considered all the submissions of the parties, the arguments of counsel and for the reasons set forth at the hearing and herein, the Court hereby enters the claim constructions set forth below.

**A. "Downloadable" in U.S. Patent Nos. 6,154,844; 6,804,780; 8,079,086; 9,189,621 and 9,219,755**

The parties seek construction of the term **Downloadable** as it is used in five of the patents at issue. This claim term can be traced through two branches of the family tree of this patent (*see* Attachment A) with somewhat differing definitions. The Court however concludes that the variations between the definitions can be reconciled and the specifications in their entirety give notice of what is encompassed by the claim term **Downloadable** to one of skill in the art.

**Downloadable** initially appears as a defined term in the specification of the 6,167,520 patent, and its continuation the 6,480,962 patent, as *a small executable or interpretable application program which is downloaded from a source computer and run on a destination computer.*

The specification of the 6,092,194 patent, and its continuation the '780 patent (which is at issue in this litigation), define **Downloadable** *as an executable application program which is downloadable from a source computer and run on the destination computer.* The specification however provides as examples of a **Downloadable**, application programs such as Java™ applets, known as little application programs in machine language, and JavaScripts™ scripts, an interpretable application program. These examples are in accord with the definition, incorporated by reference, set forth in the '520 patent. The '194 patent and its progeny therefore conform to the '520 patent's definition of **Downloadable** as *small executable or interpretable application programs* through the use of the examples in the specifications. The Court finds that one of skill in the art would be able to ascertain what is claimed as a **Downloadable** in the context of these patents, and that in light of the examples provided in the '194 patent specification, concludes that the meaning of **Downloadable** is consistent with the definition provided in the '520 patent.

The '844 patent (which is at issue in this litigation) defines **Downloadable** *as an executable application program which is downloadable from a source computer and run on the destination computer* and also includes references to small executable and

2

interpretable application programs as examples of a **Downloadable**. The '844 patent incorporates by reference the '520 patent and '194 patent. The Court finds that the definition of **Downloadable** based on the '844 patent specification, the examples provided therein and the incorporation of the '520 patent and the '194 patent, informs one of skill in the art with reasonable certainty the scope of the invention. The entirety of the specification's description would inform that **Downloadable** includes executable and interpretable application programs, in accordance with the examples and incorporated references.

The '822 patent is a Continuation in Part of both the '962 patent and '780 patent and incorporates those patents by reference. Its continuation patents, including the '086 patent, '621 patent and '755 patent, which are at issue in this litigation, do not include a definition of **Downloadable** in the specification but incorporate by reference the '962 patent and the '780 patent, and their definitions and examples of a **Downloadable**.

The Court finds that the two branches of the family tree of the patents at issue inform that a **Downloadable** in the context of these patents means a *small executable or interpretable application program which is downloaded from a source computer and run on a destination computer.* This construction comports with the plain definition set forth in the '520 patent and the '962 patent, and is supported by the written description including the definition and the examples set forth in the '194 patent and its progeny, and in the entirety of specification of the '844 patent.

The Court therefore construes the term **Downloadable** in all five patents as ***a small executable or interpretable application program which is downloaded from a source computer and run on a destination computer.***

### B. U.S. Patent No. 6,154,844

The parties sought construction of the following phrase appearing in various claims of the '844 patent: **before the web server makes the Downloadable available to web clients**. The Court's construction for this term is: *Before the Downloadable is available on a web server to be called up or forwarded to a web client.* ('844 @ Col. 3:32-52; Col. 4:65 - Col. 5:13; Figure 1.)

### C. U.S. Patent No. 6,804,780

The parties sought construction of the following terms and phrases appearing in various claims of the '780 patent. The Court's constructions for these terms are:

| Claim Term | COURT'S CONSTRUCTION |
|---|---|
| **software components required to be executed by the Downloadable** | *components of code that the Downloadable is required to execute* (agreed construction) |
| **ID generator** | Defendant's request for application of 112 ¶6 denied. "ID generator" is not a nonce term as advocated by Defendant. It is a common name for a known program construct that would be familiar to one of skill in the art to perform a function further identified by its modifier. |
| **performing a hashing function on the Downloadable and the fetched software components to generate a Downloadable ID** | *performing a hashing function on the Downloadable together with its fetched software components* (Adopting PTO Construction from the IPR of the '780 patent April, 2016.) |

### D. U.S. Patent No. 7,975,305

The parties sought construction of the following phrase appearing in various claims of the '305 patent, **network interface, housed within a computer.** Defendant's proposed construction that "housed within a computer" necessarily limits the structure of the network interface to a hardware component is declined. The specification includes software interface examples. The Court therefore finds in the context of the patent, the use of "housed" in contrast to "stored" does not dictate that the claim be limited to hardware components. To the extent clarification is required the Court construes this phrase as *network interface, contained within the computer.*

The parties agreed construction for **database**, *a collection of interrelated data organized according to a database schema to serve one or more applications*, is adopted.

### E. U.S. Patent No. 8,079,086

The parties sought construction of the following terms appearing in various claims of the '086 patent. The Court's constructions for these terms are:

| Claim Term | COURT'S CONSTRUCTION |
|---|---|
| **appended Downloadable** | *a Downloadable with a representation of the DSP data attached to the end of the Downloadable* <br><br> Declaration of Dr. Spafford, ¶¶36-39, and references cited therein, that one skilled in the art at the time would understand "append" to mean attach or add to the end of the existing file. The claim recites appending a representations of the DSP data to the Downloadable indicating an order. |
| **destination computer** | *Separate computer receiving the appended Downloadable* |

| | |
|---|---|
| **file appender** | Defendant's request for application of 112 ¶ 6 is denied. "File appender" is not a nonce term as advocated by Defendant. It is a common name for a known program construct that would be familiar to one of skill in the art to perform a function further identified by its modifier. |
| **Transmitter** | Defendant's request for application of 112 ¶ 6 is denied. "Transmitter" is not a nonce term as advocated by Defendant. It a common name for a known program construct that would be familiar to one of skill in the art. |

## F. U.S. Patent No. 9,189,621

The parties sought construction of the following terms appearing in various claims of the '621 patent. The Court's constructions for these terms are:

| Claim Term | COURT'S CONSTRUCTION |
|---|---|
| **wherein the information pertaining to the downloadable includes information pertaining to operation of the downloadable and distinct from information pertaining to the request** | Defendant asserts that this phrase in indefinite as it is not possible to ascertain the meaning of "information pertaining to the operation of the downloadable that is distinct from information pertaining to the request." The Court finds that in the context of the claim in its entirety and for the reasons set forth on the record, one of skill in the art would understand the meaning and scope of this claim language, and no further construction is needed. |
| **a response engine for performing a predetermined** | Defendant asserts that use of "response engine" is the equivalent of "means for" claiming and is |

| | |
|---|---|
| **responsive action based on the comparison** | limited to the structures disclosed in the '520 Patent at Figs. 5 and 6, Steps 525, 530, 540 and 610-30. Plaintiff asserts that "engine" is a common name for a known program construct that would be familiar to one of skill in the art to perform a function further identified by its modifier, in this case "response." The Court agrees that "engine" is not a nonce term as advocated by Defendant, and that the claim provides sufficient structure for one skilled in the art. Defendant's request for application of 112 ¶ 6 is denied. |
| **a response engine for performing a predetermined responsive action based on the comparison with the information pertaining to the predetermined suspicious downloadable** | Defendant asserts that "response engine" is the equivalent of "means for" claiming and no structure to perform this function is disclosed. Plaintiff asserts that "engine" is a common name for a known program construct that would be familiar to one of skill in the art to perform a function further identified by its modifier, in this case "response." "Engine" is not a nonce term. Defendant's request for application of 112 ¶ 6 is denied. |
| **Database** | *a collection of interrelated data organized according to a database schema to serve one or more applications* (joint construction) |

The final construction at issue with regard to the '621 patent is a "means for" limitation. An element of a claim may be expressed as a means for performing a specified function without the recital of the structure and is construed to cover the corresponding structure described in the specification or equivalents thereof. 35 U.S.C. § 112, ¶ 6. The limitation at issue appears in claim 15, which is dependent on claim 10.

> Claim 10. A system for reviewing an operating system call issued by a downloadable, comprising:
> …
> a plurality of operating system probes for monitoring substantially in parallel a plurality of subsystems of an operating system during runtime for an event caused from a request made by a Downloadable, wherein the plurality of subsystems includes a network system;
> ….
> Claim 15. The system of claim 10, wherein the plurality of operating system probes operating substantially in parallel for monitoring the operating system includes **means for monitoring a request sent to a downloadable engine.**

The parties agree that the "means for" element of claim 15 is governed by 35 U.S.C. § 112, ¶ 6. The patent specification must disclose with sufficient particularity the corresponding structure for performing the claimed function and clearly link that structure to the function. *Triton Tech of Tx., LLC. V. Nintendo of Am., Inc.*, 753 F.3d 1375, 1378 (Fed. Cir. 2014). The claimed function is "monitoring a request sent to a downloadable engine." After the claim construction hearing, the Court requested supplemental briefing from the parties identifying with sufficient particularity the corresponding structure in the specification for performing the claimed function. [Doc. 178-1.]

The plaintiff refers to the specification of the '962 patent [Doc. No. 138-9], incorporated by reference in the '621 patent, for the corresponding structure that supports this "means for" claim. Plaintiff directs the Court to the component identified in the specification as the request broker 306 described at Col. 4:12-18, Figs. 3 and 4 [*id.* at 6-7, 12] as the corresponding structure providing the function in the system of monitoring a request sent to a downloadable engine. [*See* Doc. No. 183 at 3.]

8

The specification describes the system for monitoring requests made by a Downloadable 140 to a downloadable engine 250 at Col. 3:51 – Col. 5:48. [Doc. No. 138-9, at 6-7, 12-13.] In the examples provided (*see* Figs. 3 and 4), extensions 304, 404, 405, 406 examine a Downloadable's request for access to classes 302 of a Java™ Virtual Machine (the downloadable engine 250) or to message calls 401, DDE calls 402 and DLL calls 403 of a ActiveX™ platform (the downloadable engine 250). The Downloadable's request to the downloadable engine may be interrupted by the extension which then notifies the request broker 306 of the Downloadable's request. The request broker 306 in turn forwards the request to the event router 308. [*Id.*]

The extensions 304, 404, 405, 406 monitor requests made to the downloadable engine 250. Col. 5:40-49 (the extensions recognize a request made by a Downloadable to the downloadable engine, interrupt the processing of the request and generate and forward a message identifying the incoming Downloadable to request broker which forwards the message to the event router.); Col. 4:10-15 (each extension 304 manages a respective one of the Java™ classes, interrupts the request and generates a message to the request broker 306); Col. 5:23-38 (each extension 404, 405, 406 recognizes a call to an ActiveX™ platform 401, 402, 403, and generates a message to the request broker 306). The request broker 306 forwards the request on for further analysis and response. The structures identified in the specification corresponding to a **means for monitoring a request sent to a downloadable engine**, are the Java Class extensions 304, the Message Extension 404, the Dynamic-Data-Exchange Extension 405 and Dynamically-Linked-Library Extension 406, and their equivalents.

## F. U.S. Patent No. 9,219,755

The parties sought construction of the following terms appearing in various claims of the '755 patent. The Court's constructions for these terms are:

| Claim Term | COURT'S CONSTRUCTION |
|---|---|
| **a downloadable engine for intercepting a request message being issued by a downloadable to an operating system** | Defendant asserts that "downloadable engine" is the equivalent of "means for" claiming and the disclosed structures disclosed to perform this function are a Java Virtual Machine 250 or Active X Platform 250 ('960 patent, Col. 3:54-56; Fig. 3; Col. 5:25-27; Fig. 4). Plaintiff asserts that "engine" is a common name for a known program construct that would be familiar to one of skill in the art to perform a function further identified by its modifier, in this case "response." The Court agrees that "engine" is not a nonce term as advocated by Defendant, and that the claim provides sufficient structure for one skilled in the art. Defendant's request for application of 112 ¶ 6 is denied. |
| **intercepting an operating system call being issued by the downloadable to an operating system** | *stopping a request message before the request message is received by the operating system* |
| **a response engine for receiving a violation message from the runtime** | Defendant asserts that use of "response engine" is the equivalent of "means for" claiming and is limited to the structures disclosed in the '520 |

| | |
|---|---|
| **environment … and blocking … and allowing ….** | Patent, at Figs. 5 and 6, Steps 525, 530, 540 and 610-30. Plaintiff asserts that "engine" is a common name for a known program construct that would be familiar to one of skill in the art to perform a function further identified by its modifier, in this case "response." The Court agrees that "engine" is not a nonce term as advocated by Defendant, and that the claim provides sufficient structure for one skilled in the art. Defendant's request for application of 112 ¶6 is denied. |

It is **SO ORDERED**.

Dated: November 14, 2017

_____
Hon. Cathy Ann Bencivengo
United States District Judge