UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN, INC.,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>ESET, LLC and ESET SPOL. S.R.O.,<br><br>　　　　　　　　Defendants. | Case No.: 17CV183 CAB (BGS)<br><br>**ORDER GRANTING MOTION TO MODIFY STIPULATED PROTECTIVE ORDER**<br><br>[ECF 146] |

　　　Plaintiff Finjan, Inc. moves to modify the Protective Order's prosecution bar to allow Finjan's litigation counsel to represent Finjan in review proceedings initiated by Defendants ESET, LLC and ESET SPOL, S.R.O. ("ESET") before the United States Patent and Trademark Office ("PTO").[1] (Motion to Modify the Protective Order ("Motion") [ECF No. 146].) The current prosecution bar allows Finjan's litigation counsel to handle review proceedings subject to certain limitations, but only those initiated by "Non-Parties." (Protective Order at 14 [ECF No. 115].) Finjan wants the

---

[1] In the alternative, Finjan requests that specific attorneys be exempted from the prosecution bar. (*Id.* at 2, 13-14.)

1

Protective Order modified to allow it to handle review proceedings initiated by ESET because ESET has now filed for *inter partes* review ("IPR") of one of the patents-in-suit, U.S. Patent No. 7,975,305 ("the '305 Patent"). (Mot. at 4-5.) ESET opposes the modification. (Opposition to Mot. to Modify Protective Order ("Opposition") [ECF No. 160].) For the reasons set forth below, the Court **GRANTS** the Motion.

## BACKGROUND

The scope of the prosecution bar in this case was a disputed issue before the case was transferred to this district from the Northern District of California with the issue raised multiple times by the parties before the previous judge. The Court only briefly addresses that history as it relates to the current Motion. In evaluating the appropriate scope of the prosecution bar for the case, the court found that Finjan's litigation counsel could represent Finjan in nine ongoing IPR proceedings. And then, following additional briefing, the court decided that Finjan's litigation counsel could also represent Finjan in ongoing review proceedings initiated by "third parties." (January 9, 2017 Order [ECF No. 71].) However, the parties then disagreed as to the meaning of "third party." (Mot. at 3; Opp'n. at 4.) Finjan interpreted it to mean anyone other than Finjan. (Mot. at 3; Opp'n at 4.) ESET interpreted it as prohibiting Finjan's litigation counsel from handling review proceedings initiated by ESET or Finjan, essentially reading the allowance to participate in review proceedings initiated by "third parties" to mean non-parties to this case. (Opp'n at 4.)

Despite the disagreement as to the meaning of "third party," Finjan agreed to ESET's proposed language that only allowed Finjan's litigation counsel to represent it in review proceedings initiated by a "Non-Party," with "Non-Party" defined as "any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action." (Mot. at 3; Protective Order at 3, 13-14.) Finjan indicates that it wanted to avoid burdening the court with an issue that had not arisen at that point. ESET had not initiated any review proceedings against Finjan at the time. However, Finjan indicated to

ESET at the time that it would seek modification from the court if ESET initiated review proceedings against Finjan's patents. (Mot. at 4, Ex. 3.)

ESET has now filed an IPR petition for review of Finjan's '305 patent.[2] Finjan seeks to modify the current prosecution bar to allow its litigation counsel to represent Finjan in review proceedings, *i.e.* "reissue protest, ex parte reexamination, *inter partes* review or other post-grant proceedings" that are filed by "*any entity other than Finjan*, so long as such activity is limited to defending the validity of the patent and the individual has no involvement in and does not advise regarding drafting, editing, approving or amending claim language." (Mot. at 1, Ex. 1. at 15.) (emphasis added to proposed modification).

## DISCUSSION

### I. Legal Standard

This Court has authority to issue appropriate protective orders. Fed. R. Civ. P. 26(c) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.") In seeking modification of the Protective Order, the burden of showing good cause for the modification rests with Finjan. (Protective Order at 19 ("The Court may modify the terms and conditions of [the] Stipulated Protective Order for good cause, or in the interest of justice, or on its own order at any time in these proceedings.").)

Although the burden is on Finajn to show good cause for the modification, the Federal Circuit's precedent on prosecution bars still largely controls the Court's analysis of this issue. In short, if Finjan can show that a prosecution bar that allows Finjan's litigation counsel to represent it in review proceedings initiated by ESET is appropriate in

---

[2] ESET also joined a pending IPR proceeding concerning another patent-in-suit, U.S. Patent No. 8,079,086 ("the '086 patent"). However, this proceeding is not at issue in this motion. ESET agrees that Finjan's litigation counsel can participate in that IPR proceeding because it was not initiated by ESET. (Opp'n at 8, n.2.)

3

this case, that would weigh in favor of a showing of good cause to modify the protective order. However, as noted below, the Court does take into consideration Finjan's agreement to the current language they now seek to modify.

Federal Circuit law governs whether a protective order should include a prosecution bar. *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1377-78 (Fed. Cir. 2010). A patent prosecution bar is an additional level of protection beyond the more typical provisions of protective orders that limit the use of confidential information. *Id.* at 1378. A patent prosecution bar is intended to guard against the risk of inadvertent disclosure that may arise when litigation counsel with access to an opposing party's confidential information also prosecutes patents before the U.S. Patent and Trademark Office ("PTO") on behalf of the client. *Id.* at 1378-79.[3] "'[W]hether an unacceptable opportunity for inadvertent disclosure exists . . . must be determined . . . by the facts on a counsel-by-counsel basis'" and that "determination should turn on the extent to which counsel is involved in 'competitive decisionmaking' with its client." *Id.* at 1378.

The first step is determining whether counsel "is involved in 'competitive decisionmaking' with its client. *Id.* at 1378. Simply handling patent prosecution is not enough. *Id.* at 1379-80. "The facts, not the category must inform the result." *Id.* at 1379. In *Deutsche Bank Trust* the court recognized some patent prosecution counsel have little involvement in activities involving competitive decision making. *Id.* at 1379-80. However, others pose a much greater risk, including those "obtaining disclosure materials for new inventions and inventions under development, investigating prior art related to these invention, making strategic decisions on the type and scope of patent protection that might be available or worth pursuing for such inventions, writing,

---

[3] "As aptly stated by the District of Columbia Circuit, 'it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so.'" *Deutsche Bank Trust*, 605 F.3d at 1378 (quoting *FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980)).

4

reviewing, or approving new applications or continuations-in-part of applications to cover those inventions, or strategically amending or surrendering claim scope during prosecution. *Id.* at 1380.

The second step is balancing the risk of inadvertent disclosure or competitive use "against the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice." *Id.* at 1380. Essentially, how prejudicial are the restrictions. In considering the harm to a party in having their counsel precluded from representing them before the PTO, "the court should consider such things as the extent and duration of counsel's past history in representing the client before the PTO, the degree of the client's reliance and dependence on that past history, and the potential difficulty the client might face if forced to rely on other counsel for the pending litigation or engage other counsel to represent it before the PTO. *Id.* at 1381 (citing *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984)).

In general, "a party seeking imposition of a patent prosecution bar must show that the information designated to trigger the bar, the scope of the activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information." *Id.* at 1381. And a "party seeking exemption from a patent prosecution bar must show on a counsel-by-counsel basis: (1) that counsel's representation of the client in matters before the PTO does not and is not likely to implicate competitive decisionmaking related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in the litigation, and (2) that the potential injury to the moving party from restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the opposing party caused by such inadvertent use." *Id.* at 1381.

Generally, like a party seeking a protective order, "a party seeking to include in a protective order a provision effecting a patent prosecution bar" must "show[] good cause for it issuance." *Id.* at 1378. In this respect, absent the prior agreement, ESET would have had to show a prosecution bar prohibiting Finjan's litigation counsel from

5

representing it would "reasonably reflect the risk" created by access to its information. *Id.* at 1381. However, as discussed above, because the issue is raised as a modification of the existing prosecution bar, Finjan bears the burden of showing good cause to modify it.

As explained more fully below, district courts have taken a number of approaches in finding the proper balance is between risk to the defendant and harm to the patentee from the restrictions.

**II. Parties' Arguments**

The parties have already agreed that a prosecution bar is necessary in this case. The only issue now is whether the scope of the existing prosecution bar should be modified.

The parties' arguments focus on three main points: (1) whether the prior decision, allowing Finjan's litigation counsel to represent it in review proceedings initiated by third parties, encompassed ESET as a "third party;" (2) how great the risk of misuse of ESET's confidential information is given the limits broadening claims in review proceedings and in restriction already in the Protective Order; and (3) how prejudicial it is to preclude Finjan's litigation counsel from representing Finjan in review proceedings by ESET. The second and third points generally align with the first and second steps explained above in which the Court weighs the risk of misuse of confidential information against the harm from the restrictions. The Court first summarizes the parties' positions on these points and then explains its reasoning for granting Finjan's request to modify the prosecution bar.

**A. Prior Rulings on the Scope of the Prosecution Bar**

Both parties present arguments regarding the meaning of the prior ruling on the appropriate scope of the prosecution bar. The parties continue to dispute whether the allowance for Finjan's litigation counsel to participate in newly filed review proceedings

initiated by "third parties" encompassed ESET.[4]  Essentially, they dispute whether ESET is a "third party."

On this issue, Finjan argues "good cause exists to modify the prosecution bar because the current language of the prosecution bar is inconsistent with Judge Donato's order." (Mot. at 8.) In brief, Finjan argues that "third party" meant anyone other than Finjan and this Court should modify the current Protective Order to its interpretation of that language. ESET disputes Finjan's interpretation of third party and also argues that Finjan should have made this argument to Judge Donato before the case was transferred rather than now after having agreed to the current language.

Even if Finjan's interpretation is correct and "third party" meant anyone other than Finjan,[5] that alone is not good cause to modify the current Protective Order. As ESET accurately points out, Finjan has since agreed to a prosecution bar that only allowed its litigation counsel to represent it in newly filed review proceedings initiated by "Non Parties." Regardless of the meaning of "third party" then, the question now is whether there is good cause to change the language.  The parties' arguments about the meaning of the prior order is largely beside the point. The prior proceedings in this case on this issue are of consequence because the burden of showing good cause to modify the Protective Order is squarely on Finjan and the parties have already determined with the court that a prosecution bar is appropriate, leaving just the issue of whether a change in the scope of it to be considered in this Motion. What was intended by "third party"

---

[4] Neither party seeks to modify the allowance for Finjan's litigation counsel to represent it in the nine IPR proceedings that were ongoing at the time of that decision.

[5] Although the court would agree that "third party" often refers to a non-party to a case as ESET claims, there is support for Finjan's position that the reference to third party meant anyone other than Finjan. In particular, Finjan points to the PTO's own explanation of IPR which describes the process as beginning "with a third party (a person who is not the owner of the patent) filing a petition." (Mot., Ex. 2.)

7

before the parties stipulated to "Non-Party" is not determinative of whether the scope of the prosecution bar should be modified now.

### B. Risk of Misuse of ESET's Confidential Information

Finjan argues that the limitations on all IPR proceedings, the limitations already in the prosecution bar, and the more general prohibitions already in the protective order on use of confidential information for any purpose other than this litigation sufficiently eliminate any risk of misuse of ESET's confidential information. Finjan claims that there is no risk that ESET's confidential information will be misused because IPR proceedings do not allow any amendment of claims that would broaden the scope of the claim. In short, Finjan argues it cannot use the information it gains through access to ESET's confidential information to broaden the claim to encompass ESET's products because Finjan is not allowed to broaden its claims in review proceedings. Additionally, the existing limitations in the Protective Order that limit Finjan's litigation counsel to "defending the validity of the patent" and prohibit "involvement in advis[ing] regarding drafting, editing, approving, or amending claim language" are additional safeguards that already sufficiently prevent misuse of ESET's confidential information. Finjan also emphasizes that its litigation counsel has not been precluded from representing Finjan in parallel PTO proceedings across litigation against more than ten defendants and more than 50 parallel PTO proceedings.

ESET does not dispute that Finjan is prohibited from broadening the claim in review proceedings. Rather, ESET argues Finjan could still misuse ESET confidential information despite this limitation and the prohibition on "involvement [in or] advis[ing] regarding drafting, editing, approving, or amending claim language." (Mot., Ex. 1. at 15.) It is ESET's position that in the process of crafting arguments or claim constructions to distinguish prior art, Finjan's litigation counsel could also design arguments or constructions to attempt to encompass features revealed in ESET's highly confidential information or source code. ESET also argues it should not be subjected to potential

misuse of its confidential information just because other defendants have agreed to Finjan's litigation counsel's participation in PTO proceedings subject to these limitations.

### C. Prejudice

On the issue of prejudice, Finjan first argues that it would be deprived of counsel with vast experience handling its patents and be required to expend significant additional resources preparing for the IPR proceedings. Finjan explains that its litigation counsel has represented Finjan for over ten years in more than 10 litigations involving the related patents as well as fifty-one IPR proceedings, forty-six of which have resolved in Finjan's favor with five still pending. Finjan also notes that its litigation counsel has successfully defended it in two trials in the Northern District of California and another in the District of Delaware. These cases involved patents at issue in this case and related to the '305 Patent. Finjan also argues that preclusion of its litigation counsel from representing it in a review proceeding initiated by ESET is particularly prejudicial because the PTO proceedings initiated by ESET are raising the same validity issues raised in this litigation. ESET is asserting the same prior art references in the IPR proceeding that it is asserting in this litigation and ESET has the same counsel handling both. Finjan also emphasizes that a policy that encourages defendants to file review proceedings that plaintiffs' litigation counsel will be precluded from, when defendants will not, is dangerous.

ESET argues that Finjan is not prejudiced by being denied its litigation counsel because it has patent prosecution counsel, the attorney that secured issuance of the '305 Patent, that may represent it in IPR proceedings. ESET also argues that ESET having the same counsel in this case and an IPR proceeding is not equivalent to Finjan having the same counsel in both because ESET will not be in a position to modify Finjan's claims.

## III. Analysis

The district court decisions addressing this issue have generally fallen into one of three categories.

Some courts have found a complete bar on litigation counsel participating in review proceedings, similar to the one ESET seeks to maintain here, is appropriate.

9

*Found. Medicine v. Guardant Health, Inc.*, 2:16-CV-00523-JRG-RSP, Dkt No. 98 (E.D. Tex. June 5, 2017); *Boston Sci Corp. v. Cook Grp. Inc.*, No. 15-980-LPS-CJB at ¶ 6 (D. Del. Feb. 10, 2017); *Versata Software, Inc. v. Callidus Software Inc.*, Civ. No. 12-931-SLR (D. Del. March 12, 2014).

At the other end of the spectrum are district courts have also found that prosecution bars should not be applied to review proceedings at all. These courts distinguish between prosecution efforts in pursuing patent applications and review proceedings with the key distinction being the prohibition on broadening the scope of the claims in review proceedings. *Pall Corp. v. Entegris, Inc.*, 655 F. Supp. 2d 169, 173 (E.D. N.Y. 2008); *Mirror Worlds, LLC v. Apple, Inc.*, 2009 WL 2461808, at *2 (E.D. Tex. 2009); *Document Generation Corp. v. Allscripts, LLC*, 2009 WL 1766096, at *2-3 (E.D. Tex. 2009). Essentially, these courts have generally found there is little potential for misuse of a defendant's confidential information to modify claims to encompass defendants' products because the claims cannot be broadened in these proceedings.

Other district courts have found there is some risk of misuse in review proceedings even with the limits on broadening claims because claims might be restructured with the benefit of access to a defendant's confidential information. *Grobler v. Apple, Inc.*, 2013 WL 3359274, at *2 (N.D. Cal. May 7, 2013); *EPL Holdings, LLC v. Apple Inc.*, 2013 WL 2181584, at *3-4 (N.D. Cal. May 20, 2013); *Shared Memory Graphics, LLC v. Apple*, 2010 WL 4704420, at *3 (N.D. Cal. Nov. 12, 2010). However, these courts and others have found a prohibition on litigation counsel drafting or amending claims sufficiently mitigates any risk of misuse. *Grobler*, 2013 WL 3359274, at *1-2; *EPL Holdings*, 2013 WL 2181584, at *4; *LifeScan Scotland, Ltd. v. Shasta Techs., LLC*, 2013 WL 5935005, at *5 (N.D. Cal. Nov. 4, 2013); *Shared Memory Graphics*, 2010 WL 4704420, at *3-4; *Crystal Image Tech.*, 2009 WL 1035017, at *3-4 (W.D. Penn. April 17, 2009).

The prosecution bar in this case with the modification Finjan seeks, falls into this third category and the Court finds it appropriately mitigates the risk of inappropriate use of ESET's confidential information without imposing an undue burden on Finjan.

A complete bar on Finjan's litigation counsel's participation in review proceedings would certainly provide ESET complete protection, but the purpose of the prosecution bar is only to "mitigate the risk of inadvertent use of proprietary information by a patentee, not to unduly burden a patentee with additional expense." *See Grobler*, 2013 WL 3359274, at *1; *LifeScan*, 2013 WL 5935005 at *5; *EPL Holdings*, 2013 WL 2181584, *3 ("a total ban would burden a patentee with additional expense."). In balancing the risk against the harm, the Court must consider the harm to Finjan. Finjan's litigation counsel's history representing it in district court and before the PTO is extensive in time and breadth and it would be burdensome to switch to different counsel for review proceedings ESET initiates. This history weighs heavily in favor of allowing litigation counsel to represent Finjan in review proceedings.

As to ESET's concerns that Finjan may strategically narrow claims or design claim arguments to ESET's disadvantage based on ESET's confidential information, the Court finds that risk is not great enough to justify completely prohibiting Finjan's litigation counsel from representing it in review proceedings initiated by ESET. The restrictions already in the Protective Order, in particular the prohibition on involvement in drafting or amending claims, provide sufficient protection. And, to the extent ESET is arguing that Finjan might limit the scope of a claim to encompass one of ESET's products, "it would be very short sighted for a patentee to intentionally limit claim scope to specifically capture one defendant's products at the expense of excluding other would-be infringer's products." *See Mirror Worlds, LLC*, 2009 WL 2461808, at *2 (discussing reexamination proceedings in which claim scope may only be narrowed); *see also Aylus Network, Inc. v. Apple, Inc.*, 856 F.3d 1353, 1362 (Fed. Cir. 2017) (finding "statements made by a patent owner during an IPR proceeding, . . . can be considered for claim construction."). That would seem particularly of consequence here given the breadth of litigation Finjan is pursuing.

Additionally, if Finjan's litigation counsel were "to craft arguments or claim constructions to distinguish over cited prior art in such proceedings while specifically

designing such arguments or constructions to encompass ESET features revealed only in ESET's highly confidential information or source code" it would violate the Protective Order's prohibition on use of ESET's confidential information outside this litigation. Based on Finjan's representation that there have been no such issues to date in its other cases with the same restrictions in place, it would appear Finjan has not misused defendants' confidential information as ESET suggests it might. On the issue of other defendants agreeing to the restrictions Finjan proposes here, the Court agrees that other defendants' agreement to these restrictions does not mean that ESET should. However, as Finjan notes, it is significant that in all those litigations, there have been no issues with Finjan wrongfully using defendants' confidential information. This suggests the risk of misuse under these terms, specifically as to Finjan, is not great.[6]

The Court also finds it significant that ESET is challenging one of the patents-in-suit and asserting the same prior art references to challenge validity in both proceedings. Courts have been less inclined to impose prohibitions on litigation counsel's participation in review proceedings when "review proceedings are really nothing more than an extension of the litigation in the district court," as opposed to two independent matters. *Grobler*, 2013 WL 3359274, at *2; *Software Rights Archive, LLC v. Facebook, Inc.*, 2014 WL 116366, at *3 (N.D. Cal. 2014); *Shared Memory Graphics,* 2010 WL 4704420, at *3-4 ("when it is the opposing party who seeks reexamination, then the reexamination is really part and parcel of the litigation at issue"); *see also Crystal Image Tech.*, 2009 WL 1035017, at *3; *Mirror Worlds, LLC*, 2009 WL 2461808, at *2 ("the Court has serious concerns about a policy that would encourage defendants to file for reexamination while excluding plaintiff's counsel from participating in the reexamination, thereby forcing a plaintiff to defend a patent in two separate venues with two teams of attorneys"). "[I]f

---

[6] In *LifeScan Scotland v. Shasta Technologies*, the court allowed a prosecution bar comparable in scope to what Finjan seeks here even when the patentee had previously violated the protective order in that case. 2013 WL 5935005, at *5-6.

the PTO and district courts are just two fronts in the same battle, allowing a limited role for a patentee's litigation counsel while prohibiting counsel from crafting or amending claims is only reasonable." *Grobler*, 2013 WL 3359274, at *2; *LifeScan*, 2013 WL 5935005, at *5 (when the same patents, same invalidity arguments, and same prior art references are at issue, allowing litigation counsel to participate subject to a prohibition on crafting or amending claims is reasonable).

Finjan has shown good cause to modify the Protective Order to substitute "any entity other than Finjan" for "a Non Party" to allow Finjan's litigation counsel to represent it, subject to all the other limitations in the current Protective Order, in review proceedings initiated by ESET.

## CONCLUSION

The Court **GRANTS** Finjan's Motion to modify the Protective Order.

**IT IS SO ORDERED.**

Dated: December 21, 2017

_____
Hon. Bernard G. Skomal
United States Magistrate Judge