UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| FINJAN, INC., Plaintiff, v. ESET, LLC and ESET SPOL. S.R.O., Defendants. | Case No.: 17CV183 CAB (BGS)<br><br>**ORDER DENYING FINJAN'S MOTION TO COMPEL ESET TO SUPPLEMENT THEIR RESPONSE TO INTERROGATORY NO. 7**<br><br>[ECF 231] |
|---|---|

Finjan, Inc. moves to compel ESET to supplement its response to Finjan's Interrogatory No. 7, (ECF 231), which asks ESET to identify the directories and subdirectories of ESET's produced source code corresponding to each of ESET's accused products. (Motion to Compel ESET to Supplement Their Response to Interrogatory No. 7 ("Mot.") at 2.) ESET opposes providing any further response, arguing it has already provided a sufficient explanation how to obtain this information in its initial and amended interrogatory responses. (Opposition to Finjan's Motion to Compel ("Opp'n") [ECF 235].) For the reasons set forth below, Finjan's motion is **DENIED**.

## LEGAL STANDARDS

In general, the Federal Rules of Civil Procedure provide that "parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). District

courts have broad discretion in permitting or denying discovery. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002); *see also Facedouble, Inc. v. Face.com*, No. 12cv1584 DMS (MDD), 2014 WL 585868, at *1 (S.D. Cal. Feb. 13, 2014).

Federal Rule of Civil Procedure 33 authorizes the use of interrogatories. "An interrogatory may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). Furthermore, "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Rule 33(b)(3).

## DISCUSSION

### I. Parties' Arguments

Finjan's Interrogatory No. 7 states:

> For the source code that You produced or made available for inspection or will produce and make available for inspection, *identify* the products that correspond to the source code including the name and version number of each product, *the directories and subdirectories of the source code corresponding to each of the products*, the last date the source code was modified for each of the products, and which portion, if any, of the code You contend is prior art to the Asserted Patents. (Mot. at 2 (emphasis added by Finjan))

Finjan believes ESET should be required to produce a table identifying which of the subdirectories[1] located on the source code computers under three named directories correspond[2] to each of the accused products. Finjan characterizes ESET's current

---

[1] There are many subdirectories under three directories that are at issue in this motion. A fourth directory is apparently not at issue because ESET has already identified which subdirectories in that directory correspond to the accused products. (Mot. at 4, n. 1.)

[2] The Court notes that what Finjan means by "correspond" in asking for "the directories and subdirectories of the source code *corresponding* to each of the products" is vague and unclear. Arguably, explaining that all of the products use a common set of modules in the modules subdirectory and all products are capable of running them tells Finjan that all those subdirectories "correspond" to each of the products. ESET's answer, seemingly understanding what Finjan is actually seeking, attempts to explain under what circumstances the modules will actually run.

2

17CV183 CAB (BGS)

responses as evasive and incomplete.  More specifically, Finjan argues ESET's instructions on how to determine which subdirectories correspond to each product are vague because they require Finjan to identify the major version number and then compare it to a non-exhaustive list of exceptions and account for certain carve outs under which portions of a module may be skipped.  Finjan also takes issue with the vagueness of ESET's statement that "just because a module is loaded by a product does not mean the module will ever be executed."  Additionally, Finjan argues that ESET's direction that "for any specific product, the exact list of modules the product loads can be determined by searching for files whose filenames are 'emxxx.dat' or 'emxxx.dll' where the xxx is a three-digit number" is insufficient because it is not clear how this information relates to prior instructions and ESET's response does not indicate what three-digit number should be used to perform this search.[3]

ESET argues it has sufficiently responded to Interrogatory No. 7 by providing an explanation how and when its modules are loaded by different accused products.[4]  In short, ESET explains in its brief that it does not makes sense to identify what modules correspond to products in a table because its modules are plug-and-play components used in multiple accused products that run under certain circumstances, *i.e.* version number, version of the Accused Instrumentality, platform.  ESET argues its responses to Interrogatory No. 7 provide a narrative explaining how to map each module with the Accused Instrumentalities accounting for these factors.  More specifically, ESET emphasizes that its response explains that all the modules in a specified subdirectory are

---

[3] Finjan additionally argues that even if it had the three-digit number, it could not perform the search because the source code had not been fully indexed.  Regardless of whose fault that is, ESET's Opposition indicates it is now fully indexed.  (Opp'n at 9.)

[4] ESET provided both a First Response and Amended Response.  (Mot., Ex. A (first); Ex. B (amended).)  The First Response provided the instructions or mapping discussed in the parties' arguments and the Amended Response adds a table consisting of the Accused Instrumentalities in one column and a corresponding Directory on Source Code Computer in a second column.

capable of running with all versions of the Accused Instrumentalities with a major version number greater than 3.  ESET's brief also expands on what a major version number is and how to search for it.  As to Finjan's complaint that it is not clear what is meant in stating that some portions of modules will be skipped, ESET notes that its response explains that "some modules, as shown in the source code for those modules, have certain functionality that may be skipped unless the product meets a certain required minimum version number."  Again, in its brief, ESET expands upon this to explain that when new functionality is added to newer versions of modules, only newer versions of the Accused Instrumentalities can take advantage of the new functionality. As to the next exception Finjan criticizes — "just because a module is loaded by a product does not mean the module will ever be executed" — ESET provides, as an example when a module might not be executed, when the end user chooses to disable a feature of the Accused Instrumentality.  And, as to the exceptions listed as to numerous modules, ESET argues Finjan should be able to understand that certain modules only load with version numbers at a certain number or higher and on certain platforms and follow that explanation to determine when the modules are loaded by the Accused Instrumentalities.  ESET also argues that its instruction regarding searching for 'emxxx.dat' or 'emxxx.dll' files where the xxx is a three-digit number is a specific way for Finjan to confirm which modules were loaded in any specific version of the Accused Instrumentalities. And, the three digit number can be found in the source code.  Finally, as to LiveGrid, ESET explains that it features are separate and apart from any Accused Instrumentalities and it is not possible for ESET, or anyone, to map it to the Accused Instrumentalities.

     As to the burden on each party in following ESET's road map, Finjan wants ESET to do the work and create a table.  Finjan argues that this should impose very little burden on ESET because it has unfettered access to its source code and would be a great burden on Finjan because it is only allowed to manually take notes when reviewing ESET's source code.  ESET argues that it would take ESET as much time as Finjan to follow ESET's instructions to generate the mapping Finjan seeks and would require ESET to

divert its engineers from their real work for ESET, essentially functioning as Finjan's experts. Additionally, ESET explains that the table that Finjan demands would not be accurate or even makes sense to create because only certain portions of modules may be executed with certain versions of the Accused Instrumentalities and the same module may have segments of code that are restricted to different versions of Accused Instrumentalities. And, finally, ESET argues there is no basis for Finjan to rely on protective order restrictions — manually taking notes when reviewing source code — to argue the burden on it is greater than it would be for ESET.

## II. Analysis

The only case either party relies on in their briefing is *Facedouble, Inc. v. Face.com*. 2014 WL 585868. The *Facedouble* court required a defendant to "provide a guide or road map to its source code" to the plaintiff in response to an interrogatory asking the defendant to describe the steps of its technology. *Id.* at *2. The defendant's initial response relied on Rule 33(d) and only provided its source code. *Id.*

Finjan relies on *Facedouble* to argue ESET must identify the source code corresponding to the accused products to provide a road map to the source code. (Mot. at 3.) ESET argues it has already done what the *Facedouble* court required by providing instructions for mapping the Accused Instrumentalities to specific directories and explaining how the code is structured. (Opp'n at 6-7.) This, ESET argues, allows Finjan to identify which modules correspond with the Accused Instrumentalities. (*Id.* at 7.)

The Court agrees that *Facedouble* is not exactly on point because Interrogatory No. 7 is not seeking an explanation how ESET's products work or operate, but rather a table mapping subdirectories to particular products. 2014 WL 585868, *2 ("interrogatory asks Defendant to describe, in narrative form, the steps by which the accused technology provides facial recognition"); *see also Audatex N. Am. Inc. v. Mitchell Int'l, Inc.*, No. 13CV1523 BEN (BLM), 2014 WL 4961437, at *6 (interrogatory requested identification "of documents, including relevant source code excerpts, that describe the operation of certain identified features and functionalities of the accused products.") However, as

Finjan argues elsewhere in its brief, Finjan does need to understand ESET's source code to understand ESET's products' functionality.

ESET has provided significantly more than the defendant in *Facedouble*. The defendant in *Facedouble* simply provided its source code. *Facedouble*, 2014 WL 585868, *2; *see also Laserdynamics, Inc. v. Asus Computer Int'l.*, 2009 WL 153161, at *2 (E.D. Tex. Jan. 21, 2009) (reliance on source code citations without narrative description of functionality insufficient in response to interrogatory on functionality of product). ESET has provided more than the defendant in *Audatex*. In *Audatex*, the defendant provided the source code with files and file names in a system of folders with names and some narrative responses describing the operation of the accused software, but did not explain how the source code performed certain features and functions. Here, ESET has provided its source code and a detailed explanation of the source code's organization and structure with directories and subdirectories. And critically, it has gone many steps further by explaining when the Accused Instrumentalities will and will not run the modules.

Based on the briefing, Finjan did not even attempt to follow the road map ESET provided, but instead looked at it, found it was not in the simplified table format Finjan preferred and demanded ESET do the work to create a table. The Court is not going to require ESET to go that far. ESET is not required to provide more than the road map already provided. The explanation provided sufficiently answers Finjan's Interrogatory No. 7. And specifically, as to LiveGrid, Finjan has not explained why it is entitled to a road map of LiveGrid features when its components are not part of the Accused Instrumentalities.

## CONCLUSION

Finjan's Motion to Compel is **DENIED**.

Dated: June 13, 2018

Hon. Bernard G. Skomal
United States Magistrate Judge