UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN, INC.,<br><br>          Plaintiff,<br><br>v.<br><br>ESET, LLC and ESET SPOL. S.R.O.,<br><br>          Defendants. | Case No.: 17CV183 CAB (BGS)<br><br>**ORDER ON DISCOVERY DISPUTES**<br><br>[ECF 300, 328] |

This Order addresses numerous discovery disputes raised by the parties, argued at discovery conferences, and briefed via joint statements. (ECF 300, 328.) The Court rules as set forth below as to each dispute.

**DISCUSSION**

**I. Legal Standards[1]**

 **A. Scope of Discovery**

The Federal Rules of Civil Procedure provide that "parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and

---

[1] The Court sets out general standards as to the scope of permissible discovery and general authority regarding damages to avoid repetition in analyzing each of the disputes. Authority unique to an individual dispute is discussed in analyzing that dispute.

proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

District courts have broad discretion in determining what is relevant. *Facedouble, Inc. v. Face.com*, No. 12cv1584 DMS (MDD), 2014 WL 585868, at *1 (S.D. Cal. Feb. 13, 2014). And, the 2015 Amendments to Rule 26 made clear that "[r]elevancy alone is no longer sufficient—discovery must also be proportional to the needs of the case." *In re Bard IVC Filters Prods. Liability Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016). When a dispute implicates proportionality, the party claiming undue burden has an obligation to explain what is burdensome about complying with the request and the party claiming it is important enough to require a response must explain why it is important. Fed. R. Civ. P. 26 advisory committee's notes.[2] "The court's responsibility, using all the information provided by the parties, is to consider these, [undue burden or expense and importance of information sought,] and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." *Id.* Limits on discovery may be issued where the "burden or expense outweighs the likely benefits." *Id.* (citing Fed. R. Civ. P. 26(b)).

---

[2] In explaining the 2015 Amendments to Rule 26, the Advisory Committee explains it this way:
> [I]f the parties continue to disagree, the discovery dispute could be brought before the court and the parties' responsibilities would remain as they have been since 1983. A party claiming undue burden or expense ordinarily has far better information — perhaps the only information — with respect to that part of the determination. A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them.

2

17CV183 CAB (BGS)

**B.     Damages**[3]

"When a patent is infringed, the patentee is entitled to 'damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer.'" *Whitserve, LLC v Computer Packages, Inc.*, 694 F.3d 10, 26 (Fed. Cir. 2012) (quoting 35 U.S.C. § 284). "A reasonable royalty can be calculated from an established royalty, the infringer's profit projections for infringing sales, or a hypothetical negotiation between the patentee and infringer based on the factors in *Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D. N.Y.1970)."[4] *Wordtech Sys., Inc. v. Integrated Network Solutions, Inc.*, 609 F.3d 1308,

---

[3] Most of the discovery disputes addressed below concern ESET's discovery requests seeking information it argues is relevant to calculating damages. Although neither party set out any basic authority on the topic in its briefing on most of the damages disputes, (*see* ECF 300), the parties clearly dispute whether the sought discovery is relevant to calculating a reasonable royalty, including a calculation based on a hypothetical negotiation between the parties.

[4] The parties only address particular *Georgia-Pacific* factors in one dispute addressed below, however, they raise the hypothetical negotiation as to numerous dispute, and the factors are relevant to the hypothetical negation. The *Georgia-Pacific* factors are:
> (1) royalties the patentee has received for licensing the patent to others; (2) rates paid by the licensee for the use of comparable patents; (3) the nature and scope of the license (exclusive or nonexclusive, restricted or nonrestricted by territory or product type); (4) any established policies or marketing programs by the licensor to maintain its patent monopoly by not licensing others to use the invention or granting licenses under special conditions to maintain the monopoly; (5) the commercial relationship between the licensor and licensee, such as whether they are competitors; (6) the effect of selling the patented specialty in promoting sales of other products of the licensee; (7) the duration of the patent and license term; (8) the established profitability of the product made under the patent, including its commercial success and current popularity; (9) the utility and advantages of the patent property over old modes or devices; (10) the nature of the patented invention and the benefits to those who have used the invention; (11) the extent to which the infringer has used the invention and the value of that use; (12) the portion of profit or of the selling price that may be customary in that particular business to allow for use of the invention or

1319 (Fed. Cir. 2010) (citing *Lucent Techs. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009) and *Minks v. Polaris Indus.*, 546 F.3d 1364, 1372 (Fed. Cir.2 008)); *see also Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011) ("This court has sanctioned the use of the *Georgia-Pacific* factors to frame the reasonable royalty inquiry. Those factors properly tie the reasonable royalty calculation to the facts of the hypothetical negotiation at issue."). "The hypothetical negotiation 'attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began,' and 'necessarily involves an element of approximation and uncertainty.'" *Id.* (citing *Lucent Techs.*, 580 F.3d at 1324–25).

## II. Discovery Disputes Regarding Damages[5]

### A. ESET's Interrogatory No. 11 and Request for Production Nos. 157 and 160 – Licensing Information and Settlement Negotiations

ESET seeks to compel Finjan to provide a supplemental response to Interrogatory 11 with the number of infringing units covered by Finjan's lump sum licensing agreements to allow ESET's expert to calculate a running royalty.[6] Requests for

---

analogous inventions; (13) the portion of the realizable profit that should be credited to the invention as opposed to its non-patented elements; (14) the opinion testimony of qualified experts; and (15) the results of a hypothetical negotiation between the licensor and licensee.

*i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 853 n.3 (Fed. Cir. 2010).

[5] Sections A-G address the disputes raised in the parties' Joint Statement on disputes regarding ESET's First Set of Interrogatories and Fourth Set of Requests for Production regarding damages. (ECF 300.) Section H addresses a dispute raised as to Finjan's RFP 155 in a separate Joint Statement that also relates to damages. (ECF 328.)

[6] Interrogatory 11's request for "an explanation of the math underlying each of the [Finjan] licensing agreements" is broader than the number of infringing units covered by Finjan's lump sum licensing agreements. However, the Court understands ESET to be seeking to compel the number "of infringing units that are covered by any Finjan license agreement that is stated as a lump sum . . . instead of a running royalty," to calculate a running royalty. ESET's briefing on compelling a further response to Interrogatory 11 only addresses compelling Finjan to provide this information. To the extent ESET is

4

17CV183 CAB (BGS)

production 157 and 160 seek all documents relating to negotiations concerning licenses covering technology that is comparable to the technology covered by any of the asserted patents and all documents related to settlement negotiations in Finjan's prior litigations. This dispute concerns information and documents underlying the licensing agreements. Finjan has produced the actual licensing agreements.

ESET argues the answer to Interrogatory 11 and the documents requested are relevant to determining a reasonable royalty rate. As to RFPs 157 and 160 ESET indicates it is seeking documents reflecting the mathematical calculations needed to answer Interrogatory No 11, Finjan's settlement negotiations regarding prior licenses, and settlement negotiations in Finjan's prior litigations that resulted in a license. ESET argues that because Finjan's damages case against ESET will be predicated on Finjan's general licensing practices and these practices may be reflected in these underlying settlement negotiation documents, they are relevant and should be produced. Additionally, ESET argues it needs the underlying calculations and negotiation documents because Finjan has indicated in discovery responses that all of its previous licenses and settlement agreements are comparable licenses to the patents-in-suit. ESET relies on *In re MSTG, Inc.* to argue the documents requested are not privileged and are relevant to patent damages analysis. 675 F.3d 137 (Fed. Cir. 2012)

Finjan first emphasizes what it has already produced and expects to produce — license agreements, written correspondence to the extent any numbers where identified leading up to the execution of the settlement and license agreements, deposition testimony regarding royalty rates, and an exemplary damages expert report. Finjan then argues the request is overbroad, seeking all documents and discovery "concerning" or "related to" any licensing and settlement negations. Finjan also distinguishes *MSTG*, accurately noting that discovery of negotiation documents was only permitted because a

---

seeking something broader, the Court finds it has not shown it is entitled to more, particularly in light of Finjan having produced its licensing agreements.

specific need was shown, *i.e.* an expert relied on the documents in an expert report. Although Finjan does not specifically address ESET's argument that it needs the number of infringing units covered by the lump sum agreements for purposes of calculating a running royalty, it does argue generally that the requested discovery, beyond what has already been produced, or is to be produced is irrelevant, overbroad, and compound.

The Court finds *MSTG* instructive on a number of points. First, it reiterates "that settlement agreements can be pertinent to the issue of reasonable royalties." 675 F.3d 1337, 1348. Finjan has produced these after obtaining third party consent, however, Finjan is refusing to produce underlying settlement negotiation documents. *MSTG* also affirms a lower court's order for production of underlying negotiation documents in addition to the settlement agreements. *Id.* These conclusions, and the decision's prior discussion declining to create a settlement negotiation privilege, make clear that settlement negotiations may be discoverable. *Id.* at 1342-48. In this respect, ESET is not demanding something that is entirely off limits.

However, *MSTG* applicability is also limited. Factually, it is distinguishable from the present case in that the lower court decision that was affirmed only ordered production of the settlement negotiation documents because part of an expert's opinion relied on those underlying negotiation documents. *Id.* at 1348. The production was necessary because "[a]s a matter of fairness MSTG [could] not at one and the same time have its expert rely on information about the settlement negotiations and deny discovery as to those same negotiations." *Id.* That is not the case here. The Court also notes that in *MSTG*, the lower court had previously denied production of settlement negotiation documents when the parties were in essentially the same position Finjan and ESET are now as to RFPs 157 and 160. *Id.* That decision was not challenged. *Id.*

The *MSTG* court does not set out a particular standard to apply in considering whether underlying settlement negotiation documents, like those sought here, should be produced. *Id.* at 1347 ("Because the issue is not before us, we reserve for another day the

issue of what limits can appropriately be placed on discovery of settlement negotiations).[7] The court indicates that "typically settlement negotiations that are admissible under Federal Rule of Evidence 408 or disclosed to a party's expert would be discoverable," but the court also notes it has "not yet decided the extent to which evidence of settlement negotiations would be admissible under Rule 408" and even as to "such admissible or disclosed material, some protections may be appropriate." *Id.* at 1346-47. However, the court does emphasize the lower courts' discretion to control and limit discovery under Rule 26. The court also explains, seemingly with some approval, that some courts "have imposed heightened standards for discovery in order to protect confidential settlement discussions," that require: (1) a showing of a special need for the material; (2) a resulting unfairness from not getting the discovery; and (3) that the need for the sought discovery outweighs the confidentiality interest. *Id.* at 1347 (citing *In re Teligent, Inc.*, 640 F.3d 53, 57-58 (2d Cir. 2011)).

As to Interrogatory 11, "the underlying number of allegedly infringing units that are covered by any Finjan license agreement that is stated as a lump sum . . . instead of a running royalty" is relevant to damages because ESET needs it to calculate a running royalty from the lump sums and the burden of providing this information, assuming Finjan has it, is not great.

As to the portion of RFPs 157 and 160 that seeks underlying settlement documents reflecting the mathematical calculations needed to answer Interrogatory 11, as stated above, the Court finds ESET is entitled to these documents as well. Because it seems possible that settlement negotiations may be disclosed in producing documents reflecting the number of infringing units covered by the lump sum agreements, the Court applies the standard referenced in *MSTG*. ESET has shown a particular need for the documents that contain that information. ESET has explained that it would be unable to calculate a

---

[7] Neither party provides or sets out any standard they seek for the Court to apply in considering this issue.

running royalty for all the lump sum licensing agreements absent that information, leaving it without discovery it needs for damages calculations. As to whether the need for the sought discovery outweighs the confidentiality interest, the Court finds, based on the briefing and scope of the request, that it does, primarily because the confidentiality interest in those limited documents reflecting the number of infringing units would not be great.

Accordingly, Finjan shall provide a supplemental response to Interrogatory 11. It shall include the number of allegedly infringing units that are covered by any Finjan lump sum licensing agreement for the asserted patents. Finjan shall also supplement its response to RFPs 157 and 160, to the extent it has not done so, with documents reflecting the number of allegedly infringing units that are covered by any Finjan lump sum licensing agreement for the asserted patents. The supplemental response and production must be provided by **October 30, 2018**.

Beyond the scope set forth above as to RFPs 157 and 160, the RFPs are overbroad and ESET has not shown a specific need for the underlying settlement negotiation documents. First, these RFPs are overbroad, seeking all settlement negotiation documents in all of Finjan's prior litigations and any document relating to negotiations concerning licenses covering technology comparable to the technology covered by the asserted patents. As the *MSTG* court reiterated, courts have the discretion to control and limit discovery. Here, ESET is seeking the entire scope of underlying settlement negotiation documents without, sufficient justification. ESET has the actual licensing agreements and, as order above, it will be provided the calculations or documents explaining the calculations of the lump sum licensing agreements. The breadth requested is not warranted or proportional. Second, applying the standard referenced in *MSTG*, ESET has not met the first element. That Finjan's case may be based on its licensing practices does not open up all settlement negotiations documents to production. That is not a specific need. If Finjan were to rely on any of its underlying settlement negotiations in calculating damages, as was the case in *MSTG*, then that would not only

8

demonstrate a specific need, but also align with the *MSTG* court's conclusion that as a matter of fairness, reliance on those documents requires their production. The Court is not finding that Finjan's reliance on underlying settlement negotiations is the only way to show specific need, rather, the Court finds ESET has not shown any other specific need sufficient to justify accessing this broad scope of underlying settlement negotiations.

ESET's request to compel further responses to Interrogatory 11 and RFPs 157 and 160 is **GRANTED in part and DENIED in part** as set forth above.

### B. ESET's Request for Production Nos. 151 and 155 – Documents Related to Third Party Sales, Revenue, and Marketing

ESET's RFPs 151 and 155 seek documents in Finjan's possession related to third parties' sales, pricing, revenue, and marketing of products made by third parties that are licensed under one or more of the patents-in-suit. Finjan has responded to these RFPs only with information regarding its own Vital Security appliances.

ESET argues these documents are relevant to show what Finjan allows third parties to claim regarding products covered by the patents including whether patented features are mentioned. ESET also argues these documents may show whether Finjan's prior licenses are comparable to that which would be obtained through a hypothetical negotiations.

Finjan generally argues these requests are overbroad, vague, and unduly burdensome. Finjan claims the information sought is either subject to confidentiality provisions or public, making it as easily accessible to ESET as Finjan. Finjan also asserts that it is unclear what information ESET seeks, or why it is relevant without addressing any of ESET's arguments, noted above, regarding relevancy.

As to relevancy, the Court finds the requested documents are relevant to damages. ESET explains, sales and marketing documents sought may show what restrictions Finjan does or does not impose on its licensees in the sales and marketing of their licensed products. Additionally, these documents may show whether Finjan's prior licenses are comparable to that which would be obtained through a hypothetical negotiations. In

terms of burden, it appears the only burden is redaction of third party information to the extent it is confidential. Weighing the importance of the information sought and the burden of production, the Court finds a further response is required.

ESET's request to compel a further response is **GRANTED**. Finjan shall provide supplemental responses to RFPs 151 and 155 on or before **October 30, 2018**.

C. **ESET's Request for Production Nos. 166, 168, 169, and 172-177 – Finjan's Experts in Prior Litigation**

ESET's RFPs 166, 168, 169 and 172-177 seek trial testimony, deposition testimony, deposition exhibits, and expert reports from Finjan's prior litigations concerning one or more of the asserted patents for five Finjan experts. Finjan has produced trial transcripts for each, but not all their expert reports, deposition transcripts, or deposition exhibits. Finjan also indicates that it produced its own damages reports with third party confidential information redacted.

ESET argues these documents are relevant to show any "changing story and shifting positions" by Finjan in general and by specific experts that may testify against ESET in this case. ESET acknowledges that the accused products in those prior litigations are not exactly the same as here, but all the accused products in these prior litigations on the asserted patents concern anti-virus technology. Finjan states that the documents requested are wholly irrelevant, but does not specifically address ESET's argument that they are relevant to show a change in Finjan's position.

Finjan argues these interrogatories are unduly burdensome and not proportional to the needs of the case and also argues the production of trial testimony and damages reports are sufficient to provide a basis for each expert's opinion. Finjan explains that these productions would implicate an extensive amount of third party confidential information because they are about third party products. Finjan argues redacting them — "18 reports spanning thousands of pages and well over 4,000 pages of deposition testimony, not including exhibits — would take excessive hours to review and redact.

ESET responds that this amounts to complaining that redacting the requested documents would take too much work.

ESET has shown these documents are relevant to identify changes in positions taken by Finjan,[8] but, as noted above, relevancy alone is not enough. *In re Bard IVC Filters Prods. Liability Litig.*, 317 F.R.D. at 564. Finjan has identified a specific burden imposed, the redaction of third party confidential information from a large number of documents. In weighing the burden and the importance of the information, the Court finds Finjan must respond.

ESET's request to compel a further response to these interrogatories is **GRANTED** as set forth above. Finjan must provide a supplemental response to these RFPs on or before **October 30, 2018**.

D.  **ESET's Request for Production No. 163 – Third Party Defendants' Expert Reports on Damages**

ESET's RFP 163 seeks "[d]ocuments sufficient to show the defendants calculation of damages in Previous Finjan Litigations." Essentially, ESET wants Finjan to produce the damages expert reports prepared by defendants in Finjan's prior litigations, those defendants' trial exhibits, and documents those defendants relied on in calculating damages concerning one or more of the asserted patents.

ESET argues these documents, particularly the expert reports, are relevant because they demonstrate a prior damages analysis of the asserted patents, including analysis of relevant documents, Finjan's prior licenses, and may also disclose non-infringing alternatives considered in each of those cases. Finjan responds that the requested documents implicate irrelevant third party highly confidential information and

---

[8] A portion of a hearing transcript cited by Finjan for a different issue sums up the relevance well, "Finjan's damage reports you can get, *because their position matter. And it may be an admission. It may be any number of things*." (Martinez Decl., Ex. 11 at 11:5-7 (emphasis added).)

responding would be unduly burdensome. Specifically, Finjan argues they are not relevant because damages are unique to a specific defendant, *i.e.* the reasonable royalty negotiated between Finjan and that defendant, as opposed to ESET, at the time of the hypothetical negotiation. As Finjan explains, those reports are based on third party products not accused here and include patents not asserted against ESET. Finjan again also points to what it has already produced — Finjan's own damages expert reports and non-confidential trial transcripts and trial exhibits from the prior litigations.

Neither party cites the Court to any written decisions discussing this issue, but Finjan cites to a short order and underlying hearing transcript in another case where similar information was sought by a defendant from Finjan. (Martinez Decl., Exs. 10-11). That court found the request ridiculous.[9] This Court recognizes, despite possible motives not explicitly stated in the briefing,[10] that there might be some relevant information contained within those defendants' expert reports based simply on the fact that they are addressing damages for infringement of some of the same patents. That said, the Court finds the importance of the information sought is not great given they are analyzing damages for infringement of different products and, as Finjan rightly points out, the hypothetical negotiation is specific to the parties in this case. Additionally,

---

[9] Specifically, the court said "Oh, no. Okay. This is a ridiculous request. . . . Have you ever gotten a judge to go along with this?? . . .Okay. Well, you'll never get a judge to go along with this." (Martinez Decl., Ex. 11 at 9:20-10:4.) Earlier in the hearing the court explained "You're not entitled to probe the basis for the report. The report, standing alone, is not an issue in this case."

[10] Finjan did not rely on this portion of the transcript, but the court characterized the motive for the request as follows: "What you want, actually, if you were most honest about it, is you want more ways of attacking their number. And you'd look at the defense expert and say, Oh, I hadn't thought of that. I'll try that. And I'll put that in our expert report. That's actually what you want." It is not clear to this Court that there is anything necessarily wrong with that motive. As discussed above, it is more a matter of balancing the importance of the information sought, given it largely pertains to different products, and the burden of the production.

unlike Finjan's own expert reports, there is no need to review these for Finjan's potentially changing positions, because they are not Finjan's positions. Finally, as discussed above, producing these reports, that belong to third parties and contain confidential information, would require significant redaction or obtaining permission from the defendant third parties to produce them. Balancing the minimal importance of the documents sought and the burden of production, the Court finds no further response is required.

ESET's request to compel a further response to Interrogatory 163 is **DENIED**.

### E. ESET's Request for Production No. 191– Non-Licensing Revenue

ESET's RFP 191 seeks documents showing revenue generated by Finjan from non-licensing sources from 2000 to present and the sources of that revenue. Finjan only produced documents relating to Finjan's own products, but represented it will produce other financial information that demonstrates Finjan's overall revenues. Finjan also points to public SEC filings as a source of information concerning its revenues.

ESET argues that a comparison of licensing and non-licensing revenue are relevant to damages because it could show Finjan would have been largely dependent on licenses during the hypothetical negotiation. Additionally, ESET argues this information may show ESET and Finjan are not competitors which is also relevant to damages. As to what has or will be produced or is publically available, ESET also explains that the publically available documents filed with the SEC do not provide this information because they are consolidated statements from which the non-licensing revenue cannot be deduced and overall revenue information does not allow a comparison.

Finjan generally points to the overall revenue information it will provide and public SEC filing as being sufficient, generally argues the sought discovery is not relevant to the asserted patents, and inaccurately argues ESET has not explained why this information is not sufficient, what specific additional information it seeks, or why it is entitled to it. As noted above, ESET has explained the relevancy of this information to damages and why the consolidated public filings and overall revenue information will not

provide the needed comparison.  It is Finjan that has not addressed ESET's arguments these documents are relevant to the hypothetical negotiation and determining if Finjan and ESET are competitors.

ESET has established the relevancy of the discovery sought and there has been no showing of undue burden or expense or that any other factors the Court considers in evaluating proportionality weighs against compelling a response.

ESET's request to compel a further response to RFP 191 is **GRANTED**.  Finjan shall file a supplemental response to RFP 191 by **October 30, 2018**.

### F. ESET's Request for Production No. 197-198 – Number of Products in the U.S. Licensed to Use the Patents

RFPs 197 and 198 seek documents showing the total number of products in the United States currently licensed to use any of the asserted patents and the number of products licensed annually from 2000 to present.

ESET argues this may show what portion of the overall antivirus market is licensed by Finjan's asserted patents.  In its briefing, ESET explains that it only wants what Finjan has in its possession, custody, or control.  It is not asking Finjan to obtain information from third parties.  ESET also indicates it would accepts a list of the annual and cumulative number of products licensed under the asserted patents in lieu of a document production showing this information.

Finjan argues generally that the RFPs are vague, overbroad and not relevant, but makes no specific argument on those points and does not in any way address ESET's argument that it may show the overall portion of the anti-virus market licensed by Finjan's asserted patents.  Finjan's only specific arguments why it should not respond are that it does not have a "list" of licensed products by name and version number for the asserted patents and Finjan finds it unclear what ESET thinks would be responsive given Finjan does not maintain such a list.

The Court does not find these RFPs vague or unclear.  To the extent Finjan has documents that would show the number of products licensed under the asserted patents, it

shall produce them or provide a responsive list it creates in lieu of a production since ESET has agreed to that in the alternative.

ESET's request to compel further responses to RFPs 197-98 is **GRANTED**. Finjan shall file a supplemental response to RFP 191 by **October 30, 2018**.

### G. ESET's Request for Production Nos. 188-190 – Non-infringing Alternatives

RFPs 188-190 seek documents and communications showing or describing potential non-infringing alternatives to any of the asserted patents, including from any of Finjan's prior litigations.

ESET argues non-infringing alternatives to the asserted patents are relevant to damages because in calculating a reasonable royalty, a potential licensee cannot pay more for a license than it would take to implement a non-infringing alternative to it. Finjan does not dispute that non-infringing alternatives are relevant to the hypothetical negotiation.[11] However, Finjan argues third parties' assertions of non-infringing alternatives are irrelevant to this case because those third parties identify non-infringing alternatives as to those third parties' products and technologies, not ESET's. In this respect, that information is not relevant. Additionally, as a compromise, Finjan agreed to produce trial transcripts and Finjan's damages expert reports from its prior litigations which would address non-infringing alternatives to the extent there is no third party information implicated.

---

[11] The only case Finjan cites in its briefing on this topic relies on the same Federal Circuit decision ESET cites. *Visteon Glob. Techs., Inc. v. Garmin Int'l, Inc.*, 903 F. Supp. 2d 521, 528 (E.D. Mich. 2012) (citing *Zygo Corp. v. Wyko Corp.* 79 F.3d 1563, 1571-72 (Fed. Cir. 1996)). However, Finjan relies on *Visteon* to argue ESET has the burden of identifying non-infringing alternatives. Because Finjan does not argue the burden somehow limits discovery on this topic, the Court does not address that argument or rely on it.

15

17CV183 CAB (BGS)

The Court finds this dispute somewhat similar to ESET's request for third party expert reports, discussed above. There may be some relevancy to non-infringing alternatives identified by third parties, but their relevancy is significantly limited because they are non-infringing alternatives to those third parties' products and technologies, not ESET's. Taking into account what has already been produced or will be produced by Finjan, as proposed in compromise by Finjan, and the burden of either redacting these documents or obtaining third party consent, the Court finds the burden outweighs its likely benefit.

ESET's request to compel further responses to RFPs 188-190 is **DENIED**.

## H. Finjan's Request for Production No. 155 – Sale Projections

Finjan's RFP 155 seeks ESET's projected revenues for the accused instrumentalities on a per product basis for 2010 to the present.[12] There are numerous issues raised as to this RFP that the Court briefly addresses below issue-by-issue.

As an initial matter, ESET argues that it does not have to provide a further response to this RFP because it does not have what Finjan requests, projected revenues on a per product basis for 2010 to 2017. As ESET confirms in its briefing, it does not have, projected revenues on a per product basis for 2010 to 2017. Rather, ESET indicates that the only projections it has are on a per channel basis. However, given Finjan indicates that it wants any revenue projections ESET has as to the accused instrumentalities and the Court could potentially modify the RFP or order ESET to produce the projected revenues in the only form it has, per channel, as an alternative, the Court still analyzes this dispute further despite the accuracy of ESET's response that it does not have what is requested.

---

[12] The Court relies on the language of RFP 155 in ESET's brief because the actual RFP and response were not attached to the Joint Statement. ESET quoted the RFP in its briefing without any objection from Finjan that it was incorrect.

16

17CV183 CAB (BGS)

The Court finds as a general matter that some of the revenue projections sought may be relevant to the hypothetical negotiation, although, their importance may be limited because the projections are not on a per product basis. Finjan persuasively argues revenue projections are relevant to the calculation of a reasonable royalty based on a hypothetical negotiations, pointing to numerous *Georgia-Pacific* factors and citing numerous cases approving of reliance on projections in calculating a reasonable royalty. ESET does not argue revenue projections are never relevant or even that they could never be relevant in this case. Rather, ESET argues it should not be required to produce revenue projections when it has already produced the actual sales numbers.[13] This is, as ESET explains, more an issue of proportionality, *i.e.* producing more when what it has already produced might be sufficient. That argument is addressed next.

ESET, relying on the book of wisdom approach to the hypothetical negotiation, explains that courts may rely on actual sales instead of projections. The cases ESET relies on fairly stand for the proposition that courts are permitted to use actual sales figures to determine a reasonable royalty. However, as Finjan accurately points out in response, the cases ESET relies on do not indicate that actual sales figures must be used or even are preferred in place of projections. Contrary to ESET's assertion in its briefing, neither of the cases cited support its statement preceding them that "where actual sales numbers exist they should be used in place of projections, which can be unreliable." (Joint Statement at 15.) Finjan may ultimately have to rely on actual sales figures because, as ESET argues, the projections on a per channel basis simple may not work, but the Court is not going to completely cut off discovery of a relevant avenue to proving its damages based solely on the provision of actual sales figures.

---

[13] To the extent ESET is arguing the revenue projections could never be relevant to the calculation of a reasonable royalty, beyond its argument regarding the specific years sought (addressed separately), the Court would disagree.

The time frame sought is a problem. Finjan seeks projections from 2010 to present. Finjan argues this entire time frame is relevant because the dates of first infringement vary by patent and accused technology and range from 2009 to 2015, with one in 2005. Finjan attempts to justify this more than seven-year range, but its arguments on this point are vague. Finjan argues projections prior to infringement are relevant to show whether the accused instrumentalities were meeting projections at the time the infringing technology was incorporated. Finjan argues it needs projections beyond infringement for purposes of considering the value of the infringing technology, *i.e.* if the accused instrumentalities are outpacing projections after adding the infringing technology. However, the problem, aptly noted by ESET, is that the eve of infringement, the time when the hypothetical negotiation would have taken place, is not identified. The Court recognizes that projections prior to and beyond the eve of infringement may be relevant. The Court is not requiring Finjan to identify a specific moment or even a specific date for purposes of obtaining discovery. But here, Finjan is seeking projections as to a seven-year time frame without even tying those projections to a particular year. The request as propounded is overbroad, encompassing projections that are likely not relevant to the hypothetical negotiation.[14]

As noted above, the Court can modify RFPs or order more limited responses to them. For example, the Court could compel ESET to only produce projections for certain years. But, the information Finjan has provided is not itself specific enough for the Court to determine which years are relevant. Although the Court concludes that some revenue projections would be relevant and the provision of actual sales figures does not justify

---

[14] When the Court held a discovery conference on this dispute, the Court indicated the parties briefing on this dispute should connect the sought projections to the hypothetical negotiation, specifically in terms of the time frame, since the hypothetical negotiation was the basis for obtaining them.

denial of the projections, the request is overbroad and the Court is not in a position to narrow it. Finjan's request to compel a response to RFP 155 is **DENIED**.

## CONCLUSION

The supplemental responses order above shall be provided by **October 30, 2018**.

**IT IS SO ORDERED.**

Dated: October 23, 2018

Hon. Bernard G. Skomal
United States Magistrate Judge