UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ESET, LLC et al.,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No.: 17-CV-183-CAB-BGS<br><br>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTIONS TO EXCLUDE OR STRIKE**<br><br>[Doc. Nos. 466, 467, 469, 470, 474, 476, 478, 479, 481, 483, 484, 486, 488, 490, 492, 494, 497, 499, 501, 506, 509, 510, 513, 515, 524, 526, 530, 531] |

## I. Introduction

At the close of fact and expert discovery and in accordance with the scheduling order in this case, the parties filed motions for summary judgment, Daubert motions challenging each other's experts, and motions to exclude certain evidence. The Court provided no limitations regarding the number of dispositive motions that could be filed or total page limitations. The parties took extreme advantage of this and filed in total twenty-eight complex motions, putting before the Court an extraordinary number of issues purportedly without material facts in dispute and therefore proper for adjudication as a matter of law. Having reviewed the voluminous briefing, declarations and exhibits submitted by both

parties, the Court concludes that for the majority of the substantive motions, facts were most definitely in dispute and summary judgment was not appropriate. Similarly, for the majority of the challenges to the admissibility of expert testimony, the Court concludes that the challenges go to the weight to be afforded the opinions. They are best challenged by cross-examination rather than deemed inadmissible and excluded as an exercise of the Court's gatekeeper role.

A number of the motions to exclude certain evidence centered on accusations of untimely disclosures and resulting prejudice to the moving party. These accusations flew in both directions, and the pages of briefing allocated to these arguments of attorney misconduct were exhausting. Generally, the Court concludes that there was no undue prejudice and that all of the evidence in question can be presented to a jury.

Of the twenty-eight motions, the Court held a hearing on six motions on September 26, 2019. [Doc. No. 679, transcript of 9/26/19 hrg.] Those six motions are addressed below. As to the remaining twenty-two motions, the Court issued tentative rulings [Doc. No. 695] which remain unchanged.

## II. ESET's Motions

### A. Summary Judgment of Non-Infringement, License or Unenforceability

The Court finds numerous material facts in dispute as to the following motions and they are therefore **DENIED**.

- Doc. No. 470 Motion for Non-Infringement of CMPS
- Doc. No. 476 Motion for Non-Infringement of '621/'755 Patents
- Doc. No. 481 Motion for Non-Infringement of '844 Patent
- Doc. No. 484 Motion for Non-Infringement of '086 Patent
- Doc. No. 488 Motion for Non-Infringement of '780 Patent
- Doc. No. 486 Motion for License Defense
- Doc. No. 531 Motion for Unenforceability of '086, '621 and '755 Patents

**B. Motions to Exclude Experts and Strike Contentions**

The Court declines to exclude the experts contested in the motions listed below because their opinions are best challenged by cross-examination rather than exclusion. The motions are therefore **DENIED**. ESET's request to strike Finjan's Third Amended Infringement Contentions is also **DENIED**.

- Doc. No. 474 Exclusion of Bims
- Doc. No. 479 Exclusion of Mitzenmacher, Medvidovic, Goodrich and Cole
- Doc. No. 469 Exclusion of Orso[1]
- Doc. No. 492 Motion to Strike Third Amended Contentions

### III. FINJAN's Motions

#### A. Summary Judgment of Infringement or of ESET's Defenses

The Court finds numerous material facts in dispute as to the following motions and they are therefore DENIED.

- Doc. No. 497 Motion for Infringement of '086 Patent
- Doc. No. 499 Motion for Infringement of '621 Patent
- Doc. No. 501 Motion for Infringement of '780 Patent
- Doc. No. 506 Motion for No License Defense
- Doc. No. 509 Motion for No Inequitable Conduct
- Doc. No. 513 Motion for Validity over Certain Prior Art References

#### B. Motions to Exclude Experts and Strike Evidence

The Court declines to exclude the experts contested in the motions listed below because their opinions are best challenged by cross-examination rather than exclusion. The

---

[1] ESET moved to exclude the testimony of Dr. Alexxandro Orso regarding his opinions as to secondary considerations of non-obviousness. The Court **RESERVES** on this motion. ESET may voir dire this witness out of the presence of the jury to determine if his opinions are supported by the requisite nexus between the inventions and his conclusions regarding the secondary considerations of non-obviousness.

3

motions are therefore **DENIED**. Finjan's motions to exclude certain prior art and non-infringing alternatives are also **DENIED**.

- Doc. No. 510 Exclusion of Thompson
- Doc. No. 515 Exclusion of Spafford
- Doc No. 524 Exclusion of Britven
- Doc. No. 530 Motion to Exclude Certain Prior Art
- Doc. No. 526 Motion to Exclude Non-Infringing Alternatives.

### IV. The Remaining Motions

#### A. Priority Dates [Doc. No. 483]

As stated on the record at the hearing, this motion is **DENIED** as to ESET's proposed priority dates for the '780, '086, '621 and '755 patents. There are material facts in dispute regarding whether the earlier patents to which Finjan claims priority disclose the inventions claimed in these patents.

The Court, however, was prepared to adopt the IPR decision that the inventors of the '844 patent were not in possession of the subject matter of the challenged claims of that patent any time prior to the December 22, 1997 filing date of the 08/995,648 application. [Doc. No. 483-20, at 21-25; Doc. No. 697, at 51.] The parties represented that there had been further developments in the Patent Office regarding that determination. The matter therefore remains under submission pending updates from the parties.

#### B. ESET Motion re: Indefiniteness of "Downloadable" [Doc. No. 478]

The genesis of this motion goes back to the claim construction of the term "Downloadable." The Court references the claim construction order [Doc. No. 195], the portion of the claim construction hearing regarding this term [Doc. No. 610-3], and the portion of the hearing on this motion [Doc. No. 697 at 3:13-22:19] for context. In summary, the term "Downloadable" is defined by the inventor somewhat differently in the lineage of the patents at issue. In U.S. Patent No. 6,167,520, filed January 29, 1997, it is defined as, "a small executable or interpretable application program which is downloaded from a source computer." In U.S. Patent No. 6,092,194, filed November 6, 1997 and

incorporating the '520 patent, it is defined as "an executable application program which is downloaded from a source computer." Both specifications use the sample examples of executable and interpretable application programs to identify what constitutes a "Downloadable." Because both definitions are incorporated by reference throughout the patents, and the Court found they could be reconciled, the Court adopted the definition set for in U.S. Patent 6,167,520, that patent being incorporated into all the subsequent patents in the family tree.

The definition of "Downloadable" in the '520 patent includes "small" as a description of the executable programs that are defined as a "Downloadable." At the time of claim construction the Court noted that this term of size might lead to an indefiniteness issue if persons of skill in the art on January 29, 1997, the date the '520 patent was filed, did not understand what would constitute "small" with respect to "executable programs from a source computer that run on the destination computer." That question, however, was left for another day.[2]

That day has come and ESET now contends that "Downloadable" is an indefinite term and as it is a claim limitation in all asserted claims of the five asserted patents, each is invalid under 35 U.S.C. § 112, which requires "that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.,* 572 U.S. 898, 910 (2014). While there need not be precise numerical certainty, there must be no more than a "modicum of uncertainty." *Id.*

ESET has the burden of proving indefiniteness by clear and convincing evidence. *Biosig Instruments, Inc. v. Nautilus, Inc.,* 783 F.3d 1374, 1377 (Fed. Cir. 2015). ESET presented evidence in its motion that Finjan's experts had difficulty setting forth a

---

[2] Finjan's objection that the defense of indefiniteness is untimely and should be struck is denied. This issue was identified at claim construction and Finjan was on notice that ESET would likely pursue it.

consistent understanding of how a person of skill in the art in 1997 would interpret a "small executable program." Finjan countered that the kinds of programs identified as examples in the patent disclosure would provide adequate notice to a person of skill what was encompassed by the term "small." Based on conflicting record before the Court, the Court cannot find at this time that ESET has demonstrated by clear and convincing evidence that the definition of "Downloadable" is indefinite. The motion for summary judgment is therefore **DENIED** without prejudice to ESET demonstrating this invalidity defense at trial.

### C. Exclusion of Dr. Ricardo Valerdi Testimony [Doc. No. 490]

ESET moves to exclude the testimony of Dr. Ricardo Valerdi. Federal Rule of Evidence 702 creates "a gatekeeping role for the judge" to "ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 597 (1993). Dr. Valerdi offers an opinion employing a computer model to ascertain the cost he estimates that ESET incurred to develop and maintain the accused software incorporated into the accused products. Finjan however acknowledges that it has "verified ESET's costs by analyzing (i) financial statements produced by ESET to estimate the maintenance and ongoing development costs ESET actually incurred related to the infringing systems; and (ii) the testimony of ESET's head of finance, Ms. Jana Michalakova, regarding ESET's actual development and costs related to the accused technologies for the relevant time period." [Doc. No. 602 at 20.] Rather than rely on estimates derived from actual financial data, Finjan employed Dr. Valerdi to model the costs to develop and maintain the accused systems.

This model is offered as evidence to support a cost savings analysis. Dr. Valerdi's modeling however estimates the cost of developing the existing ESET software, not alternative non-infringing software. It therefore has no relevance to a cost savings analysis. "Reliance upon estimated cost savings from use of the infringing product is a well settled method of determining a reasonable royalty." *Hanson v. Alpine Valley Ski Area, Inc.,* 718 F.2d 1075, 1080-81 (Fed. Cir. 1983). The comparison, however, should be to the costs of

6

17-CV-183-CAB-BGS

developing a non-infringing alternative. *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1376 (Fed. Cir. 2017) (costs saved by renting an infringing structure versus building a non-infringing structure). Dr. Valerdi's modeling exercise is based not on creating a non-infringing alternative system, but on recreating the accused system.

The Court finds no value in substituting the estimated actual costs of developing and maintaining ESET's alleging infringing system with Dr. Valerdi's model. Such modeling may be of assistance when actual costs cannot be determined, but that is not the situation here. Because the actual costs can be determined, Dr. Valerdi's hypothetical construction of ESET's costs is facially unreasonable. Such proposed testimony on the creation of unverifiable estimates from disputed inputs to come to a facially unreasonable hypothetical number as to the costs of developing and maintaining the accused technologies will be confusing and misleading to the jury, prejudicial to the defendant, and a waste of time. The motion to exclude the testimony of Dr. Valerdi is **GRANTED** pursuant to Federal Rule of Evidence 403.

### D. Exclusion of Dr. Eric Cole Testimony [Doc. No. 494]

ESET moves to exclude the testimony of Dr. Eric Cole. Dr. Cole provides opinions on the infringement of the '844 patent, the cost to ESET of implementing a non-infringing alternative to all the patents-at-issue, inputs for Dr. Valerdi's cost estimation model, and willfulness.

The motion to exclude as to Dr. Cole's opinion regarding infringement of the '844 patent is **DENIED**. ESET challenges many of the assumptions and conclusions of Dr. Cole's infringement opinion, but the Court concludes that is best left to cross-examination.

Regarding Dr. Cole's other opinions, however, the motion is **GRANTED**. The Court has excluded Dr. Valerdi's testimony, therefore the Court strikes as irrelevant and confusing, under Rule 403, any testimony by Dr. Cole regarding the number of lines of code that make up the infringing functionality of the patents-at-issue. This testimony is also excluded in that Dr. Cole was not identified as an expert on the infringement of any

patents except the '844 patent. Consequently, his opinions of what source code executes the infringing functionality of the patents not within his purview are excluded.

Dr. Cole's opinion on the costs of ESET providing its services through a "non-infringing alternative," (i.e., manually processing the files) is also excluded. Finjan acknowledged at the hearing on this motion that this proposed alternative is not viable. [Doc. No. 697, at 81:17-82:12.] Introducing the prohibitive cost and time of performing such processing manually, when it is recognized by all Finjan's experts as a non-viable alternative, would only serve to mislead and confuse the jury and introduce a prejudicial damages figure into the discussion. It is excluded under Rule 403.[3]

Similarly, Dr. Cole's opinion regarding willfulness is excluded. Dr. Cole offers an opinion regarding what Finjan calls the standard of care in the industry. Based on Dr. Cole's personal experience at McAfee, he would opine to the jury that a reasonable company would have reviewed Finjan's "patented technology" upon learning of Finjan and its enforcement of its patent portfolio. Finjan concedes Dr. Cole does not opine on what ESET did – only what he believes similarly situated reasonable companies would have or should have done. [Doc. No. 589, at 16.]

This opinion suggests that there is duty to investigate a competitor's portfolio rather than a duty to determine if a known patent is infringed. Dr. Cole's opinion is not whether ESET's actions when it learned of specific Finjan patents was reasonable. He instead offers an opinion that a prudent company would be actively monitoring a competitor's patent holdings and failure to do so is below a standard of care. This opinion is likely to mislead and confuse the jury in reaching a determination of whether ESET took due care to

---

[3] Finjan cited *Prism Tech*, 849 F.3d at 1375, for its holding that it was not error to admit cost savings evidence based on evidence of the cost Sprint would incur to avoid infringement by building a private network instead of leasing the services from third-party providers. *Prism*, however, discusses the costs and availability of this non-infringing alternative and evidence that Sprint could have attempted to build its own network. *Id.* at 1376-77. In this case, Finjan's experts all agreed that the proposed manual processing system would not be a viable alternative, so introducing the purported exorbitant cost of implementing such a system is a distraction and misleading.

8

determine if it was infringing *after* it learned of the patents at issue. The opinion is excluded under Rule 403 as well.

### E. Exclusion of Kevin Arst's Testimony [Doc. No. 467]

ESET moves to exclude the testimony of Kevin Arst, who is Finjan's designated expert on a reasonable royalty. Despite the fact that Finjan has a history of licensing the patents at issue in this case, Mr. Arst apparently elected to ignore established royalty rates, or comparable licenses as benchmarks for his analysis.

The reasonable royalty may be based upon an established royalty, if there is one, or if not upon a hypothetical royalty resulting from arm's length negotiations between a willing licensor and a willing licensee. "Where an established royalty rate for the patented inventions is shown to exist, the rate will usually be adopted as the best measure of reasonable and entire compensation." *Hanson,* 718 F.2d at 1078.

Mr. Arst's opinion is based instead on a cost savings analysis – the amount ESET would reasonably pay in lieu of the cost it would incur to manually process files.[4] [Doc. No. 599, at 16 (Mr. Arst's cost-savings opinions are based on Dr. Cole's assessment that ESET would need to incur the full manual processing costs absent its infringement of the patents-in-suit.).] Although cost savings is a "well settled method of determining a reasonable royalty," *Hanson,* 718 F.2d at 1080-81, the Court **GRANTS** the motion to exclude Mr. Arst's cost savings opinion because the opinion is based on the unreliable assumption that manual processing is a viable alternative, when, as discussed *supra* with respect to Dr. Cole's opinion, it is not.

Finjan may revise Mr. Arst's damages opinion, removing reliance on the opinions of Dr. Valerdi and Dr. Cole. He may not however introduce new materials. ESET will be

---

[4] Mr. Arst's opinion also relies upon Dr. Valerdi's analysis of the cost of developing and maintaining ESET's existing system, as support for the cost "to build a new system." Dr. Valerdi did not however estimate the cost of building a non-infringing alternative system and therefore provides no factual assumption to support Mr. Arst's royalty analysis. The motion to strike Mr. Arst's opinion relying on Dr. Valerdi's modeling estimates is GRANTED.

given an opportunity to provide a responsive opinion and depose Mr. Arst on any revised opinion. [See Doc. No. 697, at 90:8-16.]

### F. Summary Judgment of No Willful Infringement and No Pre-Suit Damages [Doc. No. 466]

ESET moves for summary judgment on Finjan's allegation of willful infringement and to exclude any claim for damages prior to the filing of the complaint. Knowledge of the patent alleged to be willfully infringed is a prerequisite to enhanced damages. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932-22 (2016). But knowledge of the patent itself is not enough. Finjan is required to show that ESET "acted despite a risk of infringement that was 'either known or so obvious that it should have been known'" to ESET. *WesternGeco LLC v. ION Geophysical Corp*. 837 F.3d 1358, 1362 (Fed. Cir. 2016).

Willful infringement is measured by the totality of the circumstances. Finjan claims that Eset should have known of Finjan's patents, but Finjan presents no evidence that ESET was actually aware of any asserted Finjan patent prior to the receipt of a January 22, 2015 letter from Finjan. [Doc. No. 466-4.] In that letter Finjan identifies two of the patents in suit, the '844 and '086 as relevant to ESET products or services, identifying specific products that correspond to those identified patents. Although no claim charts were provided in January 2015, at that time ESET was on notice of those two patents. No reference was made to, and therefore no notice was given as to the '780 patent. The '621 patent and the '755 patent did not even issue until November 17, 2015, and December 22, 2015, respectively, so it was an impossibility for the January 22, 2015 letter to constitute notice of infringement of those later issued patents.

Following the January 22, 2015 letter, the parties entered into a Standstill Agreement to investigate whether there was infringement and to discuss potential licensing. [Doc. No. 466-6.] That Agreement was continued until June 30, 2016. On July 1, 2016 this lawsuit was filed. During the term of the Standstill Agreement the parties agreed to disclose confidential information to assist in the discussion but that the disclosure of such information could not be used to establish a claim for damages or willful infringement.

Finjan asserts that based on publicly available information, ESET knew throughout the pendency of Standstill Agreement that it was infringing the Finjan patents at issue and that it was negotiating in bad faith. The Court **DENIES** the motion for summary judgment of willful infringement but cautions Finjan that it must produce evidence at trial that ESET had knowledge of each of the asserted patents and committed subjective willful infringement as of the dates it became aware of those patents. The evidence of ESET's knowledge cannot be based on disclosures made by Finjan during the Standstill Agreement, but rather must be independent of those discussions.

With regard to notice, Finjan has presented no evidence it provided actual notice of infringement to ESET prior to January 22, 2015 for the '844 patent and '086 patent. Further Finjan has presented no evidence that it provided actual notice of infringement of the '780 patent, the '621 patent and the '755 patent outside of disclosures subject to the Standstill Agreement provisions. The Court therefore finds that the damage period starts on January 22, 2015 for the '844 patent and the '086 patent, and on the filing date of the complaint (July 1, 2016) for the '780 patent, the '621 patent, and the '755 patent.

It is **SO ORDERED**.

Dated: October 16, 2019

Hon. Cathy Ann Bencivengo
United States District Judge