PAUL ANDRE (SBN 196585)
pandre@kramerlevin.com
LISA KOBIALKA (SBN 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (SBN 237978)
jhannah@kramerlevin.com
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 752-1700
Facsimile:   (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

NICOLA A. PISANO, CA Bar No. 151282
   NicolaPisano@eversheds-sutherland.com
JOSE L. PATINO, CA Bar No. 149568
   JosePatino@eversheds-sutherland.com
JUSTIN E. GRAY, CA Bar No. 282452
   JustinGray@eversheds-sutherland.com
SCOTT A. PENNER, CA Bar No. 253716
   ScottPenner@eversheds-sutherland.com
**EVERSHEDS SUTHERLAND (US) LLP**
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA  92130
TELEPHONE:      858.252.6502
FACSIMILE:       858.252.6503

Attorneys for Defendants and Counter-Plaintiffs
ESET, LLC and ESET, SPOL. S.R.O.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### SAN DIEGO DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>ESET, LLC, a California Limited Liability Corporation, and ESET SPOL. S.R.O., a Slovak Republic Corporation,<br><br>Defendants. | Case No. 3:17-cv-00183-CAB-BGS<br><br>**FINAL JURY INSTRUCTIONS** |
| ESET, LLC, a California Limited Liability Corporation, and ESET SPOL. S.R.O., a Slovak Republic Corporation,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>FINJAN, INC., a Delaware Corporation,<br><br>Counterclaim-Defendant. | |

# FINAL JURY INSTRUCTION NO. 1

## DUTY OF JURY

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

**Authorities:** Ninth Circuit Manual of Model Civil Jury Instructions (January 2017, updated December 2019) at 1.4.

_____Given

_____Modified

_____Denied

# FINAL JURY INSTRUCTION NO. 2
## SUMMARY OF CONTENTIONS

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.  Finjan has alleged patent infringement by ESET, LLC and ESET spol. s.r.o.  As I go through these instructions with you, I will refer to ESET, LLC and ESET spol. s.r.o. together as "ESET."  [***ESET Proposed Language***:  But you should remember that these are two different defendants, as will be reflected on the verdict form.]

As I previously told you, Finjan seeks money damages from ESET for allegedly infringing the '844, '780, '086, '621, and '755 Patents by making, importing, using, selling, and offering for sale systems and methods that Finjan argues are covered by Claims 1, 7, 11, 15, and 16 of the '844 Patent; Claims 9 and 13 of the '780 Patent; Claims 24, and 42 of the '086 Patent; Claims 1, 6-7, and 10 of the '621 Patent; and Claims 3 and 5–6 of the '755 Patent.  Collectively, the patents will be referred to as the "Asserted Patents" and the claims will be referred to as the "Asserted Claims." Finjan also argues that ESET actively induced infringement of Claims 1, 7, and 11 of the '844 Patent by others.  [***Finjan Proposed Language***:  The systems and methods that are alleged to infringe are: (1) ESET's Cloud which includes Cloud Malware Protection System, LiveGrid Reputation and Feedback Systems, and the ThreatSense Engine; (2) ESET Gateway/Server Products which includes Mail Security Systems, File Security Systems, and Gateway Security Systems; and (3) ESET Endpoint Products which includes NOD32 Antivirus, Smart Security, Endpoint Security, Endpoint Antivirus, Cyber Security, Internet Security, Multi-Device Security Pack, and Small Office/Small Business Security Pack. These are the "Accused Products."] [***ESET Proposed Language***:  The products and methods that are alleged to infringe are: LiveGrid Reputation System, LiveGrid Feedback System, Cloud Malware Protection System

("CMPS"), ESET Endpoint Security programs, ESET Endpoint Antivirus programs, ESET Cyber Security programs, ESET Internet Security programs, ESET Mail Security programs, ESET File Security programs, ESET Gateway Security programs, and ESET Virtual Environment Security programs.]

ESET denies that it infringed the Asserted Claims of the Asserted Patents and argues that, in addition, the Asserted Claims are invalid.

Your job is to decide whether [**Finjan Proposed Language**:  ESET] [***ESET Proposed Language***:  each of the ESET Defendants] infringed the Asserted Claims, whether any of the Asserted Claims are invalid, and whether certain defenses raised by ESET have been established.  If you decide that any of the Asserted Claims was

FINAL JURY INSTRUCTIONS              CASE NO.: 3:17-cv-00183-CAB-BGS

infringed and is not invalid, and not subject to a defense, you will then need to decide

any money damages to be awarded to Finjan to compensate it for the infringement.[12]

---

[1] **Finjan's Arguments**: ESET should not be permitted to introduce a jury instruction that ESET spol. s.r.o. and ESET LLC are separate entities for the purposes of infringement and damages because ESET LLC is an agent of ESET spol. s.r.o. ESET spol. s.r.o. and ESET LLC have presented themselves as one entity.  For example, ESET brought a single representative, CEO Richard Marko, to the settlement conference and represented that Mr. Marko had the authority to enter into a binding settlement agreement for both ESET entities.  *See* Dkt. No. 757, Civ. Local Rule. 16.3.  Further, ESET represents itself as one entity on ESET's website. *See* https://www.eset.com/us/legal-information/.  Additionally, ESET's own witnesses testified regarding the level of control ESET spol. s.r.o. has over ESET LLC. *See* Kovac Tr. at 34:15-35:4 (describing how ESET spol. s.r.o. wholly-owns ESET LLC and controls its sales offices, financials, and products.); Michalakova Tr. at 28:3-22 (stating ESET spol. s.r.o has access to ESET LLC's financials); *Streck, Inc. v. Research & Diagnostic Systems, Inc.*, 2010 WL 3926059, *9 & *11 (D. Neb. 2010) (ruling that parent holding company was jointly liable for infringement with its subsidiary who actually built and sold the infringing product because the two corporations were "essentially one and the same entity"—"If there is a 'substantial and continuing relationship' shared between two companies, the corporate distinction between the two organizations can be disregarded.); *In re Hydroxycut Mktg. & Sales Practices Litig.*, 810 F. Supp. 2d 1100, 1119 (S.D. Cal. 2011) (In determining whether a subsidiary acts as an agent of the parent, courts typically look to see whether the parent's control of the subsidiary is so pervasive that the subsidiary can fairly be deemed a means through which the parent acts or an incorporated division of the parent. The control must go beyond the general executive control that a parent normally exercises over a subsidiary; the control must be on the level of day-to-day operational control.). To the extent they are treated as separate entities, then Jury Instruction No. 13 which Finjan has proposed is necessary to explain the tight relationship and control that ESET spol s.r.o. has over ESET LLC and its operations.

[2] **ESET Argument**: ESET believes it is important for the jury to recognize that there are two different ESET defendants and they cannot simply be lumped together for purposes of infringement.  ESET therefore proposes language in this instruction to make that point clear.  Additionally, for the reasons explained in the parties' summary judgment briefing, Finjan's proposed categories of ESET's accused products make no sense, and that is why ESET has proposed its own language to identify the accused products accurately.

FINAL JURY INSTRUCTIONS                    CASE NO.: 3:17-cv-00183-CAB-BGS

**Authorities:** Federal Circuit Bar Association Model Patent Jury Instructions (July 2016) at B.1.

\_\_\_\_Given

\_\_\_\_Modified

\_\_\_\_Denied

# FINAL JURY INSTRUCTION NO. 3
## THE ROLE OF THE CLAIMS OF A PATENT

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers, as I have construed them for you. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

**Authorities:** Federal Circuit Bar Association Model Patent Jury Instructions (July 2016) at B.2.1.

\_\_\_\_Given

\_\_\_\_Modified

\_\_\_\_Denied

# FINAL JURY INSTRUCTION NO. 4
## HOW A CLAIM DEFINES WHAT IT COVERS

[*ESET Proposed Language*:

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device or a method satisfies each of these requirements, then it is covered by the claim.

There can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed claim-by-claim. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose. It is my job to explain to you the meaning of the words in the claims and the requirements these words impose.

As I just instructed you, there are certain specific terms that I have defined and you are to apply the definitions that I provide to you.

By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a product or process must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim. Once you understand what each claim covers, then you are prepared to

7

decide the issues that you will be asked to decide, such as infringement and invalidity.][3][4]

**Authorities:** Federal Circuit Bar Association Model Patent Jury Instructions (July 2016) at B.2.2.

____Given

____Modified

____Denied

---

[3] **Finjan's Arguments**: ESET's proposed instruction should be rejected because it is duplicative with the agreed upon instruction "THE ROLE OF THE CLAIMS OF A PATENT." Specifically, both instructions describe the role of a claim in the patent and that the Court provides the construction of construed terms.

[4] **ESET Argument**: ESET's proposed instruction comes directly out of the FCBA Model Patent Jury Instructions and ESET believes there is nothing improper about this instruction.

FINAL JURY INSTRUCTIONS                    CASE NO.: 3:17-cv-00183-CAB-BGS

# FINAL JURY INSTRUCTION NO. 5
## INDEPENDENT AND DEPENDENT CLAIMS

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim.  Thus, it is not necessary to look at any other claim to determine what an independent claim covers.  In this case, Claims 1 and 15 of the '844 Patent, Claim 9 of the '780 Patent, Claims 24, and 42 of the '086 Patent, Claims 1 and 10 of the '621 Patent, and Claim 3 of the '755 Patent are each independent claims.

The remaining Asserted Claims, Claims 7, 11, and 16 of the '844 Patent, Claim 13 of the '780 Patent, Claims 6 and 7 in the '621 Patent, and Claims 5 and 6 in the '755 Patent are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements.  In this way, the claim "depends" on another claim.  A dependent claim incorporates all of the requirements of the claim(s) to which it refers.  The dependent claim then adds its own additional requirements.  To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers.  A system or method that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

**Authorities:** Federal Circuit Bar Association Model Patent Jury Instructions (July 2016) at B.2.2a.

_____Given

_____Modified

_____Denied

# FINAL JURY INSTRUCTION NO. 6
## CLAIM INTERPRETATION

I will now explain to you the meaning of some of the words of the claims in this case.  In doing so, I will explain some of the requirements of the claims.  As I have previously instructed you, you must accept my definition of these words in the claims as correct.  For any words in the claim for which I have not provided you with a definition, you should apply their common meaning.  You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity.  These issues are yours to decide.

When deciding the issues you are being asked to decide, you must apply my definitions of the following claim terms:

A "**Downloadable**" as used in all five patents is "**a small executable or interpretable application program which is downloaded from a source computer and run on a destination computer**."

The phrase "**before the web server makes the Downloadable available to web clients**" appearing in the '844 patent means "**before the Downloadable is available on a web server to be called up or forwarded to a web client**."

The phrase "**software components required to be executed by the Downloadable**" appearing in the '780 patent means "**components of code that the Downloadable is required to execute**."

The phrase "**performing a hashing function on the Downloadable and the fetched software components to generate a Downloadable ID**" appearing in the '780 patent means "**performing a hashing function on the Downloadable together with its fetched software components**."

[***ESET Proposed Language***:  An "**appended Downloadable**" as used in the '086 patent is "**a Downloadable with a representation of the DSP data attached to the end of the Downloadable**."]

A "**destination computer**" as used in the '086 patent is a "**separate computer receiving the appended Downloadable**."

A "**database**" as used in the Asserted Patents means "**a collection of interrelated data organized according to a database schema to serve one or more applications**."

The phrase "**intercepting an operating system call being issued by the downloadable to an operating system**" appearing in the '755 patent means "**stopping a request message before the request message is received by the operating system**."[5] [6]

**Authorities:** Federal Circuit Bar Association Model Patent Jury Instructions (July 2016) at B.2.3; Claim Construction Order, Doc. No. 195.

\_\_\_\_Given

\_\_\_\_Modified

\_\_\_\_Denied

---

[5] **Finjan's Arguments**: ESET's modification to this instruction should be rejected because Finjan has informed ESET that it will not pursue the Asserted Claims that use construed terms "appended downloadable" in this trial.  Therefore, any instruction of these claim terms at trial is unnecessary and will confuse the jury.

[6] **ESET Argument**: Finjan recently informed ESET that Finjan does not intend to pursue claims 1 and 9 of the '086 patent at trial, and claims 1 and 9 are the only two claims that contain the "appended Downloadable" claim language that this Court previously construed.  However, ESET intends to invalidate these claims at trial pursuant to its counterclaims of invalidity.  Additionally, while this Court construed the "database" claim term with respect to the '621 patent, there are other claims in the Asserted Patents that also use the term "database" and ESET believes that it would be helpful to the jury for this Court to provide the claim construction of this term.

FINAL JURY INSTRUCTIONS                    CASE NO.: 3:17-cv-00183-CAB-BGS

# FINAL JURY INSTRUCTION NO. 7
## INFRINGEMENT GENERALLY

I will now instruct you how to decide whether or not [***Finjan Proposed Language***: ESET] [***ESET Proposed Language***:  each of the ESET Defendants] infringed the Asserted Claims of the Asserted Patents.  Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another.

In this case, there are two possible ways that a claim may be infringed.  The two types of infringement are called direct infringement and active inducement.  Active inducement is referred to as indirect infringement.  [***ESET Proposed Language***:  There cannot be indirect infringement without someone else engaging in direct infringement. To prove indirect infringement by an ESET Defendant, Finjan must also prove that ESET Defendant's indirect infringement caused direct infringement.]

Finjan has alleged that [***Finjan Proposed Language***:  ESET] [***ESET Proposed Language***:  each ESET Defendant] directly infringed the Asserted Claims of the Asserted Patents.  In addition, Finjan alleges that a third-party directly infringed Claims 1, 7, and 11 of the '844 Patent and [***Finjan Proposed Language***:  ESET] [***ESET Proposed Language***:  each ESET Defendant] is liable for having actively induced that direct infringement by that third-party.

[***ESET Proposed Language***:  In order to prove infringement, Finjan must prove that the requirements for one or more of these types of infringement are met by a preponderance of the evidence, i.e., that it is more likely than not that all of the requirements of one or more of each of these types of infringement have been proved.

12

I will now explain each of these types of infringement in more detail.][7] [8]

**Authorities:** Federal Circuit Bar Association Model Patent Jury Instructions (July 2016) at B.3.1.

\_\_\_\_Given

\_\_\_\_Modified

\_\_\_\_Denied

---

[7] **Finjan's Arguments**: ESET's proposed instruction is redundant to the parties' subsequent instruction "Indirect infringement – active inducement." There is no reason to include the requirements of indirect infringement, particularly where it is spelled out later. Further, for clarity and consistency in the instructions, the burden of proof for infringement should be a separate instruction, just as the instruction for invalidity determinations. Lastly, as argued in "SUMMARY OF CONTENTIONS," ESET should not be permitted to introduce jury instructions describing ESET spol. s.r.o. and ESET LLC are separate entities for the purposes of infringement and damages.

[8] **ESET Argument**: ESET has included language in this instruction to make clear to the jury that there are two different ESET defendants that cannot be lumped together for purposes for infringement. ESET's other proposed language comes verbatim from the FCBA model instruction and there is no reason why it would be improper to read such language to the jury.

FINAL JURY INSTRUCTIONS                    CASE NO.: 3:17-cv-00183-CAB-BGS

# FINAL JURY INSTRUCTION NO. 8

## INFRINGEMENT – BURDEN OF PROOF

[*Finjan Proposed Language*:

I will now instruct you on the rules you must follow in deciding whether Finjan has proven that ESET has infringed one or more of the Asserted Claims of the Asserted Patents.  To prove infringement of any claim, Finjan must persuade you that it is more likely than not that ESET has infringed that claim. I will now explain each of these types of infringement in more detail.][9] [10]

**Authorities:** Northern District of California Model Patent Jury Instructions (August 2017, updated October 2019) at B.3.1.

\_\_\_\_Given

\_\_\_\_Modified

\_\_\_\_Denied

---

[9] **Finjan's Arguments**: As set forth in Finjan's Argument for Instruction No. 7, the burden of proof for infringement should be a separate instruction for clarity and consistency.

[10] **ESET Argument**: Finjan's proposed instruction is not necessary as the FCBA model instruction entitled "Infringement Generally" already contains similar language.  There is no reason for Finjan to depart from the FCBA model instruction here for its preferred alternative instruction.

# FINAL JURY INSTRUCTION NO. 9
## DIRECT INFRINGEMENT BY "LITERAL INFRINGEMENT"

There are two types of "direct infringement": (1) "literal infringement" and (2) "infringement under the doctrine of equivalents."  In order to prove direct infringement by literal infringement, Finjan must prove by a preponderance of the evidence, i.e., that it is more likely than not, that [***Finjan Proposed Language***:  ESET] [***ESET Proposed Language***:  each ESET Defendant] made, used, sold, offered for sale within, or imported into the United States a system or method that met all of the limitations of an Asserted Claim and did so without the permission of Finjan during the time the Asserted Patent in which the Asserted Claim appears was in force.  You must compare the Accused Products with each [***ESET Proposed Language***:  and every one] of the requirements of a claim to determine whether all of the requirements of that claim are met by an Accused Product.

You must determine, separately for each Asserted Claim, whether or not there is infringement.  There is one exception to this rule.  If you find that a claim on which other claims depend is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim.  On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the Accused Product meets additional requirements of any claims that depend from the independent claim, thus, whether those claims have also been infringed.  A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirements of its own.

[***Finjan Proposed Language***:  If the patent claim uses the term "comprising," that patent claim is to be understood as an open claim.  An open claim is infringed as long as every requirement in the claim is present in ESET's systems.  The fact that ESET's

systems and methods also include other parts or steps will not avoid infringement, as long as it has every requirement in the patent claim.][11] [12]

**Authorities:** Federal Circuit Bar Association Model Patent Jury Instructions (July 2016) at B.3.1a.

____Given

____Modified

____Denied

---

[11] **Finjan's Argument**: The law regarding the claim language "comprising" is an appropriate jury instruction because many of Asserted Claims include "comprising" in the preamble and jury needs to understand how to interpret the preamble of the claims. Finjan's addition is taken directly from the Northern District of California Model Patent Jury Instructions.

[12] **ESET Argument**: ESET has included language in this instruction to make clear to the jury that there are two different ESET defendants that cannot be lumped together for purposes for infringement.  ESET's proposed "and every one" language comes verbatim from the FCBA model instruction and there is no reason why it would be improper to read such language to the jury.  Finjan's proposed language is confusing and disregards the reverse doctrine of equivalents.

# FINAL JURY INSTRUCTION NO. 10
## DIRECT INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

If a company makes, uses, sells, offers to sell within, or imports into the United States a system or method that does not meet all of the requirements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that system or method satisfies that claim "under the doctrine of equivalents."

Under the doctrine of equivalents, a system or method infringes a claim if the accused system or method contains one or more elements or performs steps corresponding to each and every requirement of the claim that is equivalent to, even though not literally met by, the accused system or method.  You may find that an element or step is equivalent to a requirement of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the structure or action: (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the requirement of the claim.  In order for the structure or action to be considered interchangeable, the structure or action must have been known at the time of the alleged infringement to a person having ordinary skill in the field of technology of the patent. Interchangeability at the present time is not sufficient.  [***Finjan Proposed Language***: Changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for the purposes of the doctrine of equivalents if it still meets the other requirements of the doctrine of equivalents set forth in this instruction.]  In order to prove infringement by "equivalents," Finjan must prove the equivalency of the structure or actions to a claim element by a preponderance of the

17

evidence.  If there is no corresponding equivalent for a limitation of a claim, there can be no infringement of that claim under the doctrine of equivalents.[13][14]

**Authorities:** Federal Circuit Bar Association Model Patent Jury Instructions (July 2016) at B.3.1c.

\_\_\_\_Given

\_\_\_\_Modified

\_\_\_\_Denied

---

[13] **Finjan's Arguments**: Finjan's addition to this jury instruction should be included in this instruction because it provides a complete statement of the law for doctrine of equivalents and addresses issues that Finjan reasonably anticipates will be an issue at trial.  Finjan's addition is taken directly from the Northern District of California Model Patent Jury Instructions on Doctrine of Equivalents and will provide clarity on the law to the jury.

[14] **ESET Argument**: Finjan's additional proposed language is not found in the FCBA model instruction and is confusing.

FINAL JURY INSTRUCTIONS                    CASE NO.: 3:17-cv-00183-CAB-BGS

**FINAL JURY INSTRUCTION NO. 11**

**INDIRECT INFRINGEMENT—ACTIVE INDUCEMENT**

[*Finjan Proposed Language*:

Finjan argues that ESET actively induced another to infringe the '844 Patent.  In order for the ESET to have induced infringement, must have induced another to directly infringe Claims 1, 7, and 11 of the '844 patent; if there is no direct infringement by anyone, there can be no induced infringement.  As with direct infringement, you must determine induced infringement on a claim-by-claim basis.

In order to be liable for inducing infringement, ESET must:

(1) have intentionally taken action that actually induced direct infringement;

(2) have been aware of the '844 Patent; and

(3) have known that the acts it was causing would infringe the patent.

ESET may be considered to have known that the acts it was causing would infringe the '844 Patent if it subjectively believed there was a high probability that the direct infringer's system or method was patented and nevertheless deliberately took steps to avoid learning that fact, in other words, willfully blinded itself to the infringing nature of the direct infringer's acts.]

**Authorities:** Northern District of California Model Patent Jury Instructions (August 2017, updated October 2019) at B.7.

____Given

____Modified

____Denied

19

[***ESET Proposed Language***:

Finjan alleges that each ESET Defendant is liable for infringement by actively inducing someone else to directly infringe Claims 1, 7, and 11 of the '844 Patent literally or under the doctrine of equivalents. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

An ESET Defendant is liable for active inducement of a claim only if Finjan proves by a preponderance of the evidence:

(1) that the acts were actually carried out by a third-party and directly infringed that claim;

(2) that the ESET Defendant took action during the time the '844 Patent was in force intending to cause the infringing acts by the third-party; and

(3) that the ESET Defendant was aware of the '844 Patent and knew that the acts, if taken, would constitute infringement of that patent, or that the ESET Defendant believed there was a high probability that the acts by the third-party would infringe a patent by Finjan and the ESET Defendant took deliberate steps to avoid learning of that infringement.

If you find that an ESET Defendant was aware of the '844 Patent, but believed that the acts it encouraged did not infringe that patent, that ESET Defendant cannot be liable for inducement.

In order to establish active inducement of infringement, it is not sufficient that the third-party itself directly infringed the claim. Nor is it sufficient that an ESET Defendant was aware of the act(s) by the third-party that allegedly constituted the direct infringement. Rather, in order to find active inducement of infringement, you must find either that an ESET Defendant specifically intended the third-party to infringe the '844 Patent or that the ESET Defendant believed there was a high probability that the third-party would infringe the '844 Patent, but deliberately avoided learning the infringing nature of the third-party's acts. The mere fact, if true, that an ESET Defendant knew or

FINAL JURY INSTRUCTIONS                    CASE NO.: 3:17-cv-00183-CAB-BGS

should have known that there was a substantial risk that the third-party's acts would infringe the '844 Patent would not be sufficient for active inducement of infringement.][15] [16]

**Authorities:** Federal Circuit Bar Association Model Patent Jury Instructions (July 2016) at B.3.2.

____Given

____Modified

____Denied

---

[15] **Finjan's Arguments**: Finjan's proposed instruction on Active Inducement, which is taken directly from the Northern District of California Model Patent Jury Instructions, is a complete and accurate statement of law. ESET's proposed instruction is prejudicial to Finjan because it devotes a majority of the instruction on circumstances where active inducement will not be found, instead of providing a neutral recitation of the law.  For that reason, ESET's proposed instruction should be rejected.

[16] **ESET Argument**:  ESET's proposed instruction comes directly from the FCBA model instructions that are used, and have been agreed to by the parties, throughout this document.  There is no reason for Finjan to depart from the FCBA model instruction here for its preferred alternative instruction.

21

# FINAL JURY INSTRUCTION NO. 11A
## DIRECT INFRINGEMENT: ONE OR MORE SYSTEM COMPONENTS LOCATED OUTSIDE THE UNITED STATES

Direct infringement requires that the accused system include every element recited in the claim.

Finjan claims that infringement occurred within the United States even though some (but not all) of the elements of the claim were located outside of the United States. For infringement to occur within the United States, Finjan must prove by a preponderance of the evidence that the control of the system was exercised and the benefit of the system was enjoyed in the United States.

**Authorities:** Federal Circuit Bar Association Model Patent Jury Instructions (July 2016) at B.3.6.

____Given

____Modified

____Denied

# FINAL JURY INSTRUCTION NO. 12

## DIRECT INFRINGEMENT: ACTS OF MULTIPLE PARTIES MUST BE COMBINED TO MEET ALL CLAIM LIMITATIONS

[*Finjan Proposed Language*:

In this case, ESET is accused of direct infringement.  ESET asserts that it has not directly infringed the '844, '780, '086, '621, or '755 Patents because it did not perform each step of a claimed method or did not perform all the steps necessary to make, sell, offer for sale, or import the accused, because another party performed one or more of the acts necessary to infringe.  If you find that ESET personally performed all acts necessary to infringe, or that the steps performed by the other party are attributable to ESET, then ESET directly infringed.  You may find that the steps are attributable to ESET if you find that either (a) ESET exercised direction or control over the other party when the other party performed these acts or (b) ESET and customers formed a joint enterprise. A joint enterprise requires proof of four elements:

(1) an agreement, express or implied, among the members of the group;

(2) a common purpose to be carried out by the group;

(3) a community of pecuniary interest in that purpose, among the members; and

(4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control.

If you do not find that either (a) ESET exercised direction or control over the other party when it performed these acts or (b) ESET and the other party formed a joint enterprise, then you must find that ESET did not directly infringe.]

**Authorities:** AIPLA Model Patent Jury Instructions.  *Limelight Networks, Inc. v. Akamai Techs., Inc.*, U.S., 134 S. Ct. 2111 (2014); *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015) (en banc); *Eli Lilly and Co. v. Teva Parenteral Meds.*, 845 F.3d 1357, 1364-65 (Fed. Cir. 2017); *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008).

\_\_\_\_Given

\_\_\_\_Modified

\_\_\_\_Denied


[*ESET Proposed Language*:

Direct infringement occurs where all steps of a claimed method are performed by or are attributable to a single party.  Where more than one party is involved in practicing the steps, you must determine whether the acts of one are attributable to the other such that a single party is responsible for the infringement.  There are two situations where there may be direct infringement if no single party performs all of the steps of a claimed process but more than one party performs every step of the process: (1) the parties have formed a joint enterprise or (2) one party directs or controls other party's performance of the claim steps.

Finjan alleges that ESET, LLC and ESET spol. s.r.o. collectively infringed the Asserted Claims.

For infringement to be proved, Finjan must prove by a preponderance of the evidence (1) that all the steps of the claimed process were performed in the United States and (2) that the acts of ESET, LLC are attributable to ESET spol. s.r.o., either because ESET spol. s.r.o. and ESET, LLC have formed a joint enterprise or because ESET spol. s.r.o. directs or controls the acts of ESET, LLC.

To prove that ESET spol. s.r.o. and ESET, LLC have formed a joint enterprise, Finjan must prove four elements:

FINAL JURY INSTRUCTIONS                     CASE NO.: 3:17-cv-00183-CAB-BGS

(1) there was an agreement, either express or implied, between ESET spol. s.r.o. and ESET, LLC;

(2) they shared a common purpose;

(3) each had a financial interest in that purpose; and

(4) each had an equal right of control in the enterprise.

To prove that ESET spol. s.r.o. directed or controlled the acts of ESET, LLC, Finjan must prove that ESET, LLC performed the claim step(s) in order to receive a benefit from ESET spol. s.r.o. and that ESET spol. s.r.o. established how or when the claim step(s) were performed.][17][18]

**Authorities:** Federal Circuit Bar Association Model Patent Jury Instructions (July 2016) at B.3.7.

____Given

____Modified

____Denied

---

[17] **Finjan's Arguments**: ESET's proposed instruction should be rejected because it excludes joint infringement between ESET and third parties to the case.  Finjan alleges that ESET and third parties to this case jointly infringe the Asserted Patents, so the exclusion of third parties is improper and highly prejudicial.  Finjan's proposed instruction is taken directly from the AIPLA Model Patent Jury Instructions and accurately reflects the issues in this case.

[18] **ESET Argument**: ESET's proposed instruction comes directly from the FCBA model instructions that are used, and have been agreed to by the parties, throughout this document.  There is no reason for Finjan to depart from the FCBA model instruction here for its preferred alternative instruction.

FINAL JURY INSTRUCTIONS                    CASE NO.: 3:17-cv-00183-CAB-BGS

# FINAL JURY INSTRUCTION NO. 13

## AGENCY

[*Finjan Proposed Language*:

Finjan alleges that ESET LLC is an agent of ESET spol. s.r.o, which means that ESET spol. s.r.o. is liable for any infringement committed by ESET LLC.  In determining whether a subsidiary acts as an agent of the parent, courts look to see whether the parent's control of the subsidiary is so pervasive that the subsidiary can fairly be deemed a means through which the parent acts or an incorporated division of the parent.  The control must go beyond the general executive control that a parent normally exercises over a subsidiary; the control must be on the level of day-to-day operational control.][19][20]

**Authorities:** *Streck, Inc. v. Research & Diagnostic Systems, Inc.*, 2010 WL 3926059, *9 & *11 (D. Neb. 2010).

____Given

____Modified

____Denied

---

[19] **Finjan's Arguments**: Finjan's proposed instruction on agency should be adopted because Finjan alleges that ESET spol. s.r.o. is responsible for the direct infringement of ESET LLC under an agency theory.  Accordingly, the jury should be instructed on agency law.

[20] **ESET Argument**: Finjan never alleged in its Complaint that ESET, LLC is simply an agent of ESET spol. s.r.o. (*see generally* D.I. 1) and would be improper to permit Finjan to make this argument in front of the jury.

# FINAL JURY INSTRUCTION NO. 14
## JOINT LIABILITY

[*Finjan Proposed Language*:

Finjan alleges that ESET LLC and ESET spol. s.r.o. are jointly liable for patent infringement. For a parent and subsidiary company to be jointly liable for patent infringement, there must be a substantial and continuing relationship shared between the two companies such that the corporate distinction between the two companies can be disregarded.  The following factors are relevant in determining whether the two corporations are "truly separate:" (a) the level of parental financing and control over the subsidiary, (2) the authority of the parent company (or lack thereof) over the day-to-day activities of the subsidiary, (3) overlapping directors and officers between the two companies, and (4) payment of taxes and filing of consolidated returns.][21] [22]

**Authorities:** *In re Hydroxycut Mktg. & Sales Practices Litig.*, 810 F. Supp. 2d 1100, 1119 (S.D. Cal. 2011).

____Given

____Modified

____Denied

---

[21] **Finjan's Arguments**: Finjan's proposed instruction on joint liability should be adopted because Finjan alleges that ESET spol. s.r.o. and ESET LLC are jointly responsible for patent infringement.  Accordingly, the jury should be instructed on joint liability.

[22] **ESET Argument**: Finjan never alleged in its Complaint that ESET, LLC and ESET spol. s.r.o. are jointly liable for patent infringement (*see generally* D.I. 1) and would be improper to permit Finjan to make this argument in front of the jury.

# FINAL JURY INSTRUCTION NO. 15
## INVALIDITY – BURDEN OF PROOF

I will now instruct you on the rules you must follow in deciding whether or not ESET has proven that any of the Asserted Claims are invalid.  To prove that any claim of a patent is invalid, ESET must persuade you by clear and convincing evidence, i.e., ESET must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions are true.  This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

**Authorities:** Federal Circuit Bar Association Model Patent Jury Instructions (July 2016) at B.4.1; Judge Bencivengo's Preliminary Jury Instructions for this case.

____Given

____Modified

____Denied

# FINAL JURY INSTRUCTION NO. 16
## PRIOR ART

Prior art may include items that were publicly known or that were used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention.  To be prior art, the item or reference must have been made, known, used, published, or patented either before the invention was made, which is known as the "invention date," or more than one year before the filing date of the patent application.  However, prior art does not include a publication that describes the inventor's own work and was published less than one year before the date of invention.

Anticipation:

For the claim to be invalid because it is not new, ESET must show by clear and convincing evidence that all of the requirements of that claim were present in a single previous device or method that was known of, used, or described in a single previous printed publication or patent.  We call these things "anticipating prior art."  To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed, either stated expressly or implied to a person having ordinary skill in the art in the technology of the invention, so that looking at that one reference, that person could make and use the claimed invention.

Disputed invention date:

In this case, you must determine the date of invention for the claimed inventions.

The date of invention that you determine is related to the issue of whether the art described in the evidence was published or patented before the invention was made.

The date of invention is either when the invention was reduced to practice or when conceived, provided the inventor(s) were diligent in reducing the invention to practice.  Diligence means working continuously, though not necessarily every day.

Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work.  Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or experimentation.  This requirement does not mean that the inventor has to have a prototype built, or actually explained her or his invention to another person.  But, there must be some evidence beyond the inventor's own testimony that confirms the date on which the inventor had the complete idea.  Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial.

A claimed invention is "reduced to practice" when it has been constructed/used/tested sufficiently to show that it will work for its intended purpose or when the inventor files a patent application.  An invention may also be reduced to practice even if the inventor has not made or tested a prototype of the invention if it has been fully described in a filed patent application.

The date of invention is presumed to be the filing date of the patent.  A patent applicant may claim benefit to an earlier filed patent application to be given an earlier date of invention provided the disclosure of the earlier filed application provides a written description adequate to support the asserted claims of the patent, and the full scope of the claims is enabled by the earlier filed application, as set forth in my earlier instructions.

Finjan contends that the date of invention for the Asserted Claims of the '844, '780, '086, '621, and '755 Patents is November 8, 1996.  ESET contends that the date of invention for the Asserted Claims are: (1) '844 and '780 Patents is no earlier than

FINAL JURY INSTRUCTIONS                    CASE NO.: 3:17-cv-00183-CAB-BGS

December 22, 1997, (2) '086 Patent is no earlier than May 26, 2009, (3) '621 Patent is no earlier than January 29, 1997, and (4) '755 Patent is February 11, 2015.

**Authorities:** Federal Circuit Bar Association Model Patent Jury Instructions (July 2016) at B.4.3a-1.

_____Given

_____Modified

_____Denied

31

# FINAL JURY INSTRUCTION NO. 17
## ANTICIPATION

[*Finjan Proposed Language*:

A patent claim is invalid if the claimed invention is not new.  For the claim to be invalid because it is not new, all of its requirements must have existed in a single device or method that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention.  In patent law, these previous devices, methods, publications or patents are called "prior art references."  If a patent claim is not new we say it is "anticipated" by a prior art reference.

The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field of computer science looking at that one reference would be able to make and use the claimed invention.

In determining whether a single item of prior art anticipates a patent claim, you may consider not only what is expressly disclosed in that item of prior art but also what is inherently present or disclosed in it or inherently results from its use.  Prior art inherently anticipates a patent claim if the missing requirement or feature would necessarily be present in the prior art.

Here is a list of the ways that ESET can show that a patent claim was not new:

– if the claimed invention was already publicly known or publicly used by others in the United States before the priority dates of the Asserted Patents;

– if the claimed invention was already patented or described in a printed publication anywhere in the world before the priority dates of the Asserted Patents.  A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find;

– if the claimed invention was already described in another issued U.S. patent or published U.S. patent application that was based on a patent application filed before the priority dates of the Asserted Patents.]

**Authorities:** Northern District of California Model Patent Jury Instructions (August 2017, updated October 2019) at B.4.3a1 (which states that "[t]his Section 4.3a1 is inapplicable to any post-AIA claims, i.e., to any claimed invention having an effective filing date on or after March 16, 2013).

____Given

____Modified

____Denied

[*ESET Proposed Language*:

In order for someone to be entitled to a patent, the invention must actually be "new" and the inventor must not have lost her or his rights by delaying the filing of an application claiming the invention.  In general, inventions are new when the identical product or process has not been made, used, or disclosed before.  Anticipation must be determined on a claim-by-claim basis.

ESET contends that the Asserted Claims are invalid because the claimed inventions are anticipated or because Finjan lost the right to obtain a patent.  ESET must convince you of this by clear and convincing evidence, i.e., that the evidence highly probably demonstrates that the claims are invalid.

Here is a list of ways that ESET can show that a patent claim was not new or that the patentee lost the right to patent the claims:

(1) An invention is not new if it was known to or used by others in the United States before the date of invention, which you will be asked to decide for each patent.

FINAL JURY INSTRUCTIONS                    CASE NO.: 3:17-cv-00183-CAB-BGS

An invention is known when the information about it was reasonably accessible to the public on that date.

(2) An invention is not new if it was already patented or described in a printed publication, anywhere in the world, before the date of invention. A description is a "printed publication" only if it was publicly accessible.

(3) Finjan lost its rights if the claimed invention was already patented or described in a printed publication, anywhere in the world by Finjan or anyone else, more than a year before the effective filing date of the application for the patent in which the invention of the Asserted Claim appears. An invention was patented by another if the other patent describes the same invention claimed by Finjan to a person having ordinary skill in the technology.

(4) Finjan lost its rights if the claimed invention was publicly used, sold, or offered for sale in the United States more than one year before the earliest filing date claimed for the application for the patent in which the invention of the Asserted Claim appears. An invention was publicly used when it was either accessible to the public or commercially exploited. If the invention was sold commercially, the details need not have been publicly accessible. An invention was sold or offered for sale when it was offered commercially, even at no cost, and what was sold or offered embodied the invention.

(5) Finjan lost its rights if the invention was abandoned.

(6) An invention is not new if it was described in a published patent application filed by another in the United States or under the PCT system and designated the United States, and was published in English before the date of invention.

(7) An invention is not new if the claimed invention was described in a patent granted on an application for patent by another filed in the United States or under the PCT system and designated the United States, and was published in English and the

34

application was filed before the filing date of the application for the patent in which the invention of the Asserted Claim appears.

(8) An invention is not new if the invention was made by someone else in the United States before the invention was made by Finjan and the other person did not abandon, suppress, or conceal the invention.][23] [24]

**Authorities:** Federal Circuit Bar Association Model Patent Jury Instructions (July 2016) at B.4.3b-1.

____Given

____Modified

____Denied

---

[23] **Finjan's Arguments:** Finjan's proposed instruction is taken directly from the Northern District of California Model Patent Jury Instructions on the law of anticipation for patents with an effective filing date before March 16, 2013. ESET's instruction uses one-sided and inflammatory language such as repeatedly reiterating that Finjan allegedly "lost its rights," which appears to suggest to the jury that Finjan committed some wrongful act. Finjan's instruction fairly and accurately lists the ways that ESET can seek to demonstrate anticipation without this one-sided recitation. Finally, Finjan's instruction omits optional portions of the instruction in accordance with the Northern District's practice that pertain to anticipation theories that are not at issue in this case to avoid confusion to the jury.

[24] **ESET Argument**: ESET's proposed instruction comes directly from the FCBA model instructions that are used, and have been agreed to by the parties, throughout this document. There is no reason for Finjan to depart from the FCBA model instruction here for its preferred alternative instruction.

FINAL JURY INSTRUCTIONS                    CASE NO.: 3:17-cv-00183-CAB-BGS

## FINAL JURY INSTRUCTION NO. 18
## PRIOR PUBLIC USE

ESET contends that certain products are prior art to the inventions recited in the Asserted Claims, because those products were publicly used in the United States more than one year before [***Finjan Proposed Language***:  November 8, 1996] [***ESET Proposed Language***:  Finjan's earliest effective filing date].  If an embodiment of the claimed invention was both (1) accessible to the public or commercially exploited in the United States and (2) ready for patenting more than one year before the effective filing date of the patent, it will be prior art to the claimed invention.

An invention was publicly used in the United States if an embodiment of the claimed invention was both: (1) accessible to the public or commercially exploited in the United States, and (2) ready for patenting.

An invention is publicly used if it is used by the inventor or by a person who is not under any limitation, restriction, or obligation of secrecy to the inventor.  Factors relevant to determining whether a claimed invention was in public use include: the nature of the activity that occurred in public; public access to the use; confidentiality obligations imposed upon observers; commercial exploitation; and the circumstances surrounding any testing and experimentation.  The absence of affirmative steps to conceal the use of the invention is evidence of a public use.  However, secret use by a third party is not public, unless members of the public or employees of the third party have access to the invention.  [***ESET Proposed Language***:  The details of an invention that was commercially exploited need not be accessible to the public for the prior art to constitute a public use.]

To be a public use, the invention also must have been ready for patenting at the time of the alleged public use.  The invention is ready for patenting when there is reason to believe it would work for its intended purpose.  An invention is ready for patenting either when it is reduced to practice or when the inventor has prepared drawings or other

FINAL JURY INSTRUCTIONS                    CASE NO.: 3:17-cv-00183-CAB-BGS

descriptions of the invention sufficient to allow a person of ordinary skill in the art to make or use the invention.  An invention is reduced to practice when it has been (1) constructed or performed within the scope of the patent claims, and (2) determined that it works for its intended purpose.

ESET must show by clear and convincing evidence that the alleged products using the claimed invention were publicly used, *i.e.,* sold or offered for sale in the United States where there were no confidentiality restrictions, and that claimed invention was ready for patenting, before [***Finjan Proposed Language***:  November 8, 1996] [***ESET Proposed Language***:  Finjan's earliest effective filing date].   A manual is not [***ESET Proposed Language***:  itself] evidence of the public accessibility of a product.  Oral testimony by an interested party on its own will generally not suffice as clear and convincing evidence. Rather, such oral testimony must be corroborated by some other evidence, including documents and testimonial evidence of disinterested parties.[25] [26]

**Authorities:** Model Patent Jury Instructions for the Northern District of California, B.4.3(a)(2) Claims-Statutory Bars (adapted); American Intellectual Property Law Association Model Patent Jury Instructions, No. 6.2 (2015) (adapted); *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1370 (Fed. Cir. 1999); *Juicy Whip, Inc. v. Orange Bang, Inc.,* 292 F.3d 728, 742-43 (Fed. Cir. 2002);*Woodland Trust v. Flowertree Nursery,* 148 F.3d 1368, 1369, 1371-73 (Fed. Cir. 1998);*Eli Lilly & Co. v. Zenith Goldline Pharm., Inc.*, 471 F.3d 1369, 1381 (Fed. Cir. 2006); *Janssen Pharmaceutica,*

---

[25] **Finjan's Arguments**: ESET's proposed modification to this instruction should be rejected because it diverges from the American Intellectual Property Law Association Model Patent Jury Instructions on prior public use.  Further, ESET's proposed modification is unnecessary and will only serve to confuse the jury.

[26] **ESET Argument**: Finjan's proposed "November 8, 1996" date in this instruction has not be determined by this Court, and that is why ESET has proposed that the language "Finjan's earliest effective filing date" be used instead.  Additionally, ESET has proposed language to make clear to the jury that the public need not be able to access the details of a commercially-exploited invention for it to qualify as a prior public use.

*N.V. v. Eon Labs Mfg., Inc.*, 134 F. App'x 425, 430-31 (Fed. Cir. 2005); *Hilgraeve, Inc. v. Symantec Corp.*, 271 F. Supp. 2d 964, 975 (E.D. Mich. 2003).

_____Given

_____Modified

_____Denied

FINAL JURY INSTRUCTIONS                    CASE NO.: 3:17-cv-00183-CAB-BGS

**FINAL JURY INSTRUCTION NO. 19**

**OBVIOUSNESS**

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

ESET may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made in the field of computer science.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of computer science that someone would have had at the time the invention was made, the scope and content of the prior art, and any differences between the prior art and the claimed invention [***Finjan Proposed Language***: , whether a person of ordinary skill in the field of computer science would be motivated to combine the prior art, and objective evidence of non-obviousness].

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that at the time of the claimed invention there was a reason that would have prompted a person having ordinary skill in the field of computer science to combine the known elements in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4)

39

whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and (6) whether the change resulted more from design incentives or other market forces.  To find it rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success. [*Finjan Proposed Language*:  Obvious to try is not sufficient in unpredictable technologies.]

In determining whether the claimed invention was obvious, consider each claim separately.  Do not use hindsight, i.e., consider only what was known at the time of the invention, as well as what would have been understood by a person of skill in the art. [*ESET Proposed Language*:  However, persons of skill in the art are not automatons, but exercise an ordinary creativity.]

In making these assessments, you should take into account any objective evidence of non-obviousness that may shed light on the obviousness or not of the claimed invention, such as:

a. Whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

b. Whether the invention satisfied a long-felt need;

c. Whether others had tried and failed to make the invention;

d. Whether others invented the invention at roughly the same time;

e. Whether others copied the invention;

f. Whether there were changes or related technologies or market needs contemporaneous with the invention;

g. Whether the invention achieved unexpected results;

h. Whether others in the field praised the invention;

40

i. Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

j. Whether others sought or obtained rights to the patent from the patent holder; and

k. Whether the inventor proceeded contrary to accepted wisdom in the field.[27] [28]

**Authorities:** Federal Circuit Bar Association Model Patent Jury Instructions (July 2016) at B.4.3c.

_____Given

_____Modified

_____Denied

---

[27] **Finjan's Arguments**: ESET's proposed modification to this instruction should be rejected because it diverges from the Federal Circuit Bar Association Model Patent Jury Instructions on obviousness. Further, ESET's proposed modification is unnecessary and will only serve to confuse the jury.  For example, a jury is not going to understand that term "automaton."

[28] **ESET Argument**: ESET's additional proposed language that a person of ordinary skill in the art is not an automaton is supported by *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007).  Finjan's additional proposed language is confusing and unnecessary.

41

# FINAL JURY INSTRUCTION NO. 20
## LEVEL OF ORDINARY SKILL

In deciding what the level of ordinary skill in the field of computer science is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; and (5) the sophistication of the technology.

Finjan contends that the level of ordinary skill in the field was a person with a bachelor's degree in computer science or related field, and either (1) two or more years of industry experience and/or (2) an advanced degree in computer science or related field.  ESET contends that the level of ordinary skill in the field was a person having at least a bachelor-level degree in computer science (or equivalent) and two to three years of experience in the design and development of computer security/anti-virus software.

**Authorities:** Federal Circuit Bar Association Model Patent Jury Instructions (July 2016) at B.4.3c(i).

____Given

____Modified

____Denied

42

# FINAL JURY INSTRUCTION NO. 21
## SCOPE AND CONTENT OF THE PRIOR ART

In considering whether the claimed invention was obvious, you must determine the scope and content of the prior art.

The scope and content of prior art for deciding whether the invention was obvious includes at least prior art in the same field as the claimed invention. It also includes prior art from different fields that a person of ordinary skill in the art would have considered when trying to solve the problem that is addressed by the invention.

Where the party challenging the validity of the patent is relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it was different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity.

**Authorities:** Federal Circuit Bar Association Model Patent Jury Instruction (July 2016) at B.4.3c(ii)

_____Given

_____Modified

_____Denied

# FINAL JURY INSTRUCTION NO. 22
## WRITTEN DESCRIPTION REQUIREMENT

The patent law contains certain requirements for the part of the patent called the specification. ESET contends that [***Finjan's Proposed Language***: Claims 9 and 13 of the '780 Patent, Claims 24 and 42 of the '086 Patent] [***ESET's Proposed Language***: Claims 9, 13 and 18 of the '780 Patent, Claims 1, 9, 24 and 42 of the '086 Patent], Claims 3 and 5–6 of the '755 Patent, and Claims 1, 7, 11, 15, and 16 of the '844 Patent are invalid because the specifications of those patents do not contain an adequate written description of the inventions claimed in the respective patents.  To succeed, ESET must show by clear and convincing evidence that the specification fails to meet the law's requirements for written description of the invention.  In the patent application process, the applicant may keep the originally filed claims, or [***ESET Proposed Language***: may] change the claims between the time the patent application is first filed and the time a patent is issued [***ESET Proposed Language***:  provided that there is written description support for such changes].  An applicant may amend the claims or add new claims. These changes may narrow or broaden the scope of the claims.  The written description requirement ensures that the issued claims correspond to the scope of the written description that was provided in the original application.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent when the application was filed.  The written description requirement is [***Finjan Proposed Language***:  satisfied if a person having ordinary skill reading the original patent application would have recognized that it describes the full scope of the claimed invention as it is finally claimed in the issued patent and that the inventor actually possessed that full scope by the filing date of the original application] [***ESET Proposed Language***:  satisfied when the disclosure of the application relied

upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date].

The written description requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent application. The [**Finjan Proposed Language**: full scope of a claim or any particular requirement in a claim need not be expressly disclosed in the original patent application if a person having ordinary skill in the field of technology of the patent at the time of filing would have understood that the full scope or missing requirement is in the written description in the patent application.] [**ESET Proposed Language**: test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art. Based on that inquiry, the specification must show that the inventor actually invented the invention claimed. A patentee may not substitute the knowledge of a person of ordinary skill in the art to supply an element of the invention that is not described in the original application.][29] [30]

---

[29] **Finjan's Arguments**: Finjan's proposed jury instruction precisely follows the Federal Circuit Bar Association model instruction. ESET's proposed modifications to this instruction should be rejected because it is incomplete and misapplies the law. For example, ESET's addition of "[a] patentee may not substitute the knowledge of a person of ordinary skill in the art to supply an element of the invention that is not described in the original application" directly contradicts the Federal Circuit Bar Association Model Patent Jury Instructions, which states that the "full scope of a claim or any particular requirement in a claim need not be expressly disclosed in the original patent application if a person having ordinary skill in the field of technology of the patent at the time of filing would have understood that the full scope or missing requirement is in the written description in the patent application." Indeed, ESET removed this portion of the model jury instruction to introduce its contradictory language, which attempts to rewrite the test for the jury in a one-sided manner that heightens written description requirements, without any basis for doing so. Additionally, ESET has included claims that Finjan has stated it will not be pursuing at trial, and they should not be included.

[30] **ESET Argument**: Finjan has recently informed ESET that it does not intend to pursue claim 18 of the '780 patent and claims 1 and 9 of the '086 patent at trial. However,

1

2  **Authorities:** Federal Circuit Bar Association Model Patent Jury Instructions (July 2016) at B.4.2a.

3  _____Given

4  _____Modified

5  _____Denied

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23  ESET intends to invalidate these claims at trial pursuant to its counterclaims of

24  invalidity. ESET's additional proposed language is intended to make clear to the jury that the focus of the written description inquiry is possession of the claimed invention

25  within the four corners of the specification and without supplementing that disclosure

26  with the knowledge of a person of ordinary skill in the art, which relates more closely to enablement, not written description. *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d

27  1336, 1351 (Fed. Cir. 2010).

28

FINAL JURY INSTRUCTIONS                    CASE NO.: 3:17-cv-00183-CAB-BGS

# FINAL JURY INSTRUCTION NO. 23
## ENABLEMENT

[*Finjan Proposed Language*:

ESET contends that Claims 9 and 13 of the '780 Patent and Claims 24 and 42 of the '086 Patent are invalid for lack of enablement.  ESET bears the burden of establishing that it is highly probable that the specification lacks enablement.

A patent must disclose sufficient information to enable or teach persons of ordinary skill in the field of the invention, as of the effective filing date of the claimed invention, to make and use the full scope of the claimed invention without undue experimentation.  This requirement is known as the enablement requirement. If a patent claim is not enabled, it is invalid.

In considering whether a patent complies with the enablement requirement, you must keep in mind that patents are written for persons of ordinary skill in the field of the invention.  Thus, a patent need not expressly state information that persons of ordinary skill would be likely to know or could obtain.

The fact that some experimentation may be required for a person of ordinary skill to practice the claimed invention does not mean that a patent does not meet the enablement requirement.  Factors that you may consider in determining whether persons of ordinary skill in the field of the invention would require undue experimentation to make and use the full scope of the claimed invention include:

(1) the quantity of experimentation necessary and whether that experimentation involves only known or commonly used techniques.  The question of undue experimentation is a matter of degree.  Even extensive experimentation does not necessarily make the experiments unduly extensive where the experiments are routine, such as repetition of known or commonly used techniques.  But permissible experimentation is not without bounds.

(2) the amount of direction or guidance disclosed in the patent;

(3) the presence or absence of working examples in the patent;

(4) the nature of the invention;

(5) the state of the prior art;

(6) the relative skill of those in the art;

(7) the predictability of the art; and

(8) the breadth of the claims.]

**Authorities:** AIPLA's Model Patent Jury Instructions (2018) at 8. *See also* 35 U.S.C. § 112; *Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 684 (Fed. Cir. 2015); *Promega Corp. v. Life Techs. Corp.*, 773 F.3d 1338, 1346-49 (Fed. Cir. 2014); *Alcon Research Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1188 (Fed. Cir. 2014); *Takeda Pharm. Co. v. Zydus Pharms. USA, Inc.*, 743 F.3d 1359, 1368-69 (Fed. Cir. 2014); *Streck, Inc. v. Research & Diagnostic Sys.*, 665 F.3d 1269, 1288-89 (Fed. Cir. 2012); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1305-07 (Fed. Cir. 2010); *ALZA Corp. v. Andrx Pharms., LLC*, 603 F.3d 935, 939-43 (Fed. Cir. 2010); *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1377-79 (Fed. Cir. 2009); *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 999-1002 (Fed. Cir. 2008); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1380 (Fed. Cir. 2007); *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1244 (Fed. Cir. 2003); *Durel Corp. v. Osram Sylvania Inc.*, 256 F.3d 1298, 1306 (Fed. Cir. 2001); *Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 690-92 (Fed. Cir. 2001); *Ajinomoto Co. v. Archer- Daniels-Midland Co.*, 228 F.3d 1338, 1345-46 (Fed. Cir. 2000); *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1195-98 (Fed. Cir. 1999); *Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1371 (Fed. Cir. 1999); *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988); *Amgen, Inc. v. Chugai Pharm. Co.*, 927 F.2d 1200, 1213 (Fed. Cir. 1991).

_____Given

_____Modified

_____Denied

[***ESET Proposed Language***:

The patent law contains certain requirements for the part of the patent called the specification. ESET contends that Claims 9, 13 and 18 of the '780 Patent and Claims 1, 9, 24 and 42 of the '086 Patent are invalid because the specification does not contain a sufficiently full and clear description of how to make and use the full scope of the claimed invention. To succeed, ESET must show by clear and convincing evidence that the '780 Patent and '086 Patent do not contain sufficiently full and clear descriptions of the claimed inventions. To be sufficiently full and clear, the description must contain enough information to have allowed a person having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention at the time the original patent application was filed. This is known as the "enablement" requirement. If a patent claim is not enabled, it is invalid.

In order to be enabling, the patent must permit persons having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention at the time of original filing without having to conduct undue experimentation. However, some amount of experimentation to make and use the invention is allowable. In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors:

(1) the time and cost of any necessary experimentation;

(2) how routine any necessary experimentation is in the field of computer science;

(3) whether the patent discloses specific working examples of the claimed invention;

(4) the amount of guidance presented in the patent;

(5) the nature and predictability of the field of computer science;

(6) the level of ordinary skill in the field of computer science; and

(7) the scope of the claimed invention.

---

49

No one or more of these factors is alone dispositive. Rather, you must make your decision whether or not the degree of experimentation required is undue based upon all of the evidence presented to you. You should weigh these factors and determine whether or not, in the context of this invention and the state of the art at the time of the original application, a person having ordinary skill would need to experiment unduly to make and use the full scope of the claimed invention.][31][32]

**Authorities:** Federal Circuit Bar Association Model Patent Jury Instructions (July 2016) at B.4.2b.

_____Given

_____Modified

_____Denied

---

[31] **Finjan's Arguments**: ESET's proposed instruction should be rejected because it presents a one-sided instruction that favors the party seeking invalidity. Finjan's proposed instruction should be adopted because it presents a side-neutral recitation of the law and is taken straight from the AIPLA's Model Patent Jury Instructions.

[32] **ESET Argument**: ESET's proposed instruction comes directly from the FCBA model instructions that are used, and have been agreed to by the parties, throughout this document. There is no reason for Finjan to depart from the FCBA model instruction here for its preferred alternative instruction.

FINAL JURY INSTRUCTIONS                    CASE NO.: 3:17-cv-00183-CAB-BGS

# FINAL JURY INSTRUCTION NO. 24
## DEFINITENESS

The patent laws have requirements for the way in which patent claims are written. Patent claims must be sufficiently clear that a person of ordinary skill in the field of the invention reading them is able to determine what the claims cover and what they do not cover.  If a patent claim does not meet this requirement, [***ESET Proposed Language***: such that the public cannot tell what is excluded from use by the public,] then the claim is said to be indefinite, and the claim is invalid.

The amount of detail required for a claim to be definite depends on the particular invention, the prior art and the description of the invention contained in the patent.  A patent claim, when read along with the rest of the patent, must reasonably inform those skilled in the field of the invention what the patent claims cover.  Simply because claim language may not be precise does not automatically mean that the claim is indefinite. The claim language need only be as precise as the subject matter permits.

ESET contends that the Asserted Claims are invalid because the language of the claims is indefinite. Specifically, ESET contends that the Asserted Patents fail to inform a person of ordinary skill in the art as to what is meant by a "Downloadable" as recited in the Asserted Claims.  [***Finjan Proposed Language***:  In order to decide whether or not the use of the word "Downloadable" in claims renders those claims indefinite, you must consider whether or not the '844, '780, '086, '621, and '755 Patents provide some guidance about what is included within the claim term "Downloadable."]  You must consider whether or not a person of ordinary skill in the field reading the patent would understand what [***ESET Proposed Language***: the public may do and not do because it] is within the scope of the Asserted Claims.

If you find that ESET has proved by clear and convincing evidence that it is highly probable that the Asserted Claims are indefinite because a person of ordinary

skill in the art would not understand what is, and what is not, covered by the claims, you must then find that those claims are invalid.[33] [34]

**Authorities:** American Bar Association Model Jury Instructions - Patent Litigation § 9.1.4 (2005).

____Given

____Modified

____Denied

---

[33] **Finjan's Arguments**: ESET's proposed modification should be rejected because it deviates from the American Bar Association Model Jury Instructions.  Further, ESET's proposed modification is unnecessary and will only confuse the jury.

[34] **ESET Argument**: ESET's additional proposed language is intended to help the jury understand that that purpose of the definiteness requirement is for the public to be able to discern what activities are, and are not, covered by the claims of the patent.  Finjan's additional proposed language is not supported by the case law, as the relevant question is not whether there is "some guidance" as to the scope of the term "Downloadable," there must be sufficient clarity to fulfill the "public notice" function of the patent's claims.

FINAL JURY INSTRUCTIONS                    CASE NO.: 3:17-cv-00183-CAB-BGS

# FINAL JURY INSTRUCTION NO. 25
## INVENTORSHIP

In this case, ESET contends that the '086 patent is invalid because of improper inventorship. A patent is invalid if it fails to meet the requirement that all of the actual inventors, and only the actual inventors, be named as inventors in the patent. This is known as the "inventorship" requirement.

To be an inventor, one must make a [***ESET Proposed Language***: significant] contribution to the conception of at least one or more of the claims of the patent. [***ESET Proposed Language***: Whether the contribution is significant is measured against the scope of the full invention.

If someone only explains to the actual inventors well-known concepts or the current state of the art, he or she is not an inventor. Merely helping with experimentation, by carrying out the inventor's instructions, also does not make someone an inventor. What is required is some significant contribution to the idea claimed.]

[***Finjan Proposed Language***: Persons may be inventors even if (1) they did not physically work together or at the same time, (2) they do not make the same type or amount of contribution, or (3) they do not make a contribution to the subject matter of every claim of the patent.]

[***ESET Proposed Language***: Persons may be inventors even if they do not make the same type or amount of contribution, and even if they do not contribute to the subject matter of each claim of the patent. Persons may be joint or co-inventors even

though they do not physically work together, but they must have some open line of communication during or at approximately the time of their inventive effort.][35] [36]

**Authorities:** Federal Circuit Bar Association Model Patent Jury Instructions (July 2016) at B.4.3d

____Given

____Modified

____Denied

---

[35] **Finjan's Arguments**: Inventorship is not at issue in this case, as ESET never properly pled or disclosed an inventorship defense, as it is only mentioned in passing in its Answers and is not disclosed with any factual basis in its responses to Finjan's interrogatories seeking the basis for any asserted defenses.  Thus, no inventorship instruction is necessary in this case.  Alternatively, if the instruction is given, Finjan's modifications should be adopted because they follow the requirements of 35 U.S.C. § 116 on inventorship, which explicitly sets forth what is required to be inventors, and states that they do not need to physically work together, make the same type of amount of contribution, or do not need to contribute to every claim.  There is no need to deviate from the language of the statute, which sets forth the requirements for being an inventor on a patent.

[36] **ESET Argument**: ESET's proposed instruction is necessary given that ESET intends to present its lack of inventorship defense to the jury for Finjan's '086 patent.  ESET's proposed instruction comes directly from the FCBA model instructions.

54

# FINAL JURY INSTRUCTION NO. 26
## PROSECUTION LACHES

[*ESET Proposed Language*:

The owner of a patent may be barred from enforcing claims of a patent against an infringer where: (1) there was an unreasonably long delay in filing the claims of the patent, and (2) the infringer, another private party, or the public will be prejudiced if the patent holder is entitled to enforce the patent despite the patentee's unreasonable delay in securing the claims of the patent. This is referred to as prosecution laches, and it is a defense that ESET contends precludes any recovery by Finjan in this lawsuit.

For each patent-in-suit, the delay that must be considered is the period of time beginning when Finjan filed the original application for a patent and ending when Finjan filed the application for the patent asserted in this lawsuit. Finjan filed the original provisional application for a patent on November 8, 1996. Finjan filed the application for the '844 Patent on December 22, 1997. Finjan filed the application for the '780 Patent on March 30, 2000. Finjan filed the application for the '086 Patent on May 26, 2009. Finjan filed the application for the '621 Patent on February 11, 2015. And Finjan filed the application for the '755 Patent on June 5, 2015.

Whether Finjan's delay in securing one or more of the patents asserted in this lawsuit was unreasonably long and therefore caused harm to ESET is a question that must be answered, and you should consider the facts and circumstances as they existed during the period of delay. In determining whether ESET, another private party, or the public will be prejudiced as a result of any unreasonably long delay in filing the claims of the patents asserted in this case, consider whether ESET or others invested time, money, and effort in developing, manufacturing, or selling products now covered by the patents asserted in this case during the period of unreasonably long delay, whether other private parties have done so and may be potentially subject to infringement, and whether the time when the public will be able to freely practice the inventions now

FINAL JURY INSTRUCTIONS                    CASE NO.: 3:17-cv-00183-CAB-BGS

covered by the patents asserted in this case was unduly and unfairly postponed as a result of delay.

You may also consider whether Finjan intentionally or deliberately delayed the time when it filed any of the Asserted Claims of the patents and whether ESET or the public was aware that patent applications were pending that did or potentially could have covered the invention.][37] [38]

**Authorities:** Federal Circuit Bar Association Model Patent Jury Instructions (July 2016) at B.5.4.

_____Given

_____Modified

_____Denied

---

[37] **Finjan's Arguments**: Prosecution laches is an equitable defense which is properly decided by the Court, so no jury instruction should be given on this issue. *See Symbol Techs., Inc. v. Lemelson Med., Educ. & Research Found.*, 422 F.3d 1378, 1384 (Fed. Cir.), *amended on reh'g in part sub nom. Symbol Techs., Inc. v. Lemelson Med., Educ. & Research Found., LP*, 429 F.3d 1051 (Fed. Cir. 2005) (explaining that prosecution laches is an equitable defense); *accord.* Federal Circuit Bar Association Model Patent Jury Instructions § B.5.4 (identifying prosecution laches as an equitable defense).  The Court in this case has bifurcated equitable issues for decision by the Court after the parties' jury trial.  Doc. No. 764 (Pretrial Order) at 21.  Thus, prosecution laches is an issue subject to this bifurcation order and no instruction should be given to the jury.

[38] **ESET Argument**: ESET's proposed instruction is necessary given that ESET intends to present its prosecution laches defense to the jury in order for the jury to make a factual finding that ESET was prejudiced by the delay in Finjan's prosecution of the Asserted Patents.  ESET's proposed instruction comes directly from the FCBA model instructions.

FINAL JURY INSTRUCTIONS                    CASE NO.: 3:17-cv-00183-CAB-BGS

# FINAL JURY INSTRUCTION NO. 27

## ABANDONMENT

[*ESET Proposed Language*:

In this case, ESET alleges that Finjan abandoned the invention of the '086 Patent by filing a false non-publication request affirming that Finjan had not filed, and would not file, a patent application outside of the United States for the same invention(s) claimed in the '086 Patent.  If ESET proves by clear and convincing evidence that Finjan had filed, or did file, an application disclosing the Asserted Claims of the '086 Patent outside of the United States prior to withdrawing Finjan's non-publication request, you should determine that Finjan abandoned the Asserted Claims and that those claims are invalid.][39] [40]

---

[39] **Finjan's Arguments**: No jury instruction on abandonment should be given to the jury because ESET has never pled an abandonment claim.  *See generally* Doc. No. 142, 143 (Amended Answers).  The only place that the concept of abandonment arises is in the context of ESET's inequitable conduct claims.  Specifically, ESET only mentions abandonment in passing to attempt to demonstrate falsity and materiality with respect to its inequitable conduct claim against the '086 Patent, alleging "By the terms of the nonpublication request, had Finjan subsequently filed an application directed to the alleged inventions disclosed in the '942 application without notifying the Patent Office, the '086 application would be abandoned.  That Finjan had previously filed an application directed to the alleged inventions disclosed in the '942 application render that application abandoned and the resulting '086 patent unenforceable."  Doc. No. 142, ¶ 101; Doc. No. 143, ¶ 101 (which contains identical allegations).  ESET has conceded its inequitable conduct claims are subject to the Court's bifurcation of equitable issues, and the parties have already removed any inequitable conduct instructions from the jury instructions for this case.  *See* Doc. No. 764 (Pretrial Order) at 21 (bifurcating equitable issues).  Thus, it is inappropriate to give the instruction of abandonment to the jury as it is inextricably tied into other allegations which are reserved for the Court to decide, and ESET never properly pled any standalone abandonment issue.

[40] **ESET Argument**: ESET's proposed instruction is necessary given that ESET intends to present its abandonment defense to the jury.  The FCBA model instructions do not contain an instruction concerning abandonment and thus ESET has proposed the above language, consistent with 35 U.S.C. § 122(b)(2)(B)(i).

FINAL JURY INSTRUCTIONS                    CASE NO.: 3:17-cv-00183-CAB-BGS

**Authorities:** 35 U.S.C. § 122(b)(2)(B)(i).

_____ Given

_____ Modified

_____ Denied

## FINAL JURY INSTRUCTION NO. 28

## LICENSE

[***ESET Proposed Language***:

ESET alleges that a written agreement between Finjan, Inc. and Microsoft Corporation entitles ESET to a royalty-free license to particular asserted patents.

One who owns a patent as a patentee or assignee has the right to exclude others from making, using, or selling the patented invention. A patent owner may contractually waive that right by granting a license to another party to make, use, or sell the patented invention.

If you determine that a license has been granted, you must further look to the circumstances to determine the scope of the license. If a license has been granted to third party beneficiaries under the Finjan-Microsoft agreement, the scope must be based on the terms of that agreement.

FINAL JURY INSTRUCTIONS                    CASE NO.: 3:17-cv-00183-CAB-BGS

ESET has the burden to show, by a preponderance of the evidence, that its products are licensed under the Finjan-Microsoft agreement.][41] [42]

**Authorities:** 35 U.S.C. 271(a); AIPLA's Model Patent Jury Instructions (2008) - Definition of "License".

_____Given

_____Modified

_____Denied

---

[41] **Finjan's Arguments**: No jury instruction should be given on ESET's license defense, as ESET seeks for the jury to make legal determinations regarding the scope of a legal document using an "instruction" based on a decade-old definition and ESET's imagination.  This defense requires contract interpretation, including as to whether third parties other than Finjan and Microsoft are within the scope of the license, and thus falls squarely within the scope of legal questions to be decided later by the Court.  Doc. No. 764 (Pretrial Order) at 21.  In the Ninth Circuit, federal courts look to the law governing the contract at issue to determine the rules of contract interpretation to apply.  *See Great Minds v. Office Depot, Inc.*, 945 F.3d 1106, 1110 (9th Cir. 2019) (determining scope of a copyright license and deciding as a matter of law whether third parties were "downstream recipients" of a license).  The Microsoft license is governed under New York law.  Doc. No. 505, Ex. 1 to the Declaration of Kristopher Kastens (License Agreement), at 10.  Under the applicable New York law, contract interpretation is a matter of law for the Court to decide, including questions of the scope of licenses for intellectual property.  *See Spinelli v. Nat'l Football League*, 903 F.3d 185, 200 (2d Cir. 2018) (determining scope of copyright license as a matter of law).  ESET offers no authority to the contrary, as there is no model instruction available and ESET has not pointed to any case in which matters of contract interpretation are sent to the jury.

[42] **ESET Argument**: ESET's proposed instruction is necessary given that ESET intends to present its license defense to the jury.  The FCBA model instructions do not contain an instruction concerning a license defense and thus ESET has proposed the above language, consistent with 35 U.S.C. § 271(a).

FINAL JURY INSTRUCTIONS                    CASE NO.: 3:17-cv-00183-CAB-BGS

# FINAL JURY INSTRUCTION NO. 29
## DAMAGES—INTRODUCTION

If you find that [***Finjan Proposed Language***: ESET] [***ESET Proposed Language***: an ESET Defendant] infringed any valid Asserted Claim of the Asserted Patents, you must then consider what amount of damages to award to Finjan. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that [***Finjan Proposed Language***: ESET] [***ESET Proposed Language***: an ESET Defendant] has not infringed any valid claim of the Asserted Patents, then Finjan is not entitled to any damages.

The damages you award must be adequate to compensate Finjan for the infringement. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put Finjan in approximately the same financial position that it would have been in had the infringement not occurred.

Finjan has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Finjan establishes that it more likely than not suffered. While Finjan is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

There are different types of damages that Finjan may be entitled to recover. In this case, Finjan seeks a reasonable royalty. A reasonable royalty is defined as the money amount Finjan and [***Finjan Proposed Language***: ESET] [***ESET Proposed Language***: an ESET Defendant] would have agreed upon as a fee for use of the invention at the time prior to when infringement began. But, regardless of the type of damages you may choose to award, you must be careful to ensure that award is no more or no less than the value of the patented invention.

I will give more detailed instructions regarding damages shortly.  Note, however, that Finjan is entitled to recover no less than a reasonable royalty.[43] [44]

**Authorities:** Federal Circuit Bar Association Model Patent Jury Instructions (July 2016) at B.6.1.

____Given

____Modified

____Denied

---

[43] **Finjan's Arguments**: Lastly, as argued in "SUMMARY OF CONTENTIONS," ESET should not be permitted to introduce jury instructions describing ESET spol. s.r.o. and ESET LLC are separate entities for the purposes of infringement and damages.

[44] **ESET Argument**: ESET's proposed language simply makes clear that there are two different ESET defendants and they cannot be lumped together for purposes of damages.

FINAL JURY INSTRUCTIONS                    CASE NO.: 3:17-cv-00183-CAB-BGS

## FINAL JURY INSTRUCTION NO. 30
## REASONABLE ROYALTY—DEFINITION

[*Finjan Proposed Language*:

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention.  This right is called a "license."  A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the alleged infringer taking place at the time when the infringing activity first began.  In considering the nature of this negotiation, you must assume that both parties would have acted reasonably and would have entered into a license agreement.  You must also assume that both parties believed the patent was valid and infringed.  Your role is to determine what the result of that negotiation would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard.  You should consider all the facts known and available to the parties at the time the infringement began.  Some of the factors you may consider in making your determination are:

(1)  The value that the claimed invention contributes to ESET's Accused Products.

(2)  The value that factors other than the claimed invention contribute to ESET's products and methods.

(3)  Comparable license agreements, such as those covering the use of the claimed invention or similar technology.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty ESET would have been willing to pay and the Finjan would have been willing to accept,

FINAL JURY INSTRUCTIONS                    CASE NO.: 3:17-cv-00183-CAB-BGS

acting as normally prudent business people.  Widespread infringement can artificially depress past license amounts.]

**Authorities:** Northern District of California Model Patent Jury Instructions (August 2017, updated October 2019) at B.5.7; Federal Circuit Bar Association Model Patent Jury Instructions (July 2016) at B.6.7; *ResQNet.com, Inc. v. Lansa, Inc.*, 828 F. Supp. 2d 688, 693 (S.D.N.Y. 2011); *Trio Process Corp. v. L. Goldstein's Sons, Inc.*, 612 F.2d 1353, 1358 (3d Cir. 1980); *Tights, Inc. v. Kayser-Roth Corp.*, 442 F. Supp. 159, 165 (M.D.N.C. 1977).

____Given

____Modified

____Denied

[*ESET Proposed Language*:

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.  A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began.  In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.  In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence that the alleged infringer could have adopted a non-infringing alternative to avoid the alleged infringement may be considered in setting a reasonable royalty. Evidence of things that happened after the infringement first began can be considered in

FINAL JURY INSTRUCTIONS                    CASE NO.: 3:17-cv-00183-CAB-BGS

evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.  Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.][45] [46]

**Authorities:** Federal Circuit Bar Association Model Patent Jury Instructions (July 2016) at B.6.6.

\_\_\_\_Given

\_\_\_\_Modified

\_\_\_\_Denied

---

[45] **Finjan's Arguments**: Finjan's instruction is a more complete recitation of the law as it relates to a reasonable royalty and thus gives better guidance to the jury.  For example, Finjan's instruction defines the reasonable royalty and introduces the concept that there are non-dispositive factors to be considered as part of that royalty.  The next instruction, Final Jury Instruction No. 31 (Reasonable Royalty—Relevant Factors) then addresses the factors in full detail.  Moreover, Finjan's instruction gives the law relating to additional facts relevant to the jury's analysis in this case, such as that widespread infringement may artificially depress past license amounts.  This is well-established guidance when evaluating past licenses.  *See, e.g.*, *ResQNet.com, Inc. v. Lansa, Inc.*, 828 F. Supp. 2d 688, 693 (S.D.N.Y. 2011); *Trio Process Corp. v. L. Goldstein's Sons, Inc.*, 612 F.2d 1353, 1358 (3d Cir. 1980); *Tights, Inc. v. Kayser-Roth Corp.*, 442 F. Supp. 159, 165 (M.D.N.C. 1977).   In contrast, ESET's proposal takes part of the definition of a reasonable royalty and uses it to replace a full and complete recitation of the *Georgia-Pacific* factors that the jury must apply.  There are multiple issues with doing this, which Finjan addresses in more detail below in connection with Final Jury Instruction No. 31 (Reasonable Royalty—Relevant Factors).  The effect of ESET's proposals is to leave the jury with an incomplete picture as to the law of damages.  The appropriate proposal is to give a fulsome definition of the reasonable royalty as Finjan proposes here, and follow it with a full recitation of the *Georgia-Pacific* factors as Finjan describes below.

[46] **ESET Argument**: ESET's proposed instruction comes directly from the FCBA model instructions that are used, and have been agreed to by the parties, throughout this document.  There is no reason for Finjan to depart from the FCBA model instruction here for its preferred alternative instruction.

FINAL JURY INSTRUCTIONS                    CASE NO.: 3:17-cv-00183-CAB-BGS

# FINAL JURY INSTRUCTION NO. 31

## REASONABLE ROYALTY—RELEVANT FACTORS

[*Finjan Proposed Language*:

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent:

1.    Any royalties received by the licensor for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

2.    The rates paid by ESET to license other patents comparable to the Asserted Patents.

3.    The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4.    The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5.    The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

6.    The effect of selling the patented specialty product in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.

6.    The duration of the Asserted Patents and the term of the license.

7.    The established profitability of the product made under the Asserted Patents; its commercial success; and its popularity.

8.    The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

9.     The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by or for the licensor; and the benefits to those who have used the invention.

10.     The extent to which ESET has made use of the invention; and any evidence that shows the value of that use.

11.     The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

12.     The opinion testimony of qualified experts.

13.     The amount that a licensor (such as Finjan) and a licensee (such as ESET) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

14.     Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.]

**Authorities:** AIPLA's Model Patent Jury Instructions (2018) at 10.2.5.3; *See* Federal Circuit Bar Association Model Patent Jury Instructions (July 2016) at B.6.7.

_____Given

_____Modified

_____Denied

FINAL JURY INSTRUCTIONS                    CASE NO.: 3:17-cv-00183-CAB-BGS

[*ESET Proposed Language*:

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

(1) The value that the claimed invention contributes to the accused product.

(2) The value that factors other than the claimed invention contribute to ESET's accused products.

(3) Comparable license agreements, such as those covering the use of the claimed invention or similar technology.

(4) Whether there were non-infringing alternatives available that could have adopted to avoid infringement.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the

FINAL JURY INSTRUCTIONS                    CASE NO.: 3:17-cv-00183-CAB-BGS

alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.][47] [48]

**Authorities:** Federal Circuit Bar Association Model Patent Jury Instructions (July 2016) at B.6.7.

____Given

____Modified

____Denied

---

[47] **Finjan's Arguments**: Finjan's instruction follows the model instructions relating to the *Georgia-Pacific* factors that the jury should evaluate in determining a reasonable royalty. Both ESET's and Finjan's damages expert address each and every *Georgia-Pacific* factor for their respective analyses, which is a key component for determining the amount of damages in any patent case. *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970). The Federal Circuit in numerous decisions has confirmed that the *Georgia-Pacific* factors are an important component for assessing patent damages. *See, e.g.*, *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 854, 856 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91, 131 S. Ct. 2238, 180 L. Ed. 2d 131 (2011) (jury verdict of damages supported by evidence given under *Georgia-Pacific* framework); *Radio Steel & Mfg. Co. v. MTD Prods., Inc.,* 788 F.2d 1554, 1557 (Fed.Cir. 1986) ("The determination of a reasonable royalty, however, is based not on the infringer's profit, but on the royalty to which a willing licensor and a willing licensee would have agreed at the time the infringement began."). Otherwise the jury instructions, such as ESET's proposal, are incomplete.

[48] **ESET Argument**: ESET's proposed instruction comes directly from the FCBA model instructions that are used, and have been agreed to by the parties, throughout this document. There is no reason for Finjan to depart from the FCBA model instruction here for its preferred alternative instruction. Additionally, reciting all fourteen *Georgia-Pacific* factors, as Finjan requests, will just serve to confuse the jury.

69

# FINAL JURY INSTRUCTION NO. 32
## REASONABLE ROYALTY – TIMING

[*Finjan Proposed Language*:

Damages are not based on a hindsight evaluation of what happened, but on what the parties to the hypothetical license negotiations would have agreed upon. Nevertheless, evidence relevant to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation. You may also consider information the parties would have foreseen or estimated during the hypothetical negotiation, which may under certain circumstances include evidence of usage after infringement started, license agreements entered into by the parties shortly after the date of the hypothetical negotiation, profits earned by the infringer, and noninfringing alternatives.][49] [50]

**Authorities:** 2018 American Intellectual Property Law Association Model Patent Jury Instructions, § 10.2.5.7.

____Given

____Modified

____Denied

---

[49] **Finjan's Argument**: Finjan's proposal is to include a jury instruction taken directly from the AIPLA Model Patent Jury Instructions to provide the jury with the complete law of damages. Finjan's proposal gives the jury an explanation as to the "book of wisdom" which juries may consider as part of the damages analysis under Federal Circuit law. *See, e.g.*, *Sinclair Ref. Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 698 (1933) (post-infringement evidence can be a relevant "book of wisdom"). Finjan's and ESET's damages experts both address this book of wisdom and thus it is relevant to instruct the jury on how to consider such evidence.

[50] **ESET Argument**: Finjan's proposed instruction is unnecessary given the other damages-related jury instructions in this document to which the parties have already agreed.

# FINAL JURY INSTRUCTION NO. 33
# REASONABLE ROYALTY – AVAILABILITY OF NON-INFRINGING ALTERNATIVE

To be an "acceptable, noninfringing substitute or alternative," a product must have the advantages of the patented invention that were important to people who purchased an alleged infringer's product.  If purchasers of an alleged infringer's product were motivated to buy that product because of features [***ESET Proposed Language***: covered by the Asserted Claims] available only from that product and a patent holder's patented product, then some other, alternative product [***Finjan Proposed Language***: is not] [***ESET Proposed Language***:  may not be] an acceptable substitute [***Finjan Proposed Language***: , even if it otherwise competed with a patent holder's and an alleged infringer's products.   On the other hand, if the realities of the marketplace are that competitors other than the patentee would likely have captured the sales made by the infringer, despite a difference in the products, then the patentee is not entitled to lost profits on those sales].

In determining whether a non-infringing alternative is available, you may consider whether (1) the defendant could readily obtain all of the material needed to implement the non- infringing alternative; [***Finjan Proposed Language***: (2) the non-infringing alternative was well known in the field at the time of infringement;] and (3) the defendant had all of the necessary equipment, know-how, and experience to use the non-infringing alternative.  ESET bears the burden to prove that a supposed non-infringing alternative is both technically and economically feasible at the time when the infringement first began.

To the extent that you determine that there is an acceptable non-infringing alternative, a reasonable royalty is not capped at the cost of implementing the non-

infringing alternative.[51] [52]

**Authorities:** Federal Circuit Bar Association Model Patent Jury Instructions (July 2016) at B.6.2; *LaserDynamics, Inc. v. Quanta Computer, Inc.,* No. 2:06-CV-348, 2011 WL 197869, at *2 (E.D. Tex. Jan. 20, 2011) (subsequent history omitted) ("Whether the accused infringer had acceptable non-infringing alternatives ***available to it at the time of the hypothetical negotiation*** may be probative of a reasonable royalty for the patented technology.") (emphasis added) (citing *Georgia–Pacific Corp. v. United States Plywood Corp.,* 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970)); *Grain Processing Corp. v. American Maize Prods. Co.,* 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Mars, Inc. v. Coin Acceptors, Inc.,* 527 F.3d 1359, 1373 (Fed. Cir. 2008) (subsequent history omitted) (striking expert report where no evidence of available acceptable non-infringing alternative available at time of hypothetical negotiation); *Exmark Mfg. Co. v. Briggs & Stratton Power Prod. Grp., LLC,* No. 8:10CV187, 2016 WL 2772122, at *5 (D. Neb. May 11, 2016), *vacated in part on other grounds,* 879 F.3d 1332 (Fed. Cir. 2018) (excluding evidence of non-infringing alternative where no evidence "alternatives would have been available at the time of the hypothetical negotiation at issue"); *Visteon Glob. Techs., Inc. v. Garmin Int'l, Inc.,* 903 F. Supp. 2d 521, 528 (E.D. Mich. 2012) (alleged infringer must establish noninfringing alternative available to be marketed); *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1373 (Fed. Cir. 2008) (infringer "wrong as a matter of law to claim that reasonable royalty damages are capped at the cost of implementing the cheapest available, acceptable, non-infringing alternative.").

\_\_\_\_Given

\_\_\_\_Modified

\_\_\_\_Denied

---

[51] **Finjan's Arguments**: A key issue in this case that both Finjan's and ESET's expert opine about is non-infringing alternatives.  This is also one of the *Georgia-Pacific* factors that both damages experts address.  Thus, it is important to instruct the jury on this issue, which is not likely to be familiar with them and how to apply such facts to the case.

[52] **ESET Argument**: ESET's additional proposed language above is intended to help the jury understand that the relevant features must be related to the Asserted Claims. Finjan's additional proposed language is improper as it is irrelevant whether a non-infringing alternative was well known in the field at the time of infringement.

FINAL JURY INSTRUCTIONS                    CASE NO.: 3:17-cv-00183-CAB-BGS

# FINAL JURY INSTRUCTION NO. 34

## REASONABLE ROYALTY – MULTIPLE PATENTS

[*Finjan Proposed Language*:

If you find that ESET infringed more than one patent, even by a single infringing act, then you may award separate royalties to Finjan for each patent that was infringed. You also may consider the number of patent licenses that are needed for the allegedly infringing product and the effect on the hypothetical negotiation of having to pay a royalty for each of those licenses.][53] [54]

**Authorities:** Northern District of California Model Patent Jury Instructions (August 2017, updated October 2019) at B.5.8; AIPLA's Model Patent Jury Instructions (2018) at 10.2.5.6.

_____Given

_____Modified

_____Denied

---

[53] **Finjan's Arguments**: Finjan's proposed instruction should be adopted because it comes directly from the Northern District of California Model Patent Jury Instructions. This instruction is relevant because there are five Asserted Patents at issue in this case, and the jury should be presented with an instruction regarding on awarding royalties when there are multiple infringing patents.

[54] **ESET Argument**: Finjan's proposed instruction is improper.  There is no evidence in the record, or expert opinion, supporting a finding of separate damages for each Asserted Patent.  Both Finjan and ESET's respective damages experts have opined that Finjan and ESET would have agreed to a lump sum royalty, irrespective of how many Asserted Patents were allegedly infringed.

# FINAL JURY INSTRUCTION NO. 35
## DATE OF COMMENCEMENT OF DAMAGES

In determining the amount of damages, if any, you must calculate damages as of January 22, 2015 for the '844 patent and the '086 patent.  You must calculate damages as of July 1, 2016 for the '780 patent, the '621 patent, and the '755 patent.

[***Finjan Proposed Language***:  In determining the amount of damages, if any, for the asserted method claims, you must calculate damages six years from filing of complaint.][55] [56]

**Authorities:** Federal Circuit Bar Association Model Patent Jury Instructions (July 2016) at B.6.8., D.I. 699 at 11.

\_\_\_\_Given

\_\_\_\_Modified

\_\_\_\_Denied

---

[55] **Finjan's Arguments**: Finjan will be presenting infringement of both system and method claims.  Consequently, the jury needs to be presented with the legal standards for both types of claims in this case.  In determining when damages begin with regard to method claims, there is no notice requirement. 35 U.S.C. § 287(c)(2)(F); see *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1538 (Fed. Cir. 1993) ("The law is clear that the notice provisions of section 287 do not apply where the patent is directed to a process or method.")

[56] **ESET Argument**: Finjan's additional proposed language is improper.  This Court has already determined the start date for damages for each of the Asserted Patents.  Additionally, Finjan's damages expert did not attempt to calculate damages for the period prior to January 22, 2015 for any of the Asserted Patents.

# FINAL JURY INSTRUCTION NO. 36
## DUTY TO DELIBERATE

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**Authorities:** Ninth Circuit Manual of Model Civil Jury Instructions (January 2017, updated December 2019) at 3.1.

_____Given

_____Modified

_____Denied

FINAL JURY INSTRUCTIONS                              CASE NO.: 3:17-cv-00183-CAB-BGS

# FINAL JURY INSTRUCTION NO. 37
## CONSIDERATION OF EVIDENCE—CONDUCT OF THE JURY

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

> Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

> Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the

76

witnesses or the lawyers—until you have been excused as jurors.  If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over.  If any juror is exposed to any outside information, please notify the court immediately.

**Authorities:** Ninth Circuit Manual of Model Civil Jury Instructions (January 2017, updated December 2019) at 3.2.

____Given

____Modified

____Denied

FINAL JURY INSTRUCTIONS                    CASE NO.: 3:17-cv-00183-CAB-BGS

# FINAL JURY INSTRUCTION NO. 38
# COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by any one or more of you.  No member of the jury should ever attempt to communicate with me except by a signed writing.  I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court.  If you send out a question, I will consult with the lawyers before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

**Authorities:** Ninth Circuit Manual of Model Civil Jury Instructions (January 2017, updated December 2019) at 3.3.

____Given

____Modified

____Denied

FINAL JURY INSTRUCTIONS                    CASE NO.: 3:17-cv-00183-CAB-BGS

## FINAL JURY INSTRUCTION NO. 39
## RETURN OF VERDICT

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the bailiff that you are ready to return to the courtroom.

**Authorities:** Ninth Circuit Manual of Model Civil Jury Instructions (January 2017, updated December 2019) at 3.5.

_____Given

_____Modified

_____Denied