NICOLA A. PISANO, CA Bar No. 151282
    NicolaPisano@eversheds-sutherland.com
JOSE L. PATIÑO, CA Bar No. 149568
    JosePatino@eversheds-sutherland.com
JUSTIN E. GRAY, CA Bar No. 282452
    JustinGray@eversheds-sutherland.com
SCOTT A. PENNER, CA Bar No. 253716
    ScottPenner@eversheds-sutherland.com
**EVERSHEDS SUTHERLAND (US) LLP**
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA  92130
TELEPHONE:    858.252.6502
FACSIMILE:    858.252.6503

Attorneys for Defendants and Counter-Plaintiffs
ESET, LLC and ESET, SPOL. S.R.O.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN, INC., | Case No. 3:17-cv-0183-CAB-BGS |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ESET, LLC AND ESET, SPOL. S.R.O.'S RENEWED MOTION FOR SUMMARY JUDGMENT OF INVALIDITY BASED ON INDEFINITENESS OF THE TERM "DOWNLOADABLE"** |
| v. | |
| ESET, LLC, et al., | |
| Defendants. | |
| | Judge:    Hon. Cathy Ann Bencivengo |
| AND RELATED COUNTERCLAIMS. | PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

17cv0183

45119387.2

# **TABLE OF CONTENTS**

Page

I.  INTRODUCTION ................................................................................. 1

II.  FACTUAL BACKGROUND................................................................. 2

    A.  "Downloadable" As Used in the Intrinsic Record of the Asserted Patents................................................................................................. 2

    B.  The Claim Construction Hearing and this Court's *Markman* Order............ 2

    C.  No Finjan Expert Could Determine the Scope of "Small." .......................... 4

        1.  Finjan's '844 Infringement Expert: Dr. Cole ................................... 4

        2.  Finjan's '780 and '086 Infringement Expert: Dr. Mitzenmacher ................................................................................ 8

        3.  Finjan's '621 and '755 Infringement Expert: Dr. Medvidović ........................................................................................ 8

        4.  Finjan's '621 and '755 Invalidity Expert: Dr. Goodrich ............... 9

III.  LEGAL STANDARD OF INDEFINITENESS ................................... 10

IV.  ARGUMENT......................................................................................... 11

    A.  "Small" Is a Term Of Degree with No Intrinsic Evidence Supporting a Definitive Scope. ......................................................................... 11

    B.  Finjan's Own Experts' Disagreement on the Definition of "Small" Further Demonstrates the Term Has No Definitive Scope. ....................... 13

    C.  Finjan's Previous Arguments Opposing Summary Judgment Fail to Demonstrate a Material Issue of Fact............................................... 15

V.  CONCLUSION..................................................................................... 17

17cv0183

45119387.2

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Abdou v. Alphatec Spine, Inc.*,
  No. 12-CV-1804 BEN (RBB), 2014 U.S. Dist. LEXIS 163044
  (S.D. Cal. Nov. 19, 2014) ....................................................................................16

*Apple, Inc. v. Samsung Elecs. Co.*,
  932 F. Supp. 2d 1076 (N.D. Cal. 2013)..........................................................13

*Datamize, LLC v. Plumtree Software, Inc.*,
  417 F.3d 1342 (Fed. Cir. 2005) ..........................................................10, 12, 13

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014) ...........................................................................11

*Dow Chem. Co v. Nova Chems. Corp. (Can.)*,
  803 F.3d 620 (Fed. Cir. 2015) .............................................................................10

*Elekta Instrument S.A. v. O.U.R. Sci. Int'l, Inc.*,
  214 F.3d 1302 (Fed. Cir. 2000) ...........................................................................11

*Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*,
  No. 2:16-CV-134-JRG-RSP, 2016 U.S. Dist. LEXIS 155753
  (E.D. Tex. Nov. 9, 2016) ......................................................................................12

*Halliburton Energy Servs., Inc. v. M-I LLC*,
  514 F.3d 1244 (Fed. Cir. 2008) ....................................................................10, 12

*Innovative Display Techs. LLC v. Acer Inc.*,
  No. 2:13-CV-522-JRG, 2014 U.S. Dist. LEXIS 118422
  (E.D. Tex. Aug. 26, 2014) ....................................................................................12

*Input/Output, Inc. v. Sercel, Inc.*,
  No. 5:06-CV-236, 2008 U.S. Dist. LEXIS 124418
  (E.D. Tex. Apr. 28, 2008)......................................................................................11

*Interval Licensing LLC v. AOL, Inc.*,
  766 F.3d 1364 (Fed. Cir. 2014) ...........................................................................10

17cv0183

45119387.2

<u>**TABLE OF AUTHORITIES**</u>
***(Continued)***

**Page(s)**

**Cases** *(Cont.)*

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014) ....................................................................... 10, 14, 16

*Oakley, Inc. v. Sunglass Hut Int'l*,
    316 F.3d 1331 (Fed. Cir. 2003) ............................................................ 10, 15

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) .................................................................. 11

iii

17cv0183

45119387.2

# I.      __INTRODUCTION__

Pursuant to this Court's Order of July 23, 2020 (D.I. 802), Defendants and Counter-Plaintiffs ESET, LLC and ESET, spol. s.r.o. (collectively referred to as "ESET"), file this memorandum in support of their renewed motion for summary judgment of invalidity based on indefiniteness of the term "Downloadable" in U.S. Patent Nos. 6,154,844, 6,804,780, 8,079,086, 9,189,621, and 9,219,755.  *See* D.I. 478. Based upon the disclosures of the asserted patents, the parties' arguments, and a thorough review of the record, the Court properly construed "Downloadable" as "a ***small*** executable or interpretable application program which is downloaded from a source computer and run on a destination computer."  D.I. 195 at 3 (emphasis added).[1]  "Small" is term of relative degree, and in the context of the asserted patents it has no technical meaning and no defined boundaries in either the intrinsic or extrinsic record developed in this case.

The law requires that a term of degree be specific enough that a person of ordinary skill in the art recognize and understand its bounds—yet "small" has no accepted, recognized meaning with respect to a "Downloadable" to those of skill in the art.  All four of Finjan's experts, when asked what constitutes "small" during expert discovery, provided different answers.  And as demonstrated by Dr. Cole's sworn trial testimony, size does not matter when determining what constitutes "small" because a ***two terabyte*** Downloadable would meet his "construction" of the term "small."  The term "Downloadable" is hopelessly indefinite.

Because claim construction is a matter of law and "small" has no accepted definition in either the intrinsic or extrinsic record, its plain and ordinary meaning should control.  Yet, Finjan's experts cannot agree on the scope of the term.  Moreover, Dr. Cole construed the term at trial in such a way that he entirely rewrote the definition as related to "whether the Downloadable is installed" and failed to apply any semblance of the "plain and ordinary" meaning of "small."  ESET is entitled to summary judgment of

---

[1] All emphasis is added unless stated otherwise.

invalidity based on indefiniteness of the term "Downloadable."

## II.   FACTUAL BACKGROUND

### A.   "Downloadable" As Used in the Intrinsic Record of the Asserted Patents

As explained in this Court's claim construction ruling, "Downloadable" first appears in the specification of U.S. Patent No. 6,167,520 ("the '520 patent") and its continuation, U.S. Patent No. 6,480,962 ("the '962 patent"), as "*a **small** executable or interpretable application program which is downloaded from a source computer and run on a destination computer.*"  D.I. 195 at 2 (italics in original).

This Court further explained that the specification of U.S. Patent No. 6,092,194 ("the '194 patent") and its continuation, the '780 patent, define "Downloadable" as "*an executable application program which is downloadable from a source computer and run on the destination computer.*"  *Id.* (italics is original).  The '194 specification provides non-limiting ***examples*** of "Downloadables" as application programs such as Java™ applets and JavaScripts™ scripts.  *Id.*

The Court further explained that the '844 patent defines "Downloadable" as "*an executable application program which is downloadable from a source computer and run on the destination computer* and also includes references to small executable and interpretable application programs as examples of a Downloadable."  *Id.* at 2-3 (italics in original).  The '844 patent incorporates by reference the '520 and '194 patents.  *Id.* at 3.

The '844 patent is a continuation-in-part of the '962 and '780 patents, and incorporates those patents by reference.  *Id.*  Its continuation patents, including the '086, '621, and '755 patents, do not include a definition of "Downloadable", but incorporate by reference both the '962 and '780 patents.  *Id.*

### B.   The Claim Construction Hearing and this Court's *Markman* Order

On September 25-26, 2017, this Court held its *Markman* Hearing.  D.I. 478-4.  At the *Markman* Hearing, the potential that incorporating the word "small" in the construction of the term "Downloadable" may lead to indefiniteness was discussed:

THE COURT: But given that the Court has found that Downloadable includes both executable and interpretable, the only issue now here is this small and whether that should be imported into the definition in the '621 and the '755 when it's not specifically in those…. But if it contradicts that any of these examples are not, in fact, small, then I'm wondering if I'm creating a problem that shouldn't be there.

MR. PENNER: I don't -- I mean, all of those examples could be small. There's nothing that prohibits.

THE COURT: *I don't know what small means.*

MR. PENNER: We don't either, your Honor.

THE COURT: *What is small in the terms of a program? Would I then be making this definition indefinite by saying it's got to be small?* But what does that connotate, that the Downloadable doesn't apply in this context of these two patents because it's not small?

MR. PENNER: And I think that's accurate, your Honor … [J]ust because the patentee defines something doesn't make it definite. And the definition here was created … because it's a term of degree, is it sufficiently definite. *And that's a secondary question that we would address*, but at this stage the question is what should it be given at its interpretation, and it's exactly what the patentee described in its meaning which is a small executable or interpretable application program.

*Id.* at 66-68.

At the hearing, Finjan's counsel expressed concern that the proposed construction might support an indefiniteness defense. Mr. Andre explained to the Court:

Your Honor? Mr. Hannah and I think your Honor hit on a very important point. You have two possible ways you can interpret this patent, either one, because you have competing definitions, one going back to the '780 and one going back to the '984 patent which these patents go back to, and the other one is introducing the issue of small. And you can choose between the two. It's something that we think the first one is right because it was the original -- in the original application. It is was what the PTAB interpreted it to be.

What they're trying to do here, as you just highlighted, is they're *introducing ambiguity in a definiteness issue so they can bring that to the Court's attention*. As your Honor knows, if you have competing constructions and the Court can reasonably interpret the claims to be valid, it

45119387.2

should do so. *Id.* at 68.

Based on the record evidence, this Court ultimately concluded that the term "Downloadable" for all five asserted patents should be construed consistently and determined that the construction should be "a *small* executable or interpretable application program which is downloaded from a source computer and run on a destination computer." D.I. 195 at 2.

**C.    No Finjan Expert Could Determine the Scope of "Small."**

During expert discovery, ESET sought clarification from Finjan's experts on how one of skill in the art would have understood the boundaries of "small" for a "Downloadable" as that term appears in the incorporated '520 and '962 patents. That determination is critical to determining the "public notice" function of claims, and specifically, what is within the scope of the asserted claims and what is beyond that scope. Finjan's experts could not provide a consistent response, demonstrating precisely why the term is indefinite.

1.    Finjan's '844 Infringement Expert: Dr. Cole

When asked at his deposition what "small" meant within the context of the claims of the '844 patent for the term "Downloadable," Dr. Cole provided multiple answers. Dr. Cole first testified that "small" means "[i]t's one of those where you can tell something really large, you can tell something small, *it doesn't give an exact number … [Y]ou would have to look at the scenario* to see if it fits under the context of a downloadable … *You'd have to look at the context* and how it's used." D.I. 478-5 (Cole Deposition) at 168:20-25; 169:9-10. For Dr. Cole, the context for analysis is "[j]ust on what you're downloading, *what is the size relative to other things that are being downloaded*." *Id.* at 169:13-15. Dr. Cole also testified that the definition of "small" "*could potentially change*" "depending on speed of computers." *Id.* at 169:23-24.

45119387.2

When asked what Dr. Cole understood "small" to mean as an expert, he testified: "Something of a *relative* small size.  Something that is *not really large* ... Like a *three gig* word executable, I wouldn't consider to be small … something that was of *reasonable size*, that wasn't *extremely large*, it *wasn't multiple gigs*."  *Id.* at 170:17-20; 171:19-21.  When asked again what "small" meant to him, Dr. Cole affirmed it to mean: "*typically* it's not *multiple gigs*."  *Id.* at 172:20.  Given the vast increases in download speeds from 1996 (14.4 to 28.8 kilobits/second) to current-day Internet download speeds (50 to 100 Megabits/second), even a multiple megabyte file would have been large in the 1997 timeframe when the earliest Finjan applications were filed.  D.I. 478-9 (Orso Deposition) at 168:13-169:15.

When asked to reconcile his multiple, highly fluid definitions by providing a range for his definition of "small," Dr. Cole stated: "Small would be something of *reasonable size* that wouldn't be *multiple gigs* that you would be downloading."  D.I. 478-5 at 172:24-25; 173:1-6.  Cole then defined a reasonable size as, "It *could be* a few megs, *could be* 20 megs, *could be* 40 megs.  Like I said, something that's not multiple gigs or really large."  *Id.* at 173:8-10.

When asked at trial how small a Downloadable need be to fall within the scope of the claims of the '844 patent, Dr. Cole disavowed his prior testimony that a small file "wouldn't be multiple gigs" and presented an entirely new theory that "small" depended upon whether or not the Downloadable was *installed* on the user's computer.  *See, e.g.,* D.I. 805 (Trial Testimony Day 3 – Dr. Cole) at 397:12-400:6; 403:11-404:2.  Moreover, despite the definition of "small" expressly requiring a relative quantity, in his opinion:

> the definition of *small is not based on a number*.  It's based on whether it requires installation or not, not all executables are going to be Downloadables because there could be some large executables and those are going to be Downloadables.  But based on the Court's claim construction, any executable that is small that doesn't require installation, which from an expert is a very clear, concise definition is going to fit the definition of Downloadable.

*Id.* at 408:2-11 (emphasis added).

Far from clarifying what constituted a "small" executable or interpretable application program, Dr. Cole added a new layer of ambiguity to the definition of Downloadable by testifying "*[t]he file could be small if it doesn't require installation, or it won't be small if it requires installation*" and thus "*small depends on the function*." *Id.* at 414:8-14; 415:7-15.   Merriam Webster defines "small" as "having comparatively little size or slight dimensions."[2]   And dictionary.com similarly defines the term as "of limited size; of comparatively restricted dimensions; not big; little."[3]   In other words, the definition of "small" is based on "size."   Yet, Dr. Cole testified at trial that size doesn't matter.   *Id.* at 404:23-405:2 ("Q: So to you, size doesn't matter; is that right?   A: With small executable, we're using whether it requires installation or not, *so the size or number, that doesn't matter*.").   In other words, Dr. Cole did not apply the plain and ordinary meaning of small, instead he usurped the Court's role to provide a novel construction of the term "Downloadable."   Dr. Cole literally inverts the standard definition of small (i.e., size matters) by claiming the exact opposite (i.e., that size doesn't matter).

Dr. Cole's novel construction, espoused for the first time at trial, is made of whole cloth, and has no support in the intrinsic record, the extrinsic record, his expert report or his expert deposition testimony, or that of any other Finjan expert.[4]   And in sharp contrast to his expert deposition testimony, where he testified that "small" could change over time, Dr. Cole testified at trial that "small" was *independent* of the size of the file being downloaded, the speed of the computer, or when the patent was being asserted.

---

[2] *See* https://www.merriam-webster.com/dictionary/small.
[3] *See* https://www.dictionary.com/browse/small?s=t.
[4] In addition, at the summary judgment hearing this Court asked Finjan's attorney's "What would be an example of a Downloadable that is not small." Summary Judgment Hearing Tr. at 13:25-14:1.  The Court further asked: "Is there a concrete example where they [the experts] would say if they were running programs that downloaded this, it would not be covered by this patent because it is not small." *Id.* at 14:8-10.  Finjan did not argue, as it now does through Dr. Cole's trial testimony, that "installation" was the key.  Instead, Mr. Hannah's response demonstrated that "size" was the important factor noting: "But executables that are going to be gigabytes, that's when they're talking about the different sizes and things like that.  If you're thinking about gigabytes and these huge massive programs that are going to be downloaded, those aren't going to be considered downloadables…" *Id.* at 14:21-25.

17cv0183

*Compare* D.I. 478-5 at 169:23-24, *with* D.I. 805 at 415:7-416:5.   Moreover, at his deposition, Dr. Cole was given every opportunity to express his opinion that "small" meant "non-installed," but he never offered that opinion.  D.I. 478-5 at 166:5-173:20.  Dr. Cole's new "non-installed" construction first espoused at trial directly contradicts his deposition testimony.  For example, during his expert deposition, Dr. Cole was asked: "And as one of skill in the art attempting to apply that in this case, when you saw the word "small," how big did you think that had to be before it would meet the limitation?"  *Id.* at 171:15-18.  Instead of responding that it had nothing to do with "size" but was related to whether the file was "installed," Dr. Cole testified: "Once again, *something that was of reasonable size*, that wasn't extremely large, it wasn't multiple gigs.  It's not where at 100 megs it's small, and at 101 megs, it's no longer small.  *It's relative to what you're downloading*, what you're working on."  *Id.* at 171:19-24.  Dr. Cole said nothing at all about "installation," rather, he testified that small was determined by the *size* "relative" to other files being downloaded.  Dr. Cole's definitional epiphany reflects Finjan's stark realization that its experts had utterly failed to account for the indefiniteness of the claim term and sought to salvage the patents through a wholesale change in testimony.

Dr. Cole's new definition of "small" as being based on "installation" also lacks specification support.  A word search of the '520 patent (the original patent defining "Downloadable" as containing the word "small") and the '844 patent on which Dr. Cole opined, reveals that neither the word "install" nor any variation thereof appears in either specification.  Thus, there is no support for the proposition that the patentee might have meant that the term "small" should be understood by one of skill in the art as anything other than its plain and ordinary meaning, much less any explanation as would fulfill the public notice function of the claims.

Remarkably, Dr. Cole testified at trial that even a *two terabyte* non-installed executable would be "small" within his understanding of the Court's construction for the claims of the '844 patent: "That would be extremely unusual, but if it didn't require

7

17cv0183

installation, then, yes, that would fit the requirement of being small."   D.I. 805 at
464:17-22.  By way of comparison, two terabytes of data would fill more than 400 DVD
disks holding 4.7 gigabits each!  Such a result is clearly absurd and completely at odds
with the plain and ordinary meaning of the term "small."

## 2.    Finjan's '780 and '086 Infringement Expert: Dr. Mitzenmacher

Dr. Mitzenmacher's deposition testimony is also at odds with Dr. Cole's novel
construction that requires "small" to ignore size and to focus on whether the application
is "installed."  When asked what "small" meant in the context of the claims of the '780
and '086 patents for the term "Downloadable," Dr. Mitzenmacher testified "there are
many examples of things … under, you know, the -- ***the 10 megabyte range*** … So many
of the files would be even much smaller than -- ***than 10k … 10 kilobytes.***"  D.I. 478-6
(Mitzenmacher Deposition) at 71:16-25; 72:1-8.  To Dr. Mitzenmacher, the definition of
"small" would not have changed between 1996 and 2018.  *Id.* at 72:15-25; 73:1-10.  At
his expert deposition, Dr. Mitzenmacher did not ascribe to Dr. Cole's novel construction
of the word "small" as being based on "installation," instead Dr. Mitzenmacher provided
a "size" range.  Despite having ample opportunity, Dr. Mitzenmacher did not offer any
opinion in his expert report or at his deposition that the plain and ordinary meaning of
"small" should be abandoned in favor of a construction that focuses on whether or not
the file is "installed."

## 3.    Finjan's '621 and '755 Infringement Expert: Dr. Medvidović

Similarly, Dr. Medvidović did not agree with Dr. Cole's testimony that "size
doesn't matter."   Instead, when asked what "small" meant within the context of the
claims of the '621 and '755 patents for the term "Downloadable," Dr. Medvidović's
response was "***as a rule of thumb***, something that is part of a piece of content you're
downloading as ***part of a web page***, for example."  D.I. 478-7 (Medvidović Deposition)
at 116:12-16.  When asked if there was a size limit to his interpretations of "small," Dr.
Medvidović testified "I don't know that it's possible to ascribe a specific size limit.
***Could be kilobytes to megabytes***."  *Id.* at 116:17-22.  Dr. Medvidović then provided a

8                                              17cv0183

different definition for small when he testified "[i]t is an application program that would be *smaller than* something like Microsoft Word, which is *hundreds of megabytes* in size." *Id.* at 117:3-9.  Despite having ample opportunity, Dr. Medvidović also did not offer any opinion in his expert report or at his deposition that the plain and ordinary meaning of "small" should be abandoned in favor of a construction that focuses on whether or not the file is "installed."

4.    Finjan's '621 and '755 Invalidity Expert: Dr. Goodrich

When asked what interpretation of "small" he applied to the term "Downloadable" in the context of considering prior art relevant to the '621 and '755 patents, Dr. Goodrich responded that "[s]mall is a *relative* term" where something that is small is contrasted with "something that would not necessarily be a small executable or interpretable application program in that same context."   D.I. 478-8 (Goodrich Deposition) at 101:21-25; 102:1-10.  When asked to provide an example of something that is not "small," Dr. Goodrich stated, "on the order of, you know, *5, 10 kilobytes*, then something *on the order of gigabytes* would be an example of something *that's not small* in that context." *Id.* at 102:14-22.  When asked how to determine if something is small or not, Dr. Goodrich testified "that will always be clear *from the context*." *Id.* at 103:23-24.  When asked again to define "small," Dr. Goodrich testified, it "depends on what you're comparing it to." *Id.* at 106:23-24.

More importantly, Dr. Goodrich expressly contradicted Dr. Cole by stating that installed programs *could* be considered a Downloadable.  When asked if Internet Explorer, an executable that is "installed," could be considered a Downloadable, Dr. Goodrich testified "[I]t's possible that it could be an … executable or not -- I mean the downloadable or not, depending on what it's being compared to.  Small is a relative term, so you have to compare it to something.  So just in the isolation, one product could be small or could be large, depending on what you're comparing it to." *Id.* at 103:7-20. Dr. Goodrich did not testify that Internet Explorer could never be a Downloadable because it is something that is installed, instead he testified that it *could* be a

45119387.2

Downloadable but that one would have to compare the size of Internet Explorer to other files.

## III.   **LEGAL STANDARD OF INDEFINITENESS**

The primary purpose of definiteness is to ensure that claims are written such that "they give notice to the public of the extent of the legal protection afforded by the patent, so that interested members of the public, *e.g.*, competitors of the patent owner, can determine whether or not they infringe." *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1340 (Fed. Cir. 2003) (internal citations omitted). "A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Datamize, LLC v. Plumtree Software, Inc*., 417 F.3d 1342, 1347 (Fed. Cir. 2005) (internal citations omitted), *abrogated on other grounds by Nautilus, Inc. v. Biosig Instruments, Inc*., 572 U.S. 898 (2014). When read in light of the specification and the prosecution history, claims "must provide objective boundaries for those of skill in the art." *Dow Chem. Co. v. Nova Chems. Corp. (Can.)*, 803 F.3d 620, 630 (Fed. Cir. 2015) (internal citation omitted).

Although in the past it was sufficient to identify only "some standard of measuring the scope of the phrase," the Supreme Court and Federal Circuit have now articulated a higher standard for definiteness.  "The claims, when read in light of the specification and the prosecution history, must provide **objective boundaries** for those of skill in the art." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014).  There is an indefiniteness problem if the claim language "might mean several different things and no informed and confident choice is available among the contending definitions." *Nautilus,* 572 U.S. at 911 n.8 (internal citations omitted).

"The fact that [the patent holder] can articulate a definition supported by the specification … does not end the inquiry.  Even if a claim term's definition can be reduced to words, the claim is still indefinite *if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope*." *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1251 (Fed. Cir. 2008); *see also*

45119387.2

*Datamize*, 417 F.3d at 1350 ("***The scope of claim language cannot depend solely on the unrestrained, subjective opinion*** of a particular individual purportedly practicing the invention.").

And while Finjan argued to this Court that claims should be construed to preserve their validity (Ex. 1 at 68), the Federal Circuit has not adopted that position. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1327 (Fed. Cir. 2005) ("While we have acknowledged the maxim that claims should be construed to preserve their validity, we have not applied that principle broadly, and we have certainly not endorsed a regime in which validity analysis is a regular component of claim construction."). In other words, claims should be construed correctly, and if such a construction results in the claims being indefinite then the claims are indefinite. For example, if a patentee acts as his own lexicographer and defines a term in such a way that the term is indefinite, it would be error for a court to "fix" the definition the patentee created to preserve validity. *Elekta Instrument S.A. v. O.U.R. Sci. Int'l, Inc.*, 214 F.3d 1302, 1309 (Fed. Cir. 2000) (finding that if the construction of the claim is clear and renders the claim invalid, then the claim is invalid).

## IV.   <u>ARGUMENT</u>

### A.   "Small" Is a Term of Degree with No Intrinsic Evidence Supporting a Definitive Scope.

Because "small" is a term of degree, the intrinsic record must contain sufficient information such that a skilled artisan would have "clear notice of what is claimed." *See DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1260 (Fed. Cir. 2014). However, there is no intrinsic evidence for the meaning of "small." For example, none of the specifications include a standard of measurement for "small." *Input/Output, Inc. v. Sercel, Inc.*, No. 5:06-CV-236, 2008 U.S. Dist. LEXIS 124418, at *71 (E.D. Tex. Apr. 28, 2008) (finding "***small*** positive difference" indefinite "because the amount of 'smallness' is subjective" when no standard of measurement was provided in the patent). While some of the patents provide the examples of Java applets and JavaScript scripts as examples of "Downloadables," the specifications are devoid of any meaningful way to

45119387.2

determine which applets or scripts fall within the scope of "small."  Because the specifications of the asserted patents provide little context for "Downloadable" and no context or definition of "small," the public has no indication as to which programs fall within (or without) the claims of the asserted patents and therefore no way to know if they are infringing the patents.  *See Innovative Display Techs. LLC v. Acer Inc*., No. 2:13-CV-522-JRG, 2014 U.S. Dist. LEXIS 118422, at *74 (E.D. Tex. Aug. 26, 2014) (finding indefinite "a pattern of deformities on one side of the sheet or film having a width and length that is ***quite small*** in relation to the width and length of the sheet or film" because "neither the examiner nor the patentee provided any indication of the significance of the term 'quite small'.").

In cases where the term of degree "small" was found to be definite, the specification gave explicit definitions of what qualified as small.  *See, e.g., Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, No. 2:16-CV-134-JRG-RSP, 2016 U.S. Dist. LEXIS 155753, at *54 (E.D. Tex. Nov. 9, 2016) (finding "small" to be definite when the patent defined a "small dielectric constant" as a dielectric constant "not greater than that of silicon dioxide.").  However, the specifications of the asserted patents provide no such precision—in fact, the four corners of the asserted patents do not use the word "small;" instead that term comes from the incorporated-by-reference patents such as the '962 patent, without which the asserted patents would lack written description support and would have later filing dates.  But even in the '962 patent, the only reference to "small" is included in the ***definition*** of "Downloadable" ***provided by the patentee***.  The word appears nowhere else in the specification.  Because the specifications of the patents do not provide a meaningful limit on the scope of the term "small" such that a person of skill in the art could understand what "small" meant, the term "Downloadable" is indefinite. *Halliburton Energy Servs.*, 514 F.3d at 1251.

45119387.2

**B.     Finjan's Own Experts' Disagreement on the Definition of "Small" Further Demonstrates the Term Has No Definitive Scope.**

The Federal Circuit has "also authorized district courts to rely on extrinsic evidence, such as expert testimony." *Datamize*, 417 F.3d at 1348. "The opinion of an expert can illuminate the meaning of an ambiguous term of degree." *Apple, Inc. v. Samsung Elecs. Co.*, 932 F. Supp. 2d 1076, 1082 (N.D. Cal. 2013) (citing *Datamize*, 417 F.3d at 1353-54; *Amgen, Inc. v. Chugai Pharm. Co.*, 927 F.2d 1200, 1218 (Fed. Cir. 1991)).

None of Finjan's experts could "illuminate" the meaning of the "ambiguous term of degree." Instead, their deposition testimony demonstrated precisely why the term is ambiguous. When asked to define what "small" meant, the experts' answers were extremely varied, ranging from "*a few megs* … something that's *not multiple gigs* or really large" (Cole) to "*less than 10 kilobytes*" (Mitzenmacher), to "an application program that would be *smaller than* something like Microsoft Word, which is *hundreds of megabytes* in size" (Medvidović), to "on the order of … 5, 10 kilobytes, then something on the *order of gigabytes* would be an example of something that's not small in that context." (Goodrich). And when these ranges would apply, for some of Finjan's experts, included a temporal component. Thus, even Finjan's own experts could not agree on the appropriate scale for "small."

If there were any lack of clarity that the term Downloadable is indefinite, Dr. Cole's trial testimony removed all doubt. At trial, Dr. Cole proffered an entirely new opinion that the term "small" had nothing at all to do with the *size* of a Downloadable, but instead depended solely on whether or not the file was *installed* and its *function*. Thus, according to Dr. Cole, even a two terabyte file could constitute a "small executable or application program" within the ambit of the '844 patent, without regard to computer speed or time of patent assertion. Dr. Cole's trial testimony only contributed greater uncertainty as to the scope of the term "small" because it created a chasm between himself and Finjan's invalidity expert, Dr. Goodrich. While Dr. Cole testified

13                                                        17cv0183

at trial that "installation" was the key, Dr. Goodrich, at his expert deposition, disagreed. He testified that Internet Explorer, an executable that is installed, "could be [a] downloadable or not, ***depending on what it's being compared to***." *See* D.I. 478-8 at 103:7-20.  Dr. Goodrich did not testify that Internet Explorer could never be a Downloadable because it is a file that is installed (as Dr. Cole testified).  Instead, Dr. Goodrich testified that Internet Explorer ***could*** be a Downloadable but that one would have to compare the size of Internet Explorer to other files.  Thus, even if Dr. Cole's novel construction should be considered (and it shouldn't), Finjan's experts remain irreconcilably at odds regarding the scope of the term.  That is the textbook basis for finding a term indefinite.

Further proving the elusive and amorphous nature of the term, Dr. Goodrich agreed that the term "small" is relative and context-dependent: "Small is a relative term".  The testimony of Finjan's experts prove that "small" "might mean several different things and no informed and confident choice is available among the contending definitions."  That is precisely the scenario that *Nautilus* articulated as rendering a term indefinite.  *See* 572 U.S. at 911 n.8.  Moreover, when asked "[i]f I wanted to avoid infringing the '844 Patent, and therefore, I was only going to scan files that weren't 'small,' at what level would I be allowed to start scanning and not violate the patent?", Dr. Cole responded at his expert deposition "I can't give you an exact number.  You'd have to look at the context."  D.I. 478-5 at 169:1-10.  And that indeed is the crux of the matter.  At trial, Dr. Cole further compounded that ambiguity by testifying that file size doesn't even matter, only whether or not the file was installed, despite at least another of Finjan's experts testifying that "installation" would not be the determining factor.

Given the irreconcilable definitions proffered by Finjan's experts, a person attempting to avoid infringement simply could not do so because neither the intrinsic nor extrinsic evidence provides any guidance as to which files to be scanned would be infringing and which would not.  Infringement of this limitation is therefore an entirely subjective enterprise, subject to the whims of whichever expert Finjan hires.  Is it five

45119387.2

kilobytes?  Ten kilobytes?  A few megabytes?  Hundreds of megabytes?  Less than three gigabytes?  Two terabytes?  No one knows!  Not even Finjan's own experts, who offer a range from 5,000 bytes to two terabytes.  Given such a vast size range, and a potential unspecified temporal component to boot, the public could not possibly be expected to know.  As such, the term "Downloadable" is indefinite because people of skill in the art cannot define the bounds of "small" such that the public can determine whether or not they infringe.  *See Oakley*, 316 F.3d at 1340.

## C.   Finjan's Previous Arguments Opposing Summary Judgment Fail to Demonstrate a Material Issue of Fact.

Finjan's arguments in opposition to ESET's original motion for Summary Judgment of Indefiniteness (D.I. 478) fail to raise a genuine material issue of fact.

First, Finjan argued that the Court had already determined that the term was definite by providing a construction.  As set forth above, the Court did not make that determination during the claim construction phase, but clearly left that determination for another day.  At the summary judgment hearing, this Court agreed that the issue had been properly preserved and that the Court had not previously ruled on the issue. Declaration of Scott A. Penner in Support of ESET's Renewed Motion for Summary Judgment of Invalidity Based on Indefiniteness of the Term Downloadable, Ex. 1 (Summary Judgment Hearing Tr.) at 12:1-18.

Second, Finjan argued that ESET's expert, Dr. Spafford, understood the definition of "small" and therefore it could not be indefinite.  D.I. 610 ("Opposition") at 9-10.  As ESET previously explained, Dr. Spafford's determination that *some* files may qualify as "small" for the purposes of demonstrating invalidity does not demonstrate that one of skill in the art would have understood what constitutes the boundary between "small" and "not small."  Dr. Spafford did not opine that the term was definite nor did he opine that there is a recognizable upper bound to "small."  To the contrary, Finjan did not even ask Dr. Spafford what the term "small" meant in the context of a Downloadable during his expert deposition.  Dr. Spafford explicitly stated in his report that his analysis

45119387.2

presumed that, "[f]or all terms not construed by the Court, [he] applied the constructions of the terms ascribed by Finjan in Finjan's infringement contentions as best as [he had] been able to determine from those contentions." D.I. 559-9 at ¶ 27.  Dr. Spafford's analysis was predicated on the ground that "if what Finjan's experts' claim does in fact infringe, then the same type of files would demonstrate invalidity."  Finjan's contention is unsupported in the record and moreover fails to raise a genuine fact issue.

Third, Finjan argued that "small" did not need numerical precision.  Opposition at 11-12.  While mathematical precision is not required, there must be no more than "a modicum of uncertainty."  *Nautilus*, 572 U.S. at 910.  Here, on the upper end of "small" Finjan's experts provide ranges that span ***9 orders of magnitude*** (from mere kilobytes to two terabytes).[5]  That is more than "a ***modicum*** of uncertainty."

ESET does not argue that the upper bound must be defined as a precise number of bytes, but there must be ***something*** to fulfill the public notion function of the patent claims.  *Id.* ("[A] patent must be precise enough to afford clear notice of what is claimed, thereby apprising the public of what is still open to them … To tolerate imprecision just short of that rendering a claim 'insolubly ambiguous' would diminish the definiteness requirement's public-notice function and foster the innovation-discouraging 'zone of uncertainty'"); *see, e.g., Abdou v. Alphatec Spine, Inc.*, No. 12-CV-1804 BEN (RBB), 2014 U.S. Dist. LEXIS 163044, at *26-27 (S.D. Cal. Nov. 19, 2014) (finding the term "first surface" indefinite due to a "lack of clarity in these claims leav[ing] the next inventor in the 'zone of uncertainty,' not knowing what is claimed and what is still open.").

Finjan's ad hoc effort to resolve the problem by focusing on "installation" fails for myriad reasons: (1) "installation" has nothing to do with the plain and ordinary meaning of "small" which relates to size; (2) "installation" has no basis in the specification; (3) Dr. Cole's novel trial definition is completely unsupported (and indeed at odds) with his

---

[5] When ESET filed its original motion, Finjan's expert had testified at deposition to ranges between 5KB and 3GB.  At trial, Dr. Cole expanded the range to include a 2TB file.

17cv0183

45119387.2

expert report and deposition testimony; and (4) even Finjan's own experts are insolubly at odds with one another with respect to Finjan's new definition because Dr. Cole says any file that is "installed" cannot be "small" but Dr. Goodrich says that a file that is "installed" can be "small" depending on the size of other files. Finjan's redefinition of the term "small" adds nothing but more ambiguity.

# V.    **CONCLUSION**

For all of the foregoing reasons, this Court should grant summary judgment of invalidity based on indefiniteness of the term "Downloadable" in U.S. Patent Nos. 6,154,844, 6,804,780, 8,079,086, 9,189,621, and 9,219,755.


Dated:  August 21, 2020             Respectfully submitted,

                                    **EVERSHEDS SUTHERLAND (US) LLP**



                                    */s/ Scott A. Penner*
                                    NICOLA A. PISANO, CA Bar No. 151282
                                        NicolaPisano@eversheds-sutherland.com
                                    JOSE L. PATIÑO, CA Bar No. 149568
                                        JosePatino@eversheds-sutherland.com
                                    JUSTIN E. GRAY, CA Bar No. 282452
                                        JustinGray@eversheds-sutherland.com
                                    SCOTT A. PENNER, CA Bar No. 253716
                                        ScottPenner@eversheds-sutherland.com
                                    12255 EL CAMINO REAL, SUITE 100
                                    SAN DIEGO, CALIFORNIA  92130
                                    TELEPHONE:      858.252.6502
                                    FACSIMILE:      858.252.6503

                                    Attorneys for Defendants and Counter-Plaintiffs
                                    ESET, LLC and ESET, SPOL. S.R.O.

45119387.2