NICOLA A. PISANO, CA Bar No. 151282
   NicolaPisano@eversheds-sutherland.com
JOSE L. PATIÑO, CA Bar No. 149568
   JosePatino@eversheds-sutherland.com
JUSTIN E. GRAY, CA Bar No. 282452
   JustinGray@eversheds-sutherland.com
SCOTT A. PENNER, CA Bar No. 253716
   ScottPenner@eversheds-sutherland.com
**EVERSHEDS SUTHERLAND (US) LLP**
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA  92130
TELEPHONE:   858.252.6502
FACSIMILE:   858.252.6503

Attorneys for Defendants and Counter-Plaintiffs
ESET, LLC and ESET, SPOL. S.R.O.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN, INC., <br><br> Plaintiff, <br><br> v. <br><br> ESET, LLC, et al., <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIMS. | Case No. 3:17-cv-0183-CAB-BGS <br><br> **ESET, LLC AND ESET, SPOL. S.R.O.'S MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THE EFFECTIVE FILING DATE OF U.S. PATENT NO. 6,154,844** <br><br> Judge:   Hon. Cathy Ann Bencivengo <br><br> PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 1 |
|  | A. Finjan Improperly Claims a November 8, 1996 Priority Date | 1 |
|  | B. A Certificate of Correction Removed Priority for the '844 Patent. | 2 |
|  | C. The Patent Trial and Appeal Board Rejected the Priority Claim | 2 |
| III. | LEGAL STANDARDS | 4 |
| IV. | ARGUMENT | 5 |
|  | A. The '844 Patent Is Entitled to a Priority Date No Earlier than December 22, 1997 | 5 |
|  |     1. The '844 patent is not entitled to the filing date of the '639 application. | 5 |
|  |     2. The '844 patent is not entitled to the filing date of the '194 and '520 patents. | 10 |
|  |     3. The '844 patent's priority date is no earlier than December 22, 1997. | 11 |
|  | B. The '844 Patent's Priority Claims Remain Defective | 11 |
| V. | CONCLUSION | 12 |

45153421.3

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott GMBH & Co., KG v. Centocor Ortho Biotech, Inc.*,
  870 F. Supp. 2d 206 (D. Mass. 2012) .................................................................. 9

*Ariad Pharms., Inc. v. Eli Lilly and Co.*,
  598 F.3d 1336 (Fed. Cir. 2010) (en banc) ..................................................... 4, 6, 8, 10

*Droplets, Inc. v. E*TRADE Bank*,
  887 F.3d 1309 (Fed. Cir. 2018) ......................................................................... 11

*Finjan, Inc. v. Proofpoint, Inc.*,
  No. 13-cv-05808-HSG, 2016 U.S. Dist. LEXIS 49202
  (N.D. Cal. Apr. 12, 2016) ................................................................................ 6, 9

*New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co.*,
  298 F.3d 1290 (Fed. Cir. 2002) ......................................................................... 4, 5

**Statutes**

35 U.S.C.:
  Section 112 ................................................................................................. *passim*
  Section 119 ......................................................................................................... 3
  Section 119(e)(1) ................................................................................................ 1
  Section 120 ......................................................................................................... 3
  Section 141 ......................................................................................................... 9
  Section 141(c) .................................................................................................... 4
  Section 142 ......................................................................................................... 9

**Other Authorities**

37 CFR § 1.78 ....................................................................................................... 11

37 C.F.R. § 1.78(a)(2) ........................................................................................ 4, 12

37 C.F.R. § 42.71(d)(2) ........................................................................................ 4, 9

37 CFR § 90.3 ......................................................................................................... 9

45153421.3

I. **INTRODUCTION**

Pursuant to this Court's Minute Order of July 23, 2020 (D.I. 802), ESET, spol. s.r.o. and ESET, LLC (collectively, "ESET") file this renewed motion for partial summary judgment that the effective filing date of U.S. Patent No. 6,154,844 is no earlier than its actual December 22, 1997 filing date. The Court previously indicated that the patent was ineligible to claim priority to the filing date of a provisional application, based on a then-ongoing proceeding at the Patent Office, and further stated "with regard to the priority date motion, the Court wants the further briefing on the '844. It's still my interpretation that the Patent Office shut the door on the '844 claiming priority to the provisional application." *See* Declaration of Nicola A. Pisano in Support of ESET's Renewed Motions for Summary Judgment Regarding U.S. Patent No. 6,154,844 ("Pisano Decl."), Ex. D (Summary Judgment Hearing Transcript) at 51; *see also id*. at 38. ESET submits this renewed motion to bring to the Court's attention that the Patent Office recently reaffirmed its earlier conclusion that U.S. Patent No. 6,154,844 is entitled to a filing date of no earlier than December 22, 1997.

II. **FACTUAL BACKGROUND**

A. **Finjan Improperly Claims a November 8, 1996 Priority Date.**

Finjan, Inc. ("Finjan") contends that U.S. Patent No. 6,154,844 ("the '844 patent"), filed December 22, 1997, is entitled to the priority date of Provisional Application No. 60/030,639 ("the '639 application"), which was filed November 8, 1996. *See* Declaration of Christopher C. Bolten in Support of ESET's Motion for Partial Summary Judgment Regarding Effective Filing Dates of the Patents-In-Suit, D.I. 483 ("Bolten Decl."),[1] Ex. 1 (D.I. 483-4) at 33-34.[2] As originally filed, the application for the '844 patent purported to claim priority to the '639 application, filed ***more*** than one

---

[1] Citations to exhibits refer to those attached to the previously-filed Bolten Decl. (D.I. 483) unless otherwise noted.
[2] Dr. Jaeger opined that the '844 patent is entitled to the priority date of November 8, 1996. Ex. 2 (D.I. 483-5) at ¶ 15. Dr. Orso, based on discussions with Drs. Jaeger and Goodrich, opined that the priority date for each of the patents is November 6, 1996. Ex. 4 (D.I. 483-7) at ¶¶ 44-45.

year earlier. Under 35 U.S.C. § 119(e)(1), a claim for priority to a previously filed provisional application must be made within 12 months of the filing date of the provisional application. Accordingly, the claim of priority to the '639 application was facially invalid.[3]

### B. A Certificate of Correction Removed Priority for the '844 Patent.

On March 18, 2016, recognizing the defect in its priority claim, Finjan filed a request for a Certificate of Correction for the '844 patent, entitled "Petition to Amend Priority Claim in Patent." Finjan sought to make two corrections. Ex. 8 (D.I. 483-11) at 1-2. Finjan sought to delete the priority claim to the '639 application and to add priority claims to U.S. Patent Nos. 6,092,194 ("the '194 patent") and 6,167,520 ("the '520 patent"). *Id*. Finjan also sought to delete language that the '844 patent "claims benefit of" the '639 application, and to, *inter alia*, clarify that the '844 patent incorporates the '639 application by reference. *Id*. The USPTO issued a response stating that "[t]he first correction to indicate the priority is approved" but that "[t]he second correction to incorporate other applications by reference is denied." Ex. 9 (D.I. 483-12) at 2. A Certificate of Correction was issued deleting the priority claim to the '639 application and adding priority claims to the '194 and '520 patents. Ex. 5 (D.I. 483-8).

### C. The Patent Trial and Appeal Board Rejected the Priority Claim.

On April 7, 2020, the Patent Trial and Appeal Board ("PTAB") of the United States Patent and Trademark Office issued a final written decision in IPR2019-00026, which involved independent claims 1, 15, and 41 of the '844 patent.[4] *See* Pisano Decl. Ex. B. The PTAB found that the '844 patent was not entitled to an effective filing date earlier than December 22, 1997. Notably, the PTAB considered and rejected the same arguments that Finjan presented to this Court in response to ESET's prior motion. D.I.

---

[3] The original claim of priority to the '639 application in the '844 patent was removed in a Certificate of Correction. Ex. 5 (D.I. 483-8). Drs. Jaeger and Orso were unaware of this and the effect of the Certificate of Correction. Ex. 6 (D.I. 483-9) at 114:5-115:19; Ex. 7 (D.I. 483-10) at 178:6-179:10.

[4] In the present dispute, Finjan asserts independent claims 1 and 15 against ESET, as well as claim 7, which depends from claim 1. Thus, the findings of IPR2019-00026 pertaining to the priority date affect all asserted claims in this action.

483-1.

According to the PTAB, Finjan argued that "the '844 patent is entitled to the November 8, 1996, filing date of the '639 provisional because the patent meets all requirements under 35 U.S.C. §§ 119 and 120 to claim the benefit of the provisional filing date." *See* Pisano Decl. Ex. B at 25.  Finjan further argued that "the disclosure of the '639 provisional supports the challenged claims of the '844 patent under 35 U.S.C. § 112, and the '639 provisional also is incorporated by reference into the '844, '194, and '520 patents, providing continuity of disclosure from the '639 provisional through the '844 patent." *See id.* at 25-26.  Finjan made the same assertions to this Court, arguing that "[t]he '844 Patent claims are entitled to the filing date of the 1996 Application because (1) Finjan properly claims a priority date of November 8, 1996, for the '844 Patent under 35 U.S.C. §§ 119 and 120 and (2) the claims of the '844 Patent are supported by the 1996 Application." *See* D.I. 608 at 2.

In rejecting Finjan's arguments, the PTAB concluded it "remain[ed] unpersuaded that the challenged claims are entitled to a priority date any earlier than the December 22, 1997, filing date of the '648 application."  Pisano Decl. Ex. B at 32.  In reaching this decision, the PTAB decided that:

- Finjan had failed to meet its burden of proving written description support in the priority application, and no presumption applied because the specifications for the '844 patent and '639 application were not the same;
- Rejected Finjan's contention that "[b]ecause a DSP is linked to the Downloadable before the Downloadable reaches a web client, the 'linking . . . before a web server makes a Downloadable available to a web client' is disclosed in the '639 Provisional Application";
- Finjan did "not identify a web server [in the disclosure of the '639 application] that makes the Downloadable available to web clients after such linking, as required by the challenged claims"; and
- Finjan had failed to establish "that the '639 provisional demonstrates

> possession by the inventors of linking a DSP to the Downloadable '***before a web server*** makes the Downloadable available to web clients.'"

*Id.* at 32-35. The PTAB therefore concluded that it was "not persuaded that the inventors were in possession of the subject matter of the challenged claims at any time prior to the December 22, 1997, filing date of the '648 application." *Id.* at 35.

The PTAB also held, as an independent basis for concluding that the challenged claims are not entitled to any earlier priority date, that Finjan failed to demonstrate compliance with the requirement of 37 C.F.R. § 1.78(a)(2), which requires that "[a]ny nonprovisional application claiming the benefit of one or more prior filed copending nonprovisional applications . . . must contain or be amended to contain in the first sentence of the specification following the title a reference to each such prior application . . . ***indicating the relationship of the applications***." *Id.* at 35-36 (emphasis provided by PTAB). "The 'PRIORITY REFERENCE TO RELATED APPLICATIONS' section of the '844 patent fails to meet that requirement, because it does not 'indicat[e] the relationship" of the '639 provisional, '388 application, and '097 application to the '844 patent.'" *Id.* at 36. The PTAB also rejected Finjan's argument that the Office denied its Request for Certificate of Correction because "no correction was necessary," but rather "the Office instead denied the request because it was an improper attempt to perfect a claim of priority that was not found in the original application." *Id.*

Neither party to the IPR filed a request for rehearing within the 30-day window following the final written decision (*see* 37 C.F.R. § 42.71(d)(2)), nor appealed the decision to the Federal Circuit (*see* 35 U.S.C. § 141(c)).

### III. <u>LEGAL STANDARDS</u>

Patent claims are entitled to a provisional application's earlier filing date only if that application contains written description under Section 112 disclosing the claims. *New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1294 (Fed. Cir. 2002). To satisfy that requirement, a patent specification must describe the claimed invention in sufficient detail that one skilled in the art can reasonably conclude that the inventor had

possession of the claimed invention. *Ariad Pharms., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). There is no presumption of accuracy for a priority claim where the specifications of the earlier and later applications are not the same. Ex. 13 (D.I. 483-17) at 29; Pisano Decl. Ex. B at 32 (citing *Polaris Wireless, Inc. v. TruePosition, Inc.*, Case No. IPR2013-00323, Paper 9 at 25 (PTAB Nov. 15, 2013)). The "Patent Owner must come forward with evidence and argument … showing why the challenged claim is supported by the written description." Ex. 14 (D.I. 483-18) at 16, *citing Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008); Pisano Decl. Ex. B at 33 (citing *Nintendo of Am. Inc. v. iLife Techs.*, Case No. IPR2015-00106, Paper 12 at 16 (PTAB Apr. 29, 2015)).

## IV. ARGUMENT

Although ESET believes that the Patent Office's confirmation that the '844 patent is not entitled to an earlier effective filing date is dispositive, ESET includes in this renewed motion the arguments previously presented to provide a complete record.

### A. The '844 Patent Is Entitled to a Priority Date No Earlier than December 22, 1997.

#### 1. The '844 patent is not entitled to the filing date of the '639 application.

The application that issued as the '844 patent was filed more than twelve months after the '639 application.[5] In its request for Certificate of Correction, Finjan tried to cure this error by deleting the priority claim to the '639 application and instead "indirectly" claim priority by incorporating the '639 application by reference. Ex. 8 (D.I. 483-11) at 2; Ex. 15 (D.I. 483-19) at 2.

The USPTO was unpersuaded by Finjan's effort to circumvent the Patent Statute and only approved the request for Certificate for Correction "in part." Ex. 9 (D.I. 483-12) at 2. An applicant may not create an "indirect" chain of priority to cure a defective claim of priority. *See New Railhead Mfg.*, 298 F.3d at 1294, *citing* 35 U.S.C. § 111(b).

---

[5] Finjan states in its request for Certification of Correction that the '639 application "had expired before the filing date of this application." Ex. 8 (D.I. 483-11) at 2.

And in a 2019 decision of an Inter Partes Review (IPR) of the '844 patent, the PTAB similarly concluded that "we agree with Petitioner … that the challenged claims are not entitled to a priority date any earlier than … December 22, 1997." Ex. 16 (D.I. 483-20) at 22. The PTAB recently reached that same conclusion again in its April 7, 2020 decision in IPR2019-00026. Pisano Decl. Ex. B at 32-37 (concluding that "we are not persuaded that the '639 provisional demonstrates possession by the inventors of linking a DSP to the Downloadable '***before a web server*** makes the Downloadable available to web clients.'") (emphasis provided by PTAB).[6]

Apart from the cancelled priority claim, the '639 application simply does not provide written description support under Section 112 for the asserted claims of the '844 patent. *See Ariad Pharms.*, 598 F.3d at 1351. As Dr. Spafford explained, and the PTAB independently concluded, the '639 application does not convey with reasonable clarity to one skilled in the art that the inventors were in possession of the invention of linking a DSP to the Downloadable ***before a web server*** makes the Downloadable available to web clients, as required by the asserted claims of the '844 patent. Ex. 17 (D.I. 483-21) at ¶ 189; Pisano Decl. Ex. B at 35. This is for the simple reason, as noted by the PTAB, that the '639 application does not disclose a "web server" as required by the claims.[7]

Dr. Jaeger opined that support for the "linking element" can be found in the '639 application at "3:14-19, Fig. 1, 6:12-14, 10:7-9, 10:16-20, 11:2-5, 11:9-12, 15:8-13, claim 2 (18:6-8), claim 3 (19:5-6)." Ex. 2 (D.I. 483-5) at ¶ 81. But none of those citations discloses linking a first Downloadable security profile to the Downloadable ***before*** a web server makes the Downloadable available to web clients. As Dr. Spafford

---

[6] Likewise, in *Finjan, Inc. v. Proofpoint, Inc.*, the court granted summary judgment that Finjan was precluded from arguing that the '844 patent was entitled to the benefit of a priority date earlier than the December 22, 1997 filing date because of the collateral estoppel effect of a "November 20, 2015 order in *Finjan v. Blue Coat Systems, Inc.*, which held that the 'presumptive invention date of the '844 patent is its filing date.'" *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-cv-05808-HSG, 2016 U.S. Dist. LEXIS 49202, at *22-24 (N.D. Cal. Apr. 12, 2016).

[7] Nothing submitted by Finjan in opposition to ESET's original motion regarding the effective filing date for the '844 patent can overcome the reasoning and conclusion of PTAB as set forth in Pisano Decl. Ex. B, which considered and rejected all of those same arguments.

observed, the '639 application does not even mention the word "server." Ex. 17 (D.I. 483-21) at ¶ 189.

In Dr. Jaeger's deposition on March 12, 2019, he was asked to identify the support in the '639 application for the asserted claims of the '844 patent and, specifically, where the "before a web server …" limitation appears. Ex. 6 (D.I. 483-9) at 38:22-39:1. He responded that he did not see that exact phrase, but that he did see "information disclosed in the specification that supports that." *Id*. at 39:7-9. Dr. Jaeger then suggested that:

> "the specification talks about things like "downloadables" and as an example points to "Java applets and ActiveX controls" and suggested that "Java applets and ActiveX controls [] are commonly distributed by web servers to web clients and the method described in the specification and shown, for example, in Figure 3 shows the downloadable being received by the method and then downloadable being forwarded if it's nonhostile after processing in the method." *Id*. at 39:14-24.

When asked about where the web server appears in Figure 3, Dr. Jaeger stated:

> "I think a person of ordinary skill would understand that the ***received downloadable*** would include the notion that its coming from a web server because the Java applets and the ActiveX controls are commonly sent from a web server." *Id*. at 43:5-9 (emphasis added).

Also, when asked where the web server is depicted in Figure 3, Dr. Jaeger responded:

> "I think the received downloadable shown coming across that line - - that is 255, that dotted line for 255, the ***received downloadable*** is coming across that dotted line - - it's coming from something like the web server. And some - - a person of ordinary skill would understand that the received downloadable is an example of something that would be sent by a web server, and so that would be inferred by a person of ordinary skill there." *Id*. at 44:12-20 (emphasis added).



FIG. 3

1 Figure 3 of the '639 application is reproduced above. *See* Ex. 18 (D.I. 483-22) at 44.
2 Dr. Jaeger's testimony confirms that the claimed "web server" is ***not*** only not depicted
3 in Figure 3, but that he placed it prior to the Downloadable entering ID Generator 315.

4 Dr. Jaeger's explanation is more than a bit puzzling. How could "linking" occur
5 ***before*** the web server makes the Downloadable available to web clients, if the
6 Downloadable is already on the web server before it is received by the system of Figure
7 3? When asked about this inconsistency, Dr. Jaeger said the web server also could be on
8 the right side of the figure so that it could distribute the linked Downloadable to the web
9 clients. Ex. 6 (D.I. 483-9) at 48:15-49:2. Dr. Jaeger's testimony demonstrates beyond
10 dispute that not even a skilled expert could find support for the claimed web server of
11 the '844 patent in the '639 application.

12 Dr. Jaeger also testified about the term "linking." When asked if the
13 downloadable and the corresponding DSP data are linked, Dr. Jaeger responded:

> "I think one of ordinary skill understands that the sending in this context in view of the patent at large send the downloadable and the corresponding DSP data from the code scanner together in the same message to the second comparator" and "[t]hen that would be one way of linking the downloadable and the DSP." *Id*. at 55:20-56:5.

18 Thus, when asked to identify support in the '639 application for linking the first
19 Downloadable security profile to the Downloadable "before" a web server makes the
20 Downloadable available to web clients, Dr. Jaeger also pointed to the terms "Java
21 applets and ActiveX controls" and the dotted line in Figure 3, suggesting that those
22 terms would have informed a person of ordinary skill in the art about linking the
23 Downloadable security profile to the Downloadable before a web server makes the
24 Downloadable available to web clients. Dr. Jaeger did not explain how that limitation
25 could be known by a person of ordinary skill yet still be patentably differentiated from
26 the prior art.

27 In cobbling together parts of the disclosure with what he believes one skilled in
28 the art would have understood, Dr. Jaeger impermissibly applies hindsight to find

support for the claimed invention. However, a description that merely renders the invention obvious does not satisfy the written description requirement. *See Ariad Pharms.*, 598 F.3d at 1352. By filling the voids in the specification with knowledge of a person of ordinary skill, Dr. Jaeger admits that the asserted claims lack written description.

Dr. Jaeger also argues that in the 2015 case of *Finjan, Inc. v. Blue Coat Systems*, a jury found that the '844 patent has a conception date of November 8, 1996. Ex. 2 (D.I. 483-5) at ¶ 79; Ex. 19 (D.I. 483-23) at 4. But that jury verdict predates the Certificate of Correction, which deleted the priority claim to the '639 application. Ex. 5 (D.I. 483-8). Applying a jury finding based on a different claim construction, while ignoring the Certificate of Correction, is wholly inappropriate.

On the contrary, ***following*** the issuance of the Certificate of Correction, Finjan had a full and fair opportunity before the PTAB to determine the priority date of the '844 patent as part of IPR2019-00026, which involved both of the independent claims asserted in this action. Pisano Decl. Ex. B. As part of that IPR, Finjan argued that the challenged claims of the '844 patent were entitled to the priority date of the '639 application, and supported those arguments with testimony from Dr. Jaeger. *Id*. at 25-37. Finjan lost this argument before the PTAB, which issued a final written decision concluding that "the challenged claims were not entitled to a priority date any earlier than the December 22, 1997, filing date of the application for the '844 patent." *Id*. at 20-21. No rehearing or appeal of that final written decision was sought, and the time to do so has expired. *See* 37 C.F.R. § 42.71(d)(2) (30 days following written decision to seek rehearing); 37 CFR § 90.3 (sixty-three (63) days after the date of the final Board decision to file notice of appeal under 35 U.S.C. 141 pursuant to 35 U.S.C. 142). Under these circumstances, collateral estoppel should apply to prevent Finjan from relitigating the same priority date issues that it argued and lost before the PTAB. *See Finjan, Inc. v. Proofpoint, Inc.*, No. 13-cv-05808-HSG, 2016 U.S. Dist. LEXIS 49202, at *22-24 (N.D. Cal. Apr. 12, 2016); *Abbott GMBH & Co., KG v. Centocor Ortho Biotech, Inc.*, 870 F.

Supp. 2d 206, 222-23 (D. Mass. 2012) (finding that USPTO decisions have preclusive effect).

Accordingly, the '844 patent cannot properly claim the priority date of the '639 application because that application lacks written description for the asserted claims.

### 2. The '844 patent is not entitled to the filing date of the '194 and '520 patents.

As amended by the Certificate of Correction, the '844 patent now claims priority to the '194 and '520 patents. Ex. 5 (D.I. 483-8). But neither of those patents contains written description support under Section 112 for the asserted claims of the '844 patent. *See Ariad Pharms.*, 598 F.3d at 1351. The PTAB considered all of Finjan's arguments here as well, and rejected Finjan's contention that it could perfect its priority claim to the '639 application via this avenue. As explained by Dr. Spafford in his expert report, the '194 and '520 patents do not convey with reasonable clarity to one skilled in the art that the inventors were in possession of linking a Downloadable security profile to the Downloadable *before* a web server makes the Downloadable available to web clients. Ex. 17 (D.I. 483-21) at ¶¶ 190-91.

Dr. Jaeger opines that the '844 patent is entitled the priority dates of the '194 and '520 patents, contending that support for the "linking element" can be found at "9:15-18, Fig. 3, 12:11-23, 13:16-19, 13:21-22, 17:14-16, Fig. 7, 18:8-10, 20:15-16, 21:14-16" for the '194 patent and "9:4-6, Fig. 2, 12:18-20, 15:3-6, Fig. 5" for the '520 patent. Ex. 2 (D.I. 483-5) at ¶ 81. None of these cited passages disclose linking the Downloadable security profile to the Downloadable "before" a web server makes the Downloadable available to web clients with reasonable clarity, such that one skilled the art would have understood that the inventors were in possession of that limitation. As Dr. Spafford observed, neither patent even uses the terms "web server" or "web client." Ex. 17 (D.I. 483-21) at ¶¶ 190-91.

Dr. Jaeger also points to Section IX.B of his report, where he focuses on code scanner 325 of the '194 patent. Ex. 2 (D.I. 483-5) at ¶ 81. Dr. Jaeger contends that

"code scanner 325 is able to determine the DSP data for a Downloadable (and thus links the Downloadable security profile to the Downloadable)." *Id.* at ¶ 658. He does not cite to anywhere in those patents, or otherwise, or provide any reasoning, supporting his conclusion that "[code scanner 325] links the Downloadable security profile to the Downloadable." Nor does he cite to any disclosure in either patent as to how such "linking" is accomplished.

Regarding the temporal restriction "before" in the claim limitation, Dr. Jaeger argues that "there is no restriction in the '194 Patent on … the timing on when the functionalities of the inspector are to be performed." *Id.* But the timing limitation, which was added to distinguish over the prior art cited during prosecution, is critical to patentability of the asserted claims of '844 patent. Ex. 20 (D.I. 483-24) at 5. Dr. Jaeger's concession that the '194 patent does not disclose the timing limitation only validates Dr. Spafford's conclusion that the '194 patent does not support the asserted claims of the '844 patent.

Accordingly, neither of the '194 and '520 patents contain written description under Section 112 to provide an early claim of priority for the asserted claims of the '844 patent.

### 3. **The '844 patent's priority date is no earlier than December 22, 1997.**

For all of the foregoing reasons, there is no issue of material fact that the '844 patent cannot claim priority to the '639 application either directly, or indirectly through the '194 or '520 patents. Accordingly, the '844 patent is not entitled to a priority date earlier than December 22, 1997.

### B. The '844 Patent's Priority Claims Remain Defective.

The '844 patent must comply with the requirements of 37 CFR § 1.78 to claim a priority date earlier than its filing date. *See Droplets, Inc. v. E*TRADE Bank*, 887 F.3d 1309, 1315 (Fed. Cir. 2018). "Specifically, regulation 1.78 provides that the application claiming the benefit of one or more prior-filed copending nonprovisional applications

must include 'a reference to each such prior-filed application, identifying it by application number (consisting of the series code and serial number)' and *indicating 'the relationship of the applications (i.e., whether the later-filed application is a continuation, divisional, or continuation-in-part of the prior-filed nonprovisional application or international application)*.'" *Id*. (citing 37 CFR § 1.78) (emphasis added); *see also* Pisano Decl. Ex. B at 21-22.

As noted by the PTAB, the '844 patent contained a defective priority claim that failed to list any relationships to the earlier applications. Pisano Decl. Ex. B at 21-22. Finjan sought to correct that deficiency through a Certificate of Correction, which was denied in relevant part. *See id.* at 36; Section II(B), *supra*. The PTAB found that despite Finjan's representation that "no correction was necessary"[8] – which the PTAB unequivocally rejected – the USPTO "instead denied the request because it was an improper attempt to perfect a claim of priority that was not found in the original application." Pisano Decl. Ex. B at 36. Accordingly, the '844 patent's priority claims remain defective. The PTAB found that the '844 patent's failure to comply with 37 C.F.R. § 1.78(a)(2) was itself an independent basis for concluding that the challenged claims are not entitled to any earlier priority date. *Id.* at 35. Neither party sought rehearing or appeal of that decision, and the time to do so has elapsed. Thus the '844 patent's priority date is no earlier than December 22, 1997.

## V. CONCLUSION

Because the earlier applications fail the written description requirement and because the '844 patent does not comply with 37 C.F.R. § 1.78(a)(2), ESET respectfully requests that this Court determine as a matter of law that the earliest priority date for the '844 patent is no earlier than its filing date of December 22, 1997.

---

[8] Finjan made similar representations to this Court. *See, e.g.*, Pisano Decl. Ex. D at 33-34 ("But if you remember in the briefing, it talks about how when we got the certificate of the correction and even though they gave it to us, they said it was unnecessary, that they thought the way we claimed it before was fine, but they still amended the paragraph in this way because that's how the prosecutor had viewed how the law had been in claiming the provisional.").

Dated:  August 21, 2020

Respectfully submitted,

**EVERSHEDS SUTHERLAND (US) LLP**

*/s/ Nicola A. Pisano*
NICOLA A. PISANO, CA Bar No. 151282
    NicolaPisano@eversheds-sutherland.com
JOSE L. PATIÑO, CA Bar No. 149568
    JosePatino@eversheds-sutherland.com
JUSTIN E. GRAY, CA Bar No. 282452
    JustinGray@eversheds-sutherland.com
SCOTT A. PENNER, CA Bar No. 253716
    ScottPenner@eversheds-sutherland.com
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA  92130
TELEPHONE:    858.252.6502
FACSIMILE:    858.252.6503

Attorneys for Defendants and Counter-Plaintiffs ESET, LLC and ESET, SPOL. S.R.O.