PAUL ANDRE (SBN 196585)
pandre@kramerlevin.com
LISA KOBIALKA (SBN 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (SBN 237978)
jhannah@kramerlevin.com
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 752-1700
Facsimile:   (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### SAN DIEGO DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>ESET, LLC, a California Limited Liability Corporation, and ESET SPOL. S.R.O., a Slovak Republic Corporation,<br><br>Defendants. | Case No. 3:17-cv-00183-CAB-BGS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF FINJAN, INC.'S OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THE EFFECTIVE FILING DATE OF U.S. PATENT NO. 6,154,844 AND CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT OF VALIDITY** |
| ESET, LLC, a California Limited Liability Corporation, and ESET SPOL. S.R.O., a Slovak Republic Corporation,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>FINJAN, INC., a Delaware Corporation,<br><br>Counterclaim-Defendant. | Judge:  Hon. Cathy Ann Bencivengo<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................ 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ........................... 1

    A.    The '844 Patent Expressly Claims Benefit to the 1996 Application and '194 and '520 Patents .................................................................. 1

    B.    IPR2019-00026 Found the '844 Patent Valid Over Abadi .......................... 3

III.    ESET'S RENEWED SUMMARY JUDGMENT MOTION SHOULD BE DENIED ........................................................................................... 4

    A.    This Court Is Not Bound By the PTAB's Findings On Priority Date .......... 5

    B.    There are Disputes of Material Fact as to whether Finjan's '844 Patent is Entitled to a Priority Date Earlier than December 22, 1997. ...................... 6

        **1.**    The '844 Patent Claims Priority to the 1996 Application ................. 7

        **2.**    The '844 Patent Claims were Constructively Reduced to Practice Through the Filing of the 1996 Application ..................................... 8

        **3.**    The 1996 Application Discloses the "Linking" Element ................. 9

        **4.**    The '194 and '520 Patents Disclose the "Linking" Claim Element . 11

IV.    FINJAN'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT OF VALIDITY SHOULD BE GRANTED ................................................. 12

V.    CONCLUSION ................................................................................. 13

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

5
*Abbot GMBH & Co., KG v. Centocor Ortho Biotech, Inc.*,
   870 F.Supp. 2d 206 (D. Mass. 2012)...............................................................5

6

7
*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)........................................................................................4

8
*Ariad Pharm., Inc. v. Eli Lilly & Co.*,
   598 F.3d 1336 (Fed. Cir. 2010) ...................................................................12

9

10
*Bradford Co. v. Conteyor N. Am., Inc.*,
   603 F.3d 1262 (Fed. Cir. 2010) .................................................................4, 9

11

12
*Carotek, Inc. v. Kobayashi Ventures, LLC*,
   875 F. Supp. 2d 313 (S.D.N.Y. 2012) .......................................................6, 7

13

14
*E.I. du Pont de Nemours & Co. v. MacDermid Printing Solutions, L.L.C.*,
   525 F.3d 1353 (Fed. Cir. 2008) ...................................................................6

15

16
*Frazer v. Schlegel*,
   498 F.3d 1283 (Fed. Cir. 2007) ...................................................................8

17

18
*In re Kaslow*,
   707 F.2d 1366 (Fed. Cir. 1983) ...........................................................10, 12

19

20
*Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*,
   285 F.3d 1353 (Fed. Cir. 2002) ...................................................................9

21

22
*New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co.*,
   298 F.3d 1290 (Fed. Cir. 2002) .................................................................12

23
*Taylor v. Sturgell*,
   553 U.S. 880 (2008)........................................................................................5

24

25
*Total Containment, Inc. v. Environ Prods.*,
   Civ. No. 99-1059, 1999 WL 717946 (Fed. Cir. Feb. 16, 1999) ................10

26

27

28

ii

**Federal Statutes**

35 U.S.C.
    § 112.................................................................................................4, 7
    §§ 119 and 120.........................................................................1, 2, 6, 7
    § 316(e) ..............................................................................................3

**Other Authorities**

37 C.F.R. § 1.78(a)(2) (1997) ............................................................3, 6

Fed. R. Civ. P. 56(a) .............................................................................4

U.S. Patent No. 6,092,194..................................................................8

U.S. Patent No. 6,154,844...........................................................*passim*

U.S. Patent No. 6,167,520...........................................................*passim*

U.S. Patent Nos. 6,092,194..........................................................*passim*

*Juniper Networks, Inc. v. Finjan, Inc.* IPR2019-00026, Final Written
    Decision .......................................................................3, 5, 6, 12

MEMO IN SUPPORT OF FINJAN'S     CASE NO. 3:17-cv-00183-CAB-BGS
OPP. RE: EFFECTIVE FILING DATE

# I.   INTRODUCTION

Defendants' Eset, LLC and Eset SPOL. S.R.O. (collectively "Defendants" or "Eset") Renewed Motion for Partial Summary Judgment Regarding the Effective Filing Date of U.S. Patent No. 6,154,844 ("Eset's Motion") should be denied because it presents issues rife with material facts—including whether U.S. Patent No. 6,154,844 (the "'844 Patent") can claim priority to Provisional Patent Application No. 60/030,639 (the "1996 Application") or to U.S. Patent Nos. 6,092,194 (the "'194 Patent") and 6,167,520 (the "'520 Patent").  In addition, there are factual issues as to whether the '844 Patent can claim priority to an earlier invention date based on reduction to practice. This Court is not bound by findings by the Patent and Trademark Appeals Board (PTAB) regarding the priority date of the '844 Patent during an *inter partes* review (IPR) proceeding, because they were not relevant to the PTAB's ultimate decision and they are contrary to multiple expert opinions and the prevailing law.  Therefore, Eset's Motion should be denied.

Moreover, based on the PTAB determination that the Abadi reference does not render claims of the '844 Patent obvious (which directly related to its ultimate decision), Eset cannot meet its burden to show that the Abadi reference invalidates the '844 Patent. Thus, Finjan cross-moves for a finding that the '844 Patent is valid over the Abadi reference.

# II.   FACTUAL AND PROCEDURAL BACKGROUND

## A.   The '844 Patent Expressly Claims Benefit to the 1996 Application and '194 and '520 Patents

The '844 Patent, as filed, specifically referenced the 1996 Application as required under 35 U.S.C. §§ 119 and 120.  As shown below, the '844 Patent claims the benefit of the 1996 Application as well as U.S. Patent Application Nos. 08/964,388 (the '194 Patent) and 08/790,097 (the '520 Patent):

This ***application claims benefit of*** and hereby incorporates by reference

1

> *provisional application Ser. No. 60/030,639*, entitled "System and Method for Protecting a Computer from Hostile Downloadables," filed on Nov. 8, 1996, by inventor Shlomo Touboul; *patent application Ser. No. 08/964,388,* entitled "System and Method for Protecting a Computer and a Network from Hostile Downloadables," filed on Nov. 6, 1997, by inventor Shlomo Touboul; and *patent application Ser. No. 08/790,097*, entitled "System and Method for Protecting a Client from Hostile Downloadables," filed on Jan. 29, 1997, also by inventor Shlomo Touboul.

Doc. No. 608-4 ('844 Patent)[1] at 1:7–19 (emphasis added).[2]  Accordingly, the '844 Patent includes an explicit reference to the 1996 Application and there is overlap of inventors.  Also, the '844 Patent claimed priority while the previously filed applications were still pending—*i.e.*, the '194 and '520 Patents were still pending when the '844 Patent application was filed.  35 U.S.C. § 120 (1999).

On March 18, 2016, Finjan filed a Certificate of Correction for the '844 Patent to include the familial relationship of the '844 Patent to the '194 and '520 Patents.  The Certificate of Correction issued on September 6, 2016.  Doc. No. 483-8 ('844 Patent Certificate of Correction).  On October 2, 2018, Juniper Networks filed a petition for IPR of the '844 Patent (the "Juniper IPR").  During the IPR proceeding, Juniper filed an expert report by Dr. Kevin Butler in the district court litigation, in which Dr. Butler argued evidence from the 1996 Application provided written description support for all elements of the '844 Patent claims.  Finjan filed a motion to terminate the IPR proceeding as it would moot the IPR proceeding.  *See* Wells Ex. 1, (IPR2019-00026 Motion to Terminate).  While not necessary for its decision, the PTAB disagreed with Finjan and Juniper's experts on written description support for the '844 Patent to claim priority back to the 1996 Application.  Notably, the PTAB did not dispute that the '844 Patent claimed priority to the 1996 Application, '194 Patent, or the '520 Patent under 35

---

[1] Unless otherwise noted, all exhibits are attached to the Declaration of Benu Wells in support of this opposition.

[2] The '194 and '520 Patents also claim the benefit of the 1996 Application.  *See* Doc. No. 506-13 ('194 Patent) at p. 14; Doc. No 608-5 ('520 Patent) at 1:6–11.

2

MEMO IN SUPPORT OF FINJAN'S            CASE NO. 3:17-cv-00183-CAB-BGS
OPP. RE: EFFECTIVE FILING DATE

1   U.S.C. § 120, just that Finjan had not complied with 37 C.F.R. § 1.78(a)(2) (1997) by

2   not indicating the relationship of the '194 and '520 Patents to the '844 Patent.  Doc. No.

3   809-3 (IPR2019-00026, Final Written Decision) at 36-37.

4   **B.     IPR2019-00026 Found the '844 Patent Valid Over Abadi**

5         Abadi is a patent with an alleged priority date of December 1, 1997.  Wells Ex. 2

6   (Abadi Reference).  In a prior patent infringement action that Finjan filed against Blue

7   Coat Systems, Inc., the jury found that Abadi did not anticipate the '844 Patent. Wells

8   Ex. 3 (*Finjan v. Blue Coat* Jury Verdict).

9         During the Juniper IPR, Juniper challenged Claims 1, 15, and 41 of the '844

10  Patent under obviousness by Abadi, and also challenged Claim 15 under obviousness by

11  Abadi in view of Gryaznov.  Doc. No. 809-3 (IPR2019-00026, Final Written Decision)

12  at 3, 8.  The PTAB instituted IPR on all grounds on April 9, 2019.  On April 7, 2020,

13  the PTAB found in its Final Written Decision that neither Abadi nor Abadi in view of

14  Gryaznov rendered obvious the challenged claims of the '844 Patent under the

15  preponderance of evidence standard.  Doc. No. 809-3 (IPR2019-00026, Final Written

16  Decision) at 66-67; 35 U.S.C. §316(e) (instituted IPRs are examined under the

17  preponderance of the evidence standard).  In particular, the PTAB confirmed that

18  "Abadi does not teach or suggest that 'the Downloadable' is made available to web

19  clients", Abadi's annotations are not security profiles that identify suspicious code, and

20  Abadi does not "teach[] or suggest linking 'the Downloadable security profile' to 'the

21  Downloadable'" under the preponderance of evidence standard.  Doc. No. 809-3

22  (IPR2019-00026, Final Written Decision) at 48, 54-55, 58-61.

23        Eset in this action has challenged the validity of the '844 Patent using the Abadi

24  reference for both anticipation and obviousness.  *See* Wells Ex. 4 (Spafford Invalidity

25  Rpt.) at Ex. A-3 at p. 1.  Eset's expert Dr. Spafford specifically bases his analysis

26  regarding Abadi on the same exact arguments that the PTAB rejected in the Juniper

27  IPR, namely that Abadi allegedly teaches Downloadables being made available to web

28

3

MEMO IN SUPPORT OF FINJAN'S          CASE NO. 3:17-cv-00183-CAB-BGS
OPP. RE: EFFECTIVE FILING DATE

clients, that Abadi's annotations are security profiles that identify suspicious code, and that Abadi teaches linking the Downloadable security profile to the Downloadable before making the Downloadable available to web clients. *See id.* at Ex. A-3 at p. 4-7, 11, 14-15.

## III.    ESET'S RENEWED SUMMARY JUDGMENT MOTION SHOULD BE DENIED

This Court is not bound by the PTAB's findings on the priority date of the '844 Patent because the determination of the priority date of the '844 Patent was not essential to the judgment nor did Finjan have a full and fair opportunity to litigate, and thus, collateral estoppel does not apply.

Moreover, summary judgment is not warranted because Eset cannot "show[] that there is no genuine dispute as to any material fact" with regard to the priority dates of the Patents-at-Issue. Fed. R. Civ. P. 56(a). As described below, the 1996 Application identifies the written support for each of the patents. Finjan's expert, Dr. Jaeger, set forth a detailed analysis regarding the appropriate priority dates for the Finjan patents asserted in this action, with citations to the intrinsic record of these patents. This evidence is "such that a reasonable jury could return a verdict for [Finjan]," precluding summary judgment. In consideration of Eset's Motion, "[t]he evidence of [Finjan] is to be believed, and all justifiable inferences are to be drawn in [Finjan's] favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). Because the determination of whether a priority document contains sufficient disclosure to comply with the written description aspect of 35 U.S.C. § 112 is a question of fact, and the parties have fundamental disagreements as to disclosure of the patents, Eset's Motion should be denied. *Bradford Co. v. Conteyor N. Am., Inc.,* 603 F.3d 1262, 1268 (Fed. Cir. 2010) (citation omitted).

In addition, based on the PTAB determination, Eset cannot met its burden to show invalidity of the '844 Patent over Abadi. As such, the Court should find that the '844 Patent is valid over Abadi.

4

### A. This Court Is Not Bound By the PTAB's Findings On Priority Date

The PTAB's decision in IPR2019-00026 regarding written description support and claims to priority do not bind this Court.  The PTAB decision has no preclusive effect because it was not relevant to the PTAB's ultimate decision nor was Finjan given a full and fair opportunity to litigate[3].  *See e.g.*, *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (noting that estoppel requires a "full and fair opportunity to litigate" and that the decision was necessary to the judgment); *Abbot GMBH & Co., KG v. Centocor Ortho Biotech, Inc.,* 870 F.Supp. 2d 206, 220 (D. Mass. 2012) (noting that collateral estoppel requires "determination of the issue was essential to the judgment").  Indeed, the PTAB's statements regarding written description and claim to priority were not necessary to its final decision that Abadi does not render obvious the claims of the '844 Patent, because the PTAB found that Abadi does not teach the claim elements of the '844 Patent.  Doc. No. 809-3 (IPR2019-00026, Final Written Decision) at 48, 54-55, 58-61.  Thus, the PTAB discussion of the priority date was not necessary for its judgment because it relied on other grounds to make its decision.

With respect to written description, the PTAB's decision was questionable given that Finjan and at least one of Juniper's experts *agreed* that there was written description support for the '844 Patent in the 1996 Application.  Wells Ex. 1 (IPR2019-00026 Motion to Terminate).  In addition, Finjan was not given a full and fair opportunity to litigate the issue.  Finjan was not given the chance to depose Juniper's expert, Dr. Butler, who had made statements in support of Finjan's claims to written description, nor was Finjan given the opportunity to provide additional expert declaration on the matter given the timing and procedural rules of the IPR proceeding.  Juniper had used a different expert, Dr. Seth Nelson, for the IPR proceeding, who had

---

[3] In addition, Eset's citation to the *Proofpoint* case is irrelevant because it pre-dates the issuance of the Certificate of Correction, and thus the issue has not been litigated. Motion at 6 fn6, 9.

MEMO IN SUPPORT OF FINJAN'S          CASE NO. 3:17-cv-00183-CAB-BGS
OPP. RE: EFFECTIVE FILING DATE

been deposed prior to Dr. Butler's expert report.  A portion of the underlying district court case was dismissed via stipulation before Dr. Butler was deposed, thus depriving Finjan an opportunity to depose Dr. Butler. Wells Decl ¶¶ 2-3.

Moreover, the PTAB's decision regarding the priority claim did not consider the prevailing case law, but rather merely disputed that Finjan had complied with 37 C.F.R. § 1.78(a)(2).  Doc. No. 809-3 (IPR2019-00026, Final Written Decision) at 36-37. However, as explained further below, the prevailing case law does not place such a restriction on compliance with 35 U.S.C. § 120.  In *Carotek, Inc. v. Kobayashi Ventures, LLC*, the test of whether there was "specific reference" to a claim to priority is whether "someone examining a patent claiming the benefit of one earlier filed is readily able to assess the patent's priority date."  875 F. Supp. 2d 313, 335 (S.D.N.Y. 2012) ("The Federal Circuit has, moreover, suggested that some lenity in this arena may be appropriate when a failure is only technical in nature and the public has received sufficient notice of a patent claim."); *see also E.I. du Pont de Nemours & Co. v. MacDermid Printing Solutions, L.L.C.,* 525 F.3d 1353, 1361-63 (Fed. Cir. 2008) (A Certificate of Correction can been issued to correct a priority claim).  Given that the '844 Patent specifically claims benefit to the 1996 Application, '194 Patent, and the '520 Patent, that test has been met.  Doc. No. 608-4 ('844 Patent) at 1:7-19.

Accordingly, this Court is not bound by the PTAB's determination.

**B. There are Disputes of Material Fact as to whether Finjan's '844 Patent is Entitled to a Priority Date Earlier than December 22, 1997.**

The '844 Patent is entitled to a priority date of November 8, 1996, because it claims priority to the 1996 Application through two parallel, intermediate patents: the '194 and '520 Patents.  The '844 Patent claims are entitled to the filing date of the 1996 Application because: (1) Finjan properly claims a priority date of November 8, 1996, for the '844 Patent under 35 U.S.C. §§ 119 and 120, and (2) the inventions described in the '844 Patent were constructively reduced to practice by the filing of the 1996

MEMO IN SUPPORT OF FINJAN'S                    CASE NO. 3:17-cv-00183-CAB-BGS
OPP. RE: EFFECTIVE FILING DATE

Application.

### 1.    The '844 Patent Claims Priority to the 1996 Application

Finjan properly claimed priority to the 1996 Application as well as the '194 and '520 Patents under 35 U.S.C. § 120. Under this statute, there are four requirements for an application to obtain the benefit of an earlier filing date for a previously filed application: (1) the invention in the application must be disclosed in the original application pursuant to 35 U.S.C. § 112; (2) the application must be filed while the previously filed application is still pending; (3) there must be a common inventor between both applications; and (4) there must be a specific reference to the earlier filed application.  Elements 2 and 3 of 35 U.S.C. § 120 are not in dispute.  Element 1 is satisfied because the claims of the '844 Patent are disclosed in the 1996 Application, as well as the '194 and '520 Patents, as discussed further below in Section II(A)(3)-(4).

With respect to element 4, there can be no question that the '844 Patent properly claims priority to the 1996 Application, '194 Patent, or '520 Patent.  Finjan's compliance with 35 U.S.C. § 120 is confirmed by the applicable case law.  Courts have repeatedly recognized that the purpose of the "specific reference" requirement "is clearly to ensure that someone examining a patent claiming the benefit of one earlier filed is readily able to assess the patent's priority date." *Carotek, Inc. v. Kobayashi Ventures, LLC*, 875 F. Supp. 2d 313, 335 (S.D.N.Y. 2012).  While not required under 35 U.S.C. § 120, Finjan requested a Certificate of Correction specifically to recite the familial relationship between the '844 Patent and the '194 and '520 Patents in the specification and the cover page of the '844 Patent.  *See* Doc. No. 483-8.  In the Petition concurrently filed with the Certificate of Correction, Finjan explained that it filed the Certificate of Correction to correct an ambiguity on the cover page of the '844 Patent that the '844 Patent claims priority to the '639 Provisional Application through the '194 and '520 Patents.  Doc. No. 483-11 at p. 3.  The USPTO granted the Certificate of Correction to correct the cover sheet of the '844 Patent, which now states that the '844

7

Patent "is a continuation-in-part of U.S. Patent Application No. 08/964,388, filed on Nov. 6, 1997, now U.S. Patent No. 6,092,194 and a continuation-in-part of U.S. Patent Application No. 08/790,097, filed on Jan. 29, 1997, now U.S. Patent No. 6,167,520." Doc. No. 483-8. Eset's claim that Finjan purportedly cancelled its priority claim to the 1996 Application is wrong because the Certificate of Correction never removed the priority claim to the 1996 Application from the specification. Mot. at 2.

Thus, the Certificate of Correction clarified the priority claim. Indeed, the USPTO did not even find this clarification necessary. It rejected Finjan's request to clarify the family chain as identified in the first paragraph of the specification because, "[w]ith respect to the alleged error in Col. 1, 1st para, comparison of the printed patent with the corresponding location in the application file reveals *that there is no discrepancy*." Doc. No. 608-6 ('844 8-16-16 Cert. of Correction Request) at FINJAN-ESET 000021 (emphasis added). In other words, the USPTO found that the priority chain to the 1996 Application, including the requisite specific reference to the '194 and '520 Patents, was properly recited in the application as filed and that no correction was necessary.

### 2.   The '844 Patent Claims were Constructively Reduced to Practice Through the Filing of the 1996 Application

In addition, the '844 Patent is entitled to the filing date of the 1996 Application because the inventions described in the '844 Patent were constructively reduced to practice by the filing of the 1996 Application, and are thus entitled to the November 8, 1996, priority date. *Frazer v. Schlegel*, 498 F.3d 1283, 1288 (Fed. Cir. 2007) ("The filing of a patent application is a constructive reduction to practice of the invention disclosed therein.") (citing *Hyatt v. Boone*, 146 F.3d 1348, 1352 (Fed. Cir. 1998)). As detailed below in Section II(A)(3), the 1996 Application discloses the claimed elements of the '844 Patent.

MEMO IN SUPPORT OF FINJAN'S                    CASE NO. 3:17-cv-00183-CAB-BGS
OPP. RE: EFFECTIVE FILING DATE

### 3.    The 1996 Application Discloses the "Linking" Element

The 1996 Application discloses the "linking" element of the '844 Patent claims.[4] As one example, the 1996 Application discloses that a security profile is linked to a Downloadable and the linking can be performed before a gateway provides the Downloadable to a web client when it describes that a gateway derives a downloadable security profile and serves the Downloadable to a client.  *See* Doc. No. 483-22 at p. 39 (showing security profile with "Applet ID (signature): xxx-xxxxxx-xxxx-xxxx" (with "xxx-xxxxxx-xxxx-xxxx" representing a hash value of the downloadable) that includes downloadable information and a list of suspicious code, which supports that the security profile is linked to the downloadable); *id*. at p. 21-22 (which describes allowing a downloadable to a client computer based on the downloadable's security profile which shows the linking is performed before the downloadable is provided to the client); *id*. at p. 34 (deriving security profile can be performed "at the gateway level").  Dr. Jaeger analyzed the 1996 Application and further confirmed that there is support for the element.  *See, e.g.,* Doc. No. 608-7 ("Jaeger Rpt." herein) at ¶ 658 (code scanner performs linking and that the linking can be performed before the Downloadable is provided to the client); *see also id.* at ¶ 81 (identifying example portions in the 1996 Application).  As such, the 1996 Application supports the "linking" element.

In asserting that the '844 Patent is entitled to a priority date of no earlier than December 22, 1997, Eset raises various disputed facts, which are premised on whether the 1996 Application provides written support for the "linking" element of the '844 Patent.  But whether a priority document provides support is an issue of fact for a jury to decide.  *Bradford*, 603 F.3d at 1268.  Eset's arguments are based on Eset's disagreement with the expert opinions of Dr. Jaeger, which creates additional factual issues that preclude summary judgment.  Mot. at 7–9; *Leggett & Platt, Inc. v. Hickory Springs Mfg.*

---

[4] While Eset identifies the entire element, the portion that Eset disputes is linking "… before a web server makes the Downloadable available to web clients."  Doc. No. 608-7 (Jaeger Rpt.) at ¶650.

9

MEMO IN SUPPORT OF FINJAN'S          CASE NO. 3:17-cv-00183-CAB-BGS
OPP. RE: EFFECTIVE FILING DATE

1  *Co.*, 285 F.3d 1353, 1362 (Fed. Cir. 2002) (finding summary judgment inappropriate

2  because "the conflicting allegations of the experts here leave unresolved factual

3  disputes"); *Total Containment, Inc. v. Environ Prods.,* Civ. No. 99-1059, 1999 WL

4  717946, at *4 (Fed. Cir. Feb. 16, 1999) (summary judgment is often inappropriate

5  where case depends on "specific, plausible and detailed testimony by dueling expert

6  witnesses").

7        Eset's primary argument that there is no written description support for the

8  "linking" claim element because the term "server" does not appear in the priority

9  document is a red herring that is contrary to law.  Requiring the exact words and phrases

10  found in the claims to be found literally in the specification is not the correct test for

11  written description support.  *In re Kaslow,* 707 F.2d 1366, 1375 (Fed. Cir. 1983) (the

12  written description requirement does not require literal support in the specification).

13  "[R]ather, the specification must "reasonably convey to the artisan that the inventor had

14  possession at that time of the later claimed subject matter."  *Id.*  Here, Dr. Jaeger's

15  testimony confirms "that the received downloadable is an example of something that

16  would be sent by a web server" such that this element is disclosed.  Doc. No. 608-8

17  (Jaeger Tr.) at 44:12–20.

18        Eset's argues that a web server cannot first receive a Downloadable before the

19  Downloadable is inspected (i.e., that the inspection of the Downloadable must occur

20  **before** the web server receives the Downloadable) also fails.  Such an understanding

21  imports additional requirements that are not required by the claims or the Court's claim

22  construction order, which only requires a Downloadable to be inspected before it is

23  called up or forwarded to the web client.  Doc. No. 195 (Claim Construction Order) at 4

24  (construing "before the web server makes the Downloadable available to web clients" as

25  "before the Downloadable is available on a web server to be called up or forwarded to a

26  web client").  Notably, Dr. Spafford also agrees that so long as the inspection occurs at

27  any point before the Downloadable reaches the web client, such a scenario meets the

28

MEMO IN SUPPORT OF FINJAN'S                    CASE NO. 3:17-cv-00183-CAB-BGS
OPP. RE: EFFECTIVE FILING DATE

claim limitation.  Doc. No. 607 at Ex 6 ("Spafford Rpt." herein) at Ex. A-3 at p. 13 (alleging that the annotator 220, which is the purported web server, inspects and links the Downloadable and security profile together before the client computer receives it).

Nonetheless, the 1996 Application includes written support for a scenario in which the Downloadable is inspected prior to being placed on the web server.  For example, the 1996 Application describes Finjan's SurfinGate product, which inspects and serves Downloadables (e.g., Java or ActiveX) which qualifies as a web server under the Court's construction.  Doc. No. 483-22 at p. 34 ("SurfinGate functions: Intelligently scans, analyzes, and controls automatically downloaded Java applets or ActiveX entities).  In this scenario, the gateway is a web server such that the Downloadable is inspected before it is provided from the web server to a web client.  Therefore, the 1996 Application provides written description support for the "linking" element and is entitled to a priority date earlier of November 8, 1996.

4.      **The '194 and '520 Patents Disclose the "Linking" Claim Element**

The '194 and '520 Patents also include written support for the '844 Patent, and thus the '844 Patent should be accorded the filing date of the '194 Patent (i.e., November 6, 1997) or that of '520 Patent (i.e., January 29, 1997).  Dr. Jaeger provided an in depth analysis of the written description support found in these patents, including, for example, how Figure 3 of the '194 Patent shows a code scanner that "is able to determine the DSP data for a Downloadable (and thus links the Downloadable security profile to the Downloadable" and how the '194 Patent's components are mapped to the '844 Patent.  Doc. No. 608-7 (Jaeger Rpt.) at ¶¶ 656–658.  Dr. Jaeger further explained that the disclosure in the '194 Patent is broader than the '844 Patent because "there is no restriction in the '194 Patent on the … timing on when the functionalities of the inspector are to be performed," and thus encompasses the "linking … before" element in the '844 Patent.  *Id.* at ¶ 658.  Thus, Dr. Jaeger explained that the '194 Patent has a broader disclosure than the '844 Patent, and as such, includes the timing limitation from

11

1   the '844 Patent, which Eset completely ignores.[5]  *Id.*.

2         Contrary to Eset's argument, it is irrelevant that the terms "web server" or "web

3   client" do not appear in the 1996 Application.  Motion at 10; *In re Kaslow,* 707 F.2d at

4   1375.  As described above, the 1996 Application "reasonably convey[ed] to [Dr. Jaeger]

5   that the inventor had possession at that time of the later claimed subject matter."  *Id.*

6   That Eset and its expert disagree that the element is disclosed in the '194 and '520

7   Patents is, once again, not grounds for granting summary judgment given that there are

8   underlying factual disputes as to the disclosure.

9         The two cases that Eset relies on for the '844 Patent are inapposite because

10  nothing in the disclosure in those cases described the invention at issue.  *New Railhead*

11  *Mfg., L.L.C. v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1296 (Fed. Cir. 2002) ("Nothing in

12  this disclosure even intimates to one of ordinary skill in the art the specific angled

13  relationship between the bit and its housing"); *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598

14  F.3d 1336, 1357–58 (Fed. Cir. 2010) (there was no "working or ***even prophetic***

15  ***examples***" disclosed in the priority patent) (emphasis added).  The same cannot be said

16  here where the 1996 Application provides support for each of the claim elements.

17        Therefore, the Court should deny summary judgment regarding the '844 Patent.

18  **IV.    FINJAN'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT**

19  **OF VALIDITY SHOULD BE GRANTED**

20        Given the PTAB determination, Eset cannot meet its burden of showing invalidity

21  of the '844 Patent based on Abadi.  The PTAB rejected the same arguments that Dr.

22  Spafford provides for Abadi. *Compare* Doc. No. 809-3 (IPR2019-00026, Final Written

23  Decision) at 48, 54-55, 58-61, *with* Wells Ex. 4 (Spafford Invalidity Rpt.) at Ex. A-3 at

24  p. 4-7, 11, 14-15.  Unlike the determination of the priority date of the '844 Patent, the

25

26  [5] Eset only cites to a portion of Dr. Jaeger's analysis—which Eset is aware are
    typographical errors in Dr. Jaeger's report.  Doc. No. 608-8 (Jaeger Tr.) at 16:24-17:24;
27  78:9-14 (stating that the citations were typographical errors and requesting a copy of the
    '194 Patent, which Eset's counsel did not provide).

28
                                          12
    MEMO IN SUPPORT OF FINJAN'S              CASE NO. 3:17-cv-00183-CAB-BGS
    OPP. RE: EFFECTIVE FILING DATE

PTAB's determination regarding the operation of Abadi was necessary for its determination. Notably, the PTAB's decision to reject the Abadi reference as teaching the claims of the '844 Patent was made under the preponderance of the evidence standard, which is lower than the clear and convincing evidence standard that Eset has to meet. Because Eset cannot met its burden, the Court should find that the '844 Patent is valid over the Abadi reference.

## V.     CONCLUSION

For the foregoing reasons, Eset's Motion should be rejected and the '844 Patent should be found valid over Abadi.

Respectfully submitted,

Dated: September 11, 2020

By: /s/ Lisa Kobialka
Paul Andre (State Bar. No. 196585)
Lisa Kobialka (State Bar. No. 191404)
James Hannah (State Bar. No. 237978)
KRAMER LEVIN NAFTALIS
  & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com

*Attorneys for Plaintiff*
FINJAN, INC.

MEMO IN SUPPORT OF FINJAN'S                CASE NO. 3:17-cv-00183-CAB-BGS
OPP. RE: EFFECTIVE FILING DATE