PAUL ANDRE (SBN 196585)
pandre@kramerlevin.com
LISA KOBIALKA (SBN 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (SBN 237978)
jhannah@kramerlevin.com
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 752-1700
Facsimile:   (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### SAN DIEGO DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation, <br><br> Plaintiff, <br><br> v. <br><br> ESET, LLC, a California Limited Liability Corporation, and ESET SPOL. S.R.O., a Slovak Republic Corporation, <br><br> Defendants. | Case No. 3:17-cv-00183-CAB-BGS <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF FINJAN, INC.'S OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT OF PROSECUTION HISTORY DISCLAIMER FOR U.S. PATENT NO. 6,154,844** |
| ESET, LLC, a California Limited Liability Corporation, and ESET SPOL. S.R.O., a Slovak Republic Corporation, <br><br> Counterclaim-Plaintiffs, <br><br> v. <br><br> FINJAN, INC., a Delaware Corporation, <br><br> Counterclaim-Defendant. | Judge:  Hon. Cathy Ann Bencivengo <br><br> PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT |

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................. 1

II.   FACTUAL BACKGROUND................................................................. 2

    A   The '844 Patent Prosecution History ........................................... 2

        1.   Finjan Did Not Disclaim a Network Gateway when Distinguishing Ji ............................................................... 2

        2.   Various Courts Have Decided That the Prosecution History Does Not Limit These Terms........................................ 3

    B   Procedural History........................................................................ 5

        1.   This Court Has Already Construed the Terms Of The "Before…" Claim Element After Extensive Consideration .............. 5

        2.   The Court Did Not Grant Leave for this Motion on Disclaimer ........ 6

III.   ARGUMENT....................................................................................... 8

    A   Finjan Did Not Disclaim a Network Gateway During Prosecution of the '844 Patent ................................................... 8

        1.   Applicant's Statements Were Not Clear and Unequivocal................. 9

        2.   Other Courts Have Found No Disclaimer So There is No "Unmistakable Disavowal"............................................... 11

    B   Eset's Motion is Procedurally Improper ..................................... 13

IV.   CONCLUSION................................................................................... 15

MEMO IN SUPPORT OF FINJAN'S OPP.        CASE NO. 3:17-cv-00183-CAB-BGS
RE: PROSECUTION DISCLAIMER

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acumed v. Stryker Corp.*,
   483 F.3d 800 (Fed. Cir. 2007) ..........................................................15

*Avid Tech., Inc. v. Harmonic, Inc.*,
   812 F.3d 1040 (Fed. Cir. 2016) ...........................................................8

*Baxalta Inc. v. Genentech, Inc.*,
   No. 19-1527, 2020 WL 5048435 (Fed. Cir. 2020)................................8

*Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*,
   482 F.3d 1347 (Fed. Cir. 2007) .........................................................14

*Fenner Inv., Ltd. v. Microsoft Corp.*,
   632 F. Supp. 2d 627 (E.D. Tex. 2009), *aff'd sub nom. Fenner
   Investments, Ltd. v. Microsoft Corp.*, 369 F. App'x 132 (Fed. Cir. 2010).........14

*Finjan, Inc. v. Blue Coat Sys.*,
   879 F.3d 1299 (Fed. Cir. 2018) ............................................................3

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
   No. 13-cv-03999-BLF, 2014 WL 5361976 (N.D. Cal. Oct. 20, 2014)..........5, 12

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
   No. 13-cv-03999-BLF, 2016 WL 3880774 (N.D. Cal. July 18, 2016) ...............5

*Finjan, Inc. v. Cisco Sys., Inc.*,
   No. 17-cv-00072-BLF, 2018 WL 3537142 (N.D. Cal. July 23, 2018) ..........4, 12

*Finjan, Inc. v. Proofpoint, Inc.*,
   No. 13-cv-05808-HSG, 2016 WL 1427492 (N.D. Cal. Apr. 12, 2016).........4, 15

*Finjan, Inc. v. Sonicwall, Inc.*,
   No. 17-cv-04467-BLF, 2019 WL 1369938 (N.D. Cal. Mar. 26, 2019) .........4, 12

*Finjan, Inc. v. Sophos, Inc.*,
   244 F. Supp. 3d 1016 (N.D. Cal. 2017).................................................5

ii

*Finjan, Inc. v. Sophos, Inc.*,
    No. 14-cv-01197-WHO, 2016 WL 2988834 (N.D. Cal. May 24, 2016) .......5, 15

*Finjan, Inc. v. Symantec Corp.*,
    No. 14-cv-02998-HSG, 2017 WL 550453 (N.D. Cal. Feb. 10, 2017) .......4, 9, 12

*Markman v. Westview Indus., Inc.*,
    517 U.S. 370 (1996)...............................................................................12

*Mass. Inst. of Tech. v. Shire Pharm., Inc.*,
    839 F.3d 1111 (Fed. Cir. 2016) .......................................................1, 9

*Nellcor Puritan Bennett, Inc. v. Masimo Corp.*,
    402 F.3d 1364 (Fed. Cir. 2005) ...........................................................9

*Ottah v. Fiat Chrysler*,
    884 F.3d 1135 (Fed. Cir. 2018) .........................................................12

*PPG Industries v. Guardian Industries Corp.*,
    156 F.3d 1351 (Fed. Cir. 1998) .........................................................15

*SAS Inst., Inc. v. ComplementSoft, LLC*,
    825 F.3d 1341 (Fed. Cir. 2016) ...........................................................9

*Trading Techs. Int'l, Inc. v. Open E Cry, LLC*,
    728 F.3d 1309 (Fed. Cir. 2013) .........................................................13

*Wilson Sporting v. Hillerich Bradsby*,
    442 F.3d 1322 (Fed. Cir. 2006) .........................................................15

**Other Authorities**

Fed.R.Civ.P. 50 (a)...................................................................................7

U.S. Patent No. 6,154,844........................................................................*passim*

*Juniper Networks, Inc. v. Finjan, Inc.*,
    No. IPR2019-00026, Paper 46 (P.T.A.B. Apr. 7, 2020) ...................11

MEMO IN SUPPORT OF FINJAN'S OPP.    CASE NO. 3:17-cv-00183-CAB-BGS
RE: PROSECUTION DISCLAIMER

# I.   INTRODUCTION

Eset's "Renewed Motion for Summary Judgment of Prosecution History Disclaimer For U.S. Patent No. 6,154,844" ("Motion") should be denied because Eset's Motion is both substantively without merit and procedurally improper.

Eset's untimely "disclaimer" argument is baseless because Finjan never made the "clear and unmistakable disavowal" of claim scope of the term "before a web server makes the Downloadable available to web clients," which is necessary to find disclaimer of this term.  Indeed, Finjan never limited the invention to a specific location or device in a network or excluded network gateway devices as being covered, let alone an "unmistakable disavowal" for these.  The fact that multiple judges have interpreted applicant's statements to find no disclaimer shows that the statements that Finjan made during prosecution are, at a minimum, subject to other "reasonable interpretations," which precludes a finding of disclaimer under the law.  *See Mass. Inst. of Tech. v. Shire Pharm., Inc.*, 839 F.3d 1111, 1119 (Fed. Cir. 2016) ("Where the alleged disavowal is ambiguous, or even 'amenable to multiple reasonable interpretations,' we have declined to find prosecution disclaimer.").

Additionally, there is nothing to renew, as the Court ordered that the only open issue was that it would review the infringement case that Finjan would present at trial to determine whether Finjan had applied the Court's claim construction.  Doc. No. 702 at 2.  Since the trial ended before the close of evidence, this issue is not properly before the Court.  Additionally, Eset's Motion is procedurally improper because it raises the claim construction issue of "disclaimer," as opposed to the "prosecution history estoppel" issue it sought leave to raise (which relates only to infringement under the doctrine of equivalents).  Eset was not given permission to file a brief on this completely different legal doctrine of disclaimer, or to propose new constructions at this late stage in the case for terms the Court already construed after extensive consideration.  To do so now after

MEMO IN SUPPORT OF FINJAN'S OPP.          CASE NO. 3:17-cv-00183-CAB-BGS
RE: PROSECUTION DISCLAIMER

Finjan and its experts relied on the Court's constructions is highly prejudicial.  Thus, the Court should not consider this procedurally defective Motion.

## II.   FACTUAL BACKGROUND

### A   The '844 Patent Prosecution History

#### 1.   Finjan Did Not Disclaim a Network Gateway when Distinguishing Ji

During the prosecution of the '844 Patent, the examiner issued a non-final rejection of '844 Patent claims over the reference Ji on February 8, 2000. Wells Decl., Ex. 2 ('844 File History Excerpts) at 3-4.  Ji is a patent that describes a process of "instrumenting" applets, a technique of rewriting code in the actual applet itself, and which is different from the '844 Patent.  Doc. No. 188-14 (Ji) at Abstract.  Unlike Ji, the '844 Patent does not instrument the Downloadable, but instead creates a Downloadable profile that identifies suspicious code in the Downloadable.  In fact, Ji specifically references Finjan's products in its specification and distinguishes itself from Finjan's technology of creating profiles for the Downloadables.  Doc. No. 188-14 at 1:66-3:4 (Ji stating that Finjan's SurfinGate creates downloadable profiles at the gateway).  In contrast, Ji taught that the better option was to instrument the code at a gateway and then analyze the file every time it is run.  *Id.* at 3:9-12.

On May 16, 2000, Finjan filed a response to the examiner's non-final rejection of the '844 Patent claims to distinguish the inventions of the '844 Patent with how Ji operates.  Wells Decl., Ex. 2 at 9-14.  Finjan noted that Ji's system was resource intensive because it instrumented every applet every time an applet was received. *Id.* at 13 ("In Ji's system, the burden of examining a Downloadable for suspicious code is always on the network gateway, ***and must be done every time***.") (emphasis added).  In other words, the '844 Patent is less resource intensive because it can save processing time by reusing known security profiles.  Moreover, Finjan explained that the '844

MEMO IN SUPPORT OF FINJAN'S OPP.          CASE NO. 3:17-cv-00183-CAB-BGS
RE: PROSECUTION DISCLAIMER

Patent has an inspector that can use the Downloadable security profile multiple times, thus reducing the load on a network gateway. Wells Decl., Ex. 2 at 13.

Notably, at no time did Finjan ever state that the inspector ***cannot*** be on a network gateway.  Indeed, just by reusing Downloadable security profiles (via the "linking" between the Downloadable and Downloadable security profile to recall Downloadable security profiles of known Downloadables) at the inspector in the network gateway, Finjan's invention is less resource intensive than Ji's system.

> 2. <u>Various Courts Have Decided That the Prosecution History Does Not Limit These Terms</u>

Various other courts have also considered terms in the "before…" element of the '844 Patent in claim construction and dispositive motions, and some have considered the exact prosecution history disclaimer arguments that Eset raises here.  They have all rejected other defendants' attempts to limit the claim language.

First, the Federal Circuit has weighed in concerning how this claim element can be "reasonably…understood" and applied a broad understanding:

> It was reasonable for the jury to interpret "web clients" in this context to refer to the specific web clients protected by the claimed system. Likewise, the limitation requiring that linking occur before a downloadable is "ma[de] . . . available to web clients" could ***reasonably be understood to require that linking occur at some point before users are permitted to access that downloadable—but not necessarily before the downloadable is made available on the Internet.*** Blue Coat concedes that, at the time a security profile is linked, the "particular web client cannot yet *receive* the downloadable—but the web server has made it available . . . ." Reply Br. 9. ***Given the undisputed evidence that WebPulse links security profiles to downloadables before downloadables can be received by users of the service, we find that the '844 infringement verdict was supported by substantial evidence.***

*Finjan, Inc. v. Blue Coat Sys.*, 879 F.3d 1299, 1306-07 (Fed. Cir. 2018).

3

Additionally, other district courts have explicitly declined to find that the applicants of the '844 Patent disclaimed claim scope based on statements in the prosecution history with respect to the Ji reference.  Below is a summary of these prior decisions[1]:

- *Finjan, Inc. v. Symantec Corp.*, No. 14-cv-02998-HSG, 2017 WL 550453, at *16 (N.D. Cal. Feb. 10, 2017) (explicitly rejecting Symantec's prosecution history disclaimer argument and finding: "…[T]his is not a circumstance in which it may properly interpret the asserted claims to exclude what Symantec characterizes as the 'gateway embodiment,' because that embodiment is not 'inconsistent with unambiguous language in the patent's specification or prosecution history…The Court does not read this language [regarding Ji in the prosecution history of the '844 Patent] to establish Symantec's apparent point that an inspector by definition can never be at the gateway, or to amount to a clear and unmistakable disavowal of claim scope so as to require adoption of Symantec's construction." );

- *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-cv-05808-HSG, 2016 WL 1427492, at *2, *6 (N.D. Cal. Apr. 12, 2016)(denying summary judgment where Proofpoint argued that Finjan disclaimed claim scope that would cover Proofpoint's products by distinguishing Ji during the prosecution history of the '844 Patent and that "…once a Downloadable is on a web server and available for download, it is available to web clients, and anything that happens after does not" satisfy the claim element);

- *Finjan, Inc. v. Sonicwall, Inc.*, No. 17-cv-04467-BLF, 2019 WL 1369938, at *8 (N.D. Cal. Mar. 26, 2019) ("To the extent that Sonicwall invokes the prosecution disclaimer doctrine, its argument fails… Here, at best, Finjan's patent prosecution statements are ambiguous and thus do not support Sonicwall's position. As such, Finjan's statements do not show that it 'clearly and unmistakably' disavowed 'network gateway' embodiments from the claim scope.");

- *Finjan, Inc. v. Cisco Sys., Inc.*, No. 17-cv-00072-BLF, 2018 WL 3537142, at *4 (N.D. Cal. July 23, 2018) (same);

---

[1] Finjan has provided additional details regarding many of these decisions in its prior claim construction briefing.  *See* Doc. Nos. 188, 212.

MEMO IN SUPPORT OF FINJAN'S OPP.          CASE NO. 3:17-cv-00183-CAB-BGS
RE: PROSECUTION DISCLAIMER

- *Finjan, Inc. v. Sophos, Inc.*, No. 14-cv-01197-WHO, 2016 WL 2988834, at *22 (N.D. Cal. May 24, 2016)(rejecting Sophos' position "that…a Downloadable is made available to web clients …whenever a Downloadable is made available to anyone over the internet");

- *Finjan, Inc. v. Sophos, Inc.*, 244 F. Supp. 3d 1016, 1049 (N.D. Cal. 2017)(rejecting Sophos' argument that "[i]f an accused product receives a 'Downloadable' from a web server and then performs the claimed linking, it cannot infringe [because] the web server has already made that Downloadable available to web clients."); Doc. No. 188-8 at 16;

- *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-cv-03999-BLF, 2014 WL 5361976, at *10–11 (N.D. Cal. Oct. 20, 2014) (declining to hold that there was a specific disclaimer in the prosecution history based on applicant's statements regarding Ji or to import limitation based on Blue Coat's argument that when a web server makes a Downloadable available to a web client, "the inspector has already transmitted an inspected Downloadable to a web server…"); Doc. No. 188-9 at 15;

- *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-cv-03999-BLF, 2016 WL 3880774, at *8 (N.D. Cal. July 18, 2016) (rejecting Blue Coat's argument that its gateway product does not infringe because the inspection happens after its product "already received the Downloadable from a non-network gateway web server in order analyze the Downloadable."); Doc. No. 188-5 at 15.

Thus, various Courts have rejected arguments the same as or similar to those that Eset makes in its Motion seeking to limit these claim terms.

### B     Procedural History

1.     This Court Has Already Construed the Terms Of The "Before…" Claim Element After Extensive Consideration

Finjan asserts Claims 1, 7 and 15 of U.S. Patent No. 6,154,844 (the "'844 Patent") against Eset in this case.  Claims 1 and 15 are independent claims that include the language "before a web server makes the Downloadable available to web clients." *See* Doc. No. 139-4 ('844 Patent), Claims 1 and 15.  During the claim construction phase of this case, the parties disputed the proper construction of "before a web server makes the Downloadable available to web clients" and also "web server."  Doc. No.

MEMO IN SUPPORT OF FINJAN'S OPP.          CASE NO. 3:17-cv-00183-CAB-BGS
RE: PROSECUTION DISCLAIMER

136-2 at 4-7.  Finjan proposed that these terms should be given their plain and ordinary meaning.  *Id.*  Eset proposed that the "before…" term should be construed as "before deployment of the Downloadable to a web server," and that "web server" should be construed as "the server on which the Downloadable is deployed and which responds to requests from web clients for content."  *Id.*  Notably, Eset did not include in its construction that Finjan disclaimed that this action could be performed by network gateway servers.

On September 25 and 26, 2017, the Court held a claim construction hearing, during which substantial time was devoted to discussion of these claim terms, including the issue of prosecution history disclaimer.  Doc. No. 188-16 (Claim Construction Hr'g Tr.), Vol. I, 74-164; Vol. II, 3-81.  During this discussion, counsel for Eset abandoned the construction that it proposed in its briefing, including the "deployment" language.  Eset instead adopted a different construction—*i.e.*, that the linking of the security profile to the Downloadable must be done and then made available to the web server (as opposed to made available to the web client as written in the claims).  *Id.* Vol. I, 114:15-116:7.  The Court ultimately construed the "before…" term as "before the Downloadable is available on a web server to be called up or forwarded to a web client," citing in support "'844 @ Col. 3:32-52; Col. 4:65 – Col. 5:13; Figure 1." Doc. No. 195 at 3.  The Court did not adopt Eset's proposed construction of "web server" or provide any other construction for this term.  *Id.*  In either case, Eset did not argue for a construction that would disclaim the use of the claimed system at a network gateway.

## 2.  The Court Did Not Grant Leave for this Motion on Disclaimer

On April 23, 2019, Eset filed a motion for summary judgment regarding infringement of the '844 Patent. Doc. No. 482.  On September 26, 2019, the Court held a hearing regarding the parties' summary judgment motions.  When discussing the terms of the "before…" element during the hearing, the Court noted that the figures in the

MEMO IN SUPPORT OF FINJAN'S OPP.          CASE NO. 3:17-cv-00183-CAB-BGS
RE: PROSECUTION DISCLAIMER

'844 Patent specification did not limit the location of the system, instead noting that "[t]hese things happen in all kinds of different places." Wells Ex. 1 (Summ. J. Hr'g Tr. Excerpt)[2] at 1.  The Court further noted that "…if the Downloadable is in a system and there's someone in the system that's inspecting it before it goes to the client and that's who they're calling the web server, I'm not sure that's contrary to the Court's construction as long as it's happening before it gets to the client." *Id.* at 2-3.  Counsel for Eset then argued that there was "prosecution history estoppel" (not disclaimer) "as a matter of law." *Id.* at 2-3.  On October 16, 2019, the Court entered its Order on the parties' summary judgement motions, denying Eset's motion for summary judgment regarding infringement of the '844 Patent based on "numerous material facts in dispute."  Doc. No. 699 at 2.

Eset moved for reconsideration of the Court's order on its Motion for Summary Judgment on November 13, 2019.  *See* Doc. No. 708-1.  In its request for reconsideration, Eset again asked whether "the doctrine of prosecution history estoppel precludes Finjan from reading the claims of the '844 patent to cover a network gateway …" Doc. No. 708-1 at 5:11-23.  The law that Eset cited and relied on related to prosecution history estoppel.  *Id.*  In response, the Court ordered that it would review whether "it becomes apparent that plaintiff has not applied the Court's claim construction, as ESET contends, or that Finjan has not produced evidence upon which a jury could properly proceed to find a verdict of infringement by preponderance of the evidence, ESET may procedurally move for a verdict pursuant to Fed.R.Civ.P. 50 (a)." Doc. No. 720 at 2.  Notably, the Court did not state that it would reconsider its claim construction for this term under a disclaimer theory, only that it would consider the evidence Finjan produces for this term in the manner it was already construed by the Court. *Id.*

---

[2] Unless otherwise noted, all exhibits are attached to the Declaration of Benu Wells in support of this opposition.

MEMO IN SUPPORT OF FINJAN'S OPP.          CASE NO. 3:17-cv-00183-CAB-BGS
RE: PROSECUTION DISCLAIMER

On March 10, 2020, this Court commenced trial in this action, which resulted in mistrial due to the Covid-19 pandemic before the close of Finjan presenting its evidence.  During this trial, Eset attempted to question Dr. Cole about the prosecution history of the '844 Patent.  Finjan's counsel objected that Eset was improperly addressing claim construction with Dr. Cole.  Doc. No. 809-2 (3/12/20 Trial Tr.) at 427:11-15.   Eset's counsel claimed that "I don't think it's a construction argument. Whether they, in fact, explained network gateway, that's not really the claim construction, Your Honor.  It's an actual fact." *Id.* at 430:5-8.  The Court found that there was "a factual matter" for the jury, but that it would "decide the prosecution estoppel claim." *Id.* at 432:9-14.  On July 16, 2020, the parties filed status updates, in which Eset requested additional briefing on "prosecution history estoppel," arguing that "Finjan is estopped from asserting the '844 patent against ESET's gateway servers…." Doc. No. 800 at 7.  On July 23, 2020, the Court allowed Eset to "file its renewed motion[] for . . . prosecution history estoppel of the '844 patent." Doc. No. 802.  On August 21, 2020, Eset filed its Motion, asking the Court to find "prosecution history disclaimer," citing to new law related to "disclaimer," not "estoppel."  Doc. No. 807.

## III.   ARGUMENT

### A     Finjan Did Not Disclaim a Network Gateway During Prosecution of the '844 Patent

Finjan's statements during prosecution of the '844 Patent do not meet the stringent standard necessary for a disclaimer, which requires an unequivocal and unambiguous disavowal of a certain meaning to obtain a patent.  *Avid Tech., Inc. v. Harmonic, Inc.,* 812 F.3d 1040, 1045-46 (Fed. Cir. 2016).  Here, there can be no showing that the statements made during prosecution rise to the level required for disclaimer, where the "disavowal must be both clear and unmistakable." *Baxalta Inc. v. Genentech, Inc.*, No. 19-1527, 2020 WL 5048435 at *5 (Fed. Cir. 2020) (quoting *3M Innovative Properties Co. v. Tredegar Corp.*, 725 F.3d 1315, 1325 (Fed. Cir. 2013)).

8

Indeed, because multiple courts have determined that there was no disclaimer, applicant's statements are necessarily, at a minimum, "*amenable to multiple reasonable interpretations*," which precludes a finding of disclaimer. *SAS Inst., Inc. v. ComplementSoft, LLC*, 825 F.3d 1341, 1349 (Fed. Cir. 2016); *see also Mass. Inst. of Tech. v. Shire Pharm., Inc.*, 839 F.3d 1111, 1119 (Fed. Cir. 2016).

### 1.  Applicant's Statements Were Not Clear and Unequivocal

Nothing in the intrinsic record supports disclaimer of a "network gateway" from the claims of the '844 Patent.  First, the specification of the '844 Patent uses this term in a manner consistent with its plain and ordinary meaning and does not limit it to a specific location, nor prohibit a specific location.  For instance, the '844 Patent discloses that an inspector may be located at the network gateway and that the security profile discussed in the claims can be generated there.  *See* Doc. No. 139-4 ('844 Patent), 5:14-33.  The specification further explains that the generic protection engine (shown at Figure 5) is an example of a network protection engine (which is at the gateway) and includes a content inspection engine (525). *Id.*, 7:40-8:5.  As Judge Gilliam found in the *Symantec* Case, having the inspector at the network gateway is not "inconsistent with unambiguous language in the patent's specification . . . ." *Symantec,* 2017 WL 550453, at *14–17 (citation and internal quotations omitted). Eset's arguments pointing to the specification of the '844 Patent are therefore baseless.

Moreover, Eset bases its arguments on one embodiment of the invention, ignoring the various embodiments in the specification that demonstrate the elements in claims 1 and 15.  These include embodiments where the inspector is at a network gateway. *Nellcor Puritan Bennett, Inc. v. Masimo Corp.*, 402 F.3d 1364, 1368 (Fed. Cir. 2005) ("The fact that the construction adopted by the district court and advocated by [appellee] would have the effect of placing all the embodiments of the invention outside the scope of the claims is powerful evidence that the court's construction is incorrect.").

9

MEMO IN SUPPORT OF FINJAN'S OPP.        CASE NO. 3:17-cv-00183-CAB-BGS
RE: PROSECUTION DISCLAIMER

Instead of applying the Court's construction, Eset asks the Court to adopt a new construction of "web server" that differs from the construction it proposed during the claim construction period.  Eset's new proposed construction improperly excludes "network gateway" from the "web server."  Eset bases this new construction on an alleged disclaimer by Finjan when it made arguments during prosecution the '844 Patent with respect to the Ji reference.  Motion at 11-13.  However, Ji was completely inapplicable to the '844 Patent, as it specifically taught away from using security profiles and instead used its distinct "instrumentation" to modify an applet at the gateway in a manner that protects the client computer.  Doc. No. 188-14 (Ji) at Abstract, 2:27-41, 3:1-4.  In response to a non-final rejection, Finjan explained how its invention is different from Ji's system.  In particular, Finjan noted that "Ji teaches a method performed on a network gateway of examining application programs for lines of code that the client computer should monitor for security policy violations."  Wells Ex. 2 ('844 File History Excerpts) at 13.  In other words, Finjan merely noted to the examiner what Ji says it does itself.  Doc. No. 188-14 (Ji) at 3:1-4 ("To distribute the load between the client and the server evenly, the present inventor has determined that a combination of static scanning and run-time monitoring is needed.").  Finjan contrasted Ji to the examiner noting that the '844 Patent invention generates a security profile and links it to the Downloadable before making it available to web clients, as opposed to Ji's instrumentation at the gateway and run-time monitoring at web clients.  Wells Ex. 2 ('844 File History Excerpts) at 13.

In fact, the Ji reference notes in its specification that Finjan's SurfinGate product is also at the network gateway, but specifically contrasted itself from Finjan by arguing that Finjan's system of generating security profiles, and taught away from this method because it allowed previously known applets through without rescanning.  Doc. No. (Ji) at 2:27-41 ("No analysis is redone.  This means that if a previously safe applet is modified and still has the same URL, [Finjan's] SurfinGate will fail to rescan it and let

10

it pass through.").  Finjan again noted this contrast back to the examiner, stating: "Further, Ji does not teach examining an already linked Downloadable security profile by network gateways, if the profile is deemed trustworthy.  In Ji's system, the burden of examining a Downloadable for suspicious code is always on the network gateway, and must be done every time."  Wells Ex. 2 ('844 File History Excerpts) at 13.  Thus, Finjan merely noted that Ji's system is different from Finjan's because Finjan used security profiles and Ji did not since Ji believed it was necessary to rescan the applet every time.

Finally, the PTAB decision that Eset cites does not support Eset's proposed construction.  The PTAB found that plain and ordinary meaning of the term "web server" applied and declined to find any disclaimer of web server being a network gateway.  Doc. No. 809-3 (*Juniper Networks, Inc. v. Finjan, Inc.*, No. IPR2019-00026, Paper 46 (P.T.A.B. Apr. 7, 2020)) at 17-18, 20.  Indeed, Eset concedes that the PTAB did not determine whether a network gateway could be a web server.  Motion at 8. Consistent with the IPR2019-00026, Finjan has accused Eset's products because they are "connected to the Internet and capable of serving documents accessible by a URL on the World Wide Web."  Doc. No. 809-3 (*Juniper Networks, Inc. v. Finjan, Inc.*, No. IPR2019-00026, Paper 46 (P.T.A.B. Apr. 7, 2020)) at 17-18.  Accordingly, the term "web server" should be given its plain and ordinary meaning, which Finjan has applied to Eset's products for its infringement case.  For instance, Finjan's expert Dr. Cole explained at trial: "I would say an ESET Gateway is an in-line device that could also act as a web server for that client that sits behind it."   Doc. No. 809-2 (3/12/20 Trial Tr.), at 427:1-2.  Thus, the Court should reject Eset's proposed limitation to this term.

2.    <u>Other Courts Have Found No Disclaimer So There is No "Unmistakable Disavowal"</u>

A total of eight other Courts have considered this claim language and none of determined that there was disclaimer.  The fact that other district court judges have

11

*found no disclaimer* shows that it could not be "clear and unmistakable" disavowal, and at a minimum is "amenable to multiple reasonable interpretations." *See, e.g.*, *Symantec*, 2017 WL 550453, at *16 ("The Court does not read this language to establish Symantec's apparent point that an inspector by definition can never be at the gateway, or to amount to a clear and unmistakable disavowal of claim scope so as to require adoption of Symantec's construction."); *Sonicwall*, 2019 WL 1369938, at *8 ("To the extent that Sonicwall invokes the prosecution disclaimer doctrine, its argument fails… Here, at best, Finjan's patent prosecution statements are ambiguous and thus do not support Sonicwall's position. As such, Finjan's statements do not show that it 'clearly and unmistakably' disavowed 'network gateway' embodiments from the claim scope."); *Cisco*, 2018 WL 3537142, at *4 (same); *Blue Coat,* 2014 WL 5361976, at *10–11 (declining to hold that there was a specific disclaimer in the prosecution history based on applicant's statements regarding Ji.  Given that several different courts found that the statements are "amenable to multiple reasonable interpretations," there most certainly cannot be the "clear and unmistakable" disavowal.

Thus aside from the fact that these other judicial decisions are entitled to deference to ensure uniformity in construction across various lawsuits, they actually disprove Eset's claims of disclaimer here. Indeed these judges' "reasonable interpretation" of applicants' statements was that applicants did not disavow the gateway, precluding any disclaimer.  *Ottah v. Fiat Chrysler*, 884 F.3d 1135 (Fed. Cir. 2018) ("*Markman* recogniz[ed] the need for uniformity in the treatment of a given patent and not[ed] that treating interpretive issues as purely legal will promote . . . intrajurisdictional certainty through the application of *stare decisis* on those questions not yet subject to interjurisdictional uniformity under the authority of the single appeals court") quoting *Markman v. Westview Indus., Inc.*, 517 U.S. 370, 390-91 (1996).

MEMO IN SUPPORT OF FINJAN'S OPP.          CASE NO. 3:17-cv-00183-CAB-BGS
RE: PROSECUTION DISCLAIMER

**B     Eset's Motion is Procedurally Improper**

Eset's Motion is also riddled with procedural infirmities and should not be considered at the outset for these reasons.

*First*, the Court never gave Eset permission to file this purported "Renewed" Motion, as it is not a renewal of any issue properly before the Court on summary judgment. Rather, the Court stated in response to Eset's Motion for Summary Judgment regarding infringement of the '844 Patent and Eset's Motion for Reconsideration of its Motions for Summary Judgment that it would consider Finjan's infringement case and decide whether Finjan correctly applied the Court's claim construction on the "before …" element. Nowhere did the Court state that it would reconsider its claim construction based on disclaimer---this was not an open issue for re-raising. Doc. No. 205 at 2. As such, Eset's entire Motion is without basis, as the Court explicitly stated that it would need to consider Finjan's infringement case and the evidence it provided in support. As the trial ended in a mistrial before the close of Finjan's infringement case, no such determination can be made. As such, Eset's Motion should not be considered.

*Second*, the Court did not give Eset permission to file a motion on "disclaimer." Rather, Eset's arguments during summary judgment proceedings were for "prosecution history estoppel," which is the issue Eset had asked the Court to renew—not "disclaimer." Doc. Nos. 800 at 6-7; 802. Prosecution history estoppel and prosecution history disclaimer are two distinct doctrines and cannot be substituted for each other. In particular, prosecution history estoppel applies as part of an *infringement analysis* to prevent a patentee from using the *doctrine of equivalents* to recapture subject matter surrendered from the literal scope of a claim during prosecution. *Trading Techs. Int'l, Inc. v. Open E Cry, LLC*, 728 F.3d 1309, 1322 (Fed. Cir. 2013). Prosecution disclaimer, on the other hand, affects *claim construction* and applies where an applicant's actions explicitly redefine a term in the claims. *Id.* As such, Eset's renewed Motion is also procedurally improper because it raises different arguments under a different body of

MEMO IN SUPPORT OF FINJAN'S OPP.          CASE NO. 3:17-cv-00183-CAB-BGS
RE: PROSECUTION DISCLAIMER

law, which was not what the Court permitted in its Order allowing Eset to renew its motion.  Doc. No. 802.

*Third*, Eset already had the opportunity to raise "disclaimer" during the claim construction for these terms. *See, e.g.*, *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007) ("The district court found that [defendants] waived any argument with respect to this term by failing to raise it during the claim construction phase. We agree."); *Fenner Inv., Ltd. v. Microsoft Corp.*, 632 F. Supp. 2d 627, 638 (E.D. Tex. 2009) ("Because this argument is contrary to the claim construction order and was not raised prior to or even following the claim construction hearing it is waived."), *aff'd sub nom. Fenner Investments, Ltd. v. Microsoft Corp.*, 369 F. App'x 132 (Fed. Cir. 2010).  In fact, Eset was given multiple chances to set forth its proposed claim construction for this term, and lost during claim construction.  Instead, it presented different interpretations of the claims, and after taking all of this into consideration, the Court provided and affirmed twice a construction for the "before…" term based on "the plain language of the claim and the written description." Doc. No. 205 at 2.  Specifically, the Court also declined to construe "web server" (which Eset now seeks to construe differently than its proposal during claim construction proceedings).  *Id.*  Finjan's experts relied on these claim construction findings from 2017 to prepare their opinions in this case, including Dr. Cole's expert report on infringement served nearly two years ago.  To change claim construction at this late stage is highly prejudicial to Finjan because Finjan was unable to address it during discovery or when drafting exert reports.  As such, this belated attempt to raise a new claim construction during trial shows a clear waiver of these arguments. *Admixture*, 482 F.3d at 1356.  Thus, the Court should deny Eset's Motion since it has already addressed claim construction of these terms thoroughly and there is no basis to revisit them at this late stage of the case.

14

MEMO IN SUPPORT OF FINJAN'S OPP.          CASE NO. 3:17-cv-00183-CAB-BGS
RE: PROSECUTION DISCLAIMER

*Fourth,* Eset's Motion should be denied because whether Finjan can show that the "before…" elements are met by a preponderance of evidence under the Court's claim construction should be left for the jury.  This boils down to a factual issue regarding, *inter alia,* whether Eset's products act as web servers and perform the functions in the claims, which depends on facts about Eset's products. *PPG Industries v. Guardian Industries Corp.*, 156 F.3d 1351, 1355 (Fed. Cir. 1998) ("[A]fter the court has defined the claim with whatever specificity and precision is warranted by the language of the claim and the evidence bearing on the proper construction, the task of determining whether the construed claim reads on the accused product is for the finder of fact."); *see also Acumed v. Stryker Corp.*, 483 F.3d 800, 806 (Fed. Cir. 2007) ("[A] sound claim construction need not always purge every shred of ambiguity. The resolution of some line-drawing problems — especially easy ones like this one [identifying how 'sharp' is too sharp]— is properly left to the trier of fact.").

Additionally, further claim construction is not necessary or appropriate here, as the Court has already determined the construction of the term.  This is similar to prior litigations involving these same claim terms.  In fact, both Judges Gilliam and Orrick in the Northern District of California found that the dispute concerning the terms of this claim element were met constituted a factual issue for the jury. *See Proofpoint*, 2016 WL 1427492, at *2, *6 (holding that "there is a factual dispute" regarding, inter alia, "when the downloadable becomes 'available.'"); *see also Sophos*, Inc., 2016 WL 2988834, at *22.  Indeed, performing claim construction in view of the accused product in this manner is improper – rather, the jury should decide if Eset's products satisfy the claim terms.  *Wilson Sporting v. Hillerich Bradsby*, 442 F.3d 1322, 1330 (Fed. Cir. 2006) ("[C]laims may not be construed with reference to the accused device.").  As such, Eset's Motion should be denied and the decision left to the jury.

## IV.  CONCLUSION

For the foregoing reasons, Eset's Motion should be denied.

15

Respectfully submitted,

Dated: September 11, 2020

By:  */s/ Lisa Kobialka*
Paul Andre (State Bar. No. 196585)
Lisa Kobialka (State Bar No. 191404)
James Hannah (State Bar No. 237978)
KRAMER LEVIN NAFTALIS
  & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com

*Attorneys for Plaintiff*
FINJAN, INC.

MEMO IN SUPPORT OF FINJAN'S OPP.          CASE NO. 3:17-cv-00183-CAB-BGS
RE: PROSECUTION DISCLAIMER