NICOLA A. PISANO, CA Bar No. 151282
  NicolaPisano@eversheds-sutherland.com
JOSE L. PATIÑO, CA Bar No. 149568
  JosePatino@eversheds-sutherland.com
JUSTIN E. GRAY, CA Bar No. 282452
  JustinGray@eversheds-sutherland.com
SCOTT A. PENNER, CA Bar No. 253716
  ScottPenner@eversheds-sutherland.com
**EVERSHEDS SUTHERLAND (US) LLP**
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA  92130
TELEPHONE:     858.252.6502
FACSIMILE:     858.252.6503

Attorneys for Defendants and Counter-Plaintiffs
ESET, LLC and ESET, SPOL. S.R.O.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FINJAN, INC., <br><br>   Plaintiff, <br><br> v. <br><br> ESET, LLC, et al., <br><br>   Defendants. <br><br> AND RELATED COUNTERCLAIMS. | Case No. 3:17-cv-0183-CAB-BGS <br><br> **ESET, LLC AND ESET, SPOL. S.R.O.'S REPLY BRIEF IN SUPPORT OF RENEWED MOTION FOR SUMMARY JUDGMENT OF PROSECUTION HISTORY DISCLAIMER FOR U.S. PATENT NO. 6,154,844** <br><br> Judge:   Hon. Cathy Ann Bencivengo <br><br> PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

45249885.1

## I. OVERVIEW

Finjan's Opposition argues that this Court did not intend to permit ESET to renew its motion for a determination that, in view of the prosecution history of the '844 patent, the term "web server" in that patent's claims cannot be read on a network gateway. Yet Finjan's Opposition argues that the Court only granted leave to file a motion on "prosecution history estoppel" relating to doctrine of equivalents, not prosecution history disclaimer. ESET's prior motion (D.I. 481-1), the sidebar of colloquy during Dr. Cole's cross-examination (D.I. 809-2), and ESET's opening brief (D.I. 807-1) all were directed to the foregoing determination, which makes no mention of equivalents. The Court well knows what it authorized. Finjan's contention is so fundamentally dishonest that the Court could grant ESET's motion for that reason alone.

Finjan's Opposition devotes little effort to countering the arguments advanced in ESET's opening brief. Instead, the Opposition presents myriad arguments why Finjan's bad-faith assertion of the '844 patent should continue to trial. None is credible, much less persuasive. And Finjan's arguments are notably free of citation to the record in this case. For example, Finjan urges this Court to abdicate its role as Judge in this case and defer to the determinations of other Judges in courts outside this District who lack this Court's extensive background and understanding of Patent Law. Finjan also argues that this Court already decided a claim construction for the term "web server," but at trial this Court specifically remarked that this issue was not decided as part of claim construction. *See* D.I. 809-2.

Finjan repeatedly argues that the statements during prosecution of the '844 patent were not binding because they "were not clear and unequivocal." But it is hard to imagine a more binding disclaimer: Finjan distinguished Ji by arguing that in Ji's network gateway, Downloadable inspection "must be done every time." Opp. at 2:22-23. Yet Finjan accuses the stand-alone software on ESET's network gateway products of infringement, even though ESET's products scan incoming files "every time"! Notwithstanding the mistrial, Finjan's infringement case on the '844 patent was

complete; Finjan made its record, and it is woefully deficient.

Finjan's Opposition also presents novel arguments why Ji does not invalidate the claims of the '844 patent, but such arguments are misplaced. Finjan's *ex post facto* arguments cannot change what it **actually told** the Patent Office and **how it amended its claims** to differentiate from Ji. The public is entitled to rely on the applicant's amendments and arguments, as set forth in the prosecution history, to determine what the patent terms mean. As in contract interpretation, where parole evidence plays no role in interpretation absent ambiguity, the arguments (that Ji is a network gateway) and amendments (that the claimed elements all are present at the inspector, and not the network gateway) made by Finjan to secure allowance of the '844 patent cannot be ignored to read the claims on that which Finjan disclaimed.

Finjan's prior success in obscuring from other courts its clear and unmistakable intent to disclaim coverage by claims 1 to 21 of a network gateway is entitled to no weight here. ESET's motion for summary judgment that the "web server" of the '844 patent cannot be met by a network gateway should be granted.

## II.    ARGUMENT

### A.    Finjan Disclaimed Coverage of Network Gateways.

As explained in ESET's opening brief, Finjan's arguments and amendments to differentiate its alleged invention from Ji including explaining that Ji was a network gateway, whereas the claimed invention constituted an "inspector" that performed **all** of the steps of **receiving** a Downloadable, **generating** a first Downloadable security profile, and **linking** the first Downloadable security profile to the Downloadable before a web server makes the Downloadable available to web clients.

Finjan emphasizes that its inspector need only perform inspection of a Downloadable once, whereas in Ji "the burden of examining a Downloadable for suspicious code is always on the network gateway, and **must be done every time**." Opp. at 2:22-23 (emphasis in original). Despite this clear disclaimer that its claims do not cover the prior art network gateway that inspects every incoming file, Finjan

nevertheless contends that the claims of the '844 patent cover ESET's standalone network gateway software that does precisely that.[1]  Moreover, whether Finjan could have made arguments to the Patent Examiner about Ji "'instrumenting' applets" is irrelevant.  No such arguments were made during prosecution of the '844 patent.  The public is entitled to rely on what Finjan actually said in its arguments and amendments, not what Finjan now says it could have argued.

Similarly, Finjan's argument that "at no time did Finjan ever state the inspector cannot be on the network gateway" is belied by the Remarks portion of Finjan's Response to the Patent Examiner, where Finjan characterized its invention as having distinct components for the inspector *and* the network gateway:

> Before discussing the rejections of the claims, a brief review of an embodiment of Applicant's invention is helpful.  A system ***includes an inspector*** for generating and linking a Downloadable security profile to a Downloadable before a web server makes the Downloadable available to web clients.  The system ***also includes a network gateway*** which examines the Downloadable security profile for security policy violations if the Downloadable security profile is deemed trustworthy.

D.I. 809-4 at 11 (emphasis added).  It is nonsensical for Finjan to argue (as it does now) that its system included an inspector ***and also*** a network gateway if those two distinct elements are the same thing.  Moreover, Finjan's claim amendments that require all of the claim steps be performed at the inspector—to distinguish over Ji—would be completely illusory if the inspector were located at the network gateway! *See* D.I. 807-1 at 8:17-9:23.  And as explained in ESET's opening brief, there is no disclosure in the '844 patent that the inspector of claims 1 and 15 could be located at a network gateway. *Id.* at 2:12-4:6.

---

[1] Dr. Cole claimed that ESET's network gateways infringe when they receive reputation data from ESET's LiveGrid Reputation Server as well as based on analysis of files passing through the network gateways using network gateway software alone.  As this Court's questioning of Dr. Cole at trial brought to the fore, the LiveGrid system, wherein the analysis is conducted asynchronously abroad, cannot infringe because it is performed entirely outside the US.  Trial Transcript, Day 3, 461:21-463-11.  This motion is directed to ESET's standalone network gateway software.

### B. This Court Is Not Bound by Other Courts' Determinations.

Finjan, as it has throughout this litigation, urges this Court to abdicate its role of independently deciding the issues before it, and instead defer to the determinations of District Court Judges not of this District. Opp. at 3:8-5:18. Those other courts have no compunction about ignoring decisions from outside their districts, including this one. *See, e.g., Finjan, Inc. vs. Cisco Sys., Inc.*, No. 17-cv-00072-BLF, 2018 U.S. Dist. LEXIS 122951, at *29 ("ESET's claim construction ruling is from outside this District. … the Court gives little weight to the construction in ESET …"). In view of Finjan's successful argument to the Northern District judge in the *Cisco* case that this Court's claim constructions should be accorded no deference, Finjan's argument that "other judicial decisions are entitled to deference to ensure uniformity in construction across various lawsuits" (Opp. at. 12:16-25) rings particularly hollow.

Moreover, it is not at all apparent from Finjan's citations to the decisions of courts outside this District (based on different claim constructions) that those courts properly considered the combined effect of the arguments ***and claims amendments*** in the prosecution history of the '844 patent. Given this Court's many years of practice as a patent litigator and as a Magistrate Judge, and in-depth knowledge of Patent Law, ESET believes this Court will recognize that interplay, and its determination on the issue of prosecution history disclaimer will be a definitive assessment.

### C. This Court Has Not Construed the Term "Web Server".

Finjan argues that "the parties disputed the proper construction of … 'web server.'" Opp. at 5:20-6:21. Finjan faults ESET for not noting in seeking a construction that Finjan had disclaimed that the web server could be a network gateway in August 2017. At that point in this litigation, however, Finjan's infringement contentions were an unintelligible jumble, and relied for alleged infringement on ESET's Threatsense (LiveGrid) system. It was not until Finjan served the expert report of Dr. Cole on November 30, 2018, that ESET learned how Finjan intended to distort its claims to read on ESET's standalone network gateway software.

The Court's claim construction (D.I. 195) did not provide a construction for the term "web server." As the Court recognized during Dr. Cole's cross-examination, there was a latent unresolved dispute about the claim term "web server" and more particularly, whether a "network gateway" that used ESET's products could constitute the claimed "web server." The Court stated: "The issue … that has fundamentally resulted from the claim construction is not the question of before, which was what we were construing, but *what a web server and a web client are in this case, which I have never construed*." D.I. 809-2 at 427:19-23 (emphasis added). Finjan's argument that the Court did construe that term, or that the Court should not do so now that the dispute has been crystallized, lacks merit. Because construction of "web server" informs a proper understanding of Finjan's claim amendments to distinguish over the Ji reference, and the full scope of Finjan's prosecution history disclaimer, the time is ripe for the Court to address that issue.

### D. The Juniper IPR Decision Does Not Support Finjan's Contention.

In its final written decision in IPR2019-00026 dated April 7, 2020, the Patent Trial and Appeal Board construed the term "web server" under a *Phillips*-type district court standard. In that decision, the PTAB concluded that a "web server" is "a server connected to the Internet and capable of serving documents accessible by a URL on the World Wide Web." D.I. 809-3 at 18. While finding it unnecessary to decide whether a "network gateway" could be a "web server," *id.* at 20, the PTAB noted that as described in the '844 patent, the "web server" and "network gateway" are distinct entities and "states, for example, that 'web server 185 [is] … coupled to … external computer network 105' (['844 patent] at 3:39–44), that 'web server 185 … *transmits the Downloadable via the network gateway 110* to the computer client 130' (*id.* at 5:11-13 (emphasis added)), and that 'communications interface 825 [of web server 185] couples the signal bus 825 to the external computer network 105' (*id.* at 10:33-34)." *Id.* at 18. The PTAB cautioned that the word "web" could not simply be disregarded: "we do not find sufficient support in [the '844 patent] for broadening 'web server' beyond its

ordinary meaning to, in effect, read out the word 'web.'" *Id.*

In view of the usage of the term "web server" throughout the '844 patent as discussed above, and Finjan's amendments to overcome Ji, discussed *infra*, ESET submits that the term "web server" should be construed as "a server that serves web pages and is not a network gateway."[2]

### E. Finjan's Disclaimer Was Clear and Unequivocal.

Finjan's contention that "nothing in the intrinsic record supports disclaimer of a 'network gateway'" ignores the disclosure of the '844 patent as well as Finjan's own arguments and amendments to procure allowance of the patent, as explained in ESET's opening brief. D.I. 807-1 at 1-4 and 6-10. When the intrinsic evidence is viewed in its entirety, it is plain that neither the claimed "inspector" nor the claimed "web server" of claims 1 and 15 of the '844 patent can be construed to cover a network gateway. Only inspector 125 is expressly described as performing the DSP generation and linking functions: there is no disclosure that a network gateway performs **both** of these functions in the '844 patent. The '844 patent makes equally plain that a network gateway cannot be the claimed "web server" of claims 1 and 15, because Finjan specifically disclaimed such coverage in its arguments to distinguish over Ji. As used throughout the disclosure of the '844 patent, the term "web server" refers to a distinct network component from a "network gateway." *See, e.g.*, D.I. 809-3 at 18. Finjan's argument that ESET focused only on "one embodiment" of the invention (Opp. at 9:20-26) ignores that there is no embodiment in the '844 patent, nor even a hint of a suggestion, that the web server could be on a network gateway. Finjan's amendment distinguishing the inspector of claims 1 and 15 from the network gateway of Ji puts the final nail in Finjan's argument.

---

[2] As noted in ESET's opening brief (D.I. 807-1 at 6, n.3), Judge Freeman in the *Blue Coat* case construed the phrase "before a web server makes the Downloadable available to web clients" as "before the ***non-network gateway*** web server makes the Downloadable available to web clients." D.I. 188-1 at 13:1-7. While urging the Court to defer to other court's constructions, Finjan remains oddly silent on that construction, which would be dispositive of Finjan's claims against ESET's Gateway products for the '844 patent.

1    Finjan's argument that "Ji was completely inapplicable to the '844 [sic] patent" (Opp. at 10:6-7) cannot be reconciled with the '844 prosecution history: the Patent Examiner found Ji ***anticipatory***, and Finjan amended its claims to distinguish over Ji's network gateway.  Finjan's newfound technical arguments as to why Ji is "inapplicable" are found nowhere in the prosecution history of the '844 patent, and are thus irrelevant. Moreover, Finjan's contentions about its SurfinGate product do not inform the prosecution history disclaimer.  Nor does any of the discussion somehow expand the disclosure of the '844 patent so that the inspector of claims 1 and 15 may be co-located with a network gateway (which Finjan equates with the web server).

Finjan argues that the PTAB in the Juniper IPR did not ultimately need to define the term "web server."  Opp. at 11:8-22.  As discussed in ESET's opening brief (D.I. 807-1 at 5:23-6:9), although the PTAB ultimately found it unnecessary to decide whether a "network gateway" could be a "web server" (D.I. 809-3 at 20), it noted that as described in the '844 patent, the "web server" and "network gateway" are distinct entities and "states, for example, that 'web server 185 [is] … coupled to … external computer network 105' (['844 patent] at 3:39–44), that 'web server 185 … transmits the Downloadable via the network gateway 110 to the computer client 130' (id. at 5:11-13 (emphasis added)), and that 'communications interface 825 [of web server 185] couples the signal bus 825 to the external computer network 105' (id. at 10:33-34)." *Id.* at 18. The PTAB cautioned that the word "web" could not simply be disregarded: "we do not find sufficient support in [the '844 patent] for broadening 'web server' beyond its ordinary meaning to, in effect, read out the word 'web.'" *Id.*  The Juniper IPR decision does not support Finjan's contention that claims 1 and 15 can cover network gateways.

F.    **Finjan's Procedural Complaints Lack Merit.**

Finjan's complaint that this Court did not grant ESET leave to file this motion is unserious and completely citation-free.  Opp. at 13.  The Court's Minute Order of July 23, 2020 (D.I. 802), specifically states: "ESET may file its renewed motions for partial summary judgment as to the priority date ***and prosecution history estoppel of the '844***

*patent*, and indefiniteness of the term downloadable…" Both the Court and ESET understood that this motion was intended to address the estoppel effect of the prosecution history, and specifically, to address the dispute regarding whether Finjan was estopped from alleging that the web server of claims 1 and 15 could be a network gateway.

This Court had also repeatedly rejected Finjan's contention (Opp. at 15), that claim construction "should be left to the jury." As noted *supra*, this Court did not specifically construe what a web server is. D.I. 809-2 at 427:19-23. Finjan's attempt to argue that it did, or that this Court should adopt the constructions of courts outside this District, and with less experience litigating patent matters, should be rejected.

## III.   CONCLUSION

For all the foregoing reasons, summary judgment that the asserted claims of the '844 patent cannot be construed to cover network gateways should be granted.

Dated:  September 25, 2020         Respectfully submitted,

**EVERSHEDS SUTHERLAND (US) LLP**

*/s/ Nicola A. Pisano*
NICOLA A. PISANO, CA Bar No. 151282
   NicolaPisano@eversheds-sutherland.com
JOSE L. PATIÑO, CA Bar No. 149568
   JosePatino@eversheds-sutherland.com
JUSTIN E. GRAY, CA Bar No. 282452
   JustinGray@eversheds-sutherland.com
SCOTT A. PENNER, CA Bar No. 253716
   ScottPenner@eversheds-sutherland.com
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA  92130
TELEPHONE:    858.252.6502
FACSIMILE:    858.252.6503

Attorneys for Defendants and Counter-Plaintiffs
ESET, LLC and ESET, SPOL. S.R.O.