# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN, INC.,<br><br>                Plaintiff,<br><br>        v.<br><br>ESET, LLC, et al.,<br><br>                Defendants.<br><br>———————————————<br><br>AND RELATED COUNTERCLAIMS. | Case No. 3:17-cv-0183-CAB-BGS<br><br>**ORDER GRANTING DEFENDANTS'<br>RENEWED MOTION FOR ISSUANCE<br>OF LETTER OF REQUEST**<br><br><br>Judge:     Hon. Bernard G. Skomal<br><br><br>[ECF 843] |

This matter comes before the court pursuant to Defendants' Renewed Motion for Issuance of Letter of Request. (ECF 843.)

The motion is **GRANTED** and the Letter of Request shall issue as attached.

**IT IS SO ORDERED.**


Dated:  December 31, 2020

_____
Hon. Bernard G. Skomal
United States Magistrate Judge


17cv0183

NICOLA A. PISANO, CA Bar No. 151282
  NicolaPisano@eversheds-sutherland.com
JOSE L. PATIÑO, CA Bar No. 149568
  JosePatino@eversheds-sutherland.com
JUSTIN E. GRAY, CA Bar No. 282452
  JustinGray@eversheds-sutherland.com
SCOTT A. PENNER, CA Bar No. 253716
  ScottPenner@eversheds-sutherland.com
**EVERSHEDS SUTHERLAND (US) LLP**
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA  92130
TELEPHONE:     858.252.6502
FACSIMILE:     858.252.6503

Attorneys for Defendants and Counter-Plaintiffs
ESET, LLC and ESET, SPOL. S.R.O.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN, INC., <br><br> Plaintiff, <br><br> v. <br><br> ESET, LLC, et al., <br><br> Defendants. <br> _____ <br><br> AND RELATED COUNTERCLAIMS. | Case No. 3:17-cv-00183-CAB-BGS <br><br> **REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE** <br><br> **(LETTER OF REQUEST)** |

17cv0183

**TO:**

> Administration of Courts
> Legal Assistance to Foreign Countries
> 22 Kanfei Nesharin St.
> Jerusalem 9546435
> Israel

**REQUESTING JUDICIAL AUTHORITY:**

> United States Magistrate Judge Bernard G. Skomal
> United States District Court
> Southern District of California
> 333 West Broadway
> San Diego, CA 92101
> United States of America
> Telephone: (619) 557-2993

**CENTRAL AUTHORITY OF REQUESTING STATE:**

> United States District Court
> Southern District of California
> 333 West Broadway
> San Diego, CA 92101
> United States of America

**PERSON TO WHOM THE EXECUTED REQUEST IS TO BE RETURNED:**

> Scott A. Penner
> Eversheds Sutherland (US) LLP
> 12255 El Camino Real, Suite 100
> San Diego, CA 92130
> Telephone: (858) 252-2510
> E-mail: ScottPenner@eversheds-sutherland.com

> To be submitted to the Administration of Courts in Jerusalem, Israel

The undersigned, United States Magistrate Judge Bernard G. Skomal, United States District Court for the Southern District of California, respectfully requests that you cause the production of testimony of a certain person or persons within your jurisdiction

17cv0183

to be taken for use as evidence at trial – as more fully described below – pursuant to the provisions of the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters ("Hague Convention").

In conformity with Article 3 of the Hague Convention, the undersigned applicant has the honor to submit the following:

## 1. Names and Addresses of the Parties and Their Representatives

Plaintiff Finjan, Inc. ("Finjan" or "Plaintiff") is a Delaware corporation, with its principal place of business in East Palo Alto, California. Plaintiff is represented by Juanita Brooks, Roger Denning, and Jason Wolff from the law firm of Fish & Richardson, located at 12860 El Camino Real, Suite 400, San Diego, CA 92130.

Defendant ESET, LLC is a California Corporation with its principal place of business in San Diego, California. Defendant ESET spol. S.R.O. ("ESET spol") is a Slovak Republic Corporation with its principal place of business in Bratislava, Slovak Republic. ESET, LLC is a wholly-owned subsidiary of ESET spol. ESET, LLC and ESET spol. (referred to collectively as "ESET" or "Defendants") are represented by Nicola Pisano, Jose Patiño, Justin Gray, and Scott Penner from the law firm of Eversheds Sutherland (US) LLP, located at 12255 El Camino Real, Suite 100, San Diego, CA 92130.

## 2. Nature and Summary of Proceedings and Summary of Facts

This proceeding arises out of a civil lawsuit filed by Plaintiff alleging infringement of the following patents: U.S. Patent Nos. 6,154,844 ("the '844 patent"); 6,804,780 ("the '780 patent"); 7,975,305 ("the '305 patent"); 8,079,086 ("the '086 patent"); 9,189,621 ("the '621 patent"); and 9,219,755 ("the '755 patent") (collectively, the "Patents-in-Suit"). Attached hereto as Exhibit 1 is a copy of Plaintiff's Complaint for Patent Infringement without exhibits.

Defendants deny that they infringed any of the Patents-in-Suit and claim that the Patents-in-Suit are invalid and/or unenforceable.

17cv0183

The witness identified below has been identified by the parties as possessing information relevant to the claims and defenses in this case.

The United States District Court in the Southern District of California has jurisdiction to determine whether Plaintiffs are entitled to any relief from their claims.

**3.** **Evidence to Be Obtained or Other Judicial Acts to Be Performed**

This letter requests the taking of oral testimony of the individual identified in ¶ 4 below for potential use at the trial of this case.

**4.** **Identity and Address of Any Person to be Examined**

The following person is requested to be examined:

Shlomo Touboul
Illusive Networks
Totseret Ha-Arets St. 7,
Tel Aviv-Yafo, 6789104
Telephone: +972-73-272-4006

**5.** **Subject of Examination**

The examination of Shlomo Touboul will concern: the alleged conception, development, reduction to practice, protection, validity, enforceability, and infringement of the '305 patent; employment, business relationship, and communications with Finjan regarding the '305 patent; Finjan's products as they relate to the '305 patent; ESET's products as they relate to the '305 patent; participation in Finjan litigation as it pertains to the '305 patent; corporate, financial, and marketing history of Finjan pertaining to the '305 patent; and state of the art of computer security as of 2000 as it pertains to the '305 patent.

**6.** **Documents or Other Property to Be Inspected**

No additional documents are sought from Shlomo Touboul through this request.

**7.** **Consent of the Parties**

The parties have consented to the depositions taking place in Israel or via remote means to permit the witness to remain in Israel and the attorneys to refrain from traveling to Israel in light of the global pandemic.

17cv0183

**8. Dates and Location**

The parties anticipate that the depositions will take place at a mutually agreeable location and date between January and February of 2021 or via remote means.

**9. Court Reporter, Videographer, and Interpreter**

A Court Reporter, Videographer, and Interpreter (if necessary) will be used to conduct the gathering of information. The company Planet Depos will provide the logistical support for identifying a court reporter, videographer, and interpreter, but the identity of each depends on the date and location of each deposition and cannot be confirmed until authorization is given for the deposition to proceed. If the names of such individuals must be submitted prior to the deposition, the parties agree to submit the names, addresses, and contact information for such individuals upon request.

**10. Evidence to Be Given Under Oath of Affirmation**

The witness should be sworn before evidence is taken. The witness will be sworn using an oath or affirmation as required by U.S. law. However, if local law does not permit the use of oath or affirmation, then the evidence should be taken in the normal manner permitted by local law.

**11. Procedures for Examination**

It is requested that the examination be conducted in English, with the use of an interpreter if requested by the witness or required by the judge, and that the testimony be transcribed by computer-aided transcription by a court reporter, licensed in the United States of America, in English. It is further requested that the deponent be permitted to be deposed for up to 2 hours on the record, exclusive of his prior deposition time on the record in this action.

**12. Commissioned Individual(s)**

The Parties request that one of Nicola Pisano, Jose Patiño, Justin Gray, or Scott Penner be permitted to question the witnesses under oath. Each of these individuals is a competent person commissioned by the United States District Court for the Southern District of California. Each of these individuals is familiar with the facts, theories, and

evidence of the case and each is capable of viewing protected materials (such as confidential information) that have been exchanged through the discovery process. Allowing the attorneys for Defendants to question Plaintiff's employees is the common method of obtaining discovery in the United States. Using attorneys already familiar with the case, the documents, and the allegations will materially keep the overall cost down.

### 13. Request for Notification

It is requested that the following persons be given notification of the time and place of execution of this request:

Nicola Pisano, Jose Patiño, Justin Gray, and Scott Penner from the law firm of Eversheds Sutherland (US) LLP, 12255 El Camino Real, Suite 100, San Diego, CA 92130, United States of America.

Juanita Brooks, Roger Denning, and Jason Wolff from the law firm of Fish & Richardson, located at 12860 El Camino Real, Suite 400, San Diego, CA 92130.

### 14. Reimbursement of Costs

All fees and costs incurred which are reimbursable under the Hague Convention will be borne by the Defendants subject to any later cost shifting provisions or orders issued by the United States District Court for the Southern District of California. Requests for reimbursement of fees and costs shall be submitted to Nicola Pisano, Eversheds Sutherland (US) LLP, 12255 El Camino Real, Suite 100, San Diego, CA 92130, United States of America.

The United States District Court for the Southern District of California extends its assurances of highest regard and consideration to the Administration of Courts of Israel.

17cv0183

Date of Request:

December 31, 2020

_____
Bernard G. Skomal
United States Magistrate Judge
Southern District of California

# EXHIBIT 1

PAUL ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>              Plaintiff,<br><br>        v.<br><br>ESET, LLC, a California Limited Liability Corporation, and ESET SPOL. S.R.O., a Slovak Republic Corporation,<br><br>              Defendants. | Case No.:<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

# COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Finjan, Inc. ("Finjan") files this Complaint for Patent Infringement and Demand for Jury Trial against ESET, LLC and ESET SPOL. S.R.O. ("Defendants" or "ESET") and allege as follows:

## THE PARTIES

1.      Finjan is a Delaware Corporation, with its principal place of business at 2000 University Avenue, Suite 600, E. Palo Alto, California 94303.

2.      ESET, LLC is a California Corporation with its principal place of business at 610 West Ash Street, Suite 1700, San Diego, California 92101.  ESET, LLC may be served through its agent for service of process Andrew Lee at 610 West Ash Street, Suite 1700, San Diego, CA 92101.  ESET, LLC is also known as ESET North America.

3.      ESET SPOL. S.R.O is a Slovak Republic Corporation with its principal place of business at Aupark Tower, 16th Floor, Einsteinova 24, 851 01 Bratislava, Slovak Republic.  Upon information and belief, ESET, LLC is a wholly-owned subsidiary of ESET SPOL. S.R.O.

## JURISDICTION AND VENUE

4.      This action arises under the Patent Act, 35 U.S.C. § 101 *et seq*.  This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331 and 1338.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and/or 1400(b).

6.      This Court has personal jurisdiction over Defendants.  Upon information and belief, Defendants do business in this District and have, and continues to, infringe and/or induce the infringement in this District.  In addition, the Court has personal jurisdiction over Defendants because minimum contacts have been established with the forum and the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

## INTRADISTRICT ASSIGNMENT

7.      Pursuant to Local Rule 3-2(c), Intellectual Property Actions are assigned on a district-wide basis.

## FINJAN'S INNOVATIONS

8.      Finjan was founded in 1997 as a wholly-owned subsidiary of Finjan Software Ltd., an Israeli corporation.  Finjan was a pioneer in developing proactive security technologies capable of detecting previously unknown and emerging online security threats recognized today under the umbrella of "malware."  These technologies protect networks and endpoints by identifying suspicious patterns and behaviors of content delivered over the Internet.  Finjan has been awarded, and continues to prosecute, numerous patents covering innovations in the United States and around the world resulting directly from Finjan's more than decades-long research and development efforts, supported by a dozen inventors, and over $65 million in R&D investments.

9.      Finjan built and sold software, including application programing interfaces (APIs), and appliances for network security using these patented technologies.  These products and customers continue to be supported by Finjan's licensing partners.  At its height, Finjan employed nearly 150 employees around the world building and selling security products and operating the Malicious Code Research Center through which it frequently published research regarding network security and current threats on the Internet.  Finjan's pioneering approach to online security drew equity investments from two major software and technology companies, the first in 2005, followed by the second in 2006.  Through 2009, Finjan generated millions of dollars in product sales and related services and support revenues.  Finjan became a publicly traded company in June 2013, capitalized with $30 million.  After Finjan's obligations under the non-compete and confidentiality agreement expired in March 2015, Finjan re-entered the development and production sector of secure products for the consumer market.

COMPLAINT FOR PATENT INFRINGEMENT                CASE NO.

10.     On November 28, 2000, U.S. Patent No. 6,154,844 ("the '844 Patent"), entitled SYSTEM AND METHOD FOR ATTACHING A DOWNLOADABLE SECURITY PROFILE TO A DOWNLOADABLE, was issued to Shlomo Touboul and Nachshon Gal.  A true and correct copy of the '844 Patent is attached to this Complaint as Exhibit A and is incorporated by reference herein.

11.     All rights, title, and interest in the '844 Patent have been assigned to Finjan, who is the sole owner of the '844 Patent.  Finjan has been the sole owner of the '844 Patent since its issuance.

12.     The '844 Patent is generally directed towards computer networks, and more particularly, provides a system that protects devices connected to the Internet from undesirable operations from web-based content.  One of the ways this is accomplished is by linking a security profile to such web-based content to facilitate the protection of computers and networks from malicious web-based content.

13.     On October 12, 2004, U.S. Patent No. 6,804,780 ("the '780 Patent"), entitled SYSTEM AND METHOD FOR PROTECTING A COMPUTER AND A NETWORK FROM HOSTILE DOWNLOADABLES, was issued to Shlomo Touboul.  A true and correct copy of the '780 Patent is attached to this Complaint as Exhibit B and is incorporated by reference herein.

14.     All rights, title, and interest in the '780 Patent have been assigned to Finjan, which is the sole owner of the '780 Patent.  Finjan has been the sole owner of the '780 Patent since its issuance.

15.     The '780 Patent is generally directed towards methods and systems for generating a Downloadable ID.  By generating an identification for each examined Downloadable, the system may allow for the Downloadable to be recognized without reevaluation.  Such recognition increases efficiency while also saving valuable resources, such as memory and computing power.

16.     On July 5, 2011, U.S. Patent No. 7,975,305 ("the '305 Patent"), entitled METHOD AND SYSTEM FOR ADAPTIVE RULE-BASED CONTENT SCANNERS FOR DESKTOP

3

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

COMPUTERS, was issued to Moshe Rubin, Moshe Matitya, Artem Melnick, Shlomo Touboul, Alexander Yermakov and Amit Shaked.  A true and correct copy of the '305 Patent is attached to this Complaint as Exhibit C and is incorporated by reference herein.

17.     All rights, title, and interest in the '305 Patent have been assigned to Finjan, who is the sole owner of the '305 Patent. Finjan has been the sole owner of the '305 Patent since its issuance.

18.     The '305 Patent is generally directed towards network security and, in particular, rule based scanning of web-based content for exploits.  One of the ways this is accomplished is by using parser and analyzer rules to describe computer exploits as patterns of types of tokens.  Additionally, the system provides a way to keep these rules updated.

19.     On December 13, 2011, U.S. Patent No. 8,079,086 ("the '086 Patent"), entitled MALICIOUS MOBILE CODE RUNETIME MONITORING SYSTEM AND METHODS, was issued to Yigal Mordechai Edery, Nimrod Itzhak Vered, David R Kroll and Shlomo Touboul.  A true and correct copy of the '086 Patent is attached hereto as Exhibit D and is incorporated herein.

20.     All rights, title, and interest in the '086 Patent have been assigned to Finjan, who is the sole owner of the '086 Patent. Finjan has been the sole owner of the '086 Patent since its issuance.

21.     The '086 Patent is generally directed towards computer networks and, more particularly, provides a system that protects devices connected to the Internet from undesirable operations from web-based content.  One of the ways this is accomplished is by creating a profile of the web-based content and sending these profiles and corresponding web-content to another computer for appropriate action.

22.     On November 17, 2015, U.S. Patent No. 9,189,621 ("the '621 Patent"), entitled MALICIOUS MOBILE CODE RUNTIME MONITORING SYSTEM AND METHODS, was issued

4

COMPLAINT FOR PATENT INFRINGEMENT                         CASE NO.

to Shlomo Touboul.  A true and correct copy of the '621 Patent is attached hereto as Exhibit E and is incorporated by reference herein.

23.     All rights, title, and interest in the '621 Patent have been assigned to Finjan, who is the sole owner of the '621 Patent. Finjan has been the sole owner of the '621 Patent since its issuance.

24.     The '621 Patent is generally directed towards a system for determining whether a downloadable is suspicious that includes a processor, a plurality of operating system probes, an interrupter, a first comparator, and a response engine.

25.     On December 22, 2015, U.S. Patent No. 9,219,755 ("the '755 Patent"), entitled MALICIOUS MOBILE CODE RUNTIME MONITORING SYSTEM AND METHODS, was issued to Shlomo Touboul.  A true and correct copy of the '755 Patent is attached hereto as Exhibit F and is incorporated by reference herein.

26.     All rights, title, and interest in the '755 Patent have been assigned to Finjan, who is the sole owner of the '755 Patent. Finjan has been the sole owner of the '755 Patent since its issuance.

27.     The '755 Patent generally covers a system for reviewing an operating system call issued by a downloadable that includes a processor, an operating system probe, a runtime environment monitor, a response engine, a downloadable engine, a request broker, a file system probe and a network system probe, and an event router.

### ESET

28.     ESET makes, uses, sells, offers for sale, and/or imports into the United States and this District products and services that utilize ESET ThreatSense ("ThreatSense"), ESET Advanced Heuristic, ESET DNA Signature, Host-based Intrusion Prevention System (HIPS), and/or ESET LiveGrid ("LiveGrid") technologies, including ESET's Home Protection, Small Office, and Business product lines and ESET's Services.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

29.     ESET's Home Protection products are ESET Multi-Device Security, ESET NOD32 Antivirus ("NOD32"), ESET Smart Security, ESET Cyber Security, ESET Cyber Security Pro, ESET Mobile Security for Android, and ESET NOD32 Antivirus for Linux (collectively "Accused ESET Home Protection Products"), as described in https://www.eset.com/int/home/, attached hereto as Exhibit G.

30.     ESET's Small Office Protection products are ESET Multi-Device Home Office, ESET Small Office Security, and ESET Small Business Security Pack (collectively "Accused ESET Small Office Protection Products"), as described in https://www.eset.com/us/products/soho/, attached hereto as Exhibit H.

31.     ESET's Business Protection Products are ESET Endpoint Antivirus for Windows, ESET Endpoint Security for Windows, ESET Endpoint Antivirus for OS X, ESET Endpoint Security for OS X, ESET Endpoint Antivirus for Linux, ESET Endpoint Security for Android, ESET Mail Security for Microsoft Exchange Server, ESET Mail Security for Linux/BSD, ESET Mail Security for Kerio, ESET Mail Security for IBM Domino, ESET Gateway Security for Linux/BSD, ESET Gateway Security for Kerio, ESET File Security for Microsoft Windows Server, ESET File Security for Linux/BSD, and ESET Security for Virtual Environment (collectively "Accused ESET Business Protection Products"), as described in https://www.eset.com/us/business/, attached hereto as Exhibit I.

**ThreatSense Engine**

32.     ThreatSense is an anti-virus or threat engine, which powers all of ESET's products. The engine performs advanced heuristic threat detection capable of identifying and preventing never-seen before, zero-day computer threats from affecting a computer system.  Shown below is diagram illustrating the operation of ThreatSense:

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

*See* ESET Nod32 Antivirus System Remote Administrator Overview at 4, available at

http://www.download.eset.com/manuals/ra_ovw.pdf, attached hereto as Exhibit J.

33.     ThreatSense can detect and prevent malicious content such as viruses, trojans, worms, adware, spyware, phishing attacks, riskware, application exploits and other forms of computer attacks. The detection and prevention mechanism is achieved by a combination of ThreatSense's active heuristics requiring analysis of emulated code and passive heuristics requiring code analysis. With active heuristics, ThreatSense can execute the code to see what it actually does and execution occurs in a controlled, protected environment to avoid damage. In particular, ThreatSense runs the code in a virtual environment and examines the behavior performed in and changes made to the virtual environment in detecting threats. With passive heuristics, ThreatSense analyzes a program as it is scanned, tracing through the instructions in a program using static code analysis before passing the code to the processor for execution. In this process, suspicious code can be analyzed to see what it appears to be designed to do by using rules that look for patterns, routines, or program calls that indicate malicious behavior. Malicious behaviors can be identified, listed, and stored. Such malicious behavior information can be delivered to LiveGrid, which is a cloud-based counterpart for ESET products. In addition, ThreatSense submits suspicious files to LiveGrid for further analyses and to create a downloadable security profile.

7

COMPLAINT FOR PATENT INFRINGEMENT              CASE NO.

### LiveGrid

34.     LiveGrid is used by ESET's products to collect data by ESET users worldwide, including users in the United States and this District, for analysis and providing updates to ESET users. LiveGrid maintains a comprehensive threat database of zero-day threats identified by ESET's products and services. It collects malware-related information from millions of ESET users and determines how widely used a given file is, as well as its reputation – i.e., if it exhibits malicious behavior. In particular, malicious content along with other information is submitted and stored by the LiveGrid cloud database. *See* http://static3.esetstatic.com/fileadmin/Images/INT/Docs/Other/ESET-Technology-Overview.pdf, attached hereto as Exhibit K. Shown below is an illustration of the LiveGrid operation.



*See* http://static4.esetstatic.com/fileadmin/Images/INT/Images/Article-Floated/ESET-Technology/Infographics/infographic-technology-livegrid.jpg, attached hereto as Exhibit L.

8

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

## Heuristics/DNA/Smart Signatures

35.     ESET's Heuristics (also known as Advanced Heuristics, DNA, Smart Signatures) is used by ESET's products to provide proactive detection capabilities by analyzing downloadables, including JavaScript, to detect computer worms and Trojans using static analysis and emulation.  In detecting advanced threats, ESET also uses heuristics that can identify complex malicious code patterns in web content.  It helps identify exploits that are obfuscated and are not easily detected by traditional virus signature matching.  ESET's Heuristic technologies use a rule-based approach to diagnose a potentially malicious file, including rules that detects whether a potentially malicious program tries to copy itself, write on a disk, decrypt itself, binds to a networking port, or modifies files.  ESET uses the heuristics to feed additional information into LiveGrid.  *See* ESET NOD32 Antivirus 9 User Guide, attached hereto as Exhibit M.  In addition, ESET DNA and Smart Signatures use hashing techniques to provide unique downloadable identification of potentially malicious malware.  *See* ESET Technology overview, available at https://static3.esetstatic.com/fileadmin/Images/INT/Docs/Other/ESET-Technology-Overview.pdf, attached hereto as Exhibit K.

## HIPS

36.     ESET's HIPS technology monitors events within the operating system and reacts to them according to customized set of rules.  HIPS uses advanced behavioral analysis techniques to monitor operating system calls such as running processes, files, and registry keys.  *See* ESET NOD32 Antivirus 9 User Guide, attached hereto as Exhibit M; s*ee also*:

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.



Fig.2: How ESET's behavioral detection works

*See* ESET Technology overview at 9, available at

https://static3.esetstatic.com/fileadmin/Images/INT/Docs/Other/ESET-Technology-Overview.pdf,

attached hereto as Exhibit K.

## Exploit Blocker

37.     Exploit blocker monitors the behavior of processes for suspicious activity that may

indicate and exploit in applications such as web browsers, PDF readers, email clients and MS Office

components.  When Exploit Blocker identifies a suspicious process, it can stop the process and send

information to the ESET Live cloud system.  Additionally, there is also a Java Exploit Blocker, which

is an extension of Exploit Blocker protection.  The Java Exploit Blocker monitors Java looking for

certain malicious or suspicious behaviors.

**EXPLOIT BLOCKER**

ESET technologies protect against various types
of vulnerability on different levels: our scanning
engine covers exploits that appear in malformed
document files; Network Attack Protection targets
the communication level; and finally, Exploit
Blocker blocks the exploitation process itself.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

*See* ESET Technology overview at 7, available at

https://static3.esetstatic.com/fileadmin/Images/INT/Docs/Other/ESET-Technology-Overview.pdf,

attached hereto as Exhibit K.

### ESET'S INFRINGEMENT OF FINJAN'S PATENTS

38.     Defendants have been and is now infringing the '844 Patent, '780 Patent, the '305 Patent, the '086 Patent, the '621 Patent, and the '755 Patent (collectively "the Patents-In-Suit") in this judicial District, and elsewhere in the United States by, among other things, making, using, importing, selling, and/or offering for sale the claimed system and methods on the Accused ESET's Home Protection Products, Small Office Protection Products, Business Protection Products and Services.

39.     In addition to directly infringing the Patents-In-Suit pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, or both, Defendants indirectly infringe all the Patents-In-Suit by instructing, directing and/or requiring others, including its customers, purchasers, users, and developers, to perform all or some of the steps of the method claims, either literally or under the doctrine of equivalents, or both, of the Patents-In-Suit.

### COUNT I
### (Direct Infringement of the '844 Patent pursuant to 35 U.S.C. § 271(a))

40.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

41.     Defendants have infringed and continues to infringe claims 1-44 of the '844 Patent in violation of 35 U.S.C. § 271(a).

42.     Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

43.     Defendants' acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization, or license of Finjan.

11

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

44.    Defendants' infringement includes the manufacture, use, sale, importation and/or offer for sale of Defendants' products and services, including Small Office Protection Products and Business Protection Products, which embody the patented invention of the '844 Patent.  Such products include, ESET Small Business Security Pack, ESET Mail Security for Linux/BSD, ESET Mail Security for Kerio, ESET Gateway Security for Linux/BSD, and ESET Gateway Security for Kerio (collectively, the "'844 Accused Products").

45.    The '844 Accused Products embody the patented invention of the '844 Patent and infringe the '844 Patent because they practice a method of receiving by an inspector a downloadable, generating by the inspector a first downloadable security profile that identifies suspicious code in the received downloadable and linking by the inspector the first downloadable security profile to the downloadable before a web server makes the downloadable available to web clients.  For example, as shown below, ESET Gateway Security products, including ESET Gateway Security for Linux/BSD, and ESET Gateway Security for Kerio, provides gateway security to end users.



ESET Gateway Security Installation Manual and User Guide at 12, attached hereto as Exhibit N. Incoming downloadables are received at the ESET Gateway, where they are either scanned there or submitted via Sample Submission System (a part of the ThreatSense technology).  Using advanced

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

heuristics, a downloadable security profile is created and linked if the downloadable is unknown. Similarly, ESET Mail Security products, such as ESET Small Business Security Pack, ESET Mail Security for Linux/BSD, and ESET Mail Security for Kerio, have an email gateway that looks for incoming downloadables and scans the downloadable using advanced heuristics and LiveGrid technologies. In addition, ESET Mail Security products include Sample Submission System (a part of the ThreatSense technology). Using advanced heuristics, a downloadable security profile is created and linked if the downloadable is unknown.

46. As a result of Defendants' unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law. Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

47. Defendants' infringement of the '844 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

48. Defendants are well aware of Finjan's patents, including the '844 Patent, and have continued its infringing activity despite this knowledge. Finjan informed Defendants of its patent portfolio and infringement on or about January 22, 2015, and have provided representative claim charts specifically identifying how Defendant's products and services infringe Finjan patents. Finjan attempted unsuccessfully to actively engage in good faith negotiations for over a year with Defendants regarding Finjan's patent portfolio, including having a number of in-person and telephonic meetings from October 2015 through April 2016 explaining claim element by element Defendants' infringement.

49. Despite knowledge of Finjan's patent portfolio, being provided representative claim charts of several Finjan patents, and engaging in technical meetings regarding infringement of Defendants' products and services, Defendants have refused to enter into good faith discussions with

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

Finjan, and have sold and continues to sell the accused products and services in complete disregard of Finjan's patent rights.  As such, Defendants have acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '844 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

**COUNT II**

**(Indirect Infringement of the '844 Patent pursuant to 35 U.S.C. § 271(b))**

50.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

51.     Defendants have induced and continues to induce infringement of one or more claims of the '844 Patent under 35 U.S.C. § 271(b).

52.     In addition to directly infringing the '844 Patent, Defendants indirectly infringe the '844 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including its customers, purchasers, users, or developers, to perform one or more of the steps of the method claims, either literally or under the doctrine of equivalents, of the '844 Patent, where all the steps of the method claims are performed by either ESET, its customers, purchasers, users or developers, or some combination thereof.  Defendants knew or was willfully blind to the fact that it was inducing others, including customers, purchasers, users or developers, to infringe by practicing, either themselves or in conjunction with Defendants, one or more method claims of the '844 Patent, including claims 1-14 and 23-31.

53.     Defendants knowingly and actively aided and abetted the direct infringement of the '844 Patent by instructing and encouraging its customers, users and developers to use the '844 Accused Products.  Such instructions and encouragement include but are not limited to, advising third parties to use the '844 Accused Products in an infringing manner, providing a mechanism through

14

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

which third parties may infringe the '844 Patent, specifically through the use of ESET's ThreatSense, Advanced Heuristic, HIPS, DNA Signature, Exploit Blocker, and LiveGrid Technologies, advertising and promoting the use of the '844 Accused Products in an infringing manner and distributing guidelines and instructions to third parties on how to use the '844 Accused Products in an infringing manner.

54. Defendants provides articles, videos and downloads which cover in depth aspects of operating Defendants' offerings. *See* http://www.eset.com/us/support/download/installation-videos/, attached hereto as Exhibit O.

55. Defendants updates and maintains an HTTP site with Defendants' quick start guides, administration guides, user guides, and operating instructions which cover in depth aspects of operating Defendants' offerings. *See* http://support.eset.com/, attached hereto as Exhibit P.

## COUNT III
### (Direct Infringement of the '780 Patent pursuant to 35 U.S.C. § 271(a))

56. Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

57. Defendants have infringed and continues to infringe claim 1-18 of the '780 Patent in violation of 35 U.S.C. § 271(a).

58. Defendants' infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

59. Defendants' acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

60. Defendants' infringement includes the manufacture, use, sale, importation and/or offer for sale of Defendants' products and services, including Home Protection Products, Small Office Protection Products and Business Protection Products, which embody the patented invention of the

---

15

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

'780 Patent. Such products include ESET Multi-Device Security, ESET NOD32 Antivirus, ESET Smart Security, ESET Cyber Security, ESET Cyber Security Pro, ESET Mobile Security for Android, ESET NOD32 Antivirus for Linux, ESET Multi-Device Home Office, ESET Small Office Security, ESET Small Business Security Pack, ESET Endpoint Antivirus for Windows, ESET Endpoint Security for Windows, ESET Endpoint Antivirus for OS X, ESET Endpoint Security for OS X, ESET Endpoint Antivirus for Linux, ESET Endpoint Security for Android, ESET Mail Security for Microsoft Exchange Server, ESET Mail Security for Linux/BSD, ESET Mail Security for Kerio, ESET Mail Security for IBM Domino, ESET Gateway Security for Linux/BSD, ESET Gateway Security for Kerio, ESET File Security for Microsoft Windows Server, ESET File Security for Linux/BSD, and ESET Security for Virtual Environment (collectively, the "780 Accused Products").

61. The '780 Accused Products embody the patented invention of the '780 Patent and infringe the '780 Patent because they practice a method of obtaining a downloadable that includes one or more references to software components required to be executed by the downloadable, fetching at least one software component required to be executed by the downloadable, and performing a hashing function on the downloadable and the fetched software components to generate a downloadable ID. For example, NOD32 perform hash value lookups using ESET's LiveGrid technology. In creating that hash value, NOD32 obtains the software components required to be executed and performs a hashing function on the downloadable and fetched software components.

62. As a result of Defendants' unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law. Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

63. Defendants' infringement of the '780 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

64.     Defendants are well aware of Finjan's patents and has continued its infringing activity despite this knowledge.  Finjan attempted unsuccessfully to actively engage in good faith negotiations for over a year with Defendants regarding Finjan's patent portfolio, including having a number of in-person and telephonic meetings from October 2015 through April 2016 explaining claim element by element Defendants' infringement.  As such, Defendants have continued to willfully, wantonly, and deliberately engage in acts of infringement of the '780 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT IV
### (Indirect Infringement of the '780 Patent pursuant to 35 U.S.C. § 271(b))

65.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

66.     Defendants have induced and continues to induce infringement of at least claims 1-8 of the '780 Patent under 35 U.S.C. § 271(b).

67.     In addition to directly infringing the '780 Patent, Defendants indirectly infringe the '780 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including customers, users and developers, to perform some of the steps of the method claims, either literally or under the doctrine of equivalents, of the '780 Patent, where all the steps of the method claims are performed by either Defendants or their customers, users or developers, or some combination thereof. Defendants knew or were willfully blind to the fact that it was inducing others, including customers, users and developers, to infringe by practicing, either themselves or in conjunction with Defendants, one or more method claims of the '780 Patent, including 1-8.

68.     Defendants knowingly and actively aided and abetted the direct infringement of the '780 Patent by instructing and encouraging its customers, users and developers to use the '780

COMPLAINT FOR PATENT INFRINGEMENT                          CASE NO.

Accused Products. Such instructions and encouragement include but are not limited to, advising third parties to use the '780 Accused Products in an infringing manner, providing a mechanism through which third parties may infringe the '780 Patent, specifically through the use of ESET's ThreatSense, Advanced Heuristic, HIPS, DNA Signature, Exploit Blocker, and LiveGrid Technologies, advertising and promoting the use of the '780 Accused Products in an infringing manner and distributing guidelines and instructions to third parties on how to use the '780 Accused Products in an infringing manner.

69. Defendants provides articles, videos and downloads which cover in depth aspects of operating Defendants' offerings. *See* http://www.eset.com/us/support/download/installation-videos/, attached hereto as Exhibit O.

70. Defendants updates and maintains an HTTP site with Defendants' quick start guides, administration guides, user guides, and operating instructions which cover in depth aspects of operating Defendants' offerings. *See* http://support.eset.com/, attached hereto as Exhibit P.

## <u>COUNT V</u>
### (Direct Infringement of the '305 Patent pursuant to <u>35 U.S.C. § 271(a)</u>)

71. Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

72. Defendants have infringed and continues to infringe claims 1- 25 of the '305 Patent in violation of 35 U.S.C. § 271(a).

73. Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

74. Defendants' acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization, or license of Finjan.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

75.     Defendants' infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendants' products and services, including ESET Small Business Security Pack, ESET Mail Security for Linux/BSD, ESET Mail Security for Kerio, ESET Gateway Security for Linux/BSD, and ESET Gateway Security for Kerio (collectively, the "305 Accused Products").

76.     The '305 Accused Products embody the patented invention of the '305 Patent and infringe the '3045 Patent because they practice a method of receiving incoming content from the Internet, selectively diverting content from its intended destination, scanning the content to recognize potential computer exploits using analyzer and parser rules, and updating those rules to incorporate new behavioral rules.  For example, as shown below, ESET Gateway Security products, including ESET Gateway Security for Linux/BSD, and ESET Gateway Security for Kerio, provides gateway security to end users.



ESET Gateway Security Installation Manual and User Guide at 12, attached hereto as Exhibit N. Incoming downloadables are diverted at the gateway to be submitted via Sample Submission System (a part of the ThreatSense technology) and scanned.  ESET Gateway products also use passive heuristics to look for patterns, routines of program calls that indicate malicious behavior and select those content

19

to be further scanned.  The scanner uses advanced heuristics and analyzer and parser rules to determine if the content is malicious.  *See* ESET Heuristic Analysis – Detecting Unknown Viruses at 7, available at http://go.eset.com/us/resources/white-papers/HeurAnalysis(Mar2007)Online.pdf, attached hereto as Exhibit Q ("Heuristic analysis uses a rule-based approach.").  New rules are created and the analyzer and parser rules database is updated.  Similarly, ESET Mail Security products, such as ESET Small Business Security Pack, ESET Mail Security for Linux/BSD, and ESET Mail Security for Kerio, have an email gateway that looks for incoming content and scans the downloadable using advanced heuristics and LiveGrid technologies.  In addition, ESET Mail Security products include Sample Submission System (a part of the ThreatSense technology).  ESET Mail Security products use advanced heuristics and analyzer and parser rules to determine if the content is malicious.  New rules are created when new malicious content is found and the analyzer and parser rules database is updated.

77.     As a result of Defendants' unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

78.     Defendants' infringement of the '305 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

79.     Defendants are well aware of Finjan's patents, including the '305 Patent, and have continued its infringing activity despite this knowledge.  Finjan informed Defendants of its patent portfolio and infringement on or about January 22, 2015, and have provided representative claim charts specifically identifying how Defendant's products and services infringe Finjan patents.  Finjan attempted unsuccessfully to actively engage in good faith negotiations for over a year with Defendants regarding Finjan's patent portfolio, including having a number of in-person and telephonic meetings

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

from October 2015 through April 2016 explaining claim element by element Defendants' infringement.

80.     Despite knowledge of Finjan's patent portfolio, being provided representative claim charts of several Finjan patents, and engaging in technical meetings regarding infringement of Defendants' products and services, Defendants have refused to enter into good faith discussions with Finjan, and have sold and continues to sell the accused products and services in complete disregard of Finjan's patent rights.  As such, Defendants have acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '305 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT VI

### (Indirect Infringement of the '305 Patent pursuant to 35 U.S.C. § 271(b))

81.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

82.     Defendants have induced and continues to induce infringement of one or more method claims of the '305 Patent under 35 U.S.C. § 271(b).

83.     In addition to directly infringing the '305 Patent, Defendants indirectly infringe the '305 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including customers, purchasers, users and developers, to perform one or more of the steps of the method claims, either literally or under the doctrine of equivalents, of the '305 Patent, where all the steps of the method claims are performed by either ESET, its customers, purchasers, users or developers, or some combination thereof.  Defendants knew or was willfully blind to the fact that it was inducing others,

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

1    including customers, purchasers, users or developers, to infringe by practicing, either themselves or in

2    conjunction with Defendants, one or more method claims of the '305 Patent, including 13-24.

3           84.    Defendants knowingly and actively aided and abetted the direct infringement of the

4    '305 Patent by instructing and encouraging its customers, users and developers to use the '305

5    Accused Products.  Such instructions and encouragement include but are not limited to, advising third

6    parties to use the '305 Accused Products in an infringing manner, providing a mechanism through

7    which third parties may infringe the '305 Patent, specifically through the use of ESET's ThreatSense,

8    Advanced Heuristic, HIPS, DNA Signature, Exploit Blocker, and LiveGrid Technologies, advertising

9    and promoting the use of the '305 Accused Products in an infringing manner and distributing

10   guidelines and instructions to third parties on how to use the '305 Accused Products in an infringing

11   manner.

12

13          85.    Defendants knowingly and actively aided and abetted the direct infringement of the

14   '305 Patent by instructing and encouraging its customers, purchasers, users or developers to use the

15   '305 Accused Products.  Such instructions and encouragement include, advising customers,

16   purchasers, users, and developers to use the '305 Accused Products in an infringing manner,

17   providing a mechanism and process through which customers, purchasers, users or developers may

18   infringe the '305 Patent, specifically through advertising and promoting the use of the '305 Accused

19   Products in an infringing manner and distributing guidelines and instructions to third parties on how

20   to use the '305 Accused Products in an infringing manner.

21

22          86.    Defendants provides articles, videos and downloads which cover in depth aspects of

23   operating Defendants' offerings.  *See* http://www.eset.com/us/support/download/installation-videos/,

24   attached hereto as Exhibit O.

25

26

27

28

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

87.     Defendants updates and maintains an HTTP site with Defendants' quick start guides, administration guides, user guides, and operating instructions which cover in depth aspects of operating Defendants' offerings.  *See* http://support.eset.com/, attached hereto as Exhibit P.

### COUNT VII
### (Direct Infringement of the '086 Patent pursuant to 35 U.S.C. § 271(a))

88.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

89.     Defendants have infringed and continues to infringe claims 1-42 of the '086 Patent in violation of 35 U.S.C. § 271(a).

90.     Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

91.     Defendants' acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization, or license of Finjan.

92.     Defendants' infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including Home Protection Products, Small Office Protection Products and Business Protection Products, which embody the patented invention of the '086 Patent.  Such products include ESET Multi-Device Security, ESET NOD32 Antivirus, ESET Smart Security, ESET Cyber Security, ESET Cyber Security Pro, ESET Mobile Security for Android, ESET NOD32 Antivirus for Linux, ESET Multi-Device Home Office, ESET Small Office Security, ESET Small Business Security Pack, ESET Endpoint Antivirus for Windows, ESET Endpoint Security for Windows, ESET Endpoint Antivirus for OS X, ESET Endpoint Security for OS X, ESET Endpoint Antivirus for Linux, ESET Endpoint Security for Android, ESET Mail Security for Microsoft Exchange Server, ESET Mail Security for Linux/BSD, ESET Mail Security for Kerio, ESET Mail Security for IBM Domino, ESET Gateway Security for Linux/BSD,

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

ESET Gateway Security for Kerio, ESET File Security for Microsoft Windows Server, ESET File Security for Linux/BSD, and ESET Security for Virtual Environment (collectively, the "'086 Accused Products").

93.    The '086 Accused Products embody the patented invention of the '086 Patent and infringe the '086 Patent because they practice a method of receiving by an inspector a downloadable, deriving by the inspector a security profile data that identifies suspicious computer operations in the received downloadable, appending by the security profile data to the downloadable, and transmitting the appended downloadable.   For example, as shown below, ESET Gateway Security products, including ESET Gateway Security for Linux/BSD, and ESET Gateway Security for Kerio, provides gateway security to end users.



ESET Gateway Security Installation Manual and User Guide at 12, attached hereto as Exhibit N. Incoming downloadables are received at the ESET Gateway, where they are either scanned there or submitted via Sample Submission System (a part of the ThreatSense technology).  Using advanced heuristics, a security profile data is derived and appended to the downloadable if the downloadable is unknown.  *See* Understanding and Teaching Heuristics, available at http://www.welivesecurity.com/media_files/white-papers/Understanding_Heuristics.pdf, attached

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

hereto as Exhibit R.  Similarly, ESET Mail Security products, such as ESET Small Business Security Pack, ESET Mail Security for Linux/BSD, and ESET Mail Security for Kerio, have an email gateway that looks for incoming downloadables and scans the downloadable using advanced heuristics and LiveGrid technologies.  In addition, ESET Mail Security products include Sample Submission System (a part of the ThreatSense technology).  Using advanced heuristics, a security profile data is derived and appended to the downloadable if the downloadable is unknown.  In addition, NOD32 can receive in the incoming downloadable and scan the downloadable using advanced heuristics creating a security profile.  That profile is appended to the downloadable and sent to a destination computer, such as ESET's file submission server or ESET Virus Labs.

94.     As a result of Defendants' unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

95.     Defendants' infringement of the '086 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

96.     Defendants are well aware of Finjan's patents and has continued its infringing activity despite this knowledge.  Finjan attempted unsuccessfully to actively engage in good faith negotiations for over a year with Defendants regarding Finjan's patent portfolio, including having a number of in-person and telephonic meetings from October 2015 through April 2016 explaining claim element by element Defendants' infringement.  As such, Defendant have continued to willfully, wantonly, and deliberately engage in acts of infringement of the '086 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

### COUNT VIII
### (Indirect Infringement of the '086 Patent pursuant to <u>35 U.S.C. § 271(b)</u>)

97.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

98.     Defendants have induced and continues to induce infringement of one or more method claims of the '086 Patent under 35 U.S.C. § 271(b).

99.     In addition to directly infringing the '086 Patent, Defendants indirectly infringe the '086 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including customers, purchasers, users or developers, to perform one or more of the steps of the method claims, either literally or under the doctrine of equivalents, of the '086 Patent, where all the steps of the method claims are performed by either ESET, its customers, purchasers, users or developers, or some combination thereof. Defendants knew or was willfully blind to the fact that it was inducing others, including customers, users or developers, to infringe by practicing, either themselves or in conjunction with Defendant, one or more method claims of the '086 Patent, including claims 1-8, 17-23, 31-32, 35-36, 39, and 41.

100.    Defendants knowingly and actively aided and abetted the direct infringement of the '086 Patent by instructing and encouraging its customers, users and developers to use the '086 Accused Products. Such instructions and encouragement include but are not limited to, advising third parties to use the '086 Accused Products in an infringing manner, providing a mechanism through which third parties may infringe the '086 Patent, specifically through the use of ESET's ThreatSense, Advanced Heuristic, HIPS, DNA Signature, Exploit Blocker, and LiveGrid Technologies, advertising and promoting the use of the '086 Accused Products in an infringing manner and distributing guidelines and instructions to third parties on how to use the '086 Accused Products in an infringing manner.

---

26

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

101.    Defendants provides articles, videos and downloads which cover in depth aspects of operating Defendants' offerings.  *See* http://www.eset.com/us/support/download/installation-videos/, attached hereto as Exhibit O.

102.    Defendants updates and maintains an HTTP site with Defendants' quick start guides, administration guides, user guides, and operating instructions which cover in depth aspects of operating Defendants' offerings.  *See* http://support.eset.com/, attached hereto as Exhibit P.

## COUNT IX
### (Direct Infringement of the '621 Patent pursuant to 35 U.S.C. § 271(a))

103.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

104.    Defendants have infringed and continues to infringe claims 1-16 of the '621 Patent in violation of 35 U.S.C. § 271(a).

105.    Defendants' infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

106.    Defendants acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

107.    Defendants' infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendants' products and services, including, ESET Multi-Device Security, ESET NOD32 Antivirus, ESET Smart Security, ESET Cyber Security, ESET Cyber Security Pro, ESET Mobile Security for Android, ESET NOD32 Antivirus for Linux, ESET Multi-Device Home Office, ESET Small Office Security, ESET Small Business Security Pack, ESET Endpoint Antivirus for Windows, ESET Endpoint Security for Windows, ESET Endpoint Antivirus for OS X, ESET Endpoint Security for OS X, ESET Endpoint Antivirus for Linux, ESET Endpoint

27

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

Security for Android, ESET Mail Security for Microsoft Exchange Server, ESET Mail Security for Linux/BSD, ESET Mail Security for Kerio, ESET Mail Security for IBM Domino, ESET Gateway Security for Linux/BSD, ESET Gateway Security for Kerio, ESET File Security for Microsoft Windows Server, ESET File Security for Linux/BSD, and ESET Security for Virtual Environment (collectively, the "'621 Accused Products").

108.    The '621 Accused Products embody the patented invention of the '621 Patent and infringe the '621 Patent because they utilize and/or incorporate a system for reviewing an operating system call issued by a downloadable, comprising at least one processor for accessing elements stored in at least one memory associated with the at least one processor and for executing instructions associated with the elements, the elements including a plurality of operating system probes for monitoring substantially in parallel a plurality of subsystems of an operating system during runtime for an event caused from a request made by a downloadable, wherein the plurality of subsystems includes a network system, an interrupter for interrupting processing of the request, a comparator coupled to the plurality of operating system probes for comparing information pertaining to the downloadable against a predetermined security policy and a response engine for performing a predetermined responsive action based on the comparison.  For example, NOD32 uses emulation techniques (and HIPS technology) to monitor the operating system subsystems during runtime of a downloadable and a comparator for comparing the information about the downloadable to a security policy and a response engine for responding to the comparison.

109.    As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

110.     Defendant's infringement of the '621 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

111.     Defendants are well aware of Finjan's patents and has continued its infringing activity despite this knowledge.  Finjan attempted unsuccessfully to actively engage in good faith negotiations for over a year with Defendants regarding Finjan's patent portfolio, including having a number of in-person and telephonic meetings from October 2015 through April 2016 explaining claim element by element Defendants' infringement.  As such, Defendants have continued to willfully, wantonly, and deliberately engage in acts of infringement of the '621 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT X
### (Induced Infringement of the '621 Patent pursuant to 35 U.S.C. § 271(b))

112.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

113.     Defendants have induced and continues to induce infringement of claims 1-16 of the '621 Patent under 35 U.S.C. § 271(b).

114.     In addition to directly infringing the '621 Patent, Defendants indirectly infringe the '621 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including its customers, users and developers, to directly infringe claims 1-16 of the '621 Patent, either literally or under the doctrine of equivalents.  Defendant knew or was willfully blind to the fact that it was inducing others, including customers, users and developers, to infringe by practicing one or more claims of the '621 Patent.

115.     Defendants knowingly and actively aided and abetted the direct infringement of the '621 Patent by instructing and encouraging its customers, users and developers to use the '621

COMPLAINT FOR PATENT INFRINGEMENT                          CASE NO.

Accused Products.  Such instructions and encouragement include but are not limited to, advising third parties to use the '621 Accused Products in an infringing manner, providing a mechanism through which third parties may infringe the '621 Patent, specifically through the use of ESET's ThreatSense, Advanced Heuristic, HIPS, DNA Signature, Exploit Blocker, and LiveGrid Technologies, advertising and promoting the use of the '621 Accused Products in an infringing manner and distributing guidelines and instructions to third parties on how to use the '621 Accused Products in an infringing manner.

116.    Defendants provides articles, videos and downloads which cover in depth aspects of operating Defendants' offerings.  *See* http://www.eset.com/us/support/download/installation-videos/, attached hereto as Exhibit O.

117.    Defendants updates and maintains an HTTP site with Defendants' quick start guides, administration guides, user guides, and operating instructions which cover in depth aspects of operating Defendants' offerings.  *See* http://support.eset.com/, attached hereto as Exhibit P.

## COUNT XII
### (Direct Infringement of the '755 Patent pursuant to 35 U.S.C. § 271(a))

118.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

119.    Defendants have infringed and continues to infringe claims 1-8 of the '755 Patent in violation of 35 U.S.C. § 271(a).

120.    Defendants' infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

121.    Defendants' acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

122.    Defendants' infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services utilizing and/or incorporating Home Protection Products, Small Office Protection Products and Business Protection Products, which embody the patented invention of the '755 Patent.  Such products include ESET Multi-Device Security, ESET NOD32 Antivirus, ESET Smart Security, ESET Cyber Security, ESET Cyber Security Pro, ESET Mobile Security for Android, ESET NOD32 Antivirus for Linux, ESET Multi-Device Home Office, ESET Small Office Security, ESET Small Business Security Pack, ESET Endpoint Antivirus for Windows, ESET Endpoint Security for Windows, ESET Endpoint Antivirus for OS X, ESET Endpoint Security for OS X, ESET Endpoint Antivirus for Linux, ESET Endpoint Security for Android, ESET Mail Security for Microsoft Exchange Server, ESET Mail Security for Linux/BSD, ESET Mail Security for Kerio, ESET Mail Security for IBM Domino, ESET Gateway Security for Linux/BSD, ESET Gateway Security for Kerio, ESET File Security for Microsoft Windows Server, ESET File Security for Linux/BSD, and ESET Security for Virtual Environment (collectively, the "755 Accused Products").

123.    The '755 Accused Products embody the patented invention of the '755 Patent and infringe the '755 Patent at least because they utilize and/or incorporate a system for reviewing an operating system call issued by a downloadable, comprising at least one processor for accessing elements stored in at least one memory associated with the at least one processor and for executing instructions associated with the elements, the elements including: a downloadable engine for intercepting a request message being issued by a downloadable to an operating system, wherein the request message includes an extension call, a request broker for receiving a notification message from the downloadable engine regarding the extension call, a file system probe and a network system probe each being associated with an operating system function for receiving the request message from

31

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

the downloadable engine, intercepting an operating system call being issued by the downloadable to an operating system and associated with the operating system function and providing an event message regarding the operating system call, a runtime environment monitor for receiving the notification message and the event message and comparing the extension call and the operating system call against a predetermined security policy before allowing the operating system to process the extension call and the operating system call and a response engine for receiving a violation message from the runtime environment monitor when one of the extension call and the operating system call violate one or more rules of the predetermined security policy and blocking extension calls and operating system calls that are forbidden according to the predetermined security policy, and for allowing extension calls and operating system calls that are permitted according to the predetermined security policy. For example, NOD32 uses emulation techniques (and HIPS technology) to perform runtime monitoring the operating system subsystems during execution of a downloadable. NOD32 monitors the downloadable for extension calls and operating system calls and compares them to a security policy. If they violate a policy, NOD32 will block the extension call and operating system calls.

124. As a result of Defendants' unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law. Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

125. Defendants' infringement of the '755 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

126. Defendants are well aware of Finjan's patents and has continued its infringing activity despite this knowledge. Finjan attempted unsuccessfully to actively engage in good faith negotiations for over a year with Defendants regarding Finjan's patent portfolio, including having a number of in-

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

person and telephonic meetings from October 2015 through April 2016 explaining claim element by element Defendants' infringement. As such, Defendants have continued to willfully, wantonly, and deliberately engage in acts of infringement of the '755 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT XIII
### (Induced Infringement of the '755 Patent pursuant to 35 U.S.C. § 271(b))

127. Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

128. Defendants have induced and continues to induce infringement of claims 1-8 of the '755 Patent under 35 U.S.C. § 271(b).

129. In addition to directly infringing the '755 Patent, Defendants indirectly infringes the '755 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including its customers, users and developers, to directly infringe claims 1-8 of the '755 Patent, either literally or under the doctrine of equivalents. Defendants knew or was willfully blind to the fact that it was inducing others, including customers, users and developers, to infringe by practicing one or more claims of the '755 Patent.

130. Defendants knowingly and actively aided and abetted the direct infringement of the '755 Patent by instructing and encouraging its customers, users and developers to use the '755 Accused Products. Such instructions and encouragement include but are not limited to, advising third parties to use the '755 Accused Products in an infringing manner, providing a mechanism through which third parties may infringe the '755 Patent, specifically through the use of ESET's ThreatSense, Advanced Heuristic, HIPS, DNA Signature, Exploit Blocker, and LiveGrid Technologies, advertising and promoting the use of the '755 Accused Products in an infringing manner and distributing

33

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

guidelines and instructions to third parties on how to use the '755 Accused Products in an infringing manner.

131. Defendants provides articles, videos and downloads which cover in depth aspects of operating Defendants' offerings. *See* http://www.eset.com/us/support/download/installation-videos/, attached hereto as Exhibit O.

132. Defendants updates and maintains an HTTP site with Defendants' quick start guides, administration guides, user guides, and operating instructions which cover in depth aspects of operating Defendants' offerings. *See* http://support.eset.com/, attached hereto as Exhibit P.

## **PRAYER FOR RELIEF**

WHEREFORE, Finjan prays for judgment and relief as follows:

A. An entry of judgment holding Defendants have infringed and is infringing the '844 Patent, the '780 Patent, the '305 Patent, the '086 Patent, the '621 Patent, and the '755 Patent; have induced infringement and are inducing infringement of the '844 Patent, the '780 Patent, the '305 Patent, the '086 Patent, the '621 Patent, and the '755 Patent;

B. A preliminary and permanent injunction against Defendants and its officers, employees, agents, servants, attorneys, instrumentalities, and/or those in privity with them, from infringing the '844 Patent, the '780 Patent, the '305 Patent, the '086 Patent, the '621 Patent, and the '755 Patent, or inducing the infringement of the '844 Patent, the '780 Patent, the '305 Patent, the '086 Patent, the '621 Patent, and the '755 Patent and for all further and proper injunctive relief pursuant to 35 U.S.C. § 283;

C. An award to Finjan of such damages as it shall prove at trial against Defendant that is adequate to fully compensate Finjan for Defendant's infringement of the '844 Patent, the '780 Patent, the '305 Patent, the '086 Patent, the '621 Patent, and the '755 Patent, said damages to be no less than

COMPLAINT FOR PATENT INFRINGEMENT   CASE NO.

a reasonable royalty, and on information and belief and based on publicly available information,

Finjan anticipates it will seek no less than $44 million at trial;

D.     A determination that Defendants' infringement has been willful, wanton, and

deliberate and that the damages against it be increased up to treble on this basis or for any other basis

within the Court's discretion;

E.     A finding that this case is "exceptional" and an award to Finjan of its costs and

reasonable attorneys' fees, as provided by 35 U.S.C. § 285;

F.     An accounting of all infringing sales and revenues, together with post judgment

interest and prejudgment interest from the first date of infringement of the '844 Patent, the '780

Patent, the '305 Patent, the '086 Patent, the '621 Patent, and the '755 Patent; and

G.     Such further and other relief as the Court may deem proper and just.

Respectfully submitted,

Dated:  July 1, 2016                          */s/ Paul J. Andre*
                                              Paul J. Andre (State Bar No. 196585)
                                              Lisa Kobialka (State Bar No. 191404)
                                              James Hannah (State Bar No. 237978)
                                              KRAMER LEVIN NAFTALIS
                                               & FRANKEL LLP
                                              990 Marsh Road
                                              Menlo Park, CA  94025
                                              Telephone:  (650) 752-1700
                                              Facsimile:  (650) 752-1800
                                              pandre@kramerlevin.com
                                              lkobialka@kramerlevin.com
                                              jhannah@kramerlevin.com

                                              *Attorneys for Plaintiff*
                                              FINJAN, INC.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

## **DEMAND FOR JURY TRIAL**

Finjan demands a jury trial on all issues so triable.

Respectfully submitted,

Dated:  July 1, 2016

*/s/ Paul J. Andre*

Paul J. Andre (State Bar No. 196585)
Lisa Kobialka (State Bar No. 191404)
James Hannah (State Bar No. 237978)
KRAMER LEVIN NAFTALIS
 & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 752-1700
Facsimile:  (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com

*Attorneys for Plaintiff*
FINJAN, INC.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.