Nicola A. Pisano, CA Bar No. 151282
  NicolaPisano@eversheds-sutherland.com
Jose L. Patiño, CA Bar No. 149568
  JosePatino@eversheds-sutherland.com
Justin E. Gray, CA Bar No. 282452
  JustinGray@eversheds-sutherland.com
Scott A. Penner, CA Bar No. 253716
  ScottPenner@eversheds-sutherland.com
**EVERSHEDS SUTHERLAND (US) LLP**
12255 El Camino Real, Suite 100
San Diego, California  92130
Telephone:  858.252.6502
Facsimile:   858.252.6503

Attorneys for Defendants & Counter-Plaintiffs
ESET, LLC and ESET, SPOL. S.R.O.

Juanita Brooks (SBN 75934)
  brooks@fr.com
Roger A. Denning (SBN 228998)
  denning@fr.com
Jason W. Wolff (SBN 215819)
  wolff@fr.com
Michael A. Amon (SBN 226221)
  amon@fr.com
**FISH & RICHARDSON P.C.**
12860 El Camino Real, Suite 400
San Diego, CA  92130
Telephone:   (858) 678-5070
Facsimile:    (858) 678-5099

Attorneys for Plaintiff
FINJAN LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN LLC,<br><br>              Plaintiff,<br><br>     v.<br><br>ESET, LLC, et al.,<br><br>              Defendants.<br><br>_____<br><br>AND RELATED COUNTERCLAIMS. | Case No. 3:17-cv-0183-CAB-BGS<br><br>**PUBLIC REDACTED VERSION**<br><br>**JOINT STATEMENT REGARDING BRIEFING ORDER (D.I. 841)**<br><br>Judge:     Hon. Bernard G. Skomal<br><br>CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION |

17cv0183

## I.   **ESET'S STATEMENT**

Finjan steadfastly refuses to produce highly relevant non-privileged documents that are directly responsive to ESET's Requests for Production on the ruse that privilege attaches to the disputed documents.  Finjan is whistling past the graveyard; its assertions lack any legal or factual support.  The Court should order production of those documents.

### A.   **Relevant Background**

On July 23, 2020, the Court lifted the stay on U.S. Patent No. 7,975,350 ("the '305 patent").  The next day, Finjan Holdings, Inc. announced that it was acquired by Fortress for $43.9 million.  *See* Declaration of Regis C. Worley, Jr. in Support of Joint Statement ("Worley Decl."), Ex. A.  Finjan Holdings, Inc. survived the merger as a wholly owned subsidiary.  *Id*. at Ex. B.  The acquisition of Finjan Holdings, Inc. included its wholly-owned subsidiary, Finjan LLC (formerly Finjan, Inc.) – the plaintiff in this case.[1]

In a 10-Q filing for the period ending March 31, 2020, Finjan Holdings, Inc. reported total current assets (not including intangible assets) of $36 million.  *See* Worley Decl., Ex. C.  Finjan Holdings, Inc. stated in that 10-Q that its revenue "results from grants of licenses to its patented cybersecurity technology and settlements reached from legal enforcement of the Company's patent rights."  Moreover, the 10-Q identified 12 pending patent infringement actions in which Finjan, Inc. was plaintiff (six of which involve the '305 patent), including the instant action.  Apart from its litigation costs in the March to July time-period, it appears that Fortress paid just $8 million more to acquire Finjan Holdings, Inc. than Finjan Holdings, Inc.'s cash assets.

In this litigation, Finjan's damages expert opined in his expert report on the "***reasonable*** royalty" owed by ESET for alleged infringement.  *See* D.I. 726-4, at pp. 4-5 (Supplemental Expert Report of Kevin Arst, dated November 20, 2019).  Fortress's acquisition price not only significantly discounts the value of the ESET litigation, but

---

[1] Finjan has provided ESET with no discovery regarding Finjan LLC's standing to continue to assert the patents-in-suit as a result of any corporate restructuring. While Finjan argues that ESET has not shown that Finjan LLC lacks standing, ESET has been provided none of the relevant documents relating to Finjan LLC's restructuring. Moreover, Finjan bears the burden of proving its right to maintain suit.

discounts all of Finjan's other reported litigations, and the value of its intellectual property assets, to **zero**.[2]

The actual valuations that Finjan Holdings, Inc. assigned to the ESET litigation, all of Finjan's other pending litigations, and Finjan's intellectual property rights and other assets, as determined by an arm's length transaction, all likely are revealed in documents exchanged between Finjan Holdings, Inc. and Fortress to induce the acquisition. Such valuations were not publicly disclosed, but are highly relevant to determining the value of the '305 patent and any associated royalty rate. Those documents also bear directly on Finjan's highly-inflated damages claims for the other asserted patents-in-suit. Moreover, discovery of the documents relating to the Fortress acquisition is required to establish whether Finjan LLC even has standing to continue pursuing this litigation.

For example, a recent order in a suit brought by another subsidiary of Fortress revealed that subsidiary lacked standing to maintain its patent infringement action. *Uniloc USA, Inc. v. Apple, Inc.*, No. C 18-00358 WHA, 2020 U.S. Dist. LEXIS 240994 (N.D. Cal. Dec. 22, 2020) (putative plaintiff lacking standing where milestone venue targets missed). Moreover, counsel for Finjan LLC maintains that the parent corporation, Finjan Holdings, Inc. – that consummated the sale to Fortress – "no longer exists as an entity," notwithstanding that as recently as December 9, 2020, Finjan Holdings, Inc. filed a pleading in a shareholder suit pending in the Northern District of California. (Worley Decl., Exs. I and J). Its corporate agent also acknowledged receipt of ESET's subpoena to Finjan Holdings, Inc. **on January 4, 2021**. ESET is entitled not only to valuation documents regarding the value of the ESET litigation and '305 patent, but moreover to discovery regarding the chain of title to the asserted patents, and proof that Finjan LLC has sufficient rights to maintain this suit.

---

[2] For example, in another recently resolved Finjan case, it was reported that Finjan sought $142 million in damages in another case, whereas the defendant, had infringement been established (it was not) would have owed less than $1.8 million. *See* Worley Decl., Ex. K (D. Simpson, Finjan Fights $8.7M Fee Bid For 'BS' Juniper Patent War, LAW360 (Dec. 15, 2020), available at https://www.law360.com/articles/1338065/finjan-fights-8-7m-fee-bid-for-bs-juniper-patent-war).

## B.   Requested Documents in Dispute

Finjan refuses to produce valuation or case-specific documents exchanged with Fortress in response to multiple Requests for Production (RFPs), including: patent valuation documents (RFPs 222 and 226); documents referring to (a) the asserted patents (RFP 223); (b) referring to ESET (RFP 224); (c) substitution of Finjan's counsel of record (RFP 225); (d) allocation of the acquisition (RFP 227); (e) Finjan's communications to shareholders about the acquisition (RFP 229); (f) valuation of infringement damages for the asserted patents (RFPs 230 and 231); (g) potential invalidity or unenforceability of the '305 patent (RFP 232[3]); and (h) prior art to the '305 patent (RFP 233[4]).[5]  *See* Worley Decl., Ex. D.

## C.   Legal Standards

A party asserting privilege bears the burden of establishing all elements of the privilege.  *Ayers v. Yiu Lee*, No. 14-cv-542-BGS (NLS), 2018 U.S. Dist. LEXIS 211333, at *9-10 (S.D. Cal. Dec. 14, 2018).   Voluntary disclosure of privileged documents constitutes waiver of the privilege, which extends to all other such communications.  *Id*. at *10-11.   "'If litigants are to have any faith in the discovery process, they must know that parties cannot fail to produce highly relevant documents within their possession with impunity.'"   *HM Elecs., Inc. v. R.F. Techs., Inc.*, No. 12cv2884-BAS-MDD, 2015 U.S. Dist. LEXIS 104100, at *33 (S.D. Cal. Aug. 7, 2015); *OEM-Tech v. Video Gaming Techs., Inc.*, No. C 10-04368 RS, 2013 U.S. Dist. LEXIS 201318, at *17-18 (N.D. Cal. Jan. 8, 2013) (same).   Indeed, as the Ninth Circuit observed: "'Litigation is not a game. It

---

[3] During the meet-and-confer process, ESET agreed to narrow RFPs 232 and 233 from "any of the Patents-in-Suit" to "the '305 patent."   In view of the uncertainty that recent court filings in the Northern District reveal regarding how Fortress entities retain title to and fund patent litigations, such narrowing now appears unduly restrictive.

[5] As noted during the call with the Court, a parallel dispute has arisen regarding Finjan's responses to Interrogatory 24 ("Identify the dollar amount at which This Litigation was valued in connection with any discussions between Finjan, Inc. and Fortress Investment Group LLC relating to the acquisition of Finjan, Inc. by Fortress Investment Group LLC") and Interrogatory 25 ("Identify the dollar amount at which the '305 patent was valued in connection with any discussions between Finjan, Inc. and Fortress Investment Group LLC relating to the acquisition of Finjan, Inc. by Fortress Investment Group LLC").  ESET submits that the interrogatory dispute is ripe for adjudication together with this RFP dispute.

is the time-honored method of seeking the truth, finding the truth, and doing justice. When a corporation and its counsel refuse to produce directly relevant information an opposing party is entitled to receive, they have abandoned these basic principles in favor of their own interests.'"  *Haeger v. Goodyear Tire & Rubber Co.*, 793 F.3d 1122, 1126 n.1 (9th Cir. 2015).

### D.  Finjan's Defective Privilege Logs

On December 30, 2020, Finjan provided a privilege log listing 24 documents. Among its numerous deficiencies, the log failed to identify all senders and recipients, their positions and employers, and whether any of the addressees were attorneys.  *See* Worley Decl., Ex. E (under seal).  ESET requested that Finjan provide an amended log on December 31 remedying those deficiencies.  *See* Worley Decl., Ex. F; *see also Jumping Turtle Bar & Grill v. City of San Marcos*, No. 10-cv-00270-IEG (BGS), 2010 U.S. Dist. LEXIS 119390, at *13 (S.D. Cal. Nov. 10, 2010) (requiring an amended privilege log be served "that includes all the recipients of the communications and provides the position held by each person identified in the privilege log").  Finjan agreed to do so, but its replacement privilege log suffers many of the same deficiencies (*see*, *e.g.*, documents 2317, 2318, 2320, 2321, 2324, 2325, 2326, 2327, 2328 each of which identify the author as "█████████████").  *See* Worley Decl., Ex. G (under seal).  The new log raised as many questions as it purported to answer.  For example, the "From" entry of document 2319 originally stated "███████████████████████████████████████████████████," (emphasis added) whereas the revised entry states merely "█████████████████."  *Id.*  Likewise, the "From" entry of document 2314 originally stated "████████████████████████████████████," (emphasis added) but the revised entry now identifies only "███████████████," who ████████████████████████████████████████.  *Id.* Moreover, while Ms. Mar-Spinola is an attorney, she also participates in competitive decision-making within Finjan LLC, and as such her appearance on communications exchanged outside of Finjan refutes any claim that such communications are privileged.

The revised privilege log also fails to identify (other than Ms. Mar-Spinola) any attorneys, and if so, whom they represent. *See Skyline Wesleyan Church v. California Dep't of Managed Health Care*, 322 F.R.D. 571, 584 (S.D. Cal. 2017) (setting forth criteria for a sufficient privilege log); *Jumping Turtle Bar & Grill*, 2010 U.S. Dist. LEXIS 119390, at *13. Accordingly, ESET requests that all entries on the log be reviewed by the Court *in camera* to assess which, if any, properly may be withheld from production. In addition, as described below, ESET contends that any privilege that could have existed was waived when the documents were shared between Finjan, Fortress, and ***many other*** entities during the acquisition negotiations, as set forth below.

### E. The Requested Documents in Dispute Are Relevant

ESET's requests for valuation documents[6] are highly relevant to the issue of a reasonable royalty. *Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 871 (Fed. Cir. 2003) (purchase price should have been considered as a factor that would have considerably reduced the value of a hypothetical license), *rev'd on other grounds*, 545 U.S. 193 (2005); *Uniloc USA, Inc. v. Apple Inc.*, No. 19-cv-01692-EJD (VKD), 2020 U.S. Dist. LEXIS 137077, at *6 (N.D. Cal. July 30, 2020) ("The price paid to acquire all rights to a patent may be considered in assessing a reasonable royalty for a hypothetical license to the patent."); *Fresenius Med. Care Holding, Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 653 (N.D. Cal. 2004) ("The amount paid to acquire a company with desired patents, and the amount of the acquisition amount allotted to a particular patent is relevant to the establishment of a reasonable royalty.").

Documents regarding ESET[7] shared between Fortress and Finjan, including whether to replace counsel after the ESET mistrial, may relate to any or all aspects of this action, and therefore are also relevant.

Finjan's shareholder communications[8] are also relevant, because they may provide an overview of Finjan's assessment of the transaction and contractual issues that

---

[6] *See, e.g.*, RFP 222, RFP 223, RFP 226, RFP 227, RFP 230, and RFP 231.
[7] *See, e.g.*, RFP 224.
[8] *See, e.g.*, RFP 229.

potentially affect Plaintiff's standing in this action, and the valuation that Finjan Holdings, Inc. attributed to this litigation and Finjan's damages claims.

Finally, because validity and enforceability of the '305 patent are directly at issue in this action, documents relating to these topics,[9] and especially communications to Fortress regarding the ***ex parte*** reexamination results finding most of the claims of the '305 patent invalid over prior art are highly relevant. *See* Worley Decl., Ex. H.

### F.     The Requested Documents in Dispute Are Not Privileged

Finjan bears the burden of establishing privilege over the withheld documents. *See Skyline Wesleyan Church*, 322 F.R.D. at 583-584. Finjan's defective replacement privilege log fails to permit an assessment of Finjan's privilege assertions because, at a minimum, it fails to identify which individuals are attorneys or all the recipients of the documents. *See id.*; *Jumping Turtle Bar & Grill*, 2010 U.S. Dist. LEXIS 119390, at *13. Accordingly, Finjan has not met its burden of establishing privilege.

### G.     Any Privilege That May Have Existed Was Waived

According to Finjan's privilege log, 23 of the 24 documents are dated prior to Fortress's July 24, 2020 acquisition of Finjan Holdings, with some dated as early as 2018. *See* Worley Decl., Ex. G. Documents shared between parties involved in an arm's-length transaction lose any privilege that was previously attached. *See Fresenius Med. Care Holding*, 224 F.R.D. at 654 n.3 (a party may not claim attorney client privilege for communications made while involved in arm's-length negotiations); *Nidec Corp. v. Victor Co.*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) (attorney-client privilege and work product protection are lost when the information is communicated to a third party); *Ayers*, 2018 U.S. Dist. LEXIS 211333, at *10-11. Because Finjan shared documents with Fortress during the arm's-length transaction of the acquisition, those documents lost any privilege that may have existed. Moreover, Finjan shared many documents regarding the valuations of its pending litigations ***with 50 other entities***, only 11 of which were under a confidentiality agreement. *See* Worley Decl., Ex. I at 4:1-8. Even if Finjan shared a

---

[9] *See*, *e.g.*, RFP 232 and RFP 233.

specific document on its log with Fortress under a confidentiality agreement, if Finjan also shared that same document with any of the other 39 entities not subject to a confidentiality agreement, that document should be produced.[10]

While an exception to the general waiver rule exists for participants in a common litigation defense or individuals with a community of interest, those criteria are not met here.[11]  *Nidec*, 249 F.R.D. at 578.  A threshold requirement is that, "the parties must have 'a common legal, as opposed to commercial, interest.'"  *Id.* at 579; *see also Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308, 310 (N.D. Cal. 1987) (common legal interest existed due to anticipated joint litigation).  Here, no common legal interest existed, nor exists today.  *See* D.I. 835 at 2 (Finjan. Inc.'s Notice of Motion and Motion to Amend Caption, noting that neither Finjan Holdings nor Fortress are a party in this case).  Additionally, "[t]he joint defense exception requires some evidence of an agreement to share information for the specific purpose of coordinating a common legal defense."  *Ayers*, 2018 U.S. Dist. LEXIS 211333, at *12-13.  Indeed, even taking Finjan's privilege log at face value, the log shows that the parties did not establish a common interest agreement ***until August 2020, which is after the acquisition***.  *See* Worley Decl., Ex. G, Doc. No. 2323.  Thus, the common interest exception does not apply to the other 23 documents that were exchanged prior to that time.  Moreover, the circulation of likely hundreds of similar documents with Finjan's 50+ other hoped-for suitors (not listed on Finjan's log) surely eviscerates any privilege claim.  The common interest agreement itself was negotiated at arm's-length and should be discoverable to determine the breadth of any actual common interest that allegedly applies to the remaining documents.

The communications between Finjan Holdings and Fortress relate to an arm's-length commercial transaction, in which the parties had opposing interests, and were not undertaken in furtherance of a joint litigation defense.  To the extent Finjan exchanged

---

[10] While a confidentiality agreement does not establish a joint privilege, freely circulating documents without even such a minimal restriction obliterates any claim to privilege.

[11] Because the common interest exception "is an anti-waiver exception, it comes into play only if the communication at issue is privileged in the first instance."  *Nidec*, 249 F.R.D. at 578.

the documents with Fortress with the purpose of inducing acquisition, that exchange was not seeking legal advice, but instead a business transaction. *See Nidec*, 249 F.R.D. at 579-580 (common interest doctrine did not apply, noting "Defendants provided the litigation abstract in order to facilitate the [third party's] fund's and other potential bidders' commercial decision whether to buy the majority share in JVC. Thus, ***it was designed to further not a joint defense in this litigation, but to further a commercial transaction in which the parties, if anything, have opposing interests***.") (emphasis added); *Pac. Pictures Corp. v. United States Dist. Court*, 679 F.3d 1121, 1129 (9th Cir. 2012) ("a shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within [the common interest] exception"); *Genentech, Inc. v. Trs. of the Univ. of Pa.*, No. C 10-2037 PSG, 2011 U.S. Dist. LEXIS 123302, at \*10 (N.D. Cal. Oct. 24, 2011) (no common interest when the communications relate "to business prospects and strategy"). Finjan has no colorable basis for claiming privilege over such valuation documents.

Finjan's efforts to preclude discovery in its litigation against SonicWall proved equally futile. There, Finjan previously had shared documents with Cisco, a third party, and then attempted to shield those documents from discovery by asserting the same common interest doctrine that it raises here. *See Finjan, Inc. v. SonicWall, Inc.*, No. 17-cv-04467-BLF (VKD), 2020 U.S. Dist. LEXIS 128725 (N.D. Cal. July 7, 2020). The Northern District rejected Finjan's arguments, finding that Finjan "waived any attorney-client privilege it may have had with respect to the disputed materials by voluntarily disclosing them to Cisco." In ordering that the requested documents be produced, the Court noted that "Cisco's investment in Finjan and its status as a board observer, with or without an obligation of confidentiality, did not create a common legal interest between Cisco and Finjan." *Id*. at \*11-13. The same reasoning applies here.

Finjan lacks any colorable claim of privilege, it should be ordered to disclose the 24 responsive documents identified on its privilege log, or in the alternative, at least submit them for ***in camera*** inspection.

### H.     ESET's Response to Finjan's Statement

<u>Finjan's Privilege Claims</u>: Finjan admits it has the burden of establishing privilege. Its defective privilege log (as set forth above) does not meet Finjan's burden. Finjan also argues that "many" documents are subject to work product protection, but provides no declaration(s) in support of that claim.   Finjan makes no showing to establish work product privilege. *See Ayers*, 2018 U.S. Dist. LEXIS 211333, at *24.   Moreover, any alleged privilege was lost when those documents were disclosed to Fortress (and others not under NDA) in adversarial arm's-length negotiations.

<u>Finjan's Cases Are Readily Distinguished</u>: Finjan's broad reading of *Hewlett-Packard* has been repeatedly rejected.  *Nidec*, 249 F.R.D. at 579-580 (analyzing *Hewlett-Packard*); *10x Genomics, Inc. v. Celsee, Inc.*, No. 19-862-CFC, 2020 U.S. Dist. LEXIS 227544, at *10 (D. Del. Dec. 4, 2020) (rejecting *Hewlett-Packard* and finding "the vast majority of the courts that have been asked to follow *Hewlett-Packard* have declined to do so").   Finjan's other case citations fare no better, as they involved the concern of collaborating parties that a third party might initiate an infringement suit.   *Hewlett-Packard*, 115 F.R.D. at 310 ("quite likely" the negotiating parties would be sued for patent infringement); *Movril Tech., LLC v. Ablation Frontiers, Inc.*, No. 10-CV-2088-BEN (BGS), 2012 U.S. Dist. LEXIS 30815, at *9 (S.D. Cal. Mar. 8, 2012) (same); *Britesmile, Inc. v. Discus Dental, Inc.*, No. C 02-3220 JSW (JL), 2004 U.S. Dist. LEXIS 20023, at *3 (N.D. Cal. Aug. 10, 2004) (same).   Here, Finjan has not shown any likelihood that Finjan Holdings, Inc. or Fortress would require a joint litigation defense.

*Regents* is distinguishable because a common legal interest arose where the parties collaborated to prosecute patents together.  *In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1388-90 (Fed. Cir. 1996).   No such collaboration occurred here, where the acquisition involved arm's-length negotiations.   And *Cavallaro* relied on *Hewlett-Packard* and First Circuit privilege law.  *Cavallaro v. United States*, 153 F. Supp. 2d 52 (D. Mass. 2001).  It also rejected a privilege claim where only one party was represented by counsel.  *Id.* at 62.  That is the case with many documents on Finjan's log.

Non-Disclosure Agreement (NDA) and Common Interest Agreement (CIA): Finjan identifies Document No. 2322 as the NDA and Document No. 2323 as the CIA. That argument was considered and soundly rejected in *SonicWall*. *SonicWall*, 2020 U.S. Dist. LEXIS 128725, at *11-12 (Cisco's investment in Finjan did not create a common legal interest; any privilege was waived when "Finjan voluntarily disclosed the disputed materials to a third-party investor"). As in *SonicWall*, Finjan Holdings, Inc. and Fortress had a common commercial interest, not a common legal interest.

Discovery Limitations: Finjan takes the myopic view that ESET should not be permitted to discover information beyond the '305 patent. Yet "a party generally may not redact or withhold from production irrelevant portions of documents that also contain relevant and responsive information." *SonicWall*, 2020 U.S. Dist. LEXIS 128725, at *9-10. Even absent the acquisition – which provides an independent basis for discovery of the Fortress deal documents as they relate to the issue of standing – Finjan cannot shield its patent portfolio documents from discovery just because they extend beyond the '305 patent.[12]

Finjan also argues that ESET's damages expert has the valuation numbers he needs to evaluate reasonable royalty damages for the asserted patents. From the outset of this case, ESET has maintained that Finjan's infringement case is baseless. ESET is entitled to review what Finjan ***actually*** told Fortress about the value of this case. As discussed above, the Fortress acquisition valuation assumed ***zero*** value for many of Finjan's pending litigations, including several cases asserting the '305 patent. Whether this case was one of the cases that Finjan assigned zero value in its discussions with Fortress, as was well on its way towards being established prior to the March 2020 mistrial, is highly relevant to Finjan's damages claims.

ESET requests that the documents listed in Finjan's privilege log, as well as those not listed but provided to other suitors, be produced or subjected to *in camera* review.

---

[12] If the Court concludes that valuation documents not related to the '305 patent are beyond the scope of the current discovery, ESET requests that an additional discovery period be ordered that will enable ESET to take fulsome discovery of the Fortress transaction sufficiently to assess whether Finjan LLC even retained standing to sue.

## II.   FINJAN'S STATEMENT

## A.   INTRODUCTION

Plaintiff Finjan LLC ("Finjan") opposes Defendants ESET, LLC and ESET SPOL. S.R.O.'s ("ESET") Motion to Compel Discovery.  ESET's discovery requests go beyond the scope of the Court's order permitting additional discovery limited to the '305 Patent, and instead seek production of irrelevant documents and communications regarding Finjan's whole patent portfolio, Finjan's former counsel, and ESET generally.  ESET's broad requests impose a burden not "proportional to the needs of the case" or authorized by this Court's order limiting additional fact discovery to the '305 Patent for this phase of the case.  *See* D.I. 832.

Even if ESET's requests were within the scope of allowable discovery—they are not—the requests are directed to information protected from discovery by the attorney client privilege, the work product doctrine, and/or the common interest protection.  The requests seek documents and communications exchanged between Finjan and Fortress Investment Group LLC, which ultimately acquired Finjan.  But those communications included attorney-client communications and attorney work product reflecting attorneys' mental impressions and analysis, and those exchanges were made subject to non-disclosure and common interest agreements that expressly included provisions preserving these protections.

Accordingly, Finjan respectfully requests the Court deny ESET's motion to compel production of irrelevant discovery that do not expressly deal with the '305 Patent and that are protected by privilege.

## B.   PROCEDURAL BACKGROUND

On October 26, 2020, ESET served its Seventh Set of Requests for Production of Documents Nos. 222-236 ("RFPs").  ESET requested, among other things:

> All communication between Finjan, Inc. or Finjan Holdings, Inc. and Fortress Investment Group LLC regarding any valuation of the Patents-in-Suit or the Finjan patent portfolio as a whole (RFP 222);
>
> All Documents provided to Fortress Investment Group LLC prior to the acquisition of Finjan referring or relating to substituting Kramer Levin as

17cv0183

counsel of record in any Finjan Litigation, including this litigation (RFP 225);

All communications between Finjan and any of its shareholders regarding the acquisition of Finjan by Fortress Investment Group LLC (RFP 229), and

All communications between Finjan, Inc. or Finjan Holdings, Inc. and Fortress Investment Group LLC regarding any prior art to any of the Patents-in-Suit (RFP 233).

On November 25, 2020, Finjan objected to these requests (and others in the same set) because they seek information unrelated to the '305 Patent, and therefore go beyond the discovery authorized by the Court for this phase.[13]  *See* Amon Decl., Exh. A at 10-13, 15-19; *see also* D.I. 832.  Finjan also objected to the requests as seeking documents and information protected from discovery by the attorney client-privilege, and the attorney work product and common interest protections.  For requests 222-27 and 229-33,[14] Finjan stated it would not produce documents.

The parties raised the discovery dispute with the Court and on December 23, 2020, the Court ordered the parties to file a joint motion addressing relevancy, attorney-client privilege, the work product doctrine, the common interest doctrine, and scope.  D.I. 841. The Court's order provided that "the only discovery the parties are currently permitted to pursue is discovery regarding the '305 Patent."  *Id.* at 1.  The Court further ordered Finjan to provide a privilege log, which Finjan served on ESET on December 30, and revised on December 31.  *See* Declaration of Regis C. Worley, Jr. in Support of Joint Statement ("Worley Decl."), Exh. G .

## C.    FACTUAL BACKGROUND

In August 2018, Fortress Investment Group ("Fortress") began the due diligence process for its eventual acquisition of Finjan.  As part of that process, Finjan and Fortress executed a non-disclosure agreement ("NDA") and a common interest agreement ("CIA"), which contemplated the exchange of privileged and attorney work product information while ensuring the confidentiality of that information.  *See* Worley Decl.,

---

[13] Exhibits additional to ESET's are attached to the Declaration of Michael A. Amon ("Amon Decl.") in Support of Joint Statement filed contemporaneously herewith.
[14] RFP Nos. 228 and 234-236 are not in dispute in this motion.

Exh. G at Document Nos. 2322-23. The 2018 NDA was drafted to protect Finjan's privileged and protected information. 

[15] The 2018 NDA included

*Id.*

[16]

  All of this was undertaken to protect Finjan's and Fortress's common legal interest—which includes understanding and protecting the scope of Finjan's intellectual property rights and its litigation strategy. In furtherance of this common interest, and under the protections of the NDA and CIA, Finjan and Fortress shared confidential and privileged communications regarding the scope of Finjan's intellectual property rights, among other things. This included privileged information regarding Finjan's active litigation, projections for damages from patent litigation, projections from licensing, and other attorney analysis. *See, e.g.*, Worley Decl., Exh. G at Doc. Nos. 2313-14; -17-18, -20. The communications and shared documents included opinions from Finjan's counsel regarding these subjects for many defendants and potential licensees. *See, e.g.*, *id.* at Doc. No. 2321. In the months leading up to the closing of the acquisition, Finjan and Fortress also exchanged correspondence discussing and attaching drafts of the merger agreement. *See, e.g.*, *id.* at Doc. Nos. 2306, -11. All of these contain privileged attorney-client communications and protected attorney work product.

## D. LEGAL STANDARDS

### 1. Proportionality and Scope of Discovery

---

[15] The description of these documents is not intended to act as a waiver of the NDA and CIA, which are listed on Finjan's December 30, 2020 privilege log. It is merely to explain the steps Finjan and Fortress undertook to maintain the confidentiality of information exchanged and th      ege and work product.
[16] ESET fails to reference the ████████████████ on Finjan's privilege log. *See* Decl. of Michael Amon, E

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense ***and*** proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added). However, a court "must limit the frequency or extent of discovery . . . if it determines that (i) the discovery sought is unreasonably cumulative or duplicative . . . ; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Fed. R. Civ. P. 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). Courts may also limit discovery where it is not proportional to the needs of the case. *See eMove, Inc. v. U-Haul Int'l, Inc.*, 2018 WL 6588522, at *2 (S.D. Cal. Apr. 11, 2018).

## 2. Attorney-Client Privilege and Work Product Doctrine

The attorney-client privilege protects confidential communications between a client and his or her attorney for the purposes of obtaining legal advice. *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992). The party asserting the attorney-client privilege has the burden of establishing its existence. *Id.* at 1070-71. The party must show: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *Id.* at 1071 n.2 (citation omitted).

Separately, the work product doctrine protects from discovery materials that are prepared by or for a party or its representative in anticipation of litigation. Fed. R. Civ. P. 26(b)(3). The doctrine provides qualified protection against discovery of the legal strategies and mental impressions of a party's attorney. *Upjohn Co. v. U.S.*, 449 U.S. 383, 390-91 (1981); *Hickman v. Taylor*, 329 U.S. 495, 508-10 (1947). Work product "protection is waived where disclosure of the otherwise privileged documents is made to a third party, and that disclosure enables an adversary to gain access to the information." *United States v. Bergonzi*, 216 F.R.D. 487, 497 (N.D. Cal. 2003).

## 3. The Common-Interest Doctrine

45635786.11

The common legal interest doctrine is an exception to the rule on waiver of privilege and work product where communications are disclosed to third parties. *Morvil Tech., LLC v. Ablation Frontiers, Inc.*, 2012 WL 760603, at *1-2 (S.D. Cal. Mar. 8, 2012). The common interest protection applies when "(1) the communication is made by separate parties in the course of a matter of common [legal] interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *Morvil*, 2012 WL 760603 at *2 (citing *Bergonzi*, 216 F.R.D. at 495). "[T]he protection of the privilege under the community of interest rationale . . . is not limited to joint litigation preparation efforts. It is applicable whenever parties with common interests join forces for the purpose of obtaining more effective legal assistance." *Id.* (citing *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007)).

Joint anticipated litigation has been held to be a common legal interest among buyer and seller of intellectual property. *See, e.g.*, *Hewlett-Packard v. Bausch & Lomb, Inc.*, 115 F.R.D. 308 (N.D. Cal. 1987) (holding the common interest privilege protected Defendant from producing a lawyer's patent opinion letter it had previously shared with a prospective buyer of one of its businesses). Moreover, parties may have both common commercial and legal interests, such as when the parties are discussing a merger or negotiating for a patent license. *See, e.g.*, *In re Regents of Univ. of California*, 101 F.3d 1386, 1390-91 (Fed. Cir. 1996).

## E.   ARGUMENT

ESET's discovery requests violate the Court's order limiting discovery to the '305 Patent, and thus, are not proportional to the needs of the case. For example, RFP 222 seeks documents and information about the "valuation of the Patents-in-Suit or the Finjan portfolio as a whole," not solely about the '305 Patent. RFP 225 seeks documents and information about "substituting Kramer Levin as counsel" in this and other cases. And, RFP 229 seeks "[a]ll Communications between Finjan and any of its shareholders regarding the acquisition of Finjan by Fortress." All of these requests violate the Court's order limiting "discovery" to the '305 Patent. D.I. 841 at 1 ("The only discovery the

parties are currently permitted to pursue is discovery regarding the '305 Patent."). In contrast to these broad requests, ESET has objected to Finjan's document requests, taking the position that "Discovery is open only as to the '305 patent." *See* Amon Decl., Exh. B (ESET's Response to Finjan's RFP Nos. 203-15) at 5, ¶ 19.

ESET contends Finjan's pre-acquisition documents are relevant to determining the value of the '305 Patent and any associated royalty. However, ESET's damages expert has the information ESET argues is needed to calculate a reasonable royalty—Finjan's actual purchase price and related documents, which are publicly available. *See* D.I. 840-4 (Finjan Holdings March 31, 2020 10-Q) at Ex. B. ESET fails to explain why pre-acquisition documents are relevant to this inquiry when it may account for the actual purchase price (of $43.9 million noted above) in its valuation of a hypothetical license. Further, Finjan's cited authority identifies as relevant the actual purchase price in analyzing a hypothetical negotiation, not the pre-acquisition negotiations, valuations or purchase price allocations it now seeks. *See Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 871 (Fed. Cir. 2003), *vacated on other grounds*, 545 U.S. 193 (2005) (holding an ***actual sale*** for $20 million in 1996 of the patent rights at issue in the hypothetical negotiation was relevant to calculating a reasonable royalty). Indeed, ESET cites no case in which the pre-acquisitions negotiations, valuations, or purchase price allocations were relevant to calculating a reasonable royalty.

Stretching to find relevance, ESET speculates regarding a possible standing issue that it claims may have surfaced from Finjan's change in entity status. Yet to date, ESET has failed to provide a legal or factual basis to challenge Finjan LLC's standing to sue, or to question the chain of title to Finjan's intellectual property. Indeed, ESET failed to raise this possible standing argument in opposing Finjan's motion to amend the caption, which the Court has now granted. *See* D.I. 840; D.I. 846. Notably, Finjan's entity conversion documents are publicly available with the Delaware Secretary of State. Notably, ESET's arguments in this regard show that ESET seeks discovery beyond the

45635786.11

Court's Order limiting current discovery to the '305 Patent.[17]

In addition to being irrelevant, the communications between Finjan and Fortress that occurred during Fortress's due diligence are protected by the common interest protection. The underlying communications include advice from Finjan's attorneys. Specifically, the documents contain opinions from Julie Mar-Spinola (in-house counsel) and/or outside counsel relating to ████████████████ (Worley Decl., Exh. G, at Doc. No. 2313), ████████████████████████████ ████████████████ (*id.* at Doc. Nos. 2314, -29), ████████ (*id.* at Doc. Nos. 2317-18), ████████████████ (*id.* at Doc. Nos. 2319, -21, -27) and ████████ ████████ (*id.* at Doc. No. 2320). The documents also include ████ ████████. *See* Worley Decl., Exh. G, at Doc. Nos. 2324-26, -28. Many of these documents are also work product protected because, as noted above, they include work-product done by or at the direction of counsel, prepared during or in the anticipation of litigation, that reflect analysis regarding ████████████ (Worley Decl., Exh. G, at Doc. Nos. 2307-10, -15); ████████ (*id.* at Doc. Nos. 2316); ████████████ (*id.* at Doc. Nos. 2314, -20); ████████████ (*id.* at Doc. Nos. 2317-19, -21); and ████████████ (*id.* at Doc. Nos. 2314, 2324-28).

Any exchange of these documents and information between Finjan and Fortress has not waived these protections because they share a common legal interest. "The weight of case law suggests that, as a general matter, privileged information disclosed during a merger between two unaffiliated businesses would fall within the common interest doctrine." *Cavallaro v. United States*, 153 F. Supp. 2d 52, 62 (D. Mass. 2001) *aff'd*, 284 F.3d 236 (1st Cir. 2002) (collecting cases). In the Ninth Circuit, courts have

---

[17] ESET's reliance on *Uniloc* is inapposite. *Uniloc USA, Inc. v. Apple, Inc.*, 2020 WL 7626518, at *3 (N.D. Cal. Dec. 22, 2020). There, the district court dismissed Uniloc's case filed against Apple, holding that Uniloc lacked standing because it had relinquished certain patent rights to Fortress by defaulting on a financing agreement. *Id.*

declined to find waiver where attorney-client privileged information was disclosed to a potential merger partner and the communications related to potential, anticipated litigation.  *See Hewlett-Packard Co.*, 115 F.R.D. at 311-12.  That protection has also been applied where potential merger parties sought to avoid or anticipate litigation by sharing legal opinions regarding the scope of the target's intellectual property rights prior to completion of a merger or acquisition.  *Morvil*, 2012 WL 760603, at *2-3 (S.D. Cal. 2012); *see also BriteSmile, Inc. v. Discus Dental, Inc.*, 2004 WL 2271589, at *2 (N.D. Cal. Aug.10, 2004) (finding "Discus and Nathoo share a common legal interest in the issue of whether the technology that Nathoo sold to Discus was patentable and whether it infringed."); *Microban Sys., Inc. v. Skagit Nw. Holdings, Inc.*, 2016 WL 7839220, at *1 (W.D. Wash. Aug. 17, 2016) (finding the common interest doctrine protected documents exchanged prior to an acquisition because the parties' interests were aligned in determining the value of intellectual property and whether litigation would be required to secure the full value of those rights).

Indeed, courts have found that the common interest protection applies precisely because the merging parties share a common legal interest.  For example, in *Regents of Univ. of California*, 101 F.3d at 1390, the Federal Circuit found that communications between defendant and third party negotiating for exclusive license to defendant's patents were protected under the common interest exception.  The *Regents* court held that both parties "had the same interest in obtaining strong and enforceable patents," and therefore, their legal interests were aligned.  *Id.*

In *Morvil*, this Court addressed this very issue.  There, Morvil moved to compel documents exchanged during a negotiation where Medtronic would "acquire all of AFI's products and related intellectual property."  2012 WL 760603 at *1.  Morvil argued the documents were not covered by common interest "because they regarded business related advice, not legal advice."  *Id.*  The documents there were subject to a "strict confidentiality agreement" and "constituted a shared legal analysis as to the scope of AFI's patents," among other things.  *Id.* at *2.  Morvil argued that AFI and Medtronic did

45635786.11

not anticipate joint litigation, and therefore "were not intending to further a common legal interest." *Id.* This Court rejected Morvil's argument, finding a sufficient common interest existed to protect the exchange of legal analysis with privilege. Citing *Regents*, this Court held that Medtronic and AFI had a protectable common interest despite no impending litigation and that they had shared legal and commercial interests. *Id.* at *3.

Here, as in *Morvil*, Finjan and Fortress were "contemplating the wholesale acquisition of" Finjan. As part of that acquisition, they had a common legal interest in anticipating litigation related to enforcing Finjan's intellectual property by engaging in litigation, or through licensing. Communications addressing the scope of ███████ ████████████████████████████████████████████ "certainly were designed to further that interest." *Morvil*, 2012 WL 760603 at *3. The communications between Finjan and Fortress were in furtherance of their shared interest in understanding and protecting the entire scope of Finjan's intellectual property rights. The documents and communications exchanged include attorney analysis of the ████████ ████████████████████████████████████████████████████ ████████████████████████████████. All this information was provided to further their shared interests, including understanding the legal scope of the intellectual property that Finjan was prosecuting, and the legal risks and opportunities attendant to Fortress's acquisition. Under those circumstances, any overlap of business interests occasioned by the proposed merger "does not negate the effect of the legal interest in establishing a community of interest." *Morvil*, 2012 WL 760603 at *3.

Even absent a common legal interest, "the disclosure [of work product] to a third party does not necessarily constitute a waiver." *Nidec*, 249 F.R.D. at 580. Work product protection is waived where disclosure of privileged documents is made to a third party, and "that disclosure enables an ***adversary*** to gain access to the information." *Id.* (quoting omitted; emphasis added).[18] At the very least, production of those communications

---

[18] ESET's reliance on *Ayers* is unavailing. In *Ayers*, defendant provided statements regarding an "implied" agreement, but "provided nothing else to substantiate such an agreement existed. . . ." 2018 WL 6589834, at *8 (S.D. Cal. Dec. 14, 2018). Here, the protection is established by an executed NDA and CIA listed on Finjan's privilege log.

relaying work-product protected materials should not be compelled, as the very purpose of the protection is to prevent mental impressions and strategies from falling into the hands of Finjan's adversary—in this case, ESET.  Indeed, a NDA and CIA expressly sought to protect the exchanged information from Finjan's adversaries, including ESET.  Thus, there has been no waiver.

Finally, ESET's reliance on *Finjan v. SonicWall* is unavailing.  2020 WL 4192285, at \*5 (N.D. Cal. July 7, 2020).  In *SonicWall*, the court found that the information at issue ***was*** protected as attorney work product, but the protection had been waived because Finjan failed to show that there was a NDA or that Finjan had otherwise taken steps to ensure the material's confidentiality when presented to its board members, which included a Cisco employee.  *Id.*  Unlike *SonicWall*, here, the documents described in Finjan's privilege log were provided only to those parties subject to a NDA or owing fiduciary and confidentiality duties to the parties to the acquisition.  Thus, ESET's contention that Finjan shared its confidential information described on the privilege log, with "50+" entities has no support.

To the extent the Court has doubt regarding the application of the common interest protection, Finjan respectfully requests the Court conduct an *in camera* review to determine that ESET's requests are beyond the scope of the Court's discovery order, and seek documents covered by the attorney-client privilege, work product, and common interest protections.  *See Morvil*, 2012 WL 760603, at \*1.

## F.    CONCLUSION

For the reasons given, Plaintiff respectfully requests that the Court deny ESET's motion.

---

*See* Worley Decl. Exh. G at Doc. Nos. 2322-23.

45635786.11

Dated:  January 6, 2021                     Respectfully submitted,

                                            **EVERSHEDS SUTHERLAND (US) LLP**


                                            _/s/ Nicola A. Pisano_
                                            NICOLA A. PISANO, CA Bar No. 151282
                                               NicolaPisano@eversheds-sutherland.com
                                            JOSE L. PATIÑO, CA Bar No. 149568
                                               JosePatino@eversheds-sutherland.com
                                            JUSTIN E. GRAY, CA Bar No. 282452
                                               JustinGray@eversheds-sutherland.com
                                            SCOTT A. PENNER, CA Bar No. 253716
                                               ScottPenner@eversheds-sutherland.com
                                            12255 EL CAMINO REAL, SUITE 100
                                            SAN DIEGO, CALIFORNIA  92130
                                            TELEPHONE:      858.252.6502
                                            FACSIMILE:      858.252.6503

                                            Attorneys for Defendants & Counter-Plaintiffs
                                            ESET, LLC and ESET, SPOL. S.R.O.

45635786.11

DATED:  January 6, 2021                   Respectfully submitted,

**FISH & RICHARDSON P.C.**

*/s/ Michael A. Amon*
Juanita Brooks (SBN 75934)
 brooks@fr.com
Roger A. Denning (SBN 228998)
 denning@fr.com
Jason W. Wolff (SBN 215819)
 wolff@fr.com
Michael A. Amon (SBN 226221)
 amon@fr.com
12860 El Camino Real, Suite 400
San Diego, CA  92130
Telephone:   (858) 678-5070
Facsimile:    (858) 678-5099

*Attorneys for Plaintiff*
 FINJAN LLC

45635786.11

**CERTIFICATION**

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that authorization for the electronic signature of any other signatory to this document has been obtained.

Executed on January 6, 2021.

_/s/ Nicola A. Pisano_
NICOLA A. PISANO, CA Bar No. 151282
NicolaPisano@eversheds-sutherland.com

45635786.11