1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

FINJAN, INC.,

11

Plaintiff,

12

v.

13

ESET, LLC, a California Limited Liability
and ESET SPOL. S.R.O., a Slovak
Republic Corporation,

14
15

Defendants.

16

Case No.:  3:17-cv-0183-CAB-BGS

**ORDER ON DEFENDANTS'
RENEWED MOTION FOR
SUMMARY JUDGMENT OF
INDEFINITENESS
[Doc. No. 806]**

17
18
19
20
21
22

Before the Court is the renewed motion of Defendants ESET, LLC and ESET spol. s.r.o (collectively "ESET") for summary judgment to invalidate Plaintiff Finjan's United States Patent Nos. 6,154,844; 6,804,780; 8,079,086; 9,189,621; and 9,219,755 ("the patents at-issue") as indefinite pursuant to 35 U.S.C. § 112 based on this Court's construction of the claim term "Downloadable." The motion is fully briefed, and the Court deems it suitable for submission without oral argument.

23

### I.    Background

24
25
26
27
28

This motion has an unusual history.  ESET filed a motion for summary judgment asserting that the patents at-issue are indefinite at the close of fact discovery in this case, and the Court held argument on September 26, 2019.  Finding that there were factual disputes regarding what a skilled artisan in 1997 would have understood constituted a

1

"Downloadable" based on the Court's construction of that term, the Court denied the motion without prejudice. [Doc. No. 699.]  It was anticipated that trial testimony would establish what was generally understood in the art in 1997 as a "Downloadable" and such testimony would inform the scope of infringement.  [Doc. No. 697, at 22:3-15.]

A jury trial commenced in this case on March 10, 2020.  After three trial days the Court was forced to vacate the remainder of the trial, excuse the jury and declare a mistrial due to the COVID-19 pandemic and the issuance of the State of California's stay-home order. [Doc. No. 783.]  This District's continuing moratorium on civil jury trials and backlog of criminal jury trials currently precludes scheduling a new trial in this matter.

Having heard testimony from Finjan's expert during the vacated trial on this issue, however, the Court permitted ESET to renew this motion in consideration of the testimony that was taken.  Although Finjan's patents have been the subject of much litigation, and the term "Downloadable" has been construed by other courts, the issue raised in ESET's current motion does not appear to have been addressed by any prior constructions.

Finjan is the owner of a large family tree of patents for security systems and methods of detecting malware in computer programs.  Finjan has litigated many of their patents, including some of the patents at-issue in this motion, in other district courts.  Many have also been subject to *inter partes* review by the Patent and Trademark Office (PTO).  The Federal Circuit has issued at least nine opinions, precedential and non-precedential, on appeals from district courts and the PTO regarding Finjan patents.  Yet none of these orders or opinions discuss how earlier references incorporated into the patents at-issue inform the construction of the term "Downloadable."

## II.     The Construction of "Downloadable"

In 2017, Finjan filed this litigation against defendants ESET asserting infringement of the patents at-issue, and United States Patent No. 7,975,305.[1]  Finjan claims priority for

---

[1] The '305 patent is not subject to this motion as it does not include the claim term "Downloadable."

the patents at-issue back to an application filed on November 8, 1996, Provisional Application 60/030639. [Doc. No. 139-24.]  The application is directed at "a system and method for protecting computers from hostile Downloadables," described as executable application programs automatically downloaded from a source computer and run on the destination computer that might carry computer "viruses."  [Id., at 5-6.] The claim term "Downloadable" is presented as a capitalized term in the provisional application and all the patents at-issue, signaling it is a specifically defined term. The definition of "Downloadables," however, is not consistent throughout Finjan's subsequently issued patents.  The explicit definitions include:

- "applets" (little applications) described in the 1990s as small interpreted or executable programs.  *See* Provisional Application 60/030639 (filed November 8, 1996) [*Id.* at 5-6.]

- "Downloadables (i.e., applets)" as "a small executable or interpretable application program which is downloaded from a source computer and run on a destination computer," in conformity with the original provisional application. *See* U.S. Patent No. 6,167,520, at Col. 1:31-34 (application filed January 29, 1997); U.S. Patent No. 6,480,962, at Col. 1:38-41 (filed April 18, 2000).

- "an executable application program which is downloaded from a source computer and run on a destination computer" (without "i.e., applet," "small" or "interpretable" included in the definition but using applets and interpretable programs as examples of a "Downloadable" and incorporating the earlier definition by reference).  *See* U.S. Patent No. 6,092,194, at Col. 1:44-55 (filed November 6, 1997); U.S. Patent No. 6,804,780 at Col. 1:50-60 (filed March 30, 2000).

Other district courts have determined that "Downloadable" lacked ordinary meaning when the patents were filed and construed it as "an executable application program which is downloaded from a source computer and run on a destination computer," applying the

explicit definition from the '194 patent. [Doc. No. 139-10, at 3; Doc. No. 138-4, at 2-5 (the term was not amenable to plain and ordinary meaning and the patent applicant intended to act as the lexicographer of this term, therefore the specification definition controls).]  None of these orders, however, discussed the significance of the '520 patent's definition incorporated into the '194 patent and its continuations.   One district court, without explanation, applied the broader definition from the '194 patent specification to the construction of the term "Downloadable" in the '962 patent as "the same" definition [id., at 3, fn. 4], disregarding the fact the '962 patent explicitly defines "Downloadable" as "a *small* executable or interpretable application program which is downloaded from a source computer and run on a destination computer."  *See* U.S. Patent No. 6,480,962, at Col. 1:39-41 (*emphasis* added).

Incorporation by reference provides a method for integrating material from various documents into a host document by citing such material in a manner that makes clear that the material is effectively part of the host document as if it were explicitly contained therein.   *See Trustees of Columbia Univ. v. Symantec,* 811 F.3d 1359, 1365-66 (Fed. Cir. 2016) (*citing Advanced Display Sys. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000) (provisional applications incorporated by reference are effectively part of the specification as though it was explicitly contained therein.)).  By incorporating the earlier definition of "Downloadable" from the '520 Patent into the '194 Patent and subsequent continuations (including the patents at-issue), the scope of the term is limited to "*small* executable or interpretable application programs," and not *all* executable application programs (*emphasis* added).   *See Symantec*, 811 F.3d at 1365 (rejecting a broad interpretation of a claim term in part because a provisional application incorporated by reference the same term more narrowly defined.)  Inconsistent language used later cannot support a broad claim construction when the explicit definition is incorporated from earlier patents in the family tree.

In this case, the Court concluded that based on its incorporation by reference in all the patents at-issue, the explicit definition of "Downloadables" from the '520 patent and

the '962 patent, which is supported by the examples provided in the specification, is the proper construction of "Downloadables" – "a small executable or interpretable application program which is downloaded from a source computer and run on a destination computer." [Doc. No. 195.]

### III.   The Indefiniteness Determination

The Court's claim construction, not unexpectedly, resulted in the present dispute as to the scope of the modifier "small."  ESET argues that "small" is a term of degree with not technical meaning or defined boundaries and there is insufficient information in the intrinsic record for a skilled artisan to have clear notice of what constitutes a "small executable or interpretable application program." They further argue that this is demonstrated by the inability of Finjan's experts to come to a consistent opinion as to what objective boundaries constitute a small application program. [806-1, at 5, 17.]

The definiteness requirement of paragraph 2 of 35 U.S.C. §112 requires that the "specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."  The definiteness requirement focuses on whether "a patent's claims, viewed in light of the specification and prosecution history inform those skilled in the art about the scope of the invention with reasonable certainty."  *Nautilus, Inc. v. Biosig Instruments, Inc.,* 572 U.S. 898, 910 (2014).  The inquiry "trains on the understanding of a skilled artisan at the time of the patent application."  *Id.* at 911.

Terms of degree must provide sufficient certainty to one of skill in the art to afford clear notice of what is claimed and what is still open to the public. *See Biosig Instruments, Inc. v. Nautilus, Inc.*, 738 F.3d 1374, 1378 (Fed. Cir. 2015) ("When a 'word of degree' is used, the court must determine whether the patent provides 'some standard for measuring that degree.'"); *Interval Licensing LLC v. AOL, Inc.,* 766 F.3d 1364, 1370 (Fed. Cir. 2014) (the definiteness standard must allow for a modicum of uncertainty but must also require clear notice of what is claimed thereby apprising the public of what is still open to them).

Finjan's contention that the claim term "Downloadable" cannot be indefinite simply because the Court was able to construe it by adopting the explicit definition provided by the inventor in the '520 patent fails to address the issue raised by ESET.  A defined term is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope.  *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1251 (Fed. Cir. 2008).  The issue therefore is whether a skilled artisan in 1997 would have understood with reasonable certainty based on the specification and prosecution history what the inventor meant by a "small" application program and therefore understood what comes within the scope of the claims.

The '510 patent, incorporated into all the later patents, describes a Downloadable as an "applet," a small interpretable or executable application program, and provides that "a Downloadable is used in a distributed environment such as the Java™ distributed environment produced by Sun Microsystems or in the Active X™ distributed environment produced by Microsoft Corporation." *See* '520 Patent, at Col. 1:31-32, 34-38.  Because such examples existed in the 1990s, there should be an objective standard for the size of a "small" program. While "absolute or mathematical precision" was not required, some objective boundary should be identifiable from the disclosed embodiments.  *See Biosig Instruments*, 738 F.3d at 1381.

Finjan opposed ESET's initial motion for summary judgment for indefiniteness as to the scope of "small" on the grounds that a numerical limitation or cut-off is not necessary because a skilled artisan could determine if an application is "small" from the examples in the '962 patent and based on the context.  Finjan, however, did not provide an explanation as to how that skilled artisan would therefore interpret "small" or the context that would apply.  [Doc. No. 610, at 8 and 15.][2]

---

[2] Finjan has also argued that the Court should reconsider its incorporation of "small" into the construction of Downloadable and disregard that modifier as other district courts have done to avoid this definiteness issue. [Doc. No. 812, at 6.] This solution may resolve Finjan's problem with defining "small," but the fact that the Court's construction results in indefiniteness is not a basis for reconsideration.

ESET argued then, as it does now, that Finjan's experts did not provide any objective boundaries for a "small" application program based on what a skilled artisan would have understood was upper end of "small" in the context of application programs being downloaded from a source computer to run on a destination computer at the time the application was filed. [Doc. No. 816, at 5.] Finjan's contention that the understanding of what is "small" depends on the context is not supported by the intrinsic evidence or even extrinsic evidence of the state of the art at the relevant time. It amounted to "unpredictable vagaries of any one person's opinion" and therefore failed to provide sufficient notice as to the scope of the term. *Interval Licensing*, 766 F.3d at 1371 ("[A] term of degree fails to provide sufficient notice of its scope if it depends on the unpredictable vagaries of any one persons' opinion.")

ESET contends that the trial testimony of Finjan expert Dr. Eric Cole did not remedy this defect.[3]  Dr. Cole presented an explanation how a skilled artisan would interpret "small" that was neither disclosed in his previous declaration to the Court (small meant "a few megs … something that is not multiple gigs or really large" [Doc. No. 806-1, at 17]) or anchored to the specification or prosecution history.   Rather than providing a range of application size that would have been construed as "small" by an artisan in 1997, Dr. Cole testified on Finjan's behalf that an application would be understood to be small if it "did not require installation" and opined that "small" depends not on size but on the function. Dr. Cole testified that a small executable is an application that does not require installation is "self-contained" and is "just running automatically" which is "typical if you go to any website nowadays," whereas an executable that is not small "requires installation" and has "a lot of shared libraries and dlls and other programs" in order to run. [Doc. No. 812, at 12.] Dr. Cole testified that regardless of time period, Internet speed and other factors related

---

[3] Although the trial was terminated early due to the pandemic, Dr. Cole's testimony was completed.  Finjan suggests that Dr. Cole's testimony at a future trial will replace his completed testimony, but a subsequent trial is not an opportunity for Dr. Cole to change his opinions or supplement them with support he did not provide on the record at the first trial. [Doc. No. 816, at 11.]

to capacity, what fits the criteria of "small" may change but this distinction (installed or not installed) is constant. Dr. Cole did not however provide support from the specification, the prosecution history, or from any extrinsic sources in the relevant time period, for this new explanation that a skilled artisan in 1997 would understand "small" to be "uninstalled" or "not requiring installation."

In sum, Finjan never offered evidence of a reasonable range for the size of a small executable or interpretable application program as understood by a skilled artisan in 1997 based on examples provided in the patent specification. Instead, Finjan elected at trial to offer a new understanding without reference to the size of the application as the objective boundary of a "small" application. Finjan's new definition is not supported by the specification or prosecution history. It may be convenient to support Finjan's infringement contentions against ESET's accused devices, but Finjan's new explanation does provide clear notice of what constitutes a "small executable or interpretable application program."

## IV.   Conclusion

For the foregoing reasons, the Court finds that the term "Downloadable" as used in the patents at-issue is indefinite. Accordingly, it is hereby **ORDERED** that ESET's motion for summary judgment of invalidity of Finjan's United States Patent Nos. 6,154,844; 6,804,780; 8,079,086; 9,189,621; and 9,219,755 for indefiniteness is **GRANTED**.

It is **SO ORDERED**.

Dated:  March 23, 2021

_____
Hon. Cathy Ann Bencivengo
United States District Judge