UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

FINJAN, LLC,

Plaintiff,

v.

ESET, LLC and ESET SPOL. S.R.O.,

Defendant.

Case No.:  17-cv-183-CAB-BGS

**ORDER ON DISCOVERY DISPUTE REGARDING ACQUISITION DOCUMENTS**

[ECF 849]

Defendants ESET, LLC and ESET SPOL. S.R.O ("ESET") move to compel Plaintiff Finjan, LLC ("Finjan") to produce documents in response to eleven requests for production of documents ("RFPs"). (ECF 849 at 4.[1])  The parties have briefed the issues in dispute through a Joint Statement.  (ECF 849.)

**I.     BACKGROUND**

This case was stayed from May 7, 2018 until July 23, 2020 as to the '305 Patent, one of six patents Finjan asserts ESET has infringed, and is currently stayed.  (ECF 215, 802.)  After the stay was lifted and the parties were proceeding with discovery, the Court

---

[1] This Order cites the CM/ECF electronic pagination unless otherwise noted.

ordered the parties to submit proposed deadlines to complete any '305 discovery that was not completed prior to the stay.  (ECF 811.)  The Court then issued two orders setting deadlines to complete discovery as to the '305.  (ECF 819, 832.[2])

Since this briefing was filed, the district judge issued an order granting ESET's renewed motion for summary judgment of indefiniteness as to all the other patents in this case.  (ECF 864.)  The decision was followed by an order granting the parties' joint request to sever the '305 patent from the others and stay it pending a final determination on the decision as to the other patents.  (ECF 871.)

The documents at issue in this dispute are related to Fortress Investment Group's ("Fortress") acquisition of Finjan Holdings, Inc. on July 24, 2020 for $43.9 million. (ECF 849 at 2-5, 13-17.)  ESET seeks communications between and documents exchanged by Fortress and Finjan regarding: the patents asserted in this case and Finjan's patent portfolio as a whole, including valuations for any damages claims for any of the patents or any Finjan litigation (RFPs 222, 223, 226, 230 and 231); ESET (RFP 224); substitution of Finjan's counsel in any litigation (RFP 225); any allocation associated with the acquisition (RFP 227); potential invalidity, unenforceability, and prior art as to any of the patents-in-suit (RFP 232); and any communications between Finjan and its shareholders regarding the acquisition (RFP 229).  (ECF 849.)

Fortress' acquisition of Finjan Holdings included Plaintiff Finjan, Inc., now Finjan, LLC.[3]  (*Id.* at 13-14.)  Finjan represents that Fortress' due diligence for this acquisition

---

[2] The Court had ordered the parties to identify what additional discovery was needed as to the '305 Patent and when it could be completed, however, the parties' initial proposals only addressed written discovery as to the '305 Patent.  A second order addressed additional deadlines after receiving the parties' proposed deadlines to address all remaining discovery deadlines as to the '305 Patent.

[3] After the acquisition, Finjan filed a Motion to Amend the Caption seeking to change the name of the Plaintiff from Finjan Inc. to Finjan, LLC because Finjan's entity status had been changed from a corporation to a limited liability corporation.  (ECF 835.)  ESET opposed the Motion, arguing Finjan was acting in bad faith in not disclosing the

1   began in August 2018; and as part of it, Fortress and Finjan executed a non-disclosure

2   agreement ("NDA") and common interest agreement ("CIA"), both in 2018.  (*Id.* at 14

3   (citing Decl. of Regis Worley, Ex. G (Finjan's Supplemental Privilege Log) at Doc. Nos.

4   2322-23)[4].)

5   **II.   DISCUSSION**

6         There are three primary issues raised in the parties' briefing: (1) do ESET's RFPs

7   seek discovery within the scope authorized by the Court; (2) do they seek discovery that

8   is relevant and proportional to the needs of the case; and (3) whether the withheld

9   documents are protected by the common legal interest doctrine.  The Court first addresses

10  whether the discovery sought is within the scope of discovery authorized and if it is

11  relevant and proportional to the needs of the case.

12        **A.     Relevant to the '305 and Proportional to the Needs of the Case**

13        The relevance section of ESET's briefing groups the RFPs as follows: (1)

14  valuation documents (RFPs 222, 223, 226, 227, 230, and 231); (2) documents regarding

15  ESET (RFPs 224); (3) Finjan's shareholder communications (RFP 229); and (4)

16  documents regarding the validity and enforceability of the '305 Patent (RFPs 232, 233).

17  (ECF 849 at 6-7.)  In a different section of the Joint Statement, ESET identifies only

18  RFPs 222 and 226 as patent valuation documents and separates out RFP 223 as

19  documents referring to the asserted patents, RFP 227 as documents referring to the

20  allocation of the acquisition, and RFPs 230 and 231 as documents referring to the

21  valuation of infringement damages for the asserted patents.  (ECF 849 at 4.)  This section

22  also includes one RFP not identified in the relevance section, RFP 225, documents

23  referring to substitution of counsel.  (*Id.*)

24

25

26  acquisition documents that are in dispute here.  (ECF 840.)  The assigned district judge
    granted the motion to amend the caption and understandably did not reach the issue of
27  these discovery documents.  (ECF 846.)
    [4] Despite quoting from the NDA in redacted portions of its briefing, Finjan only cites its
28  privilege log for these two documents.  (ECF 849 at 14.)

1. **Discovery Limited to '305 Patent**

    a)      **Parties' Positions on Authorized Scope of Discovery**

Finjan argues that the RFPs go beyond the '305 discovery authorized by the Court because they seek documents and communications between Finjan and Fortress regarding Finjan's whole patent portfolio, Finjan's former counsel, and ESET generally. (*Id.* at 12.)

ESET does not directly dispute that discovery at this point is limited to the '305. However, ESET argues that even if portions of responsive documents are beyond the '305, extending to patent portfolio documents, Finjan should not be allowed to withhold or redact those portions that extend beyond the '305 if they otherwise contain information relevant to the '305. (*Id.* at 6-7, 11 (citing *Finjan, Inc. v. SonicWall, Inc.*, Case No. 17-cv-04467-BLF (VKD), 2020 WL 4192285, at *3 (N.D. Cal. July 21, 2020).) ESET seems to be arguing that if the documents are responsive and relevant for purposes of the '305 then they should not be withheld just because they encompass more than the '305. As to some of the RFPs, ESET also argues they are related to the '305 even though the language of the RFP does not limit its scope to the '305. Additionally, in a footnote, ESET asks that if the Court finds the valuation documents in dispute are not related to the '305 and beyond the scope of current discovery, "ESET requests that an additional discovery period be ordered that will enable ESET to take fulsome discovery of the Fortress transaction sufficiently to assess whether Finjan LLC even retained standing to sue." (*Id.* at 11 n.12.)

    b)      **Analysis of Authorized Scope**

The only discovery the parties were authorized to conduct when this dispute arose was '305 discovery. As noted above, discovery in this case was proceeding as to all the patents-in-suit when the case was stayed as to the '305 on May 7, 2018, however, all other discovery was completed, and the case proceeded to trial[5] while the stay was in

_____

[5] A mistrial was declared on March 16, 2020 as a result of the COVID-19 Pandemic. (ECF 783.) Additionally, since this briefing was filed, ESET's motion for summary

place.  (ECF 447 (close of expert discovery on March 19, 2019), 780-82 (trial).)  In this respect, the only discovery the parties were authorized to pursue once the stay was lifted on July 23, 2020 was on the '305 because discovery was closed as to everything else. (ECF 802, 819, 832.[6])  The Court also notes that the Court's first order requiring the parties to submit proposals to complete '305 discovery ordered them to identify discovery that was not cumulative or duplicative of discovery already completed. (ECF 811.) Additionally, in ordering the parties to address all discovery deadlines (they had only addressed written discovery in their initial competing proposals) the Court reminded them that '305 discovery should only be updated as necessary because discovery as to the '305 was already in progress when it was stayed.  (ECF 819.)

On their face, the RFPs are not limited to the '305.  For example, RFP 222 requests "All Communications between Finjan, Inc. or Finjan Holdings, Inc. and Fortress Investment Group LLC regarding any valuation *of the Patents-in-Suit or the Finjan patent portfolio as a whole*."  (ECF 849-6 at 12 (emphasis added).)  In this respect, the language of these RFPs is overbroad in seeking discovery beyond the scope authorized by the Court.  However, as to this and other similarly worded RFPs, the issue is not necessarily resolved by substituting "the '305 Patent" in place of "Patents-in-Suit or Finjan patent portfolio as a whole" or something similar to narrow every RFP to the '305. As discussed below, in the context of discovery related to a purchase of patents or an acquisition that includes patents, an RFP may arguably seek discovery relevant to the value of one patent even when it encompasses documents related to the value of other patents.  (*See* I.A.1.b)(1)(b).)  Rather than eliminate RFPs entirely because they do not

---

judgment of invalidity of the other patents, based on indefiniteness, was also granted. (ECF 864.)

[6] Neither party has sought to reopen discovery regarding anything beyond the '305 and their briefing does not directly address any of the factors courts are required to consider in reopening discovery.

specify they are only asking for the discovery as to the '305 or substitute in "the '305" for the broader language in a blanket fashion, the Court considers below whether the RFPs as currently stated seek any discovery that is relevant to the '305 and narrows them accordingly.

The Court briefly addresses the parties' arguments regarding obtaining discovery as to Finjan's standing below in addressing relevancy and proportionality.  (*See* I.A.1.b)(3))  However, to the extent ESET's footnote regarding an "additional discovery period" could be considered a request to reopen discovery or open discovery more broadly than the '305, it is denied at this time for not properly raising it.  "When ruling on a motion to amend a Rule 16 scheduling order to reopen discovery, [the Ninth Circuit] instructs" courts to consider:

> 1)  whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017) (quoting *United States ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1526 (9th Cir. 1995) *vacated on other grounds*, 520 U.S. 939 (1997)).  Not only is a footnote not a proper avenue to seek to reopen discovery, ESET has not addressed this standard or any alternative standard it might advance to justify obtaining discovery beyond the '305. Raising it in a footnote with little analysis leaves the Court to speculate as to the standard ESET might think applies and ESET's justifications under this or another standard. Additionally, by raising it in a footnote with little analysis, it also denies Finjan the opportunity squarely address the appropriate standard or ESET's arguments.  The Court will not rule on an issue raised in this way.

///

///

### 2. Relevance and Proportionality

#### a) Scope of Discovery

The Federal Rules of Civil Procedure provide that "parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Here, as discussed above, the scope is further limited to the '305.

District courts have broad discretion in determining what is relevant. *Facedouble, Inc. v. Face.com*, No. 12cv1584 DMS (MDD), 2014 WL 585868, at *1 (S.D. Cal. Feb. 13, 2014). "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Global Ampersand, LLC v. Crown Engineering and Construction, Inc.*, 261 F.R.D. 495, 499 (E.D. Cal. 2009) (quoting *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998) and *Nestle Foods Corp. v. Aetna Casualty & Surety Co.*, 135 F.R.D. 101, 104 (D. N.J. 1990)); *see also Gordon v. Nexstar Broad., Inc.*, Case No. 1:18-cv-007 DAD-JTL, 2019 WL 2177656, at *4 (E.D. Cal. May 20, 2019) ("Once the party seeking discovery establishes that a request seeks relevant information, the party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.") (citations omitted).

The 2015 Amendments to Rule 26 made clear that "[r]elevancy alone is no longer sufficient—discovery must also be proportional to the needs of the case." *In re Bard IVC Filters Prods. Liability Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016). When a dispute

implicates proportionality, the party claiming undue burden has an obligation to explain

what is burdensome about complying with the request and the party claiming it is

important enough to require a response must explain why it is important.  Fed. R. Civ. P.

26 advisory committee's notes. "The court's responsibility, using all the information

provided by the parties, is to consider these, [undue burden or expense and importance of

information sought,] and all the other factors in reaching a case-specific determination of

the appropriate scope of discovery." *Id.*  Limits on discovery may be issued where the

"burden or expense outweighs the likely benefits." *Id*. (citing Fed. R. Civ. P. 26(b)).

### b)     Rule 26 Analysis of RFPs

Finjan argues that the RFPs seek discovery that is beyond the '305 and not

proportional to the needs of the case.  Finjan asserts that these RFPs seek production of

irrelevant documents and communications regarding Finjan's entire patent portfolio,

Finjan's former counsel, and ESET generally.  Finjan argues the only information

relevant to the value of a hypothetical license, the basis for the reasonably royalty

calculation, is the actual purchase price, not the broad pre-acquisition negotiations,

valuations, or purchase price allocations ESET seeks in these RFPs. (ECF 849 at 12, 17.)

In justifying such broad discovery as to the acquisition, ESET relies on an alleged

discrepancy between Finjan's expert's opinion as to a reasonable royalty as to the other

patents and what Fortress paid in total to acquire Finjan.  ESET explains that in the filing

period ending March 31, 2020, prior to the acquisition, Finjan Holdings reported total

current assets of $36 million and additionally identified 12 pending patent infringement

actions in which Finjan was a plaintiff (6 of them involving the '305 patent).  (ECF 849

at 2 (relying on Worley Decl., Ex. C).)  By comparing this 10-Q filing and the amount

Fortress paid to acquire Finjan, $43.9 million, ESET argues Fortress paid only $8 million

more for Finjan than its total cash assets.  ESET argues this purchase price significantly

discounts, potentially to zero, the value of the ESET litigation, as well as Finjan's other

reported litigations, and the value of its intellectual property assets. (*Id.* at 2-3.)  It asserts

there is a significant difference between nothing, what it asserts Fortress paid for these

patents among others, and the opinion of Finjan's expert as to the reasonable royalty owed by ESET to Finjan for alleged infringement of the other five patents asserted in this case.[7] (*Id.* at 2, 11.) Based on this difference, ESET argues it is entitled to review everything Finjan told Fortress about the value of this case.

The Court addresses the RFPs as categorized by ESET in its briefing starting with the largest group, the "valuation documents."

### (1)    Valuation Documents

ESET identifies RFPs 222, 223, 226, 227, 230, and 231 as seeking valuation documents. (ECF 849 at 6.) As discussed in more detail below, ESET argues documents responsive to these RFPs are relevant to the value of the '305 and calculation of a reasonable royalty rate. (*Id.* at 3, 6.)

When a patent is infringed, the patentee is entitled to 'damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer.'" *Whitserve, LLC v Computer Packages, Inc.*, 694 F.3d 10, 26 (Fed. Cir. 2012) (quoting 35 U.S.C. § 284). "A reasonable royalty can be calculated from an established royalty, the infringer's profit projections for infringing sales, or *a hypothetical negotiation* between the patentee and infringer based on the factors in *Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D. N.Y.1970)."[8] *Wordtech Sys., Inc. v. Integrated Network Solutions, Inc.*, 609 F.3d 1308,

---

[7] The parties have not yet completed expert discovery in this case as to the '305. ESET relies on a modified expert report provided by Finjan's expert as to the other patents-in-suit.

[8] The *Georgia-Pacific* factors are:

> (1) royalties the patentee has received for licensing the patent to others; (2) rates paid by the licensee for the use of comparable patents; (3) the nature and scope of the license (exclusive or nonexclusive, restricted or nonrestricted by territory or product type); (4) any established policies or marketing programs by the licensor to maintain its patent monopoly by not licensing others to use the invention or granting licenses under special conditions to maintain the monopoly; (5) the commercial relationship

1319 (Fed. Cir. 2010) (emphasis added) (citing *Lucent Techs. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009) and *Minks v. Polaris Indus.*, 546 F.3d 1364, 1372 (Fed. Cir. 2008)); *see also Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011) ("This court has sanctioned the use of the *Georgia-Pacific* factors to frame the reasonable royalty inquiry. Those factors properly tie the reasonable royalty calculation to the facts of the hypothetical negotiation at issue."); *see also* N.D. Cal. Model Patent Jury Instruction 5.7. As noted above, ESET is relying on an alleged discrepancy between Finjan's expert's opinion regarding a reasonable royalty as to all the other patents-in-suit and what Fortress paid for Finjan in total, including the '305. Finjan's expert's reasonable royalty calculation that ESET seeks discovery to challenge is based on a hypothetical negotiation.

### (a)    RFPs

RFP 222:
All Communications between Finjan, Inc. or Finjan Holdings, Inc. and Fortress Investment Group LLC regarding any valuation of the Patents-in-Suit or the Finjan patent portfolio as a whole.

---

between the licensor and licensee, such as whether they are competitors; (6) the effect of selling the patented specialty in promoting sales of other products of the licensee; (7) the duration of the patent and license term; (8) the established profitability of the product made under the patent, including its commercial success and current popularity; (9) the utility and advantages of the patent property over old modes or devices; (10) the nature of the patented invention and the benefits to those who have used the invention; (11) the extent to which the infringer has used the invention and the value of that use; (12) the portion of profit or of the selling price that may be customary in that particular business to allow for use of the invention or analogous inventions; (13) the portion of the realizable profit that should be credited to the invention as opposed to its non-patented elements; (14) the opinion testimony of qualified experts; and (15) *the results of a hypothetical negotiation between the licensor and licensee*.

*i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 853 n.3 (Fed. Cir. 2010) (emphasis added).

RFP 223:

All Documents provided to Fortress Investment Group LLC prior to the acquisition of Finjan referring or relating to any of the Patents-in-Suit.

RFP 226:

All Communications between Finjan, Inc. or Finjan Holdings, Inc. and Fortress Group LLC regarding any valuation assigned to the Patents-in-Suit.

RFP 227:

All Documents pertaining to any purchase price allocations associated with the acquisition of Finjan by Fortress Investment Group LLC.

RFP 230:

All Communications between Finjan, Inc. or Finjan Holdings, Inc. and Fortress Investment Group LLC regarding any valuation assigned to pending claims for damages for alleged infringement of any of the Patents-in-Suit in any Finjan Litigation.

RFP 231:

All Communications between Finjan, Inc. or Finjan Holdings, Inc. and Fortress Investment Group LLC regarding any valuation assigned to pending claims for damages for any alleged infringement by ESET of any of the Patents-in-Suit.

RFP 229:[9]

All Communications between Finjan and any of its shareholders regarding the acquisition of Finjan by Fortress Investment Group LLC.

(ECF 849-6 at 12-19.)

_____

[9] RFP 229 was not listed as a valuation RFP, however, because ESET asserts it is relevant to the valuation attributed to this litigation and Finjan's damages claims and those issues are addressed in this section, the Court considers it here.

17-cv-183-CAB-BGS

1

(b)    **Analysis**

2        The Court finds some of the documents sought in the valuation RFPs are relevant,

3   however, the RFPs are also overbroad because they encompass discovery that is not

4   relevant or proportional to the needs of the case.

5        As Finjan accurately explains, ESET already has the purchase price for the

6   acquisition.  (ECF 849 at 17 (Arguing ESET fails to explain "why preacquisition

7   documents are relevant to this inquiry when it may account for the actual purchase price

8   (of $43.9 million noted above) in its valuation of a hypothetical license").)  The issue

9   then is whether broader discovery into all Finjan and Fortress' pre-acquisition documents

10  and communications regarding Finjan's entire patent portfolio and litigations are relevant

11  to the '305 and calculation of, or challenging a calculation of, a reasonably royalty based

12  on a hypothetical negotiation.  As explained in detail below, even the cases ESET relies

13  on in support of the valuation RFPs do not support production of the breadth of discovery

14  ESET seeks.  However, the Court finds that documents that specifically value the '305 or

15  other patents acquired as part of the acquisition are within the scope of relevant '305

16  discovery and proportional to the needs of the case.

17       In its section addressing relevance as to RFPs 222, 223, 226, 230, and 231, ESET

18  states the "valuation documents are highly relevant to the issue of a reasonable royalty."

19  (*Id.* at 6.)  ESET then cites three cases in support of this assertion. (*Id.* (citing *Integra*

20  *Lifesciences I, Ltd. v. Merk KGaA*, 331 F.3d 860, 871 (Fed. Cir. 2003), *vacated on other*

21  *grounds*, 545 U.S. 193 (2005), *Uniloc USA, Inc. v. Apple Inc.*, No. 19-cv-01692-EJD

22  (VKD), 2020 WL 4368207, at *2 (N.D. Cal. July 30, 2020), and *Fresenius Med. Care*

23  *Holding, Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 653 (N.D. Cal. 2004)).

24       Of the cases cited by ESET, the one most procedurally aligned with the dispute

25  here is *Uniloc v. Apple*.  2020 WL 4368207.  The decision addresses damages discovery

26  in the context of multiple transactions selling large groups of patents.  *Uniloc*, 2020 WL

27  4368207, at *1-2.  The patent at issue was sold three different times, first in a portfolio

28  with over one thousand others, second with hundreds of others, and third as part of

another large group.  *Id.* at 1.  The dispute focused on whether documents valuing the other patents[10] that were sold were relevant to the value of the patent at issue for purposes of determining a reasonable royalty.  *Id.* at 2.  Despite plaintiff's arguments that they were too far removed from the reasonable royalty calculation to be relevant to damages, the court found the relative values of the patents sold together were relevant to damages as to the single patent at issue.  *Id.* at 1, 3 (citing *Integra*, 331 F.3d at 871) (other citations omitted)

This case provides support for ESET's assertion that an opposing party's valuations can be relevant to a damages calculation.  (ECF 849 at 3, 6 (Arguing valuations are "highly relevant to determining the value of the '305 patent" and "bear directly on Finjan's highly-inflated damages claims for the other asserted patents-in-suit.").)  Additionally, the finding that values of other patents sold in the same group are relevant to the value of a single patent at issue would suggest that valuations of other patents sold in a portfolio with the '305 could be within the limited scope of discovery permitted here, discovery as to the '305.  Valuations of other patents sold in the acquisition may reflect how much or little of the acquisition price should be attributed to the '305.

However, even as broad as the discovery authorized in this case is, it would not, for example, require production of "*All documents* provided . . . prior to the acquisition . . . *referring to or related to* any of the patents-in-suit" (RFP 223 (emphasis added)) or any documents or communications that only relate or refer to valuations (RFPs 222, 226, 230, and 231).  The court specifically excluded the broad language used in ESET's RFPs, "documents that 'refer or relate to'" the specific documents the court ordered produced.  *Id.* at 3.  Additionally, the court's primary basis for allowing discovery into the valuation

---

[10] The parties had already agreed that documents reflecting the value of the patent at issue and the other patents sold with it that were at issue in other litigations with the same parties would be produced.  *Id.* at 2.

documents is determination of "the price paid to acquire all rights to a patent" because that "may be considered in assessing a reasonable royalty for a hypothetical license to the patent." *Id.* at 2-3 (citing *Integra*, 331 F.3d at 871 and collecting cases addressing experts' and juries' reliance on values of patents in sales).

The Court is not convinced that every document or communication exchanged in relation to this acquisition is relevant. Rather, under this court's rationale, only a document that places an actual value on a patent that is sold would be relevant to determine the portion of the total amount paid that should be attributed to one patent or another. Documents valuing patents sold together are relevant to determine what portion of the price is attributable the patent at issue, here the '305. Additionally, the proportionality analysis here is very different. There, the court found the very broad discovery proportional to the needs of the case primarily based on the $1.1 billion at issue. *Id.* at 3-4. Although neither party has addressed it here, a review of Finjan's Complaint confirms there is certainly not $1.1 billion at issue. Fed. R. Civ. P. 26 (Listing among others, amount in controversy as a proportionality factor). Production of essentially every communication or document related to this acquisition or even related to a valuation is not proportional to the needs of this case.

The only other discovery decision ESET relies on for the relevancy of the valuation RFPs, *Fresenius Medical v. Baxter*, authorizes discovery beyond actual valuations, including some similar to ESET's here. 224 F.R.D. at 653. For example, one seeks all documents relating to one party's evaluation, purchase, and acquisition of the other. *Id.* However, the analysis is very brief and only states the acquisition price and allotment of it to a particular patent is relevant. *Id.* (citing *Integra*, 331 F.3d at 871). Additionally, the court appears to rely on the absence of proposed alternatives to narrow the RFPs and a lack of other available documents regarding the valuation of the patents-in-suit. *Id.* at 654.

The final case ESET relies on as to the valuation RFPs is also cited as supporting the discovery authorized in both *Fresenius* and *Uniloc*. The *Integra* decision recognizes

14

that the purchase price for an acquisition that includes patents at issue in a case could be of consequence to the calculation of a reasonable royalty.  331 F.3d at 870-71.  After identifying numerous other problems with a $ 15 million jury verdict for infringement and finding the "royalty also [did] not appear to take into account numerous factors that would considerably reduce the value of a hypothetical license" the court cited as an example a potential discrepancy between an acquisition price and the verdict.  *Id.*  The court explained that the $15 million jury award for infringement of only some patents "seem[ed] unbalanced" with a $20 million acquisition that included all the company's patents, products, and know-how.  *Id.*  As Finjan accurately points out, ESET already has the acquisition price to take into account.  In that respect, ESET has the piece of information the court indicated should have been considered.

There is also a factual distinction the parties do not address.  The *Integra* court found the jury's verdict, based on a hypothetical negotiation, out of balance with an acquisition price when the acquisition took place within one or two years of the hypothetical negotiation.  *Id.* at 870-71 (Hypothetical negotiation in 1994 or 1995 and acquisition in 1996).  It is not entirely clear from the parties' briefing that a similar imbalance would be relevant when, as here, the hypothetical negotiation and acquisition are farther apart.  "A 'reasonable royalty' contemplates a hypothetical negotiation between the patentee and the infringer at a time before the infringement began."  *Riles v. Shell Expl. and Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002) (citing *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078, (Fed. Cir. 1983)); *see also Wordtech*, 609 F.3d at 1319 (citing *Lucent Techs.*, 580 F.3d at 1324–25) ("The hypothetical negotiation attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began and necessarily involves an element of approximation and uncertainty.")  Finjan's Complaint alleges the '305 was issued in 2011 and Finjan informed ESET of its alleged infringement of the '305 in 2015.  (ECF 1 ¶¶ 16, 79.)

1   Despite neither party addressing this distinction, the Court's own review of cases
2   suggests that even when there are significant time gaps between the hypothetical
3   negotiation and an acquisition of a company with its patents or the purchase of patents,
4   the acquisition may still be relevant. *Comcast Cable Comms., LLC v. Spring Comms.*
5   *Co.*, LP, 262 F. Supp. 3d 118, 145-146 (E.D. Penn. 2017) (Noting some difference in
6   bargaining position between 2005 hypothetical negotiation and 2010 purchase of a
7   portfolio of patents that included the patent at issue, but finding sufficient evidence
8   bargaining position was comparable); *Personal Audio, LLC v. Apple, Inc.*, 2011 WL
9   3269330, at *9-11 (E.D. Tex. July 29, 2011 (jury properly considered 2008 offer to sell a
10  patents-in-suit when hypothetical negotiation was in 2001). The Court does not find the
11  acquisition entirely irrelevant to the hypothetical negotiation on this basis.

12  Another relevancy issue unexplained is how the values Finjan might have assigned
13  to its infringement claims as to ESET or in other Finjan litigations (RFPs 230-231) in the
14  context of selling the patents and their associated litigation to Fortress would be
15  comparable to or used by an expert to calculate a reasonably royalty based on a
16  hypothetical negotiation between Finjan and ESET.[11] Although the Court understands
17  ESET is arguing the discrepancy between the acquisition price and Finjan's higher
18  reasonably royalty calculation based on the hypothetical negotiation means Finjan's
19  expert's calculation is inflated, the hypothetical negotiation to license a patent is not the
20  same as a transaction to purchase the patents and their litigation. As one court explained,
21  when "the thing being valued in the transaction [is] this litigation," the "transaction . . . is
22  not comparable to the hypothetical negotiation." *In re ChanBond, LLC Patent Litig.*,
23  2020 WL 550786, at *2 (D. Del. Feb. 4, 2020). "Instead of being an agreement between

_____

[11] The Court does not necessarily expect ESET to provide an expert opinion explaining how this information would be used. However, the absence of any explanation how valuations beyond the actual patents could be used, particularly when the RFPs on their face are overbroad, leaves the Court with little to rely on to find the RFPs seek relevant discovery.

a party who has a patent and a party that wants to be able to use the patent, it is an agreement between two parties who want to be on one side of that transaction, that of licensor." *Id.* (Excluding as unreliable a portion of an expert opinion that was based on two completed transactions and statements made during the same time period).[12]

The Court is only persuaded that valuations of the patents conveyed in the acquisition are relevant based on the cases discussed above and numerous other cases that have found the value given for a patent relevant to determination of a reasonably royalty based on a hypothetical negotiation. *Endress Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd.*, 892 F. supp. 1123, 1133 (S.D. Ind. 1995) ("Where, as here, the current patent owner purchased the patent, the value of the consideration given in exchange for the patent may be relevant to the determination of a reasonable royalty because it may bear on the amount that might have been accepted by a prudent patentee who was engaging in a hypothetical licensing negotiation"); *Parthenon Unified Memory Architecture LLC v. Apple, Inc.*, 2016 WL 7670833, at *1-2 (E.D. Tex. Sept. 21, 2016) (Finding experts could, but were not required to consider a patent purchase agreement in calculating a reasonably royalty based on hypothetical negotiation).

The Court finds valuations of the '305 or patents sold with it and documents allocating the acquisition price among the patents are relevant. (RFPs 222, 226, and 227.) These valuations or allocations may indicate what portion of the acquisition price is attributable to the '305 and, based on the cases discussed above this may be relevant to the hypothetical negotiation. However, these RFPs are limited to documents assigning a

---

[12] This case and others cited in this section have determined that experts and juries have appropriately considered certain pieces of information in determining a reasonably royalty. The Court's reliance on these cases for purposes of determining what discovery is relevant is not a determination or indication what could reliably be considered by an expert or jury in this case. Rather, the Court considers them to address the broader question of relevancy. *See* Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable"). It is

value to a patent conveyed in the acquisition or indicating an allocation among them. This would include a communication or document that compares the value of the patents. Communications or documents that only relate to or regard valuations are overbroad and not proportional.

Similarly, RFP 223, seeking all documents provided to Fortress related to any of the patents-in-suit is overbroad and Finjan is not required to respond to it. Additionally, the Court is not persuaded that valuations of its claims in all its litigations (RFP 230) or against ESET (RFP 231) are relevant to the calculation of a reasonable royalty. The further the requests are removed from the actual values of the patents conveyed, the less relevant they are to the hypothetical negotiation, the basis argued for relevancy. Not only do the cases relied on not support it, there is also not sufficient explanation how they would be relevant to the case. Similarly, it is not clear how all communications between Finjan and any of its shareholders regarding the acquisition would be relevant. (RFP 229.) Other than arguing they are relevant to standing, addressed below, ESET only asserts they would be relevant to the value Finjan attributed to this litigation and Finjan's damages claims, but there is no explanation how this would be relevant and there are no cases cited in support on this point. Accordingly, Finjan is not required to respond to RFPs 229-231.

### (2)    RFPs Regarding ESET

ESET argues "documents regarding ESET shared between Fortress and Finjan, including whether to replace counsel after the ESET mistrial, may relate to any or all aspects of this action, and therefore are also relevant." (ECF 849 at 6.) This argument is associated with RFP 224. (ECF 849 at 6 n.7.) Given the reference to replacement of counsel, the Court presumes ESET also intends to cover RFP 225 because it relates to replacement of counsel.

RFP 224:
All Documents provided to Fortress Investment Group LLC prior to the acquisition of Finjan referring or relating to ESET.

RFP 225:
All Documents provided to Fortress Investment Group LLC prior to the acquisition of Finjan referring or relating to substituting Kramer Levin as counsel of record in any Finjan Litigation, including this litigation.

As noted above, Rule 26(b)(1) indicates that parties are entitled to "discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." ESET has not explained how documents provided to Fortress prior to the acquisition referring or related to ESET are relevant to a claim or defense. And, it certainly has not explained how documents relating to Finjan's choice of counsel in any litigation it is engaged in would be relevant to a claim or defense in this case. The Court understands that the documents might relate in some respect to this case because ESET is the defendant in this case, but that does not make the discovery sought relevant to a claim or defense or proportional to the needs of the case. Finjan is not required to produce documents responsive to these RFPs.

### (3)   Standing

ESET seems to argue that standing is an additional basis to establish the relevancy of the RFPs as a general matter; no specific RFPs are cited on this point.[13]   (ECF 849 at 3.)  ESET asserts in a footnote that "Finjan has provided ESET with no discovery regarding Finjan, LLC's standing to continue to assert the patents-in-suit as a result of any corporate restructuring." (ECF 849 at 2 n.1.)  Other than saying "Finjan bears the burden of proving its right to maintain suit," ESET fails to explain why Finjan would automatically be required to produce documents related to its standing. ESET seems to be arguing that Finjan is automatically required to produce discovery related to standing

---

[13] As discussed above, to the extent ESET is seeking to reopen discovery more broadly than the limited discovery allowed as to the '305, that request, made in a footnote is denied because it has not been properly raised with the Court.

as a result of its acquisition but cites no Federal Rule of Civil Procedure or case that stands for the proposition that standing is automatically an issue as the result of an acquisition. (*Id.*)  Additionally, Finjan indicates that its entity conversion documents are publicly available with the Delaware Secretary of State.  (*Id.* at 17.)  Without some basis to think that Finjan's standing is somehow at issue as a result of this acquisition, the only basis referenced by ESET, the Court is not going to order Finjan to respond to broad RFPs regarding almost every aspect of this acquisition.

### (4)   Remaining RFPs

There is little analysis by either party as to the relevancy of the remaining two RFPs.  ESET simply asserts they are relevant because invalidity, unenforceability, and prior art are relevant.  (ECF 849 at 6-7.)  Finjan does not specifically address them at all, only arguing as with all the other RFPs that they are not within the scope of authorized discovery, '305 discovery.  (*Id.* at 12-13, 16-18.)

> RFP 232:
> All Communications between Finjan, Inc. or Finjan Holdings, Inc. and Fortress Investment Group LLC regarding any potential invalidity or unenforceability of any of the Patents-in-Suit.

> RFP 233:
> All Communications between Finjan, Inc. or Finjan Holdings, Inc. and Fortress Investment Group LLC regarding any prior art to any of the Patents-in-Suit.

On their face, these RFPs seek discovery on relevant topics, but they are beyond the scope of discovery authorized by the Court, '305 discovery, in seeking discovery on these topics as to all the patents-in-suit.  Unlike the RFPs discussed above, here, there is no explanation or cases cited for the proposition that prior art, invalidity or enforceability of all the patents-in-suit is relevant to the '305.  However, while Finjan objects that these RFPs are beyond the scope of the '305, it does not otherwise explain why these topics would not be relevant if limited to the '305.  Even when narrowed to only '305, the Court

has concerns that these may be duplicative or cumulative of discovery already produced regarding these topics, but in the absence of any argument from Finjan, the Court will simply narrow them to the '305. *Gordon*, 2019 WL 2177656, at *4 ("Once the party seeking discovery establishes that a request seeks relevant information, the party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.") (citations omitted); *see also Global Ampersand, LLC*, 261 F.R.D. at 499.

### B.    Common Interest Protection

#### 1.    Parties' Positions

Finjan argues that documents responsive to these RFPs are protected by attorney client privilege, the work product doctrine, and the common interest protection.  (ECF 849 at 12, 15-16, 18-21.)  Finjan asserts that Finjan and Fortress entered into a non-disclosure agreement ("NDA") and common interest agreement ("CIA") as part of Fortress' due diligence process for its eventual acquisition of Finjan and that these agreements "contemplate the exchange of privileged and attorney work product information while ensuring confidentiality of that information." (*Id.* at 13.)

ESET argues Finjan has not met its obligation in establishing the privilege due to deficiencies in its privilege log (*id.* at 7, 10), any privilege that may have existed was waived by disclosure to Fortress during the course of the arms-length transaction (*id.* at 7-8), and the common interest protection does not apply because Finjan and Fortress do not and did not have a common legal interest (*id.* at 7-11).

#### 2.    Legal Standards

##### a)    Attorney-Client Privilege

Information is covered by the attorney-client privilege if it meets an eight-part test:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (citations omitted). The burden is on the party asserting the privilege to establish all elements of the privilege. *United States v Martin*, 378 F.3d 988, 999-1000 (9th Cir. 2002); *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997) (citation omitted); *see also Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981) ("As with all evidentiary privileges, the burden of proving that the attorney-client privilege applies rests not with the party contesting the privilege, but with the party asserting it."). The privilege is narrowly construed. *Trammel v. United States*, 445 U.S. 40, 50 (1980); *Martin*, 278 F.3d at 999 ("[b]ecause it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed.").

### b)    Waiver

As a general rule, "attorney-client communications made 'in the presence of, or shared with, third-parties destroys the confidentiality of the communications and the privilege protection that is dependent upon that confidentiality.'" *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007); *see In re Pac. Pictures Corp.*, 679 F.3d 1121, 1126-27 (9th Cir. 2012) ("[V]oluntarily disclosing privileged documents to third parties will generally destroy the privilege."); *Cohen v. Trump*, No. 13-CV-2519-GPC WVG, 2015 WL 3617124, at *13 (S.D. Cal. June 9, 2015) ("As a general rule, the attorney-client privilege is waived by voluntary disclosure of private communications to third parties."). Further, the voluntary disclosure of privileged attorney-client communications constitutes waiver of the privilege as to all other such communications dealing with the same subject matter. *United States v. Zolin*, 809 F.2d 1411, 1415 (9th Cir. 1987). Any disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship waives the privilege. *Id.*

### c)    Common Interest or Joint Defense Privilege

The "common interest" protection, is an exception to the rule that disclosure of an attorney-client communication to a third party destroys the confidentiality and thereby waives the privilege. *Nidec*, 249 F.R.D. at 578. The Ninth Circuit has recognized that the

purpose of this privilege is to allow persons with a common interest to "communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims." *United States v. Gonzalez*, 669 F.3d 974, 978 (9th Cir. 2012) (quoting *In re Grand Jury Subpoena*, 902 F.2d 244, 249 (4th Cir. 1990)).  However, this is not "a separate privilege." *Pac. Pictures*, 679 F.3d at 1129.  Instead, it is an extension of the attorney-client privilege, *Gonzalez*, 669 F.3d at 978, that saves an otherwise waived privileged communication only where the communication is shared with the third party to further a matter of common legal interest, and the privilege itself has not otherwise been waived by the party who made the communication.  *Nidec*, 249 F.R.D. at 578-80.  The common interest exception "applies where (1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *United States v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003).

Although an agreement need not necessarily be written, *Gonzalez*, 669 F.3d at 979, the asserting party must produce adequate proof of the existence of a common interest agreement, showing why the privilege is applicable. *Whitney v. Tallgrass Beef Co. LLC*, No. 13 C 7322, 2015 WL 3819373, at *4 (N.D. Ill. June 18, 2015). (Agreement "may be implied from conduct and situation, such as attorneys exchanging confidential communications from clients who are, or potentially may be, co-defendants or have common interest in litigation.")  There must be some evidence of an agreement to share information for the specific purpose of coordinating a common legal defense. *See United Food & Commercial Workers Local 1776 & Participating Employers Health & Welfare Fund v. Teikoku Pharma USA*, No. 14-MD-02521-WHO, 2016 WL 5906590, at *5 (N.D. Cal. Oct. 11, 2016) ("While Endo is correct that a joint defense agreement or other agreement sufficient to create a common interest need not be in writing, there still must be some evidence of an actual agreement between the parties."); *N. Am. Rescue Prod., Inc. v. Bound Tree Med., LLC*, No. 2:08-CV-101, 2010 WL 1873291, at *4 (S.D. Ohio May 10, 2010).  "[A] shared desire to see the same outcome in a legal matter is

1   insufficient to bring a communication between two parties within [the privilege]." *Pac.*
2   *Pictures*, 679, F.3d at 1129.

3   **3.    Analysis**

4       Based on the full scope of the RFPs discussed above, Finjan indicated in its
5   briefing that the documents that would be produced in response to these RFPs would
6   encompass advice from Finjan attorneys and attorney opinions regarding Finjan's active
7   litigations, projections for damages from patent litigation, projections from licensing, and
8   other attorney analysis.  (ECF 849 at 14.)  The responsive documents and
9   communications shared between them would also have included opinions from Finjan's
10  counsel regarding all these subjects for many defendants and potential licensees. (*Id.*)

11      Because the Court has narrowed the scope of these RFPs and found some need not
12  be responded to at all, the scope of documents and communications Finjan would be
13  producing has changed.  Although the Court could speculate that it might be reduced
14  significantly, that is not clear.

15      The Court is not inclined to determine whether communications and documents are
16  protected by attorney-client privilege, whether the privilege has been waived by
17  disclosure to Fortress, and whether the common interest protection exception applies
18  based on Finjan and Fortress' non-disclosure agreement NDA and CIA without knowing
19  what documents and communications are actually at issue.  The Court could be making
20  findings regarding whether documents are protected by attorney client privilege when
21  they are no longer even at issue.

22      Accordingly, the next step in the Court's analysis of this issue is to have Finjan
23  submit the documents and communications that are responsive to the narrowed RFPs
24  discussed above for *in camera* review along with the NDA and CIA.  The Court can then
25  assess whether they are protected by attorney-client privilege and if the privilege was
26  waived by disclosure to Fortress or if the common interest protection applies.

27  ///
28  ///

III.   **CONCLUSION**

Because the case is currently stayed as to the '305, the parties are not required to proceed regarding this Order now.  Rather, within seven days of the stay being lifted for purposes of proceeding with the case as to the '305, the parties shall provide the Court with a brief joint status report.  It must indicate a date by which the documents responsive to the narrowed RFPs and the NDA and CIA can be submitted for *in camera* review.  The status report must also indicate a date by which the parties will meet and confer regarding their other discovery disputes and update the Court on their status.  Because the parties have indicated that the Court's order on this dispute may impact the parties' positions regarding other discovery disputes, (ECF 849 at 4 n.5; ECF 858), the parties must briefly indicate whether this decision resolves those disputes or if the Court's decision on the common interest protection is needed before resolving those disputes.[14]

**IT IS SO ORDERED.**

Dated:  April 20, 2021

Hon. Bernard G. Skomal
United States Magistrate Judge

---

[14] Based on the information provided to the Court regarding these disputes, it would appear the Court's relevancy conclusion above would at least narrow these disputes.

17-cv-183-CAB-BGS