NICOLA A. PISANO, CA Bar No. 151282
    NicolaPisano@eversheds-sutherland.com
JOSE L. PATIÑO, CA Bar No. 149568
    JosePatino@eversheds-sutherland.com
JUSTIN E. GRAY, CA Bar No. 282452
    JustinGray@eversheds-sutherland.com
SCOTT A. PENNER, CA Bar No. 253716
    ScottPenner@eversheds-sutherland.com
**EVERSHEDS SUTHERLAND (US) LLP**
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA  92130
TELEPHONE:      858.252.6502
FACSIMILE:      858.252.6503

Attorneys for Defendants and Counter-Plaintiffs
ESET, LLC and ESET, SPOL. S.R.O.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN LLC,<br><br>   Plaintiff,<br><br>  v.<br><br>ESET, LLC, et al.,<br><br>   Defendants.<br><hr>AND RELATED COUNTERCLAIMS. | Case No. 3:17-cv-0183-CAB-BGS<br><br>**[PUBLIC REDACTED VERSION]**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ESET, LLC AND ESET, SPOL. S.R.O.'S MOTION TO EXCLUDE PLAINTIFF'S EXPERT DR. BIMS AND STRIKE EXPERT REPORT**<br><br>Judge: Hon. Cathy Ann Bencivengo<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

17cv0183

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ............................................................................... 1

II.   APPLICABLE LAW AND REQUIRED EXCLUSION OF DR. BIMS.............. 3

III.  ARGUMENT ...................................................................................... 4

   A.   Dr. Bims Relies Extensively on Matter Secured in Breach of the
        Protective Order, Including Source Code. ....................................... 4

   B.   Finjan's Counsel Has Engaged in a Pattern and Practice of Protective
        Order Violations, Including as to Source Code. ............................ 15

IV.   CONCLUSION................................................................................. 16

17cv0183

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Key Corp. v. Cole Nat'l Corp.*,
    762 F.2d 1569 (11th Cir. 1985) ................................................................. 14

*Brown v. Teledyne Cont'l Motors, Inc.*,
    No. 1:06-CV-00026, 2007 U.S. Dist. LEXIS 18179
    (N.D. Ohio Mar. 15, 2007) ..................................................................... 15

*Catch a Wave Techs., Inc. v. Sirius XM Radio, Inc.*,
    No. C 12-05791 WHA, 2013 U.S. Dist. LEXIS 189086
    (N.D. Cal. Aug. 5, 2013)................................................................. 15, 16

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)......................................................................... 1, 3, 15

*Deutz Corp. v. City Light & Power, Inc.*,
    No. 1:05-cv-3113-GET, 2008 U.S. Dist. LEXIS 110202
    (N.D. Ga. Mar. 21, 2008)................................................................... 14

*Drone Techs., Inc. v. Parrot S.A.*,
    838 F.3d 1283 (Fed. Cir. 2016) ........................................................... 15

*EEOC v. Bloomberg L.P.*,
    No. 07 Civ. 8383 (LAP), 2010 U.S. Dist. LEXIS 92511
    (S.D.N.Y. Aug. 31, 2010) ................................................................. 14

*Emerson Elec. Co. v. SIPCO, LLC*,
    No. 16-MC-80164-DMR, 2016 U.S. Dist. LEXIS 162088
    (N.D. Cal. Nov. 21, 2016)................................................................. 15

*Hewlett-Packard Co. v. EMC Corp.*,
    330 F. Supp. 2d 1087 (N.D. Cal. 2004)....................................................2

*In re Imperial Credit Indus. Sec. Litig.*,
    252 F. Supp. 2d 1005 (C.D. Cal. 2003) ...................................................3

*In re James Wilson Assocs.*,
    965 F.2d 160 (7th Cir. 1992) ...............................................................3

17cv0183

# TABLE OF AUTHORITIES
### *(Continued)*

**Page(s)**

**Cases (*Cont'd.*)**

*Kowalski v. Anova Food, LLC*,
No. 11-00795 HG-RLP, 2014 U.S. Dist. LEXIS 182947
(D. Haw. Dec. 31, 2014) ............................................................................ 3

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) .................................................................................... 3

*Mathews v. Traverse (In re Pappas)*,
No. 91-16905, 91-16906, 1994 U.S. App. LEXIS 8881
(9th Cir. Apr. 13, 1994) ......................................................................... 1, 2

*Monster Energy Co. v. Vital Pharms., Inc.*,
No. EDCV 18-1882 JGB (SHKx), 2022 U.S. Dist. LEXIS 214145
(C.D. Cal. Aug. 2, 2022) ............................................................................ 3

*Moses v. Payne*,
555 F.3d 742 (9th Cir. 2009) ..................................................................... 3

*Raytheon Co. v. Cray, Inc.*,
No. 2:16-MC-0898 DAK, 2017 U.S. Dist. LEXIS 13341
(D. Utah Jan. 30, 2017) ........................................................................... 15

*Rowe Ent., Inc. v. William Morris Agency, Inc.*,
No. 98 Civ 8272 (RPP), 2003 U.S. Dist. LEXIS 15976
(S.D.N.Y. Sept. 15, 2003) ........................................................................ 15

*Sega Enters. Ltd. v. Accolade, Inc.*,
977 F.2d 1510 (9th Cir. 1992) .................................................................... 1

*Via Vadis Controlling GmbH v. Skype, Inc.*,
No. 12-MC-193-RGA, 2013 U.S. Dist. LEXIS 23434
(D. Del. Feb. 21, 2013) .............................................................................. 2

# TABLE OF AUTHORITIES
### *(Continued)*

**Page(s)**

**Other Authorities**

Federal Rules of Evidence:

    Rule 403 ................................................................................................................ 1

    Rule 702 ..................................................................................................... 1, 3, 15

    Rule 703 ......................................................................................................... 3, 15

Federal Rule of Civil Procedure Rule 37(b) .......................................................... 1

## I.     __INTRODUCTION__

Pursuant to Federal Rules of Evidence 403 and 702, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and this Court's leave (Order, D.I. 900), ESET, LLC and ESET, spol. s.r.o. (collectively, "ESET") move to exclude the testimony of Dr. Harry Bims and to strike his expert report.  The expert report and testimony of Dr. Bims, Finjan's purported tutorial expert, is not the product of his independent review of ESET's technical materials.  Instead, as conceded by Dr. Bims at the Covid-shortened March 2020 trial, his expert report is a cut-and-paste of snippets of the opinions of Finjan's other expert witnesses, prepared by Finjan's counsel.  Importantly, his expert report embodies ESET confidential information governed by the Protective Order in this case (D.I. 146-4).  Dr. Bims never agreed to be bound by the Protective Order.  Dr. Bims's expert report is replete with ESET's non-public information and copies verbatim – typographical errors and all – from reports of Finjan's other experts, who cited and relied upon ESET's highly confidential material, including source code.  Given that Dr. Bims's purported opinions are both contaminated with ESET confidential information and not a product of his own review, it would be unduly prejudicial to ESET to permit Dr. Bims to testify at trial.  Dr. Bims cannot be permitted to endorse testimony of other Finjan experts, under the guise of a "tutorial," where his opinions parrot those of other Finjan experts and rely on a violation of the Protective Order by Finjan's counsel.

A protective order seeks "to prevent harm by limiting disclosure of relevant and necessary information."  *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1532 (9th Cir. 1992) (citation omitted).  Whether by design or inadvertence, Finjan's counsel transmitted ESET confidential information contained in the confidential expert reports of Finjan's other experts to Dr. Bims, notwithstanding that Dr. Bims never subscribed to the Protective Order.  "Rule 37(b) of the Federal Rules of Civil Procedure provides that the court in which an action is pending may prohibit a party from introducing designated evidence as a sanction for failure to comply with a discovery order."  *Mathews v. Traverse (In re Pappas)*, No. 91-16905, 91-16906, 1994 U.S. App. LEXIS 8881, at *4

(9th Cir. Apr. 13, 1994).  In doing so, Finjan violated the Protective Order, and for this reason alone, Dr. Bims and his report must be excluded.  And as demonstrated below, the opinions ascribed to Dr. Bims as set forth in his expert report are the product of Finjan's other experts.

Finjan's misconduct here is compounded by its repeated violations of the Protective Order.  Over the course of the litigation, multiple violations of the Protective Order by Finjan were brought to the attention of the Court, including a particularly flagrant violation of the source code provisions.[1]  As confirmed by the most recent order regarding source code misconduct, Finjan's attorneys "did an end run around subsection (a), paragraph 2, thereby violating this provision of the Protective Order."  Order Regarding Protective Order Violations (D.I. 457) at 9:11-12.  Even after receiving notice of the violation from ESET, Finjan's counsel failed to mitigate the harm to ESET; that violation was prolific and extensive.  *Id.* at 10:16-19; 10:25-11:4.

Given Finjan's documented pattern and practice of violating the Protective Order, the Court should intervene and prevent infection of the trial proceedings with further testimony based on protected matter to which Dr. Bims should have had no access. *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004) ("Federal courts have the inherent power to disqualify expert witnesses to protect the integrity of the adversary process, protect privileges that otherwise may be breached, and promote public confidence in the legal system.").  The Court's protection is especially important here given Finjan's multiple violations of the Protective Order, detailed more fully below, that risked exposure of ESET's source code and highly confidential material. *Via Vadis Controlling GmbH v. Skype, Inc.*, No. 12-MC-193-RGA, 2013 U.S. Dist. LEXIS 23434, at *7 (D. Del. Feb. 21, 2013) ("Source codes are the most sensitive and confidential property of Respondents" and "[w]hen disclosed in U.S. litigation, extreme

---

[1] In its original expert reports, Finjan electronically reproduced large swaths of ESET's Highly Confidential, Attorney's Eyes Only source code.  To rectify that situation, Magistrate Judge Skomal directed Finjan to prepare and serve new expert reports that omitted the copied source code and to confirm that it had destroyed prior electronic copies of those reports.  *See* D.I. 418, 419, and 420.

48720589.2

measures are ordered to protect their confidentiality.").

ESET's motion to exclude Dr. Bims and strike his report should be granted.

## II.   APPLICABLE LAW AND REQUIRED EXCLUSION OF DR. BIMS

The *Daubert* stage is well suited for ensuring protections of competitively sensitive matters under a Protective Order.  Expert testimony under Federal Rule of Evidence 702 is admissible only if the testimony "is helpful to the jury [and] if it concerns matters beyond the common knowledge of the average layperson and is not misleading."  *Moses v. Payne*, 555 F.3d 742, 756 (9th Cir. 2009).  Testimony based on protected matter the expert has no right to possess fails the gatekeeping requirement seeking to "ensure the reliability and relevancy of expert testimony" that "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  When an expert relies on data the expert has no right to possess, he fails to present the intellectual rigor this Court would expect from an expert with legitimate access under the rules of evidence to the subject matter of the testimony.  *See In re James Wilson Assocs.*, 965 F.2d 160, 173 (7th Cir. 1992) ("the judge must make sure that the expert isn't being used as a vehicle for circumventing the rules of evidence"); *cf. Kowalski v. Anova Food, LLC*, No. 11-00795 HG-RLP, 2014 U.S. Dist. LEXIS 182947, at *28 (D. Haw. Dec. 31, 2014) (motion to strike expert report as a Protective Order violation denied only because the disputed expert, unlike Dr. Bims, "signed an agreement to be bound by the Protective Order").

Moreover, the admitted availability of other Finjan experts who subscribed to the Protective Order to legitimately address the *same* matter is yet another reason for exclusion.  *See, e.g., Monster Energy Co. v. Vital Pharms., Inc.*, No. EDCV 18-1882 JGB (SHKx), 2022 U.S. Dist. LEXIS 214145, at *66 (C.D. Cal. Aug. 2, 2022) (granting motion to exclude because the expert's use of other expert opinions went "beyond background reliance" and was instead "parroting, which Rule 703 prohibits"); *In re Imperial Credit Indus. Sec. Litig.*, 252 F. Supp. 2d 1005, 1012 (C.D. Cal. 2003) ("The rules do not permit an expert to rely upon excerpts from opinions developed by another

48720589.2

expert for purposes of litigation.").

## III.   ARGUMENT

### A.   Dr. Bims Relies Extensively on Matter Secured in Breach of the Protective Order, Including Source Code.

Dr. Bims purports to offer expert opinions as part of a "Technology Tutorial." Yet he has no expertise in the technology in suit, performed no independent analysis, and purportedly relied exclusively on a handful of publicly available ESET marketing materials, many created post-patent expiration, that cannot support Dr. Bims's opinions. Instead, the Bims Report recycles as "technical background" the opinions of other Finjan experts, whose opinions were based upon confidential documents that Dr. Bims could not have accessed because he is not a signatory to the Protective Order.

Dr. Bims's purported opinions begin with a general technology discussion of malware detection concepts and how they interact within networked computing environments. *See* Declaration of Jose L. Patiño in Support of ESET's Motion to Exclude Plaintiff's Expert Dr. Bims and Strike Expert Report (the "Patiño Bims Decl.")[2], Ex. 1 (Dr. Bims Report) at ¶¶ 6-52. But the more than 40 paragraphs offered by Dr. Bims to "teach" the trier of fact about malware detection and anti-virus computing techniques do not cite to a single supporting reference. What Dr. Bims allegedly knows is based on his miniscule exposure to "high level," non-detailed, and publicly available marketing materials he reviewed from his role in other Finjan litigations. Dr. Bims did not conduct any investigation into the facts at issue in this case. While this case concerns a patent dispute, Dr. Bims cannot testify regarding either infringement or invalidity. Ex. 2 (Dr. Bims Trial Testimony, Mar. 11, 2020) at 263:6-17. Nor did he test any ESET product at issue. *Id.* at 264:12-23. What Dr. Bims knows about the ESET products is limited to the small number of publicly available materials set forth in his report. *Id.* Critically, Dr. Bims does not know when any of the ESET products featured in those documents were launched, nor when any of the functionality described therein became

---

[2] Unless otherwise noted, all exhibits refer to those attached to the Patiño Bims Decl.

48720589.2

available.  *Id.* at 265:22-267:8.  Dr. Bims did not research publicly available ESET materials, but instead restricted his consideration to the 14 ESET marketing documents hand-picked by Finjan's attorneys.  *Id.* at 264:18-23, 269:15-18.  Dr. Bims plainly could have accessed detailed ESET technical materials by signing the Protective Order, but he did not seek such access, and he did not sign the Acknowledgement and Agreement to be Bound under the Protective Order (D.I. 146-4, at Exhibit A).  Ex. 2 at 268:10-269:1.

Given Dr. Bims's lack of any legitimate access to any detailed information regarding the matters in suit or ESET's malware detection software – all covered by the Protective Order – the content of Dr. Bims's report proves misconduct.  Comparison of the text of Dr. Bims's Report to the reports of other Finjan experts, including Drs. Cole, Medvidović, and Mitzenmacher, confirms that multiple paragraphs substantially match – often with the same typographical errors.  While Dr. Bims purports to cite to his 14 identified publicly available documents, those documents do not describe the terms and concepts he ascribes to them; those come exclusively from ESET's confidential materials as cited in Finjan's other expert reports.  While Drs. Cole, Medvidović, and Mitzenmacher are signatories to the Protective Order and could properly gain access to confidential and detailed technical materials regarding ESET's products in suit, including source code, Dr. Bims was not.  Dr. Bims thus was barred from reviewing and/or adopting analyses predicated on ESET materials protected by the Protective Order.  Indeed, Dr. Bims repeatedly conceded those similarities at trial.  Ex. 2, at 269:19-272:3, 276:3-281:15.  Because Dr. Bims confirmed under oath that he did not review the reports of Finjan's other experts in this case, the breach of the Protective Order lies squarely with Finjan's counsel that Dr. Bims testified were co-authors of his report.  *Id.* at 264:18-265:10, 269:2-18, 281:7-15.

The number of violations is extensive.  At least 19 paragraphs of Dr. Bims's report substantially copy opinions set forth in other Finjan expert reports.  A particularly clear example is found in a comparison of paragraph 149 of Dr. Cole's report to paragraph 57 of Dr. Bims's report.  *Compare* Ex. 3 at ¶ 149, *with* Ex. 1 at ¶ 57.  Those two paragraphs

17cv0183

are reproduced below, side by side, without citations, and with some additional spaces so that the line breaks coincide.  Red highlighting is added to show the differences:

| Cole Report, Paragraph 149 | Bims Report, Paragraph 57 |
|---|---|
| A sandbox is a simulated environment where a computer can detonate an executable file and analyze its behavior. When a file is detonated it generates behavioral flags that represent behaviors that the file is exhibiting and a Downloadable security profile is a [sic] generated that includes a list of suspicious operations that may be attempted by the Downloadable. | A sandbox is a simulated environment where a computer can execute an executable file and analyze its behavior. When a file is executed, it generates behavioral flags that represent behaviors that the file is exhibiting and a file behavior report is a [sic] generated that includes a list of suspicious operations that may be attempted by the file. |

Astonishingly, both paragraphs even include the same typographical error, a point Dr. Bims conceded at trial.  Ex. 2 at 276:1-14.

This foregoing is not an isolated instance.  Importantly, many of the technical details set forth in the paragraphs of Dr. Bims's expert report, which describe operation of ESET's software, ***are not available in ESET's public-facing materials***, the only materials to which Dr. Bims testified he had access.  Instead, those technical details were obtained by Finjan's other experts' reviews of ESET's highly confidential source code materials.

Set forth below is a comparison of paragraph 145 of Dr. Cole's report to Dr. Bims's paragraph 55.  *Compare* Ex. 3 at ¶ 145, *with* Ex. 1 at ¶ 55:

| Cole Report, Paragraph 145 | Bims Report, Paragraph 55 |
|---|---|
| File samples are sent from Eset Gateway Products with metadata, including, for example, the file name, file size, hash, and a virus name if a virus was detected by the endpoint. This data is used to help analyze the file sample by providing, for example, parameters for configuring a sandboxing in the cloud-based sandboxing cluster. | File samples are sent from Eset Gateway Products with metadata, including, for example, the file name, file size, hash, and a virus name if a virus was detected by the endpoint. This data is used to help analyze the file sample by providing, for example, parameters for configuring a sandboxing in the cloud-based sandboxing cluster. |

48720589.2

Also (*compare* Ex. 3 at ¶ 147, *with* Ex. 1 at ¶ 56):

| Cole Report, Paragraph 147 | Bims Report, Paragraph 56 |
|---|---|
| These files samples are then stored in a messaging queue called Kafka, where they are accessible to malware processing tools within CMPS, such as the Malware Analyzers (sandboxes) and the ThreatSense Engine. CMPS receives files through the LiveGrid Feedback System and detonates them in Malware Analyzers (sandboxes). | These files samples are then stored where they are accessible to malware processing tools within CMPS, such as the Malware Analyzers (sandboxes) and the ThreatSense Engine. CMPS receives files through the LiveGrid Feedback System and executes them in Malware Analyzers (sandboxes). |

Also (*compare* Ex. 3 at ¶ 150, *with* Ex. 1 at ¶ 58):



Also (*compare* Ex. 3 at ¶ 391, *with* Ex. 1 at ¶ 59):



48720589.2

Also (*compare* Ex. 3 at ¶ 151, *with* Ex. 1 at ¶ 60):

| Cole Report, Paragraph 151 | Bims Report, Paragraph 60 |
|---|---|
| The LiveGrid Reputation system is another technology of the Eset Cloud Products.  LiveGrid Reputation System is a service that provides the Endpoint Products, Server Products, and Gateway Products with file reputations, threat reports, and blacklists generated by CMPS . . . .<br>LiveGrid, through the LiveGrid Reputation System, will send | The LiveGrid Reputation system is another technology included in Eset Cloud Products. LiveGrid Reputation System is a service that provides the Endpoint Products, Server Products, and Gateway Products with file reputations, threat reports, and blacklists generated by CMPS.<br>LiveGrid, through the LiveGrid Reputation System, will send information including |

Also (*compare* Ex. 3 at ¶ 138, *with* Ex. 1 at ¶ 61):

| Cole Report, Paragraph 138 | Bims Report, Paragraph 61 |
|---|---|
| Eset Gateway Products use ThreatSense and CMPS technologies that provide support services for Eset's Cloud Products and Endpoint Products. Eset Gateway Products consist of ESET Small Business Security Pack products, ESET Mail Security for Linux/BSD, ESET Mail Security for Kerio, ESET Gateway Security for Linux/BSD, and ESET Gateway Security for Kerio and ESET Security for Virtual Environment, and Eset Virtualization Security (per Host, per Processor and per VM) (collectively "ESET Gateway Products"). | Eset Gateway Products use various technologies that provide support services for Eset's Cloud Products and Endpoint Products. Eset Gateway Products consist of ESET Small Business Security Pack products, ESET Mail Security for Linux/BSD, ESET Security for Kerio, ESET Gateway Security for Linux/BSD, and ESET Gateway Security for Kerio and ESET Security for Virtual Environment<br><br>(collectively "ESET Gateway Products"). |

17cv0183

Also (*compare* Ex. 3 at ¶ 139, *with* Ex. 1 at ¶ 62):

| Cole Report, Paragraph 139 | Bims Report, Paragraph 62 |
|---|---|
| The ESET Gateway Products interacts [sic] with and/or supplements [sic] Eset's Cloud Products, including LiveGrid Feedback System, LiveGrid Cloud, ThreatSense.Net, and CMPS.  For example, Eset Gateway Products send sample files to LiveGrid for further analysis using the LiveGrid Feedback System. | The ESET Gateway Products interact with and/or supplement Eset's Cloud Products, including LiveGrid Feedback System, LiveGrid Cloud, ThreatSense.Net, and CMPS. For example, Eset Gateway Products send sample files to LiveGrid for further analysis using the LiveGrid Feedback System. |

Also (*compare* Ex. 3 at ¶ 140, *with* Ex. 1 at ¶ 63):

| Cole Report, Paragraph 140 | Bims Report, Paragraph 63 |
|---|---|
| All the ESET Gateway Products also integrate with each other and form a core set of malware detection components, which operate in the same manner in each product, including the ThreatSense scanning engine (aka ██████████████████████) | All the ESET Gateway Products integrate with each other and form a core set of malware detection components, which operate in the same manner in each product, including the ThreatSense scanning engine (aka ESET scanning engine). |
| ThreatSense provides ESET Gateway Products access to DNA Scanning, Heuristics, Passive Heuristics, Generic Signatures, Active Heuristics, emulation, code analysis, code emulation and Advanced Heuristic. | ThreatSense provides ESET Gateway Products access to DNA Scanning, Heuristics, Passive Heuristics, Generic Signatures, Active Heuristics, emulation, code analysis, code emulation and Advanced Heuristic. |

Also (*compare* Ex. 3 at ¶ 167, *with* Ex. 1 at ¶ 64):

| Cole Report, Paragraph 167 | Bims Report, Paragraph 64 |
|---|---|
| Eset Gateway Products infringe because they receive and scan web traffic, such as web content or emails, using a cloud linked scanner to generate a DSP that identifies suspicious code in a | Eset Gateway Products receive and scan web traffic, such as web content or emails, using a cloud linked scanner to generate a file behavior report that identifies suspicious code in a |

9                                                    17cv0183

| received Downloadable. The cloud linked scanner used by Gateway Products is Eset's ThreatSense Engine. | received file. The cloud-linked scanner used by Gateway Products is Eset's ThreatSense Engine. |
| --- | --- |

Also (*compare* Ex. 3 at ¶ 151, *with* Ex. 1 at ¶ 60):

| Cole Report, Paragraphs 168 & 171 | Bims Report, Paragraph 65 |
| --- | --- |
| Eset's ThreatSense Engine operates in conjunction with the cloud to scan received Downloadables and generate a DSP using its ScriptAlg, Line Script and AdvHeur technologies. Each of these engine technologies generates a DSP that identifies suspicious code in the received Downloadable. | Eset's ThreatSense Engine operates in conjunction with the cloud to scan received files and generate a file behavior report that identifies suspicious code in the received file. |
| Gateway Products link these Downloadables to the DSP by associating them using a hash for the Downloadable or a URL for the Downloadable. | Gateway Products link these files to the file behavior report by associating them using a hash for the file or a URL for the file. |

And more, but as to Dr. Medvidović (*compare* Ex. 4 at ¶ 26, *with* Ex. 1 at ¶ 66):

| Medvidović Report, Paragraph 26 | Bims Report, Paragraph 66 |
| --- | --- |
| Eset Endpoint Products include all Eset products that operate on Windows, Eset Multi-Device Security, Eset NOD32 Antivirus, Eset Smart Security, Eset Internet Security, Eset Smart Security Premium, Eset Multi-Device Home Office, Eset Small Office Security Pack, Eset Small Business Security Pack, Eset Endpoint Antivirus for Windows, Eset Endpoint Security for Windows, Eset Cyber Security, Eset Cyber Security Pro, Eset Multi-Device Security, Eset Multi-Device Home Office, and Eset Security for Virtual Environment (collectively, "Eset Endpoint Products") . . . . | Eset Endpoint Products include all Eset products that operate on Windows, Eset Multi-Device Security, Eset NOD32 Antivirus, Eset Smart Security, Eset Internet Security, Eset Smart Security Premium, Eset Multi-Device Home Office, Eset Small Office Security Pack, Eset Small Business Security Pack, Eset Endpoint Antivirus for Windows, Eset Endpoint Security for Windows, Eset Cyber Security, Eset Cyber Security Pro, Eset Multi-Device Security, Eset Multi-Device Home Office, and Eset Security for Virtual Environment (collectively, "Eset Endpoint Products"). |

48720589.2

Also (*compare* Ex. 4 at ¶ 117, *with* Ex. 1 at ¶ 67):

| Medvidović Report, Paragraph 117 | Bims Report, Paragraph 67 |
|---|---|
| Eset Endpoint Products are multiplatform products that detect, remove, and prevent adware, spyware, Trajan horses, worms, rootkits, key loggers, and potentially dangerous applications.  Eset Endpoint Products integrate with other core Eset products such as the Eset LiveGrid Cloud Products, and the Eset Gateway Products. | Eset Endpoint Products are multiplatform products that detect, remove, and prevent adware, spyware, Trojan horses, worms, rootkits, key loggers, and potentially dangerous applications. Eset Endpoint Products integrate with other core Eset products such as the Eset LiveGrid Cloud Products, and the Eset Gateway Products. |

Also (*compare* Ex. 4 at ¶ 141, *with* Ex. 1 at ¶ 68):

| Medvidović Report, Paragraph 141 | Bims Report, Paragraph 68 |
|---|---|
| The Endpoint Products receive downloadables (e.g., PDFs with JavaScript, executable files, etc.) over ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Subsequently, when the downloadable is received, opened, or when the user initiates a scan, an Eset scanner such as the on-demand disc scanner, the Advanced Memory Scanner, or the Host Intrusion Prevention System (HIPS) will inspect the downloadable for malicious activity. Each of these technologies detects events that indicate the source of the event is potentially malicious and causes the ThreatSense Engine to analyze the executable code that is causing the potentially malicious activity. | The Endpoint Products receive files (e.g., PDFs with JavaScript, executable files, etc.) over the internet. Subsequently, when the file is received, opened, or when the user initiates a scan, an Eset scanner such as the on-demand disc scanner, the Advanced Memory Scanner, or the Host-based Intrusion Prevention System (HIPS) will inspect the file for malicious activity.  Each of these technologies detects events that indicate the source of the event is potentially malicious and causes the ThreatSense Engine to analyze the executable code that is causing the potentially malicious activity. |

Also (*compare* Ex. 4 at ¶ 119, *with* Ex. 1 at ¶ 69):

| Medvidović Report, Paragraph 119 | Bims Report, Paragraph 69 |
|---|---|
| HIPS is an event monitoring technology that uses predefined rules to actively monitor the behavior (e.g., operations | HIPS is an event monitoring technology that uses predefined rules to actively monitor the behavior (e.g., operations |

performed by) of executable files running on an operating system.  HIPS looks for filesystem events, registry events, process/thread events, and firewall events.  These rules cause operations such as open process, file open, accessing a registry, and the like to be recorded and a downloadable security profile is generated.

performed by) [sic] executable files running on an operating system.  HIPS looks for file system events, registry events, process/thread events, and firewall events.  These rules cause operations such as open process, file open, accessing a registry, and the like to be recorded and a file behavior report to be generated.

Also (*compare* Ex. 4 at ¶ 122, *with* Ex. 1 at ¶ 72) which are identical:

| Medvidović Report, Paragraph 122 | Bims Report, Paragraph 72 |
| --- | --- |
| Eset Windows and Domino Server Products include all Eset products that operate on Windows, including Eset Mail Security for Microsoft Exchange Server, Eset File Security for Microsoft Windows Server, ESET Security for Microsoft SharePoint Server, Eset Security for Virtual  Environment and Eset Mail Security for IBM Domino (collectively "Eset Windows and Domino Server Products"). | Eset Windows and Domino Server Products include all Eset products that operate on Windows, including Eset Mail Security for Microsoft Exchange Server, Eset File Security for Microsoft Windows Server, ESET Security for Microsoft SharePoint Server, Eset Security for Virtual Environment and Eset Mail Security for IBM Domino (collectively "Eset Windows and Domino Server Products"). |

Also (*compare* Ex. 4 at ¶ 123, *with* Ex. 1 at ¶ 73):

| Medvidović Report, Paragraph 123 | Bims Report, Paragraph 73 |
| --- | --- |
| Eset Server Products function similarly to the Eset Endpoint Products in that they both use the same ThreatSense Engine and HIPS scanner.  Eset Servers receive executable code over the internet, and store the executable code so it can be scanned by the ThreatSense Engine or the HIPS module.  In addition to performing malware analysis on the Eset Server Products, Eset Server Products interact with, and send Downloadables to, LiveGrid for further analysis. Eset Server Products send file samples up to the LiveGrid for further | Eset Server Products function similarly to the Eset Endpoint Products in that they both use the same ThreatSense Engine or HIPS scanner.  Eset Servers receive executable code over the internet, and store the executable code so it can be scanned by the ThreatSense Engine or the HIPS module.  In addition to performing malware analysis on the Eset Server Products, Eset Server Products interact with, and send files to LiveGrid for further |

17cv0183

| analysis using the LiveGrid Feedback System. | analysis using the LiveGrid Feedback System. |

Shifting to Dr. Mitzenmacher, there is much more (*compare* Ex. 5 at ¶ 142, *with* Ex. 1 at ¶ 70):

| Mitzenmacher Report, Para. 142 | Bims Report, Paragraph 70 |
|---|---|
| The Endpoint Products perform malware analysis on the received downloadables using the Eset ThreatSense Engine ("ThreatSense"), which performs both code analysis (passive heuristics) and emulation (active heuristics), as well as generic and traditional signature matching to generate a downloadable security profile that includes a list of suspicious operations that may be attempted by the Downloadable. | The Endpoint Products perform malware analysis on the received files using the Eset ThreatSense Engine ("ThreatSense"), which performs code analysis (passive heuristics) and emulation (active heuristics), as well as generic and traditional signature matching to generate a file behavior report that includes suspicious operations. |

One particularly egregious example of ESET's highly confidential material being transmitted to Dr. Bims is shown in paragraph 71 of the Bims Report. Dr. Bims states that the "█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████" Ex. 1 at ¶ 71. Information on *how* ESET generates DNA (i.e. through the ███████████████████████) is proprietary confidential information. And as this Court can see by reviewing FINJAN-ESET 675889 that Bims purports to rely on (Ex. 6), ████████████ never appears anywhere in the document, and there is no description of ██████████████████████████. *See* Ex. 6. In fact, the section relating to ESET's DNA Detections is intentionally obscure to prevent malware authors from learning how ESET's DNA Detections work. *Id.* at FINJAN-ESET 675890. None of the other documents produced in this action that Dr. Bims purports to rely on discuss ████████████████████████. Finjan's counsel transmitted to Dr. Bims this analysis

48720589.2

of highly sensitive, source code information from the report of Dr. Mitzenmacher – who had extended, multi-day access to ESET's source code (*compare* Ex. 5 at ¶ 143, *with* Ex. 1 at ¶ 71):



Dr. Bims cannot be permitted to testify and pollute the trial with information that he was never allowed to see, and for which he has no foundation to testify. *See Am. Key Corp. v. Cole Nat'l Corp.*, 762 F.2d 1569, 1580 (11th Cir. 1985) ("Expert opinions ordinarily cannot be based upon the opinions of others whether those opinions are in evidence or not."); *EEOC v. Bloomberg L.P.*, No. 07 Civ 8383 (LAP), 2010 U.S. Dist. LEXIS 92511, at *45-46 (S.D.N.Y. Aug. 31, 2010) (putative expert "only analyzed material provided and selected by [plaintiff's counsel], … made no effort to ensure the materials he reviewed were representative, … and relied solely on the information fed to him by the [plaintiff's counsel] without independently verifying whether the information is representative, undermines the reliability of his analysis"); *Deutz Corp. v. City Light &*

17cv0183

*Power, Inc.*, No. 1:05-cv-3113-GET, 2008 U.S. Dist. LEXIS 110202, at *16-18 (N.D. Ga. Mar. 21, 2008) (excluding expert as unreliable because Rule 703 "does not permit an expert to simply parrot the opinions of other experts"); *Brown v. Teledyne Cont'l Motors, Inc.*, No. 1:06-CV-00026, 2007 U.S. Dist. LEXIS 18179, at *8 (N.D. Ohio Mar. 15, 2007) (under Rule 702, an expert "must himself be qualified to render any opinions he would testify to in court, or he would simply be parroting the opinions of others"); *Rowe Ent., Inc. v. William Morris Agency, Inc.*, No. 98 Civ 8272 (RPP), 2003 U.S. Dist. LEXIS 15976, at *8 (S.D.N.Y. Sept. 15, 2003) (insufficient facts and data under *Daubert* where expert relied on data selected by plaintiff's counsel, which "would, perforce, be biased"); *accord Raytheon Co. v. Cray, Inc.*, No. 2:16-MC-0898 DAK, 2017 U.S. Dist. LEXIS 13341, at *5 (D. Utah Jan. 30, 2017) ("[S]ource code is often 'a company's crown jewel, the shining star in the constellation of a computer program's intellectual property rights.'"); *Emerson Elec. Co. v. SIPCO, LLC*, No. 16-MC-80164-DMR, 2016 U.S. Dist. LEXIS 162088, at *13-14 (N.D. Cal. Nov. 21, 2016) (granting a motion to subject an expert to a patent prosecution bar due to the highly sensitive nature of the source code at issue and the risk of inadvertent disclosure); *Catch a Wave Techs., Inc. v. Sirius XM Radio, Inc.*, No. C 12-05791 WHA, 2013 U.S. Dist. LEXIS 189086, at *2 (N.D. Cal. Aug. 5, 2013) ("In modern litigation, the disclosure of confidential, 'crown jewel' technology to opposing counsel is a burden to which parties must submit. It is not, however, without consequences.").

**B.     Finjan's Counsel Has Engaged in a Pattern and Practice of Protective Order Violations, Including as to Source Code.**

Dr. Bims's exclusion is warranted here given Finjan's repeated violations of the Protective Order.  Over the course of the litigation, multiple violations of the Protective Order by Finjan were brought to the attention of the Court.  The most significant of these violations involves the most important protections afforded technology companies in litigation, the source code provisions of the Protective Order.  *See, e.g., Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283, 1300 n.13 (Fed. Cir. 2016) ("[I]t is well recognized

48720589.2

among lower courts that source code requires additional protections to prevent improper disclosure because it is often a company's most sensitive and most valuable property.")  As noted above, Finjan electronically reproduced ESET source code in Finjan's expert reports and retained electronic copies of those reports on Finjan's counsel's file storage system, where they could have readily been hacked.  In addition, another particularly obscene violation by Finjan's counsel was brought to the Court's attention regarding improper note taking and other misconduct with respect to ESET's source code, in which Finjan's counsel created a mapping of the modules of ESET's source code and how those modules interacted with each other.  *See* Order (D.I. 457) at 9:11-12.  That mapping, had it become publicly available, could have provided malware authors a detailed roadmap on how to defeat or disable ESET's software.  The Court found in that incident, though it declined any sanction, that Finjan's attorneys "copying contents of the source code computer, particularly on such a large scale, to a recordable media device was a violation of § 9(c)" of the Protective Order.  *Id.* at 12:9-10.  It is time to enforce the Protective Order in this case.

## IV.   **CONCLUSION**

For the foregoing reasons, ESET's motion should be granted, and Dr. Bims's testimony and his expert report excluded.

17cv0183

48720589.2

Dated:  April 7, 2023

Respectfully submitted,

**EVERSHEDS SUTHERLAND (US) LLP**

_/s/ Jose L. Patiño_

NICOLA A. PISANO, CA Bar No. 151282
   NicolaPisano@eversheds-sutherland.com
JOSE L. PATIÑO, CA Bar No. 149568
   JosePatino@eversheds-sutherland.com
JUSTIN E. GRAY, CA Bar No. 282452
   JustinGray@eversheds-sutherland.com
SCOTT A. PENNER, CA Bar No. 253716
   ScottPenner@eversheds-sutherland.com
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA  92130
TELEPHONE:    858.252.6502
FACSIMILE:    858.252.6503

Attorneys for Defendants and Counter-Plaintiffs
ESET, LLC and ESET, SPOL. S.R.O.

17cv0183