NICOLA A. PISANO, CA Bar No. 151282
    NicolaPisano@eversheds-sutherland.com
JOSE L. PATIÑO, CA Bar No. 149568
    JosePatino@eversheds-sutherland.com
JUSTIN E. GRAY, CA Bar No. 282452
    JustinGray@eversheds-sutherland.com
SCOTT A. PENNER, CA Bar No. 253716
    ScottPenner@eversheds-sutherland.com
**EVERSHEDS SUTHERLAND (US) LLP**
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA  92130
TELEPHONE:      858.252.6502
FACSIMILE:      858.252.6503

Attorneys for Defendants and Counter-Plaintiffs
ESET, LLC and ESET, SPOL. S.R.O.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN LLC,<br><br>             Plaintiff,<br><br>      v.<br><br>ESET, LLC, et al.,<br><br>             Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No. 3:17-cv-0183-CAB-BGS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ESET, LLC AND ESET SPOL. S.R.O.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF THE '305 PATENT BASED ON COLLATERAL ESTOPPEL**<br><br>Judge:      Hon. Cathy Ann Bencivengo<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

17cv0183

48722727.4

# **TABLE OF CONTENTS**

Page

I.   INTRODUCTION ................................................................................. 1

II.  STATEMENT OF THE FACTS ........................................................... 2

III. ARGUMENT ....................................................................................... 6

    A.   Legal Standard for Application of Collateral Estoppel ............................ 6

    B.   Elements 1 and 2 of the Ninth Circuit Test ........................................ 7

    C.   Element 3 of the Ninth Circuit Test: Identicality of Issues ....................... 7

        1.   Finjan cannot redefine the inventions of claims 1, 13, and 25 ................................................................................... 8

        2.   The asserted dependent claims of the '305 patent add trivial limitations .......................................................... 12

    D.   Public Policy Requires Application of Collateral Estoppel Here ............. 15

IV.  CONCLUSION ................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allergan, Inc. v. Sandoz, Inc.*,
   681 Fed. Appx. 955 (Fed. Cir. 2017) .................................................. 8

*Aspex Eyewear, Inc. v. Zenni Optical LLC*,
   713 F.3d 1377 (Fed. Cir. 2013) ...................................................... 8

*Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*,
   482 F.3d 1347 (Fed. Cir. 2007) ...................................................... 9

*Chrimar Sys. Inc. v. Ruckus Wireless, Inc.*,
   No. 16-cv-00186-SI, 2020 U.S. Dist. LEXIS 136656 (N.D. Cal. July 31, 2020) ... 6, 8

*Eli Lilly & Co. v. Aradigm Corp.*,
   376 F.3d 1352 (Fed. Cir. 2004) ...................................................... 9

*Finalrod IP, LLC v. John Crane, Inc.*,
   No. 7:15-CV-00097-ADA, 2019 U.S. Dist. LEXIS 149649
   (W.D. Tex. May 30, 2019) ............................................................ 9

*Google LLC v Hammond Dev. Int'l, Inc.*,
   54 F.4th 1377 (Fed. Cir. 2022) ................................................. 1, 7, 9

*Int'l Gamco, Inc. v. Multimedia Games, Inc.*,
   732 F. Supp. 2d 1082 (S.D. Cal. 2010) ............................................. 6

*Luben Indus., Inc. v. United States*,
   707 F.2d 1037 (9th Cir. 1983) ...................................................... 15

*MaxLinear, Inc. v. CF CRESPE LLC*,
   880 F.3d 1373, 1376 (Fed. Cir. 2018) ............................................ 7, 8

*Montana v. United States*,
   440 U.S. 147 (2008) ................................................................ 15

*Nuance Commc'ns, Inc. v. ABBYY USA Software House, Inc.*,
   813 F.3d 1368 (Fed. Cir. 2016) ..................................................... 11

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008) ..................................................... 11

# TABLE OF AUTHORITIES
### (*Continued*)

**Page(s)**

**Cases (*Cont'd*)**

*Ohio Willow Wood Co. v. Alps S., LLC,*
   735 F.3d 1333 (Fed. Cir. 2013) ........................................................ 8

*Phil-Insul Corp. v. Airlite Plastics Co.,*
   854 F.3d 1344 (Fed. Cir. 2017) ........................................................ 6

*Roche Palo Alto LLC v. Apotex, Inc.,*
   526 F. Supp. 2d 985 (N.D. Cal. 2007), *aff'd,* 531 F.3d 1372 (Fed. Cir. 2008) ........... 7

*Soverain Software LLC v. Newegg Inc.,*
   705 F.3d 1333 (Fed. Cir. 2013) .................................................... 8, 12

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC,*
   778 F.3d 1311 (Fed. Cir. 2015) ................................................ 8, 12, 13

*Trevino v. Gates,*
   99 F.3d 911 (9th Cir. 1996) ............................................................ 6

*XY, LLC v. Trans Ova Genetics, L.C.,*
   890 F.3d 1282 (Fed. Cir. 2018) ........................................................ 7

*In re Yamamoto,*
   740 F.2d 1569 (Fed. Cir. 1984) ...................................................... 16

**Statutes**

35 U.S.C. § 251 ...................................................................... 16

35 U.S.C. § 282(b)(2) ................................................................ 6

## I.  __INTRODUCTION__

Pursuant to this Court's Order (D.I. 908), ESET, LLC and ESET, spol. s.r.o. ("ESET") move for summary judgment of invalidity of U.S. Patent No. 7,975,305 ("the '305 patent") based on collateral estoppel.  The asserted claims of the '305 patent are invalid as indistinguishable from claims the Federal Circuit affirmed as unpatentable following a reexamination conducted by the U.S. Patent and Trademark Office ("USPTO").  Recent Federal Circuit jurisprudence, as set forth in *Google LLC v Hammond Dev. Int'l, Inc.*, 54 F.4th 1377 (Fed. Cir. 2022), demonstrates that courts can and should apply collateral estoppel principles to other claims and later patents that seek to "re-patent" inventions already adjudged to be unpatentable.  This motion seeks to streamline the case and preserve the Court's, parties', and jury's time and energy.

The '305 patent was the subject of two *ex parte* reexamination requests.  In a first reexamination ("first reexam"), filed December 11, 2015, claims 1, 2, 5, and 13 were rejected over prior art, which rejections were affirmed by the USPTO's Patent Trial and Appeal Board and the Federal Circuit.  In a second reexamination ("second reexam"), filed March 19, 2020, claims 6, 9, 11, 12, 17, and 25 of the '305 patent were challenged as invalid over essentially the same prior art as in the first reexam.  Initially, in an Office Action dated October 13, 2020, the Examiner rejected all challenged claims.  However, because the '305 patent had expired, Finjan argued that the claims should be construed more narrowly than in the first reexam, and the Examiner withdrew the rejections.

It is beyond dispute that the challenged claims of the '305 patent were ***invalid at the time the second reexam was filed*** (i.e., prior to expiration of the '305 patent).  It is also beyond dispute that Finjan waived its right for this Court to construe the claim terms of the '305 patent in the same manner that Finjan argued they should be construed during the second reexam.  Because the claims asserted by Finjan in this litigation are directed to identical subject matter invalidated during the first reexam, or subject matter that Finjan itself conceded did not patentably distinguish over the prior art, Finjan is collaterally estopped from asserting those claims of the '305 patent in this litigation.

## II.   STATEMENT OF THE FACTS

In this litigation, Finjan's Third Amended Infringement Contentions, dated April 27, 2018, asserted claims 1, 2, 3, 4, 6, 7, 11, 21, 23, and 25 of the '305 patent. *See*, Exhibit 1 to the accompanying Declaration of Nicola A. Pisano ("Pisano Decl."). On May 7, 2018, this Court granted ESET's motion to stay with respect to the '305 patent. D.I. 251. On July 2, 2018, while the '305 patent was stayed as part of the instant litigation, the USPTO's Patent Trial and Appeal Board ("PTAB") affirmed an Office Action, issued in the first reexam, rejecting all claims challenged in the first reexam (i.e. claims 1, 2, 5, and 13) of the '305 patent as obvious either over U.S. Patent No. 8,140,660 to Wells ("Wells") alone or over Wells in combination with U.S. Patent Publication No. 2005/0172338 to Sandu ("Sandu").[1]  Pisano Decl., Ex. 2. Finjan appealed the PTAB decision to the Federal Circuit, which affirmed the rejection on September 6, 2019. Pisano Decl., Ex. 3.

On March 19, 2020, prior to the expiration of the '305 patent and while the '305 patent remained stayed in the instant case, the Duane Morris law firm filed the second reexam request, Request Ser. No. 90/014,477, for an undisclosed requester (not ESET). Pisano Decl., Ex. 5. The second reexam addressed invalidity of claims 6, 9, 11, 12, 17, and 25 over the same combination of Sandu and Wells as in the first reexam. *Id.* In an Office Action dated October 13, 2020, the Examiner rejected all of the challenged claims as anticipated by, or obvious over, Sandu in view of Wells, and further in view of Freund, U.S. Patent No. 5,987,611. Pisano Decl., Ex. 6. Finjan filed a response on December 14, 2020, arguing that because the '305 patent expired on August 18, 2020, the Examiner needed to reconsider the prior art through the lens of a narrower *Philips*-type litigation claim interpretation for each of the terms "database," "parser rules," "analyzer rules," and "rules-based content scanner." Pisano Decl., Ex. 7 at 3-5, 8.

---

[1] The first reexam considered patentability of claims 1, 2, 5, and 13; the Patent Office did not analyze patentability of claims 3, 4, 6, 7, 11, 21, 23, and 25, asserted here. Pisano Decl., Ex. 4.

Specifically, Finjan argued in the second reexam that the Patent Office's prior construction of "parser rules" as "patterns of tokens that form syntactical constructs of program code" was incorrect, and instead should be construed as "patterns of tokens that form syntactical constructs of program code *that identify groups of tokens as a single pattern*." *Id.* at 9. Likewise, Finjan argued that rather than construing "analyzer rules" as "patterns of tokens that correspond to potential exploits" as defined in the '305 patent at 2:24-25, the phrase should be narrowly interpreted as "*patterns of tokens that form syntactical constructs of program code previously identified as being potential computer exploits*." *Id.* at 14. Finally, Finjan argued that the phrase "rules-based content scanner" must be construed as "a scanner that is able to adapt itself dynamically to scan a specific type of content." *Id.* at 15. The Examiner accepted Finjan's redefinitions of the claim terms and issued a Notice of Intent to Issue Ex Parte Reexamination Certificate on February 4, 2021. *See* Pisano Decl., Ex. 8. Ex Parte Reexam Certificate 11808[th] issued on February 23, 2021. *See* Pisano Decl., Ex. 9.

On July 23, 2020, while the second reexam was ongoing, this Court lifted its stay on the '305 patent. D.I. 802. Pursuant to this Court's December 21, 2020 Order (D.I. 837), Finjan served Supplemental Infringement Contentions for the '305 patent, in which Finjan withdrew claims 1, 2, and 13 that had been adjudged unpatentable, but continued to assert claims 3, 4, 6, 7, 11, 21, 23, and 25. Pisano Decl., Ex. 10. As discussed below, independent claim 25 is *identical* to invalidated claim 13. Dependent claims 3, 4, 6, 7, 11, 21, and 23 depend from invalid claims 1 and 13 and recite the scanning of common types of internet content such as HTTP, HTTPS, SMTP, and that of web browsers. All of the limitations of the dependent claims had been determined by the USPTO, and conceded by the patentee, to be immaterial to patentability.

In *Finjan LLC v. Qualys, Inc.*, No. 4:18-cv-07229-YGR (N.D. Cal.), Qualys, Inc. ("Qualys") brought a Rule 12(c) motion for judgment on the pleadings that Finjan was collaterally estopped from asserting claims 6-12, 14, and 17-25 of the '305 patent. Pisano Decl., Ex. 11. Qualys's motion included a chart, reproduced below,

demonstrating that independent claim 25 is identical to invalidated claim 13:

| Claim 13: A method for scanning content within a computer, comprising: | Claim 25: A computer-readable storage medium, the medium excluding signals, storing program code for causing a computer to perform the steps of: |
|---|---|
| receiving, at the computer, incoming content from the Internet on its destination to an Internet application; | receiving incoming content from the Internet on its destination to an Internet application; |
| selectively diverting, by the computer, the received incoming content from its intended destination; | selectively diverting the received incoming content from its intended destination; |
| scanning, by the computer, the selectively diverted incoming content to recognize potential computer exploits therewithin, based on a database of parser and analyzer rules corresponding to computer exploits, computer exploits being portions of program code that are malicious, wherein the parser and analyzer rules describe computer exploits as patterns of types of tokens, tokens being program code constructs, and types of tokens comprising a punctuation type, an identifier type and a function type; | scanning the selectively diverted incoming content to recognize potential exploits therewithin, based on a database of parser and analyzer rules corresponding to computer exploits, computer exploits being portions of program code that are malicious, wherein the parser and analyzer rules describe exploits as patterns of types of tokens, tokens being program code constructs, and types of tokens comprising a punctuation type, an identifier type and a function type; |
| and updating the database of parser and analyzer rules periodically to incorporate new behavioral rules that are made available. | and updating the database of parser and analyzer rules periodically to incorporate new parser and analyzer rules that are made available. |

*See* Pisano Decl., Ex. 11 at 8-9.

After Qualys's motion was fully briefed, including a substantive opposition by Finjan and reply, Finjan stipulated to dismissal of its claims based on the '305 patent ***with prejudice***. *See* Pisano Decl., Exs. 12-14.

The dependent claims of the '305 patent asserted against ESET are directed to features the Patent Examiner indicated, and the patentee acknowledged, to be routine and well known in the prior art in the first reexam. For example, claims 3 and 4 relate to DFA and NFA's, two different types of finite automata, finite automata having been recited in claim 2 and invalidated as part of the first reexam. But there is nothing unique about these two types of finite automata. The specification of the '305 patent expressly

17cv0183

states "DFA and NFA are well known in the art of compilers, as finite-state machine engines for pattern matching." Pisano Decl., Ex. 15 at 11:20-21.

Claims 6, 7, 11, 21, and 23 recite that the incoming content complies with HTTP, HTTPS or SMTP Internet protocols, or is destined for a web browser. *Id.* Those recitations refer to different types of incoming content but do not change the alleged invention of the independent claims. Nor did the patentee argue that those features independently were patentable when combined with invalidated claims 1 and 13 from which they depend. Specifically, during examination of the application for the '305 patent, the Patent Examiner noted in the Office Action dated September 5, 2008, at pages 3-5, and in every subsequent Office Action, that the additional features recited in dependent claims 3, 4, 6, 7, 11, 21, and 23 were well known in the prior art. Pisano Decl., Ex. 16 at 10. In responding to multiple rejections of the dependent claims, Finjan did not challenge the Patent Examiner's position that the subject matter of the dependent claims was well known, nor did Finjan argue that those recitations supported patentability apart from the limitations recited in the independent claims. Pisano Decl., Ex. 17 at 10-11. Instead, Finjan amended only the now-invalidated independent claims 1 and 13. *Id.*

In its claim construction Order in this litigation, filed November 14, 2017, the Court construed only two terms for the '305 patent: "network interface" and "database." D.I. 195 at 5. Finjan had not yet concocted its redefinitions of the meanings of the claim terms "parser rules," "analyzer rules," and "rules-based scanner" – that did not occur until December 2020. During the January 26, 2023 teleconference with the Court, ESET requested that Finjan be required to correct its deficient infringement contentions and that the Court allocate time to revisit claim construction, a request that Finjan vigorously opposed. Pisano Decl., ¶ 2.

Dr. Medvidovic's expert report in this case, alleging ESET's products infringe the '305 patent, dated March 24, 2023, states that "[f]or other claim terms that were not construed by the Court, I have been informed that ***such terms are to be interpreted based on their plain and ordinary meaning*** to one of ordinary skill in the art at the time of the

invention." Pisano Decl., Ex. 18. Dr. Medvidovic did not explain in his expert report how he construed the terms "parser rules," "analyzer rules," or "rules-based content scanner." Moreover, neither Finjan's Supplemental Infringement Contentions, served January 6, 2021, nor Dr. Medvidovic's expert report, identifies the allegedly infringing features of ESET's products with the level of specificity *required* by Finjan's *Philips*-type constructions used to overcome the rejections in the second reexam. *See, e.g.,* Pisano Decl., Exs. 10, 18.

## III. <u>ARGUMENT</u>

### A. Legal Standard for Application of Collateral Estoppel

Ninth Circuit law applies to the procedural question of whether collateral estoppel applies, while Federal Circuit law applies to any substantive patent law issues. *Phil-Insul Corp. v. Airlite Plastics Co.*, 854 F.3d 1344, 1353 (Fed. Cir. 2017); *Int'l Gamco, Inc. v. Multimedia Games, Inc.*, 732 F. Supp. 2d 1082, 1091 (S.D. Cal. 2010). The Ninth Circuit's procedural test for collateral estoppel has three requirements: (1) "the first proceeding ended with a final judgment on the merits," (2) "the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding," and (3) "the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated." *Chrimar Sys. Inc. v. Ruckus Wireless, Inc.*, No. 16-cv-00186-SI, 2020 U.S. Dist. LEXIS 136656, at *10-11 (N.D. Cal. July 31, 2020) (citing *Roche Palo Alto LLC v. Apotex, Inc.*, 526 F. Supp. 2d 985, 994-95 (N.D. Cal. 2007), *aff'd*, 531 F.3d 1372 (Fed. Cir. 2008)); *see also Trevino v. Gates*, 99 F.3d 911, 923 (9th Cir. 1996); *Int'l Gamco, Inc.*, 732 F. Supp. 2d at 1090. When the issue involves a previous determination of patent invalidity, application of collateral estoppel provides a complete defense to an infringement claim. *See Chrimar Sys. Inc.*, 2020 U.S. Dist. LEXIS 136656, at *17 (granting summary judgment on invalidity because collateral estoppel "precluded [patentee] from re-litigating the validity of the [asserted patent]"); 35 U.S.C. § 282(b)(2) ("The following shall be defenses in any action involving the validity or infringement of a patent and shall be pleaded: . . . (2) Invalidity of the patent or any

claim in suit."). As discussed below, the record in this litigation demonstrates that all three elements of the Ninth Circuit's test are met.

### B.    Elements 1 and 2 of the Ninth Circuit Test

The first two elements of the Ninth Circuit's requirements to apply collateral estoppel are readily satisfied. A USPTO judgment invalidating a patent's claims can form the basis of a collateral estoppel claim in co-pending district court litigation. *See XY, LLC v. Trans Ova Genetics, L.C.*, 890 F.3d 1282, 1294 (Fed. Cir. 2018) ("A patentee, having been afforded the opportunity to exhaust his remedy of appeal from a holding of invalidity, has had his day in court, and a defendant should not have to continue defending a suit for infringement of an adjudged invalid patent."); *see also MaxLinear, Inc. v. CF CRESPE LLC*, 880 F.3d 1373, 1376 (Fed. Cir. 2018) ("[W]here a single issue is before a court and an administrative agency, preclusion also often applies."). Here, Finjan was a party to the USPTO reexamination proceedings for the '305 patent, which resulted in a final judgment on the merits no later than when the Federal Circuit affirmed the USPTO's determination that Claims 1, 2, 5, and 13 of the '305 patent are invalid. *See* Pisano Decl., Exs. 2-3. The USPTO issued a reexamination certificate formally canceling those claims on January 29, 2020. Pisano Decl., Ex. 4. Accordingly, the first two elements are satisfied.

### C.    Element 3 of the Ninth Circuit Test: Identicality of Issues

The third element of the Ninth Circuit's test—identicality—also is met. The identicality requirement (as applied under patent law in this district and by the Federal Circuit) is satisfied so long as the core question—the invalidity of the asserted patent—remains the same. Importantly, a patentee does not necessarily avoid collateral estoppel by asserting ***different*** patent claims in litigation than those previously invalidated. *See Google*, 54 F.4th at 1381; *MaxLinear*, 880 F.3d at 1377 ("[T]he collateral-estoppel effect of an administrative decision of unpatentability generally requires the invalidation of related claims that present identical issues of patentability."); *Roche Palo Alto*, 526 F. Supp. 2d at 994-95 ("The authorities … indicate that the relevant 'issue' which

Defendants are precluded from relitigating is the ultimate determination on patent validity itself."); *Chrimar*, 2020 U.S. Dist. LEXIS 136656, at *14 ("[The Federal Circuit] does not limit [issue preclusion /] collateral estoppel to patent claims that are identical." (quoting *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013))). In such a situation, the identicality requirement is satisfied where the differences between the previously invalidated claims and the claims asserted in litigation do not "materially alter the question of invalidity."  *See MaxLinear*, 880 F.3d at 1377; *Allergan, Inc. v. Sandoz, Inc.*, 681 Fed. Appx. 955, 959-61 (Fed. Cir. 2017); *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt.*, *LLC* ("*Soverain II*"), 778 F.3d 1311, 1319 (Fed. Cir. 2015); *Soverain Software LLC v. Newegg Inc.* ("*Soverain I*"), 705 F.3d 1333, 1344 (Fed. Cir. 2013); *Ohio Willow Wood*, 735 F.3d at 1342 (preclusion applies where the claims invalidated in the Patent Office use "slightly different language to describe substantially the same invention"); *Aspex Eyewear, Inc. v. Zenni Optical LLC*, 713 F.3d 1377, 1381 (Fed. Cir. 2013).

The record establishes that there are no material differences between invalidated claims 1, 2, 5, and 13 of the '305 patent and the claims asserted here against ESET. Thus, the identicality requirement is satisfied, and collateral estoppel applies.

### 1.    Finjan cannot redefine the inventions of claims 1, 13, and 25.

In this case, Finjan is collaterally estopped from re-litigating the issue of validity of the independent claims of the '305 patent asserted against ESET by belatedly seeking to redefine its alleged inventions.   In the first reexam, claims 1, 2, 5, and 13 were invalidated over Sandu and Wells.  Pisano Decl., Ex. 2.  At the time the second reexam was filed, prior to expiration of the '305 patent, identical claim 25 was invalid over the very same prior art.   However, post-expiration during the second reexam, Finjan convinced the Examiner that the claim terms should be construed narrowly, in accordance with definitions concocted by Finjan's patent attorney, Dawn Marie Bey, or construed by the district court handling Finjan's suit against Rapid7.  Pisano Decl., Ex. 7

at 9-15.[2]

Finjan did not ask this Court to construe the claim terms "parser rules," "analyzer rules," or "rules-based content scanner," and the time to do so has long since passed. *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007) (party waived any argument with respect to claim term by failing to raise it during the claim construction phase); *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1360 (Fed. Cir. 2004) (holding that defendant had "waived its right to request a construction" and thus had "implicitly conceded that the meanings of the terms in [that claim were] clear and not in need of construction"); *Finalrod IP, LLC v. John Crane, Inc.*, No. 7:15-CV-00097-ADA, 2019 U.S. Dist. LEXIS 149649, at *7 (W.D. Tex. May 30, 2019). Even as recently as the Joint Statement filed in advance of the telephonic conference with the Court on January 26, 2023, (D.I. 882), ESET objected to Finjan's infringement contentions as lacking specificity regarding the foregoing claim limitations. *Id.* at 9-11. During the January 26 telephonic conference, Finjan also objected to ESET's request to schedule a further claim construction period, instead urging the Court to set an early trial date. Pisano Decl., ¶ 2. This Court should not permit Finjan and its expert, Dr. Medvidovic, to usurp the Court's role by arguing for "plain and ordinary meanings" of claim terms this Court did not approve, and which ESET was not permitted to contest.

Instead, this Court should apply collateral estoppel to prevent Finjan from asserting claim 25, which is virtually identical to claim 13 previously deemed invalid, and which Finjan knew to be so.[3] The Court also should credit the Patent Examiner's rejections of the dependent claims, which Finjan never challenged as independently supporting patentability of the alleged inventions. As the Federal Circuit explained in *Google,* 54

---

[2] Although Finjan cited to two declarations of Dr. Nenad Medvidovic as supporting Finjan's post-expiration constructions, Finjan's redefinitions do not appear verbatim in either declaration. Pisano Decl., Exs. 19 and 20.

[3] Had Finjan wanted to preserve claim 25, it should have filed an application to reissue claim 25, in which it could have added precisely the additional claim limitations it seeks to engraft on the claim language from the specification, rather than awaiting expiration.

F.4th at 1381, collateral estoppel has a broad reach.  Under that doctrine, Finjan can only avoid preclusion on *all* asserted claims of the '305 patent if some material difference exists between the previously-invalidated '305 claims and those currently being asserted. *Id.*  This Finjan cannot do, as it did not seek claim constructions for critical limitations of its independent claims, and accordingly, no such material differences exist in this case.

Finjan undoubtedly will urge this Court to apply *Philips*-type constructions in an attempt to resurrect its asserted claims, as it argued during the second reexam.  Yet Finjan chose not to ask for any such constructions from this Court and specifically rejected ESET's request for a further claim construction period.[4]  Nor could ESET have predicted back in mid-2017 that Finjan would reinvent its "plain and ordinary meaning" of the claim terms more than three years later.  Finjan is not entitled to seek new claim constructions at this late date, nor should Finjan be permitted to espouse claim meanings not approved by the Court in accordance with *Markman*.

Federal Circuit precedent is mixed on whether a district court may decide a motion for summary judgment based on a patentee's waiver of its right to have disputed claim terms construed by the court.  But if such a case ever existed, this is it.  Here, Finjan was completely aware since at least December 2020 that to have any hope of warding off a collateral estoppel invalidation of the remaining asserted claims of the '305 patent, it would need to: (1) have this Court agree that Finjan's 2020 re-imagined claim constructions apply, and (2) argue that even under those claim constructions, there is a material difference so as to avoid collateral estoppel.  Instead, Finjan waited two years, until the stay on the '305 patent was lifted and, even then, objected to ESET's request for further claim construction.  Accordingly, this Court is entitled to interpret the terms of claim 25 in the same manner as the Federal Circuit did in deciding Finjan's appeal of the decision in the first reexam.  Namely, this Court should decide, as the Examiner initially

---

[4] While ESET had requested claim construction to revisit certain terms of the other patents, a further *Markman* hearing would have provided the necessary avenue to address the disputed claim terms of the '305 patent.

17cv0183

did in the second reexam, that ***during the unexpired term of the '305 patent***, claim 25 was invalid over Sandu and Wells, exactly as was claim 13.

There can be no dispute that if ESET had brought this collateral estoppel motion when the '305 patent was still in force, collateral estoppel would have applied to invalidate the claims asserted here. But this case was stayed at the time. The fact that ESET brings this motion now, after the expiration of the patent, should not impact the validity of the claims.[5]

*Nuance Commc'ns, Inc. v. ABBYY USA Software House, Inc.*, 813 F.3d 1368 (Fed. Cir. 2016) is instructive of resolution of this motion. In *Nuance*, after losing its infringement case, the patentee appealed on the ground, *inter alia*, that the district court had failed to resolve the parties' claim construction dispute before trial in violation of *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir. 2008). Whereas the defendant proposed a special meaning for the disputed term "identifying," the patentee disagreed, arguing that "'there is no restriction in the specification' warranting a departure from the plain and ordinary meaning." 813 F.3d at 1372. As noted by the Federal Circuit, "[t]he fact that shortly before trial Nuance became dissatisfied with its own proposed construction and sought a new one does not give rise to an *O2 Micro* violation." *Id.* at 1373.

Here, Finjan peculiarly was aware since December 2020 that to avoid issue preclusion it would need to rely on narrow constructions of the terms "parser rules," "analyzer rules," and "rules-based content scanner" – three years after the parties' identification in 2017 as to which claim terms required construction. Moreover, Finjan knew by at least December 2020 that it planned to rely on the Rapid7 court's construction of "rules-based content scanner," yet did not ask this Court for that construction. Like the patentee in *Nuance*, Finjan should not now be heard to complain, long after the claim

---

[5] Whether the asserted claims of the '305 patent retroactively become patentable, as determined in the second reexam, is irrelevant. No damages could have accrued prior to patent expiration (when the asserted claims of the '305 patent were invalid), and none can arise post-expiration by redefining the claim terms.

construction proceedings were completed and its recent objection to further such proceedings, that patentability of its remaining claims of the '305 patent require special "plain and ordinary meanings" never proposed to ESET or considered by this Court.

Finjan essentially conceded the identicality of claims 13 and 25 in its infringement contentions. In its Supplemental Infringement Contentions for the '305 patent served on December 3, 2020, Finjan's entries for invalidated claim 13 and asserted claim 25 are virtually identical, with no additional analysis. *Cf.* Pisano Decl., Ex. 10 at 7-8 and 9-11. Thus, Finjan's claim charts show that even Finjan views these two claims as having no material differences. It cannot now claim otherwise.

## 2. The asserted dependent claims of the '305 patent add trivial limitations.

Claims 3, 4, 6, 7, 11, 21, and 23 do not materially alter the question of invalidity because the USPTO already determined that the content of these claims was already well-known in the prior art and do not alone render the claims patentable. Summary judgment of invalidity of those claims for collateral estoppel likewise is appropriate.

The Federal Circuit's *Sovereign I* and *II* cases address an analogous scenario. In *Sovereign I*, the court affirmed a finding that a patent's independent claim was invalid over the prior art (much like the USPTO's earlier determination in this case that independent Claims 1 and 13 are invalid). *See Sovereign I*, 705 F.3d at 1341-43. In *Sovereign II*, the patentee asserted the same patent against a subsequent defendant but asserted a dependent claim instead of the invalidated independent claim itself (much like here, where Finjan has asserted claims 3, 4, 6, 7, 11, 21, and 23, which respectively depend on invalid claims 1 and 13). 778 F.3d at 1319-20. The Federal Circuit held that the identicality requirement was satisfied and collateral estoppel barred the patentee's infringement claim because the dependent claim merely recited "a routine incorporation of Internet technology" that did not materially alter the question of invalidity. *Id.*

The same situation applies here. In every Office Action issued by the Examiner who examined the application for the '305 patent, the features recited in the asserted

dependent claims were rejected as well known in the prior art and adding nothing to patentability of the independent claim.  In particular, in Office Actions dated September 5, 2008, January 13, 2009, September 18, 2009, January 29, 2010, and June 15, 2010, issued during prosecution of the application for the '305 patent, claim 6 (HTTP content), claim 7 (HTTPS content), claims 11 and 23 (web browser content), and claim 21 (SMTP content) were rejected as merely reciting scanning well-known protocols like Internet protocols (as in the *Soverain* cases) and using commonplace Internet applications like web browsers and email.  *See* Pisano Decl., Exs. 16, 21-24.  In each of those five Office Actions, claims 3 and 4 were rejected as obvious over the admitted prior art identified in the specification: "the examiner notes that it was well known in the art for DFA and NDFA to be used as engines for pattern matching (e.g. see admission by the applicant, Applicant's specification, par. 73))."  *See* Pisano Decl., Ex. 16 at 3-5, Ex. 21 at 5-6, Ex. 22 at 4-5, Ex. 23 at 4-5, and Ex. 24 at 7-8.

In response to each of the foregoing Office Actions, Finjan conceded those features to be in the prior art, and not once did Finjan argue that the limitations of claims 3, 4, 6, 7, 11, 21, or 23, when combined with the independent claims, separately supported patentability.  Pisano Decl., Exs. 17, 25-28.  Instead, Finjan only ever amended independent claims 1 and 13 to support its arguments for patentability.  *Id.*  Specifically, as to the dependent claims, Finjan repeated in each of its five Responses that "[b]ecause claims **2 - 12 [14 - 24]** depend from claim **1 [13]** and include additional features, applicants respectfully submit that claims **2 - 12 [14 - 24]** are not anticipated or rendered obvious by Freund."  *See* Pisano Decl., Ex. 17 at 21-22, Ex. 25 at 11, Ex. 26 at 13, Ex. 27 at 10-11, and Ex. 28 at 10-11.

In the first reexam, the USPTO again noted that the subject matter of the dependent claims was known in the prior art.  The Examiner for the first reexam (a different Examiner than the one who handled examination of the application for the '305 patent) specifically found that scanning content using various Internet protocols, as well as content bound for web browsers and email clients was known in the prior art Wells

reference, which was one of two prior art references that formed the basis of invalidating claims 1, 2, 5, and 13:

> Wells further teaches that the content is being transferred using various well known protocols (e.g., HTTP or email). Wells, col. 6:61-7:3 ("processor 24 may scan HTTP requests by scanning their originating web page for known viral patterns such as Code Red, which is programmed to gain entry to a server. To scan email attachments for worms, processor 24 may look for filenames, such as readme.exe and sample.exe, known to be used by worms"), col. 3:31-34. Wells also teaches that the detection device may also scan content communicated through various other well-known protocols. Wells, col. 8:21-34 (describing screening content transmitted using HTTP, SMTP, POP, IMAP, and FTP protocols). Accordingly, a POSITA would have recognized that each of these protocols is associated with a well-known type of Internet application destination (e.g., HTTP - browser, SMTP, POP, IMAP - email client, and FTP - ftp client).

Pisano Decl., Ex. 29 at 5.

The Examiner specifically stated that use of these Internet protocols and applications was "well known" in the prior art.  Indeed, had the requester sought to invalidate those dependent claims at the time of the first reexam, those claims too would have been invalidated.  The Examiner in the first reexam specifically identified that the same references, which the Federal Circuit affirmed as invalidating claims 1, 2, 5, and 13, taught each of the dependent claims relating to content type (HTTP, web browser, POP, IMAP, SMTP, and FTP).  The Examiner's finding in the first reexam corroborates the original Examiner's unrefuted determination that the limitations of the asserted dependent claims do not constitute material differences and thus cannot defeat application of collateral estoppel.

Indeed, even in the second reexam, Finjan could not convince its expert, Dr. Medvidovic, to support its arguments regarding the alleged patentability of claims 6 (HTTP content), 11 and 23 (web browser content), or 21 (SMTP).  Instead, Finjan conceded that Sandu teaches receiving content from the Internet and offered only

48722727.4

attorney argument that "Patent Owner fails to see" how that disclosure in Sandu necessarily teaches the specific limitations recited in those claims.  Pisano Decl., Ex. 7 at 24-26.  Finjan likewise acknowledged that Freund specifically teaches processing HTTP (claim 6), SMTP (claim 21) and web browser content (claims 11 and 23).  *Id.* at 27.  The best that Dr. Medvidovic could offer in Finjan's support was that the system described in Freund "was in the context of solving a completely different problem [than in] Sandu and Wells [or] the present claims," thus focusing his arguments once again on the independent claims, as discussed above.  *Id.* at 27-29.  Finjan cannot credibly argue, and never has, that the features of the dependent claims asserted against ESET were not well known in the prior art, acknowledged to be so by Finjan, and add patentable weight to invalidated independent claims 1 and 13.

### D. Public Policy Requires Application of Collateral Estoppel Here.

Quite apart from any argument that Finjan may interpose that it is entitled to assert the remaining claims of the '305 patent in this litigation, public policy militates for the application of collateral estoppel.  *See, e.g., Montana v. United States*, 440 U.S. 147, 153-54 (2008) (collateral estoppel "preclude[s] parties from contesting matters that they have had a full and fair opportunity to litigate [which] protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions").  Finjan's conduct in this litigation illustrates why collateral estoppel applies to all claims of the '305 patent when the original decision became final, i.e., when the Federal Circuit affirmed the rejections in the first reexam and the right to seek further appellate review expired.  *Luben Indus., Inc. v. United States*, 707 F.2d 1037, 1040 (9th Cir. 1983) ("A 'final judgment' for the purposes of collateral estoppel can be any prior adjudication of an issue in another action that is determined to be 'sufficiently firm' to be accorded conclusive effect." (quoting Restatement (Second) of Judgments § 13 (1982)).

As discussed above, when rejection of the claims in the first reexam became final, Finjan was on notice that the other unchallenged claims of the '305 patent were all

invalid based on that same art.  If Finjan wanted to preserve any of the remaining claims of the '305 patent, it should have sought reissue to confirm patentability of those claims.  *In re Yamamoto*, 740 F.2d 1569, 1572 (Fed. Cir. 1984) ("the reissue provision, 35 U.S.C. § 251, permits amendment of the claims to avoid prior art").  Had it done so with no claim amendments, it surely would have been collaterally estopped by the outcome in the first reexam.  But Finjan elected not to do so.  Instead, Finjan sat back and waited for the '305 patent to *expire*, so it could then assert claims identical to those already invalidated, but under a new claim construction theory.

As a matter of policy and legal repose, the public is entitled to rely on the Federal Circuit decision in the first reexam and know that all immaterially different claims were (and will always remain) invalid, both pre- and post-patent expiration.  In this case, there can be no doubt that claim 25 and the asserted dependent claims were invalid at the time the result of the first reexam became final.  Further, at the time the second reexam was filed, before the '305 patent expired, those same claims still were invalid, as the Examiner indicated in his October 13, 2020 Office Action.  By then, however, Finjan claimed to be able to argue, in the *ex parte* reexamination context, that the claims should be interpreted according to Finjan's lawyer's argument – and thereby somehow spring back to life.  It is conclusive in this litigation, however, that Finjan did not seek such claim constructions from this Court, and thus Finjan's reimagined claim interpretations have no weight.  A ruling otherwise would mock the concept of finality.

## IV.   **CONCLUSION**

For all the foregoing reasons, ESET submits that Finjan is collaterally estopped from asserting claims 3, 4, 6, 7, 11, 21, 23, and 25 of the '305 patent in this litigation.

Dated:  April 17, 2023

Respectfully submitted,

**EVERSHEDS SUTHERLAND (US) LLP**

_/s/ Nicola A. Pisano_
NICOLA A. PISANO, CA Bar No. 151282
    NicolaPisano@eversheds-sutherland.com
JOSE L. PATIÑO, CA Bar No. 149568
    JosePatino@eversheds-sutherland.com
JUSTIN E. GRAY, CA Bar No. 282452
    JustinGray@eversheds-sutherland.com
SCOTT A. PENNER, CA Bar No. 253716
    ScottPenner@eversheds-sutherland.com
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA  92130
TELEPHONE:      858.252.6502
FACSIMILE:      858.252.6503

Attorneys for Defendants and Counter-Plaintiffs
ESET, LLC and ESET, SPOL. S.R.O.

48722727.4