Juanita Brooks (SBN 75934) brooks@fr.com
Roger A. Denning (SBN 228998) denning@fr.com
Jason W. Wolff (SBN 215819) wolff@fr.com
Michael A. Amon (SBN 226221) amon@fr.com
K. Nicole Williams (SBN 291900) nwilliams@fr.com
Megan A. Chacon (SBN 304912) chacon@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070 / Fax: (858) 678-5099

Lawrence Jarvis (*pro hac vice*)
FISH & RICHARDSON P.C.
1180 Peachtree Street, NE
21st Floor
Atlanta, GA 30309
Tel: (404) 891-5005 / Fax: (404) 892-5002

Attorneys for Plaintiff & Counter-Defendant
FINJAN LLC

# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN LLC,<br><br>               Plaintiffs,<br><br>  v.<br><br>ESET, LLC and ESET SPOL. S.R.O.,<br><br>               Defendants. | Case No. 17-cv-0183 CAB (BGS)<br><br>**FINJAN LLC'S OPPOSITION TO ESET'S MOTION TO EXCLUDE PLAINTIFF'S EXPERT DR. BIMS AND STRIKE EXPERT REPORT**<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT<br><br>Courtroom: 15A<br>Judge: Hon. Cathy Ann Bencivengo |
| AND RELATED COUNTERCLAIMS | **PUBLIC VERSION** |

# <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ...................................................................................... 1

II.  ARGUMENT ............................................................................................. 2

    A.   ESET's Motion is Moot as Dr. Bims Will Not Testify in the Upcoming Trial ................................................................................ 2

    B.   This Court Already Denied ESET's Request To Exclude Dr. Bims On the Same Issue ............................................................... 2

    C.   ESET's Motion Should Be Denied on the Merits ............................... 3

        1.   Paragraphs 6-52: Dr. Bims' technology tutorial is fully supported. .................................................................... 4

        2.   Paragraphs 55-57, 61-70, and 72-73: ESET implicitly agrees these paragraphs contain no confidential information. ................................................. 5

        3.   Paragraphs 58, 59, 60, and 71: The Paragraphs of Dr. Bims' Report that ESET claims contain confidential information are supported by the publicly-available documents cited by Dr. Bims. .................... 13

        4.   The case law does not support exclusion of Dr. Bims ................................................................................. 17

        5.   ESET's discussion of the Court's 2019 Order regarding prior counsel's Protective Order violation is irrelevant to this Motion. ........................................ 19

III. CONCLUSION ........................................................................................ 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Key Corp. v. Cole Nat'l Corp.*,
  762 F.2d 1569 (11th Cir. 1985) ................................................................... 18

*Brown v. Teledyne Cont'l Motors, Inc.*,
  No. 1:06-CV-00026, 2007 U.S. Dis. LEXIS 18179 (N.D. Ohio Mar.
  15, 2007) ......................................................................................................... 18

*Catch a Wave Techs., Inc. v. Sirius XM Radio, Inc.*,
  No. C 12-05791 WHA, 2013 U.S. Dist. LEXIS 189086 (N.D. Cal.
  Aug 5, 2013) .................................................................................................... 19

*Clark v. Bunker*,
  453 F.2d 1006 (9th Cir. 1972) ...................................................................... 13

*In re Copley Press, Inc.*,
  518 F.3d 1022 (9th Cir. 2008) ...................................................................... 12

*Deutz Corp. v. City Light & Power, Inc.*,
  No. 1:05-cv-3113-GET, 2008 U.S. Dist LEXIS 110202 (D. Ga.
  Mar. 21, 2008) ............................................................................................... 17

*Edwards v. Ethicon, Inc.*,
  No. 2:12-cv-09972, 2014 WL 3361923 (S.D.W.Va. Apr. 28, 2015) .................. 2

*EEOC v. Bloomberg L.P.*,
  No. 07 Civ. 838 (LAP), 2010 U.S. Dist LEXIS 92511 (S.D.N.Y.
  Aug 31, 2010) ................................................................................................. 18

*Emerson Elec. Co. v. SIPCO, LLC*,
  No. 16-MC-80164-DMR, 2016 U.S. Dist. LEXIS 162088 (N.D. Cal.
  Nov. 21, 2016) ............................................................................................... 19

*Imperial Credit Indus. Sec. Litig.*,
  252 F.Supp.2d 1005 (C.D. Cal. 2003) ........................................................... 18

*In re James Wilson Assoc.*,
  965 F.2d 160 (7th Cir. 1992) ........................................................................ 17

*Kowalski v. Anova Foos, LLC*,
  No. 11-00795 HG-RLP, 2014 U.S. Dist. LEXIS 182947 (D. Haw.
  Dec. 31, 2014) .................................................................................................... 17

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ........................................................................................... 17

*Monster Energo Co. v. Vital Pharms.*, Inc.,
  No. EDCV 18-1882 JGB (SHKx), 2022 U.S. Dist. LEXIS 214145
  (C.D. Cal. Aug 2, 2022) ..................................................................................... 17

*NuVasive, Inc. v. Alphatec Holdings, Inc.*,
  No. 3:18-cv-347-cab-mdd, 2020 WL 2084568 (S.D. Cal. Apr. 30,
  2020) ..................................................................................................................... 2

*Rowe Ent. Inc. v. Williams Morris Agency, Inc.*,
  No. 98 Civ 8272 (RPP), 2003 U.S. Dist. LEXIS 15976 (*S.D.N.Y
  Sept. 15, 2003) .................................................................................................. 18

**Other Authorities**

Fed. R. Civ. P. 26(c)(1)(G) ..................................................................... 12, 13

L.R. Civ. 7.1(i) .......................................................................................... 2, 3

## I.    INTRODUCTION

ESET's Motion to Exclude Dr. Bims should be denied for three reasons. First, Finjan has taken to heart the Court's guidance given during the parties' January 26, 2023 teleconference to streamline the case and, therefore, does not intend to call Dr. Bims at trial, rendering ESET's Motion moot.  Second, the Court has already denied ESET's motion on this very issue.  *See* Doc. No. 699 at 3.  ESET requested exclusion of Dr. Bims based on the same purported Protective Order violation in 2019.  Doc. No. 497 at 12-14.  This Court denied ESET's motion then, finding that Dr. Bims' "opinion[] is best challenged by cross-examination rather than exclusion."  Doc. No. 699 at 3.  There have been no intervening changes in case law that would merit re-litigating the same issue again, especially as Dr. Bims will not be testifying at trial.

Finally, ESET's motion should also be denied on the merits.  Dr. Bims' expert report is based on his specialized knowledge and experience as an expert in computer and network security and network optimization, his familiarity with Finjan's technology and the Asserted Patents, as well as the publicly-available ESET documents cited in his report and included in his materials considered.  *See* Exh. A[1] (Appendix B to Bims Report at 1).  A detailed review of the paragraphs in the report included in ESET's Motion demonstrates neither Dr. Bims nor Finjan's prior counsel violated the Protective Order, and, in fact, all of the information Dr. Bims relied on is public.  Importantly, the differences between Dr. Bims' report and the Highly Confidential – Attorneys' Eyes Only reports of Finjan's other experts show that Finjan's prior counsel was diligent in ensuring that none of ESET's confidential information was shared with Dr. Bims.  ESET's reliance on the Court's 2019 Order regarding a separate Protective Order violation by Finjan's former counsel has no relevance to the motion at issue.

---

[1] All exhibits are attached to the accompanying Declaration of K. Nicole Williams In Support of Finjan's Opposition to ESET's Motion to Exclude.

## II.   ARGUMENT

### A.   ESET's Motion is Moot as Dr. Bims Will Not Testify in the Upcoming Trial

This case has proceeded in fits and starts for nearly seven years.  The particular expert report at issue in ESET's Motion was served in November 2018, and Dr. Bims testified regarding the technology at issue in five of the six Asserted Patents at trial in March 2020, which resulted in a mistrial due to the COVID-19 Pandemic.  Following the mistrial, Finjan changed counsel, and the case was again stayed, restarted, and stayed again.  In January 2023, this Court held a telephonic Appeal Mandate Hearing and Status Hearing (Doc. No. 881) where the Court entreated the parties to streamline the case in advance of the August 2023 trial.  In the time since, as new counsel has been preparing for trial, it has become clear that the testimony of Finjan's other technical experts would better assist the jury in understanding the technology at issue.  For this reason, Finjan does not intend to call Dr. Bims at trial, making ESET's motion moot.  *See, e.g.*, *NuVasive, Inc. v. Alphatec Holdings, Inc.*, No. 3:18-cv-347-cab-mdd, 2020 WL 2084568, at *4 (S.D. Cal. Apr. 30, 2020) (denying as moot defendant's motion to exclude testimony of plaintiff's expert where the testimony would not be presented at the jury trial in question); *see also Edwards v. Ethicon, Inc.*, No. 2:12-cv-09972, 2014 WL 3361923, at *8 (S.D.W.Va. Apr. 28, 2015) (denying as moot a portion of motion to exclude expert testimony that plaintiff did not intend to present at trial).

### B.   This Court Already Denied ESET's Request To Exclude Dr. Bims On the Same Issue

ESET fully briefed this issue in 2019 following the submission of Dr. Bims' report, and the Court denied its request to exclude his testimony.  *See* Doc. No. 475 at 12-15; *see also* Doc. No. 699 at 3.  Pursuant to Local Rule 7.1(i), the proper venue for re-litigating the same issue would be a motion for reconsideration of the Court's previous opinion.  Such a motion would be brought within 28 days

and must include an affidavit or certified statement of an attorney describing the previous motion and ruling, and explaining "what new or different facts and circumstances are claimed to exist which did not exist, or were not shown, upon such prior application." L.R.Civ. 7.1(i). In 2019, ESET chose not to move for reconsideration of the Court's Order.

The facts have not changed in the four years since ESET originally brought its motion to exclude Dr. Bims, and for that reason alone its present Motion should be denied. In its 2019 briefing, ESET included a chart aligning Dr. Bims' report paragraphs with those of the other experts. *See* Doc. No. 475 at 13-14. ESET argued that the similarities between Dr. Bims' report and the identified paragraphs from the other experts amounted to a violation of the Protective Order. *Id.* at 14-15. In fact, ESET's present Motion copies and pastes an entire paragraph from its previous motion nearly verbatim. *Compare* Doc. No. 910 ("Motion") at 13 *with* Doc. No. 475 at 14 (beginning with "One particularly egregious example. . . ."); *also compare* Motion at 6 *with* Doc. No. 475 at 13 (including the same chart comparing Cole Report, Paragraph 149 with Bims Report, Paragraph 57 and highlighting a shared typographical error). The Court previously considered—and denied—ESET's same request. Doc. No. 699 at 3.

### C.    ESET's Motion Should Be Denied on the Merits

The Court could stop at either of the two reasons above, but on the merits, ESET's allegations belied by the facts. A detailed review of the report, including the documents cited by Dr. Bims, shows there has been no breach of the Protective Order. All paragraphs identified by ESET in its Motion are supported by Dr. Bims' experience and the publicity-available information he cites. ESET's Motion, on the other hand, is replete with inaccuracies and obfuscation, including that it deletes all of Dr. Bims' citations to publicly available documentation.

### 1.    Paragraphs 6-52: Dr. Bims' technology tutorial is fully supported.

ESET first complains that paragraphs 6-52 of Dr. Bims' report are somehow improper, despite the fact they contain no ESET confidential information and don't describe ESET technology.  Motion at 4; *see also* Doc. No. 910-1 (Bims Report) at ¶¶ 6-52.  As ESET concedes, these paragraphs consist of "a general technology discussion of malware detection concepts and how they interact within networked computing environments."  Motion at 4.  While ESET argues—without citation— that Dr. Bims "has no expertise in the technology in suit" (Motion at 4) and "did not conduct any investigation into the facts at issue in this case" (*id.*), Dr. Bims' report, its attachments, and his trial testimony demonstrate this is not true.

Dr. Bims has a Ph.D. in Electrical Engineering from Stanford University and over twenty years of experience in wireless technology, including many years working in the computer networking space.  Exh. B (Appendix A to Bims Report) at 1, 32; Exh. C (3/11/2020 Trial. Tr.) at 230:2-231:25; Declaration of Dr. Harry Bims ("Bims Decl.") at ¶ 3.  At trial, ESET had no objection to Finjan's proffer of Dr. Bims as an expert in computer networking and security, and this Court received him as an expert in that subject area.  Exh. C (3/11/2020 Trial. Tr.) at 234:22-235:3. Moreover, contrary to ESET's statement that Dr. Bims "performed no independent analysis," Dr. Bims studied the five patents at issue in that trial and applied his extensive experience to formulate paragraphs 6-52.  Doc. No. 910-1 (Bims Report) at ¶ 5; Bims. Decl. ¶ 6.  He also incorporated his previous testimony from the two *Finjan v. Blue Coat* trials and the *Finjan v. Sophos* trial, which covered overlapping technology and are attached to his report as Appendix C.  Exh. D (Appendix C to Bims Report).

Most importantly, ESET made this same argument four years ago and the Court denied it.  Doc. No. 699 at 3; Doc. No. 475 at 4-5.

**2.    Paragraphs 55-57, 61-70, and 72-73: ESET implicitly agrees these paragraphs contain no confidential information.**

A fair reading of Dr. Bims' report alongside the documents cited shows that ESET is wrong in its assertions that "the content of Dr. Bims' report proves misconduct."  ESET's motion depends on a finding of misconduct, and yet ESET redacts only a few paragraphs of the several it contends are Highly Confidential. More specifically, in the public version of ESET's motion, ESET only redacted portions of four paragraphs out of the 19 paragraphs of which it complains.  Doc. No. 911-1 at 6-14.  If any portions of paragraphs 55-57, 61-70, or 72-73 actually contained Highly Confidential ESET information, ESET would have requested sealing of those paragraphs and would not have filed them on the public docket. The fact that it did not request sealing and publicly filed them demonstrates that ESET agrees these paragraphs do not contain ESET's confidential information. These paragraphs are also directly supported by the citations Dr. Bims included in his report—citations ESET excises out from its Motion in order to misdirect the Court.

For example, ESET reproduced paragraph 55 of the Bims Report as:

> **Bims Report, Paragraph 55**
> File samples are sent from Eset Gateway Products with metadata, including, for example, the file name, file size, hash, and a virus name if a virus was detected by the endpoint. This data is used to help analyze the file sample by providing, for example, parameters for configuring a sandboxing in the cloud-based sandboxing cluster.

Doc. No. 911-1 at 6.  Paragraph 55 of Dr. Bims' report actually reads:

> 55. File samples are sent from Eset Gateway Products with metadata, including, for example, the file name, file size, hash, and a virus name if a virus was detected by the endpoint. FINJAN-ESET 675772 (edtd_behavior_malicious.pdf). This data is used to help analyze the file sample by providing, for example, parameters for configuring a

1

2

sandboxing in the cloud-based sandboxing cluster. FINJAN-ESET 675913 (ThreatSense parameters _ ESET Internet Security _ ESET Online help.pdf. at p. 1).

3

4

5

6

7

The documents cited by Dr. Bims include an example of a "file behavior report" identifying metadata including hash, file size, and a category stating whether it is executable.  A portion of the publicly-available file behavior report is reproduced below:

8

9

⚠ **FILE BEHAVIOR REPORT** 

10

| ⚠ | STATUS | Malicious |
|---|---|---|
| | SHA-1 | FED6A67C97B461A0DF1332AF61A89EA9FB5A540F |
| | SIZE | 436736B |
| | CATEGORY | Executable |

11

12

13

14

15

16

17

Exh. E (FINJAN-ESET 675772).  Paragraph 55 goes on to describe how ESET's products use the data to analyze the file by providing parameters for configuring sandboxing.  These very parameters are described in the next document cited by Dr. Bims: FINJAN-ESET 675913 (ThreatSense parameters _ ESET Internet Security _ ESET Online help.pdf. at p. 1).  Ex. F (FINJAN-ESET 675913).

18

19

20

21

22

23

24

25

26

27

And paragraph 55 does not stand alone, of course, it is preceded by paragraph 54, which introduces the file behavior report and includes a citation to FINJAN-ESET 675830.  Doc. No. 910-1 at ¶ 54.  This cited document describes the use of sandboxing to analyze files and includes a snapshot of files sent to ESET's LiveGrid, with metadata including file name, file size and hash.  Exh. G (FINJAN-ESET 675824) at -830.  Two pages later, the cited document further includes the same file behavior report cited in Dr. Bims' paragraph 55, at FINJAN-ESET 675832.  Compare *id.* at FINJAN-ESET 675832 with Exh. E (FINJAN-ESET 675772).  Contrary to ESET's statement that "many of the technical details set forth in the paragraphs of Dr. Bims' expert report, which describe operation of ESET's

28

software, *are not available in ESET's public-facing materials*," these technical details are clearly present in the publicly-available materials cited by Dr. Bims. Motion at 6 (emphasis in original).

Each of the additional paragraphs ESET identifies in its Motion has support in the documents cited by Dr. Bims.  Paragraph 56 builds upon paragraph 55 (describing the file behavior report and ThreatSense) and additionally cites FINJAN-ESET 675892 and FINJAN-ESET 675835.  FINJAN-ESET 675892 is a page of a 21-page ESET technical presentation (FINJAN-ESET 675884) introducing ESET's LiveGrid as well as other core ESET technologies.  Doc. No. 911-9 (FINJAN-ESET 675884) at -892.  The next page in the cited document describes the Cloud Malware Protection System (referred to by Dr. Bims as CMPS) and demonstrates how it utilizes the LiveGrid Feedback System and sandboxes that perform malware analysis.  *Id* at FINJAN-ESET 675893.  The other document Dr. Bims cites (FINJAN-ESET 675835) describes "how ESET Dynamic Threat Defense works" and shows a flow chart of steps including the in-cloud sandbox for malware analysis.  Exh. G (FINJAN-ESET 675824) at -835.  Notably, though ESET complains that paragraph 56 of the Bims report is similar to that of Dr. Cole's paragraph 147, the information in Dr. Cole's report regarding "a messaging queue called Kafka" is *not* in Dr. Bims' report.  *See* Motion at 7.

Paragraph 57 of the Bims Report includes a general description of sandboxing that would be apparent to anyone of his experience and the attributes of the file behavior report.  *See* Doc. No. 910-1 (Bims Report) at ¶ 57.  As support for this paragraph, Dr. Bims cites the file behavior report itself, which includes a list of suspicious operations that may be attempted by the file, just as Dr. Bims describes. *Id*.; *see also* Exh. E (FINJAN-ESET 675772).  The paragraph also cites the ESET technical presentation describing LiveGrid and the ESET solution overview explaining "[h]ow ESET Dynamic Threat Defense works."  Doc. No. 910-1 (Bims Report) at ¶ 57 (citing within the "*id.*" citation Doc. No. 911-9 (FINJAN-ESET

1    675884) at -892 and Exh. G (FINJAN-ESET 675824) at -835).  Both public

2    documents extensively describe the sandboxing performed by ESET's products.

3    *See, e.g.*, Exh. G (FINJAN-ESET 675824) at -826, -827, -830; *see also* Doc. No.

4    911-9 (FINJAN-ESET 675884) at -888, -889, -891, -893, -895, -900.  And, as

5    described above, ESET already alerted the Court to the similarities between Cole

6    paragraph 149 and Bims paragraph 57 in its original 2019 Motion to Exclude

7    Dr. Bims, including the exact same color-coded chart.  *Compare* Motion at 6 *with*

8    Doc. No. 475 at 13.  The Court denied exclusion then and should do so now.  Doc.

9    No. 699 at 3.

10        Paragraphs 61, 66 and 72 of Dr. Bims' report are merely introductory

11   paragraphs identifying the product categories for the accused products.  *See* Doc.

12   No. 910-1 at ¶¶ 61, 66, 72.  ESET agreed that these paragraphs contain no

13   confidential information, as they were reproduced in full in its public Motion.  Doc.

14   No. 911-1 at 8, 10, 12.

15        Paragraph 62 of the Bims Report is supported by the cited Dynamic Threat

16   Defense document (FINJAN-ESET 675824).  Doc. No. 910-1 at ¶ 62 (citing

17   FINJAN-ESET 675824 at -826-27, -829-30).  This document states that "ESET

18   Dynamic Threat Defense provides another layer of security for ESET products like

19   Mail Security . . . by utilizing a cloud-based sandboxing technology to detect a new,

20   never-before-seen type of threat."  Exh. G (FINJAN-ESET 675824) at -826.  As

21   stated in paragraph 61, Mail Security is one example of ESET's "Gateway

22   Products."  Doc. No. 910-1 at ¶ 61.  The public ESET document explains what

23   happens when the Gateway Products encounter a never-before-seen threat:

24   "Whenever a zero-day threat such as ransomware is seen, the file is sent to our

25   cloud-based malware protection system—LiveGrid where the threat is detonated

26   and behavior is monitored."  Exh. G (FINJAN-ESET 675824) at -829.  This directly

27   supports Dr. Bims' statements that the "Gateway Products interact with and/or

28   supplement Eset's Cloud Products, including LiveGrid" and his description of the

Gateway Products sending sample files to LiveGrid for analysis.  Doc. No. 910-1 at ¶ 62.

Paragraph 63 of the Bims Report is supported by the 21-page ESET technical presentation, which describes in detail how ESET's products work together to deliver "multi-layered protection" and states "ESET's scanning engine is at the core of our products."  Doc. No. 911-9 (FINJAN-ESET 675884) at -886, -888; *see also* Doc. No. 910-1 at ¶ 62 (citing FINJAN-ESET 657885-904 and describing the ESET Gateway Products as integrating together to form a core set of malware detection components that all operate in the same way, including the ESET scanning engine). The technical presentation further describes DNA Scanning (Doc. No. 911-9 at FINJAN-ESET 675894), heuristics (*id.* at FINJAN-ESET 675901, -898), signatures (*id.* at FINJAN-ESET 675890, -901), emulation (*id.* at FINJAN-ESET 675888, -891, -895, -896), and code analysis (*id.* at FINJAN-ESET 675888, -890, -896, -897, -900, -901).  Again, the differences between the portions of the Cole Report identified by ESET in its Motion and the Bims Report at paragraph 63 show that the protected information included within the Cole Report was *not* included in the Bims Report.  Motion at 9.  Why?  Because those pieces of information are not within the public documents Dr. Bims reviewed and relied upon.

Paragraph 64 likewise cites the ESET technical presentation describing the scanning engine utilized in the Gateway products and the file behavior report previously described, as well as a page from ESET's Online Help tool describing ESET's ThreatSense.Net Early Warning System.  Doc. No. 910-1 at ¶ 64 (citing Doc. No. 911-9 (FINJAN-ESET 675884-904), Exh. E (FINJAN-ESET 675772), and Exh. G (FINJAN-ESET 675919) (explaining the use of ThreatSense.Net).  These documents support Dr. Bims' description of the use of a ThreatSense scanner to generate a file behavior report identifying suspicious code in a received file.  Doc. No. 910-1 at ¶ 64.

The Bims Report at paragraph 65 is supported by the same documents cited in paragraph 64—the technical presentation, file behavior report, and description of ThreatSense.NET.  Doc. No. 910-1 at ¶ 65 (citing Doc. No. 911-9 (FINJAN-ESET 675884-904), Exh. E (FINJAN-ESET 675772), and Exh. H (FINJAN-ESET 675919) (explaining the use of ThreatSense.Net).  The file behavior report itself includes the majority of information Dr. Bims describes in paragraph 65, including identification of suspicious code in the received file and identification of a hash for the file to allow the products to link the file to the file behavior report.  *See* Exh. E (FINJAN-ESET 675772).  The ESET technical presentation further states "ESET LiveGrid Reputation System contains information about files, their origins, similarities, certificates, URLs and IPs."  Doc. No. 911-9 at FINJAN-ESET 675901.  Paragraph 65 of Dr. Bims' report is notably different from the two paragraphs ESET identifies from Dr. Cole's reports (paragraphs 168 and 171).  Motion at 10.  Namely, the specific technologies contained within Dr. Cole's report such as "████████ ████████████████████" are not discussed in Dr. Bims' report.  Motion at 10.

Similar to paragraphs 61, 66, and 72, paragraph 67 of Dr. Bims' report is an introductory paragraph without citations, but which is based upon Dr. Bims' understanding of network security.  Doc. No. 910-1 at ¶ 67.  ESET identified no confidential information within the paragraph (*See* Doc. No. 911-1 at 11), nor should it have, as the text of the paragraph contains only general information supported by Dr. Bims' experience as well as ESET's public information such as the ESET technical presentation.  *See e.g.*, Doc. No. 911-9 at FINJAN-ESET 675886 (describing the integration of ESET's multi-layered technology); *id.* at FINJAN-ESET 675889 (visually depicting the integration of ESET's core technology such as LiveGrid, including technology previously identified in the Gateway products).

Paragraph 68 of the Bims Report describes how the ThreatSense scanning engine works with ESET scanners to analyze potentially malicious activity.  Doc.

No. 910-1 at ¶ 68.  Dr. Bims cites the ESET technical presentation[2], which describes ESET scanners including the Advanced Memory Scanner and Host-based Intrusion Prevention System (HIPS).  *See* Doc. No. 911-9 at FINJAN-ESET 675894 and -896. He also cites FINJAN-ESET 675799, -814-815, which are portions of the User Guide for ESET's NOD32 Antivirus (one of the products identified as an Endpoint Product) describing the use of scanners and HIPS, as well as ThreatSense to analyze files for malicious activity.  *See* Exh. I (FINJAN-ESET 675787) at -799 (describing scanners, HIPS, and ThreatSense); *id.* at FINJAN-ESET 675814-815 (describing ThreatSense.Net).

Paragraph 69 describes the Host-based Intrusion Prevents System (HIPS), and cites the portion of ESET's technical presentation describing this technology.  Doc. No. 910-1 at ¶ 69 (citing "FINJAN-ESET 675893 (ESET-Technology.pdf at 10)"[3]). Page 10 of the technical presentation, as cited by Dr. Bims, describes pre-defined rules that recognize suspicious behavior, and the graphic visually depicts the operations caused by the rules within the HIPS monitoring system.  Doc. No. 911-9 at FINJAN-ESET 675894.

Paragraph 70 of the Bims Report describes malware analysis using the ThreatSense Engine.  Doc. No. 910-1 at ¶ 70.  Dr. Bims cites the ESET Online Help document detailing the ThreatSense technology, including heuristics, emulation, and generic and virus (i.e., traditional) signature matching.  *See* Exh. F (FINJAN-ESET 675913) at -913-915.  Dr. Bims further describes and cites to the "file behavior report that includes suspicious operations."  Doc. No. 910-1 at ¶ 70 (citing Exh. E

---

[2] Dr. Bims cites "FINJAN-ESET 678893, -895 (ESET-Technology.pdf at pp. 10, 12)."  Doc. No. 910-1 at ¶ 68.  There appears to be a typographical error in the Bates numbers pin cited, as pages 10 and 12 of the document are actually FINJAN-ESET 675894 and -896, which describe HIPS and Advanced Memory Scanner, respectively.  Doc. No. 911-9 at FINJAN-ESET 675894 and -896.

[3] As with the previous paragraph, it appears that the Bates number for the pin cite is off by one page, though the description "ESET-Technology.pdf at p. 10" correctly points to the description of HIPS at FINJAN-ESET 675894.  *See* Doc. No. 911-9.

FINJAN LLC'S OPPOSITION TO MOTION TO EXCLUDE
Case No. 17-cv-0183 CAB (BGS)

1   (FINJAN-ESET 675772) (file behavior report with descriptions of potentially

2   malicious behaviors detected by the ESET products)).

3       Paragraph 73 describes the use of the ThreatSense Engine and HIPS scanner

4   within the products identified as ESET Server Products.  Doc. No. 910-1 at ¶ 70.  It

5   includes citations to solution overview documents for multiple products identified as

6   ESET Server Products.  *Id.*  Each of these solution overview documents describes

7   how ESET servers receive and store code so it can be scanned by HIPS or another

8   ESET scanner.  *See, e.g.*, Exh. J (FINJAN-ESET 675840) at -849 (describing HIPS);

9   *id.* at -852 (describing steps for protection against fileless malware by uploading the

10  sample to the cloud sandbox, zero-day threats using Threat Intelligence, and

11  ransomware by using an in-product sandbox); Exh. K (FINJAN-ESET 675868) at -

12  876-77 (describing the use of antimalware scanner, a cloud sandbox, and HIPS);

13  Exh. L. (FINJAN-ESET 675856) at -862-64 (describing the antimalware scanner,

14  cloud sandbox, and engine).  The cited documents further describes the use of

15  LiveGrid.  Exh. K at FINJAN-ESET 675875; Exh. J at FINJAN-ESET 675847.

16      ESET articulates no reason why paragraphs 55-57, 61-70, or 72-73 should be

17  struck other than its incorrect statement that the terms and concepts mentioned

18  within the paragraphs "come exclusively from ESET's confidential materials as

19  cited in Finjan's other expert reports."  Motion at 5.  As demonstrated above, the

20  terms and concepts are present in ESET's publicly-disclosed documents.  *See supra*

21  pp. 4-11.  True, many of the concepts and terms are also present in ESET materials

22  marked Highly Confidential and cited by Finjan's other experts.  But the mere fact

23  that ESET *also* included this particular information within materials it designated

24  HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY does not transform the

25  public information into protected information under the Protective Order.  "Secrecy

26  is a one-way street: Once information is published, it cannot be made secret again."

27  *In re Copley Press, Inc.*, 518 F.3d 1022, 1025 (9th Cir. 2008).  Federal Rule of Civil

28  Procedure 26(c) grants trial courts discretion to protect "a trade secret or other

*confidential* research, development, or commercial information."  Fed. R. Civ. P. 26(c)(1)(G) (emphasis added).  Only information that is confidential, i.e. non-public, is protectable.  *Id.*; *see also Clark v. Bunker*, 453 F.2d 1006, 1009 (9th Cir. 1972) ("A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business and which gives him an opportunity to obtain an advantage over competitors *who do not know or use it*.") (emphasis added) (quoting Restatement (First) of Torts § 757 cmt. B (Am. L. Inst. 1939)).

> **3.    Paragraphs 58, 59, 60, and 71: The Paragraphs of Dr. Bims' Report that ESET claims contain confidential information are supported by the publicly-available documents cited by Dr. Bims.**

ESET has identified no violations of the Protective Order that would warrant exclusion of Dr. Bims or striking of his report.  As with the paragraphs described above in Part 2, each of the paragraphs ESET identifies as containing protectable information are supported by the publicly-available documents cited by Dr. Bims when considered with his extensive network security experience.  Dr. Bims received no confidential ESET information, and incorporated no confidential ESET information into his report.  Bims. Decl. ¶¶ 4-5; *see also* Doc. No. 911-5 (Dr. Bims' Trial Testimony, Mar. 11, 2020) at 267:22-268:1 (pdf pages 9-10).

Paragraph 58 of the Bims Report describes the ██████████ ███[4] as well as the method ESET's products use to ████████████████████████.  Doc. No. 910-1 at ¶ 58.  Dr. Bims cites both the previously-described exemplary file behavior report (Exh. E (FINJAN-ESET 675772)) and a portion of the ESET technical presentation (Doc. No. 911-9 at FINJAN-ESET 675891).  Doc. No. 910-1 at ¶ 58. The cited file behavior report ██████████████████████ as identified by Dr. Bims.  *Id.*; *see* Exh. E (FINJAN-ESET 675772) (explaining the potential benign

---

[4] Out of an abundance of caution, Finjan is redacting in the public version of this filing the same information ESET redacted from the public version of its Motion, Doc. No. 911-1.  As demonstrated in this section, however, ESET has already included this information in publicly available documents.

FINJAN LLC'S OPPOSITION TO MOTION TO EXCLUDE
Case No. 17-cv-0183 CAB (BGS)

and malicious causes for several "detected behaviors" within the file).  The cited page of the ESET technical presentation then describes how the ESET scanning engine uses both known malicious sample sets and whitelists ██████████ ██████ indeed ████████, or if there has been a false positive and the sample is ████, just as Dr. Bims describes.  Doc. No. 911-9 at FINJAN-ESET 675891.

Paragraph 59 of Dr. Bims' report is likewise supported by the file behavior report and the ESET technical presentation.  Doc. No. 910-1 at ¶ 59.  The example file behavior report itself shows the ████████████████████.  *See* Exh. E (FINJAN-ESET 675772) (identifying the "SHA-1" hash function linked to the 40-digit hash value).  The cited portion of the technical presentation describes the way in which ESET's Cloud Malware Protection System uses LiveGrid and the LiveGrid Feedback System to conduct behavioral analysis based on the malicious characteristics of the file—characteristics that are included in the file behavior report.  Doc. No. 911-9 at FINJAN-ESET 675893.  Elsewhere in the same document, ESET describes LiveGrid's use of the ████████, just as Dr. Bims describes.  Doc. No. 911-9 at FINJAN-ESET 675901 ("ESET LiveGrid Reputation System contains information about files, their origins, similarities, certificates, URLs and IPs.").  It also describes LiveGrid's use of ██████.  *Id.* at FINJAN-ESET 675892.

Paragraph 60 of the Bims Report is likewise supported by the file behavior report, as well as a description of LiveGrid from ESET's public website.  Doc. No. 910-1 at ¶ 60 (citing FINJAN-ESET 675773-74 (ESET Live Grid®.pdf) and FINJAN-ESET 675772).  The LiveGrid website pdf describes the LiveGrid reputation system: "When an executable file or archive is being inspected on user's system, its hash tag is first compared against a database of white- and blacklisted items."  Exh. M (FINJAN-ESET 675773) at -773.  It then gives an example of a window "display[ing] a list of selected files with additional information from ESET LiveGrid®.  The risk level of each is indicated, along with the number of users and

time of first discovery." *Id.* at FINJAN-ESET 675774 (also showing file name). The file behavior report itself includes the ███████████████████, along with information about the file behavior. Exh. E (FINJAN-ESET 675772). And, of course, paragraph 60 builds upon the previous paragraphs within the "Cloud Products" section of Dr. Bims' report. In paragraphs 54, 56, and 57, Dr. Bims cites portions of FINJAN-ESET 675824, which shows the Security Management Center used by LiveGrid displaying various pieces of information about the potentially malicious file, including ████████, hash, ████████████████████████ ████████████  Exh. F (FINJAN-ESET 675824) at -830.

Last, ESET complains that Dr. Bims' paragraph 71 of Dr. Bims' report is a "particularly egregious example of ESET's highly confidential material being transmitted to Dr. Bims." Motion at 13. Notwithstanding the fact that the Court already considered this exact argument from ESET in 2019 (nearly verbatim, *see* Doc. No. 475 at 14), ESET is also wrong. Dr. Bims' paragraph 71 describes ████████ as it would be understood by anyone skilled in the art. *See* Doc. No. 910-1 at ¶ 71 (citing FINJAN-ESET 675913 at -914-15, FINJAN-ESET 675772, and FINJAN-ESET 675884 at -889). The specific information ESET argues is "proprietary confidential information" (██████████████████████████) is not only commonly understood by skilled artisans but also shown in the documents Dr. Bims cites. *See* Bims Decl. ¶ 7. For example, Dr. Bims cites a portion of the ESET technical presentation showing ESET's core technologies including DNA Detection. *See* Doc. No. 910-1 at ¶ 71 (citing FINJAN-ESET 675884 at -889); *see also* Doc. No. 911-9 (FINJAN-ESET 675884) at -889. The more in-depth description of DNA Detection contained within that same document shows a DNA detection example with ████████, which include ████████:



Fig. 2: DNA Detection example

Doc. No. 911-9 at FINJAN-ESET 675891.  The document states that "genes can be easily matched against a huge whitelist set to ensure that they generate no false positives."  *Id.*  A person with Dr. Bims' experience in network security could understand and articulate that such matching is performed by ███—a well-known concept that refers to "transforming any given key or a string of characters into another value."  *See, e.g.¸* Exh. N at 1 (online definition of hashing); *see also* Doc. No. 596-43 (definition of hashing from 2005).  This is also evident because the cited public ESET technical presentation describes ███ numerous times, including DNA ███.  *See*, e.g., Doc. No. 911-9 at FINJAN-ESET 657890 ("Detection types range from very specific hashes . . . to ESET DNA Detections, which are complex definitions of malicious behavior and malware characteristics.");  *id.* at FINJAN-ESET 675892 (ESET performs "hashing of the behavior described in DNA Detections.").  This information, along with Dr. Bims' experience and the other documents Dr. Bims cites (including the file behavior report itself and ESET's Online Help description of ThreatSense) support the entirety of paragraph 71.  *See also* Exh. E (ESET-FINJAN 675772), Exh. F. (FINJAN-ESET 675913) at -914-16.

**4.      The case law does not support exclusion of Dr. Bims**

None of the cases ESET relies upon call for exclusion of the expert where there is no violation of a Protective Order and where the expert's opinions are supported by the documents reviewed and cited.  As the Supreme Court stated in *Kumho Tire*, "the gatekeeping inquiry must be 'tied to the facts' of a particular 'case.'"  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 594 (1993)).  ESET's entire motion relies on its argument that Dr. Bims "relies on data [he] has no right to possess," but the facts set for the above demonstrate that is untrue.  Motion at 3.  ESET's citations to *In re James Wilson Assoc.* and *Kowalski v. Anova Food* are inapposite.  *Id.*  In *In re James Wilson Assoc.*, the Seventh Circuit affirmed exclusion of evidence that was obtained through hearsay; it did not exclude the expert's opinion based on that inadmissible evidence.  965 F.2d 160, 173 (7th Cir. 1992) ("The fact that inadmissible evidence is the (permissible) premise of the expert's opinion does not make that evidence admissible for other purposes, purposes independent of that opinion.").  In *Kowalski v. Anova Food*, there was no dispute that the expert received the confidential information at issue.  *See Kowalski v. Anova Foos, LLC*, No. 11-00795 HG-RLP, 2014 U.S. Dist. LEXIS 182947, at *28 (D. Haw. Dec. 31, 2014).

As described above, Dr. Bims did not merely "parrot" other experts—his opinion is based on the cited documents ESET itself made public and his extensive experience, unlike in the cases ESET cites to support its motion.  *Cf. Monster Energo Co. v. Vital Pharms.*, Inc. No. EDCV 18-1882 JGB (SHKx), 2022 U.S. Dist. LEXIS 214145, at *66 (C.D. Cal. Aug 2, 2022) (excluding portions of expert's opinion in which that expert "'[a]ccept[ed] the conclusions of [Monster's experts]' and assumed" certain facts were true based on these experts' opinions).  This Court has recognized that Dr. Bims is an expert in network security.  Exh. C (3/11/2020 Trial. Tr.) at 234:22-235:3; *cf. Deutz Corp. v. City Light & Power, Inc.*, No. 1:05-cv-3113-GET, 2008 U.S. Dist LEXIS 110202, at *16-17 (D. Ga. Mar. 21, 2008)

(excluding expert opinion where the expert did not have the sufficient background
necessary to render an opinion); *Brown v. Teledyne Cont'l Motors, Inc.*, No. 1:06-
CV-00026, 2007 U.S. Dis. LEXIS 18179, at *8 (N.D. Ohio Mar. 15, 2007)
(excluding unqualified expert).  Unlike in *Imperial Credit,* Dr. Bims did not "rely
upon excerpts from opinions developed by another expert."  *Imperial Credit Indus.
Sec. Litig.*, 252 F.Supp.2d 1005, 1012 (C.D. Cal. 2003); *see also Am. Key Corp. v.
Cole Nat'l Corp.*, 762 F.2d 1569, 1580 (11th Cir. 1985) (finding expert's affidavit
did not create a material issue of fact where expert relied on inadmissible lay
testimony).  Rather, he reviewed ESETs public documents and formulated an
opinion based on that information.  Bims Decl. ¶ 5; *see also, supra* Parts II.C.2-3.
And unlike in *EEOC v.* Bloomberg, Dr. Bims did not "elect not to include"
"countervailing examples" that would work against his opinion.  *EEOC v.
Bloomberg L.P.*, No. 07 Civ. 838 (LAP), 2010 U.S. Dist LEXIS 92511, at *46-47
(S.D.N.Y. Aug 31, 2010).  Nor did Dr. Bims review a "biased" subset of
information (*see Rowe Ent. Inc. v. Williams Morris Agency, Inc.*, No. 98 Civ 8272
(RPP), 2003 U.S. Dist. LEXIS 15976, at *8 (*S.D.N.Y Sept. 15, 2003)), as all the
information he reviewed was made publicly available by ESET and in fact includes
information ESET itself describes as "summarize[ing] the ways in which ESET uses
multi-layered technology . . . by explaining which layers are involved in solving
specific problems and what benefits they provide to the user."  Doc. No. 911-9 at
FINJAN-ESET 675886.  Further, as Dr. Bims will not be testifying, there is no
reason to exclude his testimony based on the availability of other experts.  *See*
Motion at 3.

ESET's various citations to cases regarding the protection of source code are
also irrelevant, as ESET identifies *no* source code included within Dr. Bims' report,
and none of the cases exclude an expert for source code violations.  *See* Motion at 2
citing *Via Vadis Controlling GmbH v. Skype, Inc.*, No. 12-MC-193-RGA, 2013 U.S.
Dist. LEXIS 23434, at *7 (D. Fel. Feb. 21, 2013) (denying petition to compel

discovery from respondents for use in foreign patent infringement cases); *see also* Motion at 15 citing *Raytheon Co v. Cray, Inc.*, No. 2:16-MC-0898 DAK, 2017 U.S. Dist. LEXIS 13341, at *5 (D. Utah Jan 30, 2017) (denying a motion to quash a subpoena where the protective order provided adequate protections for source code); *Emerson Elec. Co. v. SIPCO, LLC*, No. 16-MC-80164-DMR, 2016 U.S. Dist. LEXIS 162088, at *13-14 (N.D. Cal. Nov. 21, 2016) (subjecting an expert who received plaintiff's source code to the prosecution bar within the parties' protective order); *Catch a Wave Techs., Inc. v. Sirius XM Radio, Inc.*, No. C 12-05791 WHA, 2013 U.S. Dist. LEXIS 189086, at *2 (N.D. Cal. Aug 5, 2013) (considering defendant's request for "patent acquisition bar" to be applied against counsel for a period of two years).

> **5.    ESET's discussion of the Court's 2019 Order regarding prior counsel's Protective Order violation is irrelevant to this Motion.**

ESET raises the Court's 2019 Order regarding prior counsel's violation of the Protective Order by improperly taking notes and mapping source code modules. Motion at 16 (referencing Doc. No. 457).  Dr. Bims' conduct is not implicated at all in the Court's prior Order.  *See* Doc. No. 457.  Here, ESET makes no allegation that Dr. Bims improperly reviewed ESET source code, and in fact all of the information contained within Dr. Bims' report was made publicly available by ESET itself as shown in the documents reviewed and referenced by Dr. Bims.  *See supra* Parts II.C.2-3.  ESET's final argument is an irrelevant red herring designed to direct the Court away from its Motion's lack of merits.

## III.    CONCLUSION

Finjan respectfully requests ESET's Motion to Strike and Exclude Dr. Bims be denied.  The Motion is moot, as Dr. Bims will not be testifying at trial, and ESET has previously presented this exact issue to the Court, which denied the motion in 2019.  Additionally, there has been no violation of the Protective Order, and Dr. Bims' report is well supported by the documents ESET itself has made public.

Dated:  April 21, 2023

Respectfully Submitted,

By:   */s/ K. Nicole Williams*
Juanita Brooks, brooks@fr.com
Roger A. Denning, denning@fr.com
Jason W. Wolff, wolff@fr.com
Michael A. Amon, amon@fr.com
K. Nicole Williams, nwilliams@fr.com
Megan A. Chacon, chacon@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070
Fax: (858) 678-5099

Lawrence Jarvis (*pro hac vice*)
FISH & RICHARDSON P.C.
1180 Peachtree St., NE
21st Floor
Atlanta, GA 30309
Tel: (404) 891-5005
Fax: (404) 892-5002

Attorneys for Plaintiff & Counter-
Defendant Finjan LLC

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on April 21, 2023, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

*/s/ K. Nicole Williams*
K. Nicole Williams