NICOLA A. PISANO, CA Bar No. 151282
　NicolaPisano@eversheds-sutherland.com
JOSE L. PATIÑO, CA Bar No. 149568
　JosePatino@eversheds-sutherland.com
JUSTIN E. GRAY, CA Bar No. 282452
　JustinGray@eversheds-sutherland.com
SCOTT A. PENNER, CA Bar No. 253716
　ScottPenner@eversheds-sutherland.com
**EVERSHEDS SUTHERLAND (US) LLP**
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA  92130
TELEPHONE:　858.252.6502
FACSIMILE:　858.252.6503

Attorneys for Defendants and Counter-Plaintiffs
ESET, LLC and ESET, SPOL. S.R.O.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FINJAN LLC,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ESET, LLC, et al.,<br><br>　　　　Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No. 3:17-cv-0183-CAB-BGS<br><br>**[PUBLIC REDACTED VERSION]**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ESET, LLC AND ESET SPOL. S.R.O.'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE '780 PATENT**<br><br>Judge:　Hon. Cathy Ann Bencivengo<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

48849081.2

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1
II. STATEMENT OF FACTS ........ 2
  A. Dr. Mitzenmacher's Alleged Infringement Evidence. ........ 2
III. ARGUMENT ........ 11
  A. Dr. Mitzenmacher's Infringement Analysis Requires Multiple Hashes. ........ 11
  B. Finjan Bears the Burden of Proving Infringement. ........ 14
IV. CONCLUSION ........ 15

# I. **INTRODUCTION**

Pursuant to the Order on Motion for Leave to File Motion for Summary Judgment (D.I. 931), ESET, LLC and ESET, spol. s.r.o. ("ESET") submit this memorandum in support of their motion for summary judgment of non-infringement of U.S. Patent No. 6,804,780 ("the '780 patent") on the grounds that Finjan's proposed expert testimony is legally inadmissible. Finjan's infringement theories for the '780 patent rely on the same interpretation of the claims that was found to be insufficient as a matter of law, following Federal Circuit affirmance of Judge Alsup's non-infringement judgment in the United States District Court for the Northern District of California in *Finjan, Inc. v. Juniper Networks, Inc.*, Case No. 17-05659 (WHA). This Court's construction of the key limitation of claim 9 is identical to that in the *Juniper* case, and affirmed by the Federal Circuit.

Claim 9 of the '780 patent, the only asserted independent claim, requires "performing a hashing function on the Downloadable and the fetched software components to generate a Downloadable ID" (the "hashing" limitation), which this Court construed as "performing a hashing function on the Downloadable *together* with its fetched software components."[1] D.I. 195. As explained in Judge Alsup's *Juniper* opinion (D.I. 511-18 at 9), the Downloadable ID must be reproducible, such that hashing of a Downloadable and its fetched components results in a Downloadable ID that consists of a single hash value.

Finjan's expert report, expert testimony, and trial demonstratives from the March 2020 mistrial establish that its only evidence of ESET's alleged infringement of the '780 patent reprises Finjan's failed theory from *Juniper*.[2] Dr. Mitzenmacher's sole basis for such alleged infringement is that ESET's products hash a Downloadable and its referenced components *separately*, rather than *together* as required by the claims. Because his testimony is inconsistent with this Court's appellate-affirmed construction of the hashing

---

[1] The Court dismissed independent claim 18, the only other independent claim Finjan identified in its infringement contentions, pursuant to Finjan's request during Day 3 of the Covid cancelled trial in 2020. *See* 2020-03-12 Trial Transcript at 390:12-13, 23-25.

[2] Dr. Mitzenmacher, Finjan's expert with respect to alleged infringement of the '780 patent in this case, also served as Finjan's '780 patent infringement expert in the *Juniper* case.

limitation, Dr. Mitzenmacher's expert testimony is inadmissible, and ESET is entitled to grant of summary judgment of non-infringement as a matter of law.

## II. STATEMENT OF FACTS

### A. Dr. Mitzenmacher's Alleged Infringement Evidence.

Dr. Mitzenmacher's infringement expert report for the '780 patent (D.I. 511-12), served January 22, 2019, opines solely on independent claims 9 and 18, and claim 13 that depends from claim 9. While quoting the Court's construction of the hashing limitation, all of Dr. Mitzenmacher's citations to ESET's source code and analysis thereof describe instances where ESET's products hash multiple files ***individually*** (i.e. one hash is generated for each file), and in some cases, those separate hashes may be logically linked to one another. He does not identify even a single instance anywhere in the ESET source code where a downloaded file and its fetched components are hashed ***together***.[3]

ESET's proffer (D.I. 929) noted that, by March 2020, the *Juniper* Court already had granted summary judgment of non-infringement based on Finjan's reading of the hashing limitation. *See*, D.I. 488-1 at 2-3. Finjan's present counsel appealed that judgment to the Federal Circuit, Case No. 19-2405, which affirmed the District Court judgment on October 9, 2020. Finjan's *Juniper* appeal brief argued for the same mistaken interpretation of the hashing limitation that Finjan employs in this case. Unlike ESET's 2019 motion for summary judgment of non-infringement of the '780 patent, where Finjan argued that it was a factual issue whether multiple separate hashes met the "***together***" limitation, the Federal Circuit since has affirmed that Finjan's theory is non-infringing as a matter of law.

During the March 2020 trial, Finjan provided the demonstrative exhibits, reproduced below, as illustrative of Dr. Mitzenmacher's proposed testimony on the '780 patent. ***None*** of Dr. Mitzenmacher's other slides depicted a Downloadable fetching an external software component, combining it with the Downloadable, and then hashing that combined file to

---

[3] Dr. Mitzenmacher also opines that the hashing limitation is met by a file having embedded files within, for example a pdf. But in those cases the embedded files are extracted and then separately hashed, and thus still do not satisfy the "hashing ... together" limitation (nor the "fetching" limitation) of the asserted claims.





create a single Downloadable ID. The slides are entirely consistent with how Dr. Mitzenmacher explained Finjan's alleged infringement theory in his expert report and at his deposition. As detailed below, Dr. Mitzenmacher only ever describes associating *individually* hashed components (as illustrated) or hashing a multi-component file *without* fetching an external software component and without combining the fetched components with the original downloadable and then hashing the newly combined files to generate a single hash value (i.e. the Downloadable ID).

When this issue was raised with the Court in advance of Dr. Mitzenmacher's proposed testimony on Day 3 of the March 2020 trial (*see* Trial Transcript at 392-93), Finjan characterized the foregoing slides as "actually relevant" because "[ESET's] products do do hashes of multiple hashes and then a final hash." *Id.* at 392:17-19. As

demonstrated below, the above slides depict the only infringement theory that Finjan has ever advanced through its expert for the '780 patent in this litigation.

Finjan's 2019 Opposition (D.I. 551) to ESET's motion for summary judgment on the '780 patent further highlights Finjan's commitment to its legally insufficient and flawed infringement theory. In opposing ESET's argument that Dr. Mitzenmacher's opinions rely on combining separately calculated hashes, Finjan argued that "Defendants' theory is inconsistent with the Court's claim construction Order;" that "Defendants attempt to introduce an additional limitation into the claims which was not included in the Court's order arguing that "the [] claims 'require[] that the ID be reduced to a single value;'" and that "a 'collection' of hashes (plural) 'is different from what was actually claimed.'"" D.I. 551 at 10-11. Importantly, Finjan did not argue that ESET misstated Dr. Mitzenmacher's opinions. There is no dispute that Dr. Mitzenmacher's theories are based on combining multiple hashes. In its 2019 Opposition, Finjan further argued that ESET's reliance on Judge Alsup's decision was "tenuous" because that case "did not involve ESET's technologies," as if the claim construction for disputed terms somehow depends on the accused products!<sup>4</sup> Finjan's cross-motion for summary judgment of infringement of the '780 patent likewise demonstrates that Finjan's infringement theory misapplies the Court's construction. *See*, D.I. 501 at 11 (citing Dr. Mitzenmacher's report as "showing ***hashes*** of the ***dropper file in relation to its dropped components or child files***").<sup>5</sup>

Dr. Mitzenmacher's expert report (D.I. 511-12) is 1031 pages long (not including appendices) and consists of 2465 paragraphs. It purports to analyze infringement of the '780 and '086 patents. In ¶ 69 at page 32 of the report, Dr. Mitzenmacher states: "In forming my opinions regarding infringement of the Asserted Patents, I applied the constructions that the Court has construed and/or agreed-upon constructions by both parties

---

[4] Finjan also spuriously argued that because Dr. Spafford's invalidity opinions had adopted ***Finjan's*** construction, Dr. Spafford's non-infringement opinions — based on a proper understanding of the Court's construction — should be disregarded.

[5] Finjan's motion for summary judgment also includes a number of additional citations to Dr. Mitzenmacher's expert report, which are addressed below.

which I provide below in a chart [at page 37]." Pages 113 to 189 of the report set forth Dr. Mitzenmacher's evidence of alleged infringement of the hashing limitation of claim 9 (Element 9(c)) (pages 113-158, ¶¶ 246-371 for "ESET's Cloud Products" and pages 160-189, ¶¶ 378-449 for "ESET's Endpoint Products").

Dr. Mitzenmacher's analysis purports to find "hashing of a Downloadable together with its referenced components" throughout ESET's marketing literature. However, infringement can occur only by embodying of Finjan's alleged inventions in the source code of ESET's products, not by virtue of statements in ESET's marketing literature. Accordingly, ESET focuses on Dr. Mitzenmacher's source code analysis for Finjan's so-called categories of "Cloud Products," ¶¶ 286-371 and "Endpoint Products," ¶¶ 403-457.[6]

Set forth below is the operative language of Dr. Mitzenmacher's analysis of ESET's source code for the Cloud Products, ¶¶ 286-371, in which he purports to identify how the Downloadable ID is generated.

| Report ¶ # | Dr. Mitzenmacher's description of the "Downloadable ID" |
|---|---|
| 286 | N/A – no reference to hashing anything together |
| 287 | "products perform a hashing function on the Downloadable and the fetched software components **to generate a Downloadable ID of hashes** of a dropper with its related dropped components" ... "containing the **hash of the original dropper** and **hashes of the related dropped components**..." |
| 288 | "**...to generate a Downloadable ID of hashes** of a dropper with its related dropped components ... which generates **a group of hashes**..." |
| 289 | "to generate a Downloadable ID through **hashes of the dropper or parent file and their related hashes of dropped or child components**..." |
| 290 | to generate a Downloadable ID through ▮▮▮▮▮ of dropper and dropped files – does *not* describe "hashing ... together" |

---

[6] None of Finjan's citations to marketing literature demonstrate hashing a Downloadable together with its fetched components to generate a single hash file.

| 291 | "*to generate a Downloadable ID of hashes* of portions of the Downloadable and the fetched software components..." |
|---|---|
| 292 - 314 | "*to generate a Downloadable ID* through ▓▓▓▓▓▓▓▓▓▓ *of the dropper (parent) and dropped files (child) using the inherited ParentID*" (i.e., hashes of parent and child are linked, not "hashed ... together") |
| 315 | "where the Downloadables and the components referenced by these Downloadables, such as the parent and child components, will be hashed ▓▓▓▓▓▓▓▓ *to generate an ID of hashes* using the parent file and downloaded file..." |
| 316 - 317 | "where the Downloadables and the components referenced by these Downloadables, such as the parent and child components, will be hashed ▓▓▓▓▓▓▓▓ *to generate an ID of hashes*." |
| 318 | "where the Downloadables and the components referenced by these Downloadables, such as droppers with dropped components, will be hashed ▓▓▓▓▓▓▓▓ *to generate an ID of hashes* of the dropper in relation to its dropped components." |
| 319 | "to generate **an ID using a tree containing hashes** of a dropper with its related dropped components..." |
| 320 | "to generate a Downloadable ID by describing how when there is a LiveGrid Reputation System request, *multiple files are hashed and these file hashes are put into an array*..." |
| 321 | "perform a hashing function on the Downloadable and the fetched software components to generate a Downloadable ID by generating CRC *hashes for the Downloadable and the fetched software components*..." |
| 322 - 331 | "*hashes of multiple files* (...) *are generated for an ID*..." |
| 332 | N/A – no reference to hashing anything together |
| 333 - 334 | "performing a hashing function on the Downloadable and the fetched software components to generate a Downloadable ID, including describing |

| | | |
|---|---|---|
| | | *the related hash of fetched software components in context for request hash*" (i.e., multiple separate hashes) |
| | 335 | "performing a hashing function on the Downloadable and the fetched software components to generate a Downloadable ID, including using certain functions to **hash the file or scanned object and related hash of fetched software components**" |
| | 336 | "including buffering the Downloadable and the fetched software components ▮▮▮▮▮ to generate a Downloadable ID." <br><br>*See* Spafford Expert Report (D.I. 511-4) at ¶ 606 – No identification of source code lines. Moreover, lines 86-90 and 93-177 calculate a ▮▮▮▮▮. |
| | 337 - 353 | "***to generate an ID of hashes*** of the dropper in relation to its dropped components" |
| | 354 - 357 | "perform a hashing function on the Downloadable and referenced software components because the Line Script signatures ***are generated based on hashes*** of the Downloadable (e.g., Javascript file or code) and referenced software components (e.g., other parts of the web page or PDF containing the Javascript)." |
| | 358 | "perform a hashing function on the Downloadable and the fetched software components ***to generate a Downloadable ID through hashing of the data buffer containing the dropper and dropped files***." |
| | 359 - 361 | "perform a hashing function ▮▮▮▮▮ on the Downloadable and the software components ***to generate a Downloadable ID of hashes***..." |
| | 362 - 371 | "***to generate a Downloadable ID which comprises a [sic] hashes of portions of the Downloadable ... and hashes of portions of the fetched software components ...***" |

Set forth below is the operative language of Dr. Mitzenmacher's analysis of ESET's source code for the Endpoint Products, ¶¶ 403-457, in which he purports to identify how the Downloadable ID is generated.

| Report ¶ # | Dr. Mitzenmacher's description of the "Downloadable ID" |
|---|---|
| 403 | N/A – Contains no references or pin cites to hashing anything **together** |
| 404 | "the Downloadables and the components referenced by these Downloadables, such as droppers (parent) with dropped components (child), will be hashed ▮▮▮▮ *to generate an ID of hashes of the dropper in relation to its dropped components*." <br><br> This is the same as the analysis for the Cloud Products. |
| 405 - 406 | "Eset Endpoint Products fetch at least one software component identified by the one or more references through the use of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ such as (1) hash-based reporting and statistics of scanned files; and (2) hash-based lookups such as LiveGrid reputation lookups..." <br><br> N/A – the cited pages of code contain no references or pin cites to hashing anything together. *See* Spafford Expert Report (D.I. 511-4) at ¶ 637. |
| 407 | "performing a hashing function on the Downloadable and the fetched software components *to generate a Downloadable ID, including describing the related hash of fetched software components in context for request hash*." <br><br> Describes multiple associated hashes, not "hashing ... together." |

| 408 | "performing a hashing function on the Downloadable and the fetched software components *to generate a Downloadable ID, including describing the* ▬▬▬▬ *in the context for request hash*." Describes multiple associated hashes, not "hashing ... together." |
|---|---|
| 409 | "performing a hashing function on the Downloadable and the fetched software components to generate a Downloadable ID, including using certain functions *to hash the file or scanned object and related hash of fetched software components*..." |
| 410 | "performing a hashing function on the Downloadable and the fetched software components to generate a Downloadable ID, *including* ▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬ *to generate a Downloadable ID*." No pin cites to source code describing ▬▬▬▬▬▬▬▬▬. |
| 411 - 412 | "where the Downloadables and the components referenced by these Downloadables, such as droppers with dropped components, will be hashed (via PECRC) *to generate an ID* ▬▬▬▬▬ *of hashes of the dropper in relation to its dropped components*." |
| 413 | "*multiple files are hashed and these file hashes are put into an array*..." |
| 414 | "perform a hashing function on the Downloadable and the fetched software components *to generate a Downloadable ID by generating* ▬▬▬▬ *for the Downloadable and the fetched software components*..." |
| 415 - 424 | "*hashes of multiple files ... are generated for an ID*..." |
| 425 | "Eset Endpoint Products use a text processor, which is a component of Script Scanner which provides ScriptProcessors that are used to extract JavaScript and VBS scripts from HTML files..." No description of fetching or hashing anything together. |
| 426 - 429 | "perform a hashing function on the Downloadable and referenced software components because the *Line Script signatures are generated based on* |

9                                              17cv0183

| | | |
|---|---|---|
| | | *hashes of the Downloadable (e.g., Javascript file or code) and referenced software components* (e.g., other parts of the web page or PDF containing the Javascript)." Does not describe or provide pin cites to "hashing ... together" of a Downloadable and referenced components. *See* Spafford Expert Report (D.I. 511-4) at ¶ 592 and ¶ 615 (Each Line Script signature applies to a single file, without any fetching). |
| | 430 - 431, 433 | "perform a hashing function ▮▮▮▮▮▮▮▮▮▮ on the Downloadable and the software components *to generate a Downloadable ID of hashes* (e.g. content hashes, DNA hashes, fast hashes and ▮▮▮▮▮▮▮▮▮▮ ) *of the Downloadable and the software components*..." |
| | 432 | "perform a hashing function on the Downloadable and the fetched software components *to generate a Downloadable ID of* ▮▮▮▮▮▮ *of multiple files* in an array..." |
| | 434 - 436 | "perform a hashing function on the Downloadable and the fetched software components to *generate a Downloadable ID which comprises a [sic] hashes of portions of the Downloadable* (e.g. HTML/iFrame and other executables) *and hashes of portions of the fetched software components*..." |
| | 437 | "perform a hashing function on the Downloadable and the fetched software components *to generate a Downloadable ID to generate an ID which comprise of hashes of portions of the Downloadable* (e.g. PDF) *and hashes of portions the fetched software components*..." |
| | 438 - 443 | "perform a hashing function on the Downloadable and the fetched software components *to generate a Downloadable ID which is comprised of hashes of portions of the Downloadable* (...) *and hashes of portions the fetched software components*..." |

## III. ARGUMENT

### A. Dr. Mitzenmacher's Infringement Analysis Requires Multiple Hashes.

As will be readily observed from the tables above, Dr. Mitzenmacher never describes even a single instance within the ESET source code for the Cloud Products in which a single hash value is created by hashing the combined contents of a Downloadable and its fetched software components as is required by this Court's construction. In the vast majority of paragraphs describing the alleged infringement, Dr. Mitzenmacher refers to "generating a Downloadable ID of *hashes*," which he further describes as "containing the *hash of the original dropper* and *hashes of the related components*", "a *group of hashes*", "a *tree containing hashes*", and "*hashes of multiple files*." See, supra, ¶¶ 287-371.[7] Those analyses do not comply with this Court's construction, as explained by Judge Alsup and affirmed by the Federal Circuit in the *Juniper* appeal. The only proper application of this Court's construction requires that the hashing be performed on the combination of the Downloadable and fetched software component(s), resulting in a single hash value. Indeed, only by fetching the referenced software components by the Downloadable, and hashing the combined data from both the referenced components and the Downloadable, can the objective of having a reproducible Downloadable ID be achieved. Achieving the same Downloadable ID by hashing the fetched components separately from the Downloadable itself would be virtually mathematically impossible. See D.I. 488-1 at 2; D.I. 511-18 at 7-9. This Court's claim construction, as explained by Judge Alsup and affirmed by the Federal Circuit, requires combining the *data* of the Downloadable and the fetched software components, and once the *data* has been combined, performing a hashing function on the combined *data* to generate a *single* hash value (i.e. the Downloadable ID). Combining the *hashes* together, as Dr. Mitzenmacher and Finjan attempt to do, is legally erroneous.

---

[7] Dr. Mitzenmacher refers to hashing of ▮▮▮▮▮▮▮▮▮▮▮▮, but does not provide ▮▮▮▮ so ▮▮▮ does he allege that ▮▮▮▮▮▮▮ results in "hashing ... together" of a Downloadable and a referenced co

Dr. Mitzenmacher's infringement analyses of the source code for ESET's Endpoint products fares no better. For the Endpoint Products, Dr. Mitzenmacher reprises his argument that a Downloadable and its referenced components "will be hashed ***to generate an ID of hashes*** of the dropper in relation to its dropped components." D.I. 511-12 at ¶¶ 404, 411-412. That is not "hashing ... together" as required by the claim, but rather a description of a *logical link* between the separate hashes, as stated for ¶ 407: "***to generate a Downloadable ID, including describing the related hash of fetched software components in context for request hash***." Any discussion, as in ¶¶ 407-409 of "related" hashes conclusively demonstrates that the data for any of the fetched components in a given file in ESET's products are not first combined with the file and subsequently hashed as a single set of data. Instead, in ESET's products, as Dr. Mitzenmacher acknowledges, each file is hashed independently.[8]

Similarly, Dr. Mitzenmacher's analysis in ¶ 410 refers to ███████████████████████████████████████████████, but does not explain how that would result in "hashing ... together" as required by the claim. Dr. Mitzenmacher's analysis consists is legally insufficient to overcome Finjan's burden on summary judgment. Finjan also cannot argue that Dr. Mitzenmacher will further expound or explain what is in his expert report as any such further elaboration would be inadmissible because it was not previously disclosed. Moreover, as Dr. Spafford explains in his expert report (D.I. 511-4 at ¶ 606), the source code module Dr. Mitzenmacher identified does not combine data streams for a file and referenced component.

Paragraphs 411-424 all refer to generating hashes (plural) of ***multiple*** files to generate a Downloadable ID, which does not comport with the Court's construction and thus cannot constitute evidence of infringement.

---

[8] Dr. Mitzenmacher's analysis demonstrates there is no factual dispute regarding how ESET's products hash each individual file separately. The parties agree that ESET's products create a separate and independent hash for each and every file and each and every fetched (or extracted) component.

1    Paragraph 425 does not describe fetching or "hashing ... together" of anything, but rather *extracting* Javascript or VBS scripts from HTML files. Although Dr. Mitzenmacher appears to equate "extracting" and "fetching," the two words have almost opposite meanings: "to extract" means to remove or take something out of, whereas "to fetch" means to go get and bring back something. Moreover, it would be legally incorrect to claim that extracted components are "fetched." This is because the extracted components originally are contained *inside* what must be identified as the ***Downloadable***. For example, assume if the file downloaded (i.e. the Downloadable) is an HTML file and consists of 100 lines of code and that lines 30-50 of that file contain Javascript. ESET's products hash the full 100 line file to generate one hash and then extract lines 30-50 and hash just lines 30-50 separately to create a second hash. Based on the claim language, lines 30-50 cannot be a "fetched component" because lines 30-50 are part of the ***Downloadable itself***. Thus, even though ESET's products still produce multiple hashes (and therefore are incapable of meeting the hashing limitation) it is also legally erroneous for Dr. Mitzenmacher to claim that components contained ***within the Downloadable*** can qualify as "fetched components." As explained above, these components are "extracted" from the Downloadable not "fetched."

In paragraphs 426 through 429, Dr. Mitzenmacher makes the same legally erroneous argument with respect to Line Script signatures. There, he claims that the ***signatures*** are generated based on hashes of a Downloadable with its referenced software components, but overlooks that the embedded components are not "fetched" as explicitly required by the claims. Additionally, there is no dispute that Line Script signatures consist of multiple hashes, which does not meet the required claim construction. Further, as explained by Dr. Spafford, if an embedded component is extracted, it is ***separately*** hashed. *See* D.I. 511-4 at ¶¶ 592, 615.

Paragraphs 430 to 433 all refer to generating a Downloadable ID of hashes (plural), which as explained above, does not meet the claim limitation. Paragraphs 434 to 443 all refer to a Downloadable ID as comprising hashes of ***portions*** of the Downloadable and

hashes of ***portions*** of the fetched software components.  Not only does that argument improperly contend that ***multiple*** hashes – rather than the required ***single hash*** – may form the Downloadable ID, but Dr. Mitzenmacher appears to further suggest that the associated hashes need not even correspond to the whole Downloadable or the entirety of the fetched component.  Plainly, Dr. Mitzenmacher's infringement analysis is far afield from the Court's construction, and should not be presented to the jury.

Notably, Dr. Mitzenmacher's testimony during his expert deposition, conducted March 7, 2019, sheds no additional light on his opinions.  Instead, he testified that without consulting the ESET source code, he could provide no examples illustrating the hashing limitation.  *See, e.g.*, D.I. 511-26 at 163, 167-168.  Neither could he recall what he meant in his expert report when he referred to "an ID of hashes (plural)."

**B.     Finjan Bears the Burden of Proving Infringement.**

ESET submits that, as set forth above, Finjan's infringement case for the '780 patent is predicated entirely upon its improper interpretation of the hashing limitation of claim 9, which was rejected by the Federal Circuit in *Juniper*.  For each of the paragraphs discussing ESET source code above, Dr. Mitzenmacher explicitly has described the "hashing limitation" to generate a Downloadable ID of ***hashes*** (plural), not a single hash as required by the properly construed claim and what also, incidentally, is the purported advancement of the '780 invention.  To the extent that the Court finds that Dr. Mitzenmacher's contentions do not provide enough specificity as to exactly how the claimed hashing function is performed as a single hash – and none do – this Court should conclude that Finjan has failed to establish infringement by a preponderance of the evidence.

## IV. CONCLUSION

ESET respectfully submits that, as a matter of law, Finjan has failed to establish a triable issue of infringement for the '780 patent, and that ESET is entitled to summary judgment of non-infringement of the '780 patent for all of its accused products.

Dated: June 2, 2023

Respectfully submitted,

**EVERSHEDS SUTHERLAND (US) LLP**

/s/ Nicola A. Pisano
NICOLA A. PISANO, CA Bar No. 151282
  NicolaPisano@eversheds-sutherland.com
JOSE L. PATIÑO, CA Bar No. 149568
  JosePatino@eversheds-sutherland.com
JUSTIN E. GRAY, CA Bar No. 282452
  JustinGray@eversheds-sutherland.com
SCOTT A. PENNER, CA Bar No. 253716
  ScottPenner@eversheds-sutherland.com
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA  92130
TELEPHONE:     858.252.6502
FACSIMILE:      858.252.6503

Attorneys for Defendants and Counter-Plaintiffs
ESET, LLC and ESET, SPOL. S.R.O.