NICOLA A. PISANO, CA Bar No. 151282
   NicolaPisano@eversheds-sutherland.com
JOSE L. PATIÑO, CA Bar No. 149568
   JosePatino@eversheds-sutherland.com
JUSTIN E. GRAY, CA Bar No. 282452
   JustinGray@eversheds-sutherland.com
SCOTT A. PENNER, CA Bar No. 253716
   ScottPenner@eversheds-sutherland.com
**EVERSHEDS SUTHERLAND (US) LLP**
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA 92130
TELEPHONE:   858.252.6502
FACSIMILE:   858.252.6503

Attorneys for Defendants and Counter-Plaintiffs
ESET, LLC and ESET, SPOL. S.R.O.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN LLC,<br><br>    Plaintiff,<br><br>v.<br><br>ESET, LLC, et al.,<br><br>    Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No. 3:17-cv-0183-CAB-BGS<br><br>**ESET, LLC AND ESET, SPOL. S.R.O.'S MEMORANDUM IN SUPPORT OF MOTIONS *IN LIMINE* A & B**<br><br>Date:   August 10, 2023<br>Time:   10:00 a.m.<br>Place:   Courtroom 15A<br>Judge:   Hon. Cathy Ann Bencivengo |

17cv0183

49070035.2

## I.  ESET'S MOTIONS *IN LIMINE*

### A.  Motion *in Limine* A – The Parties Should Be Precluded From Affirmatively Using Discovery Obtained During the '305 Discovery Period.

The '305 patent is no longer in suit.  Yet, Finjan seeks to affirmatively use discovery at trial (and in particular deposition testimony) for the '844, '780, and '086 patents ("the Remaining Patents") that was obtained during the time period discovery was opened for *only* the '305 patent ("the '305 discovery").  Because the discovery taken in 2020-2021 was limited to the '305 patent only, and Finjan's experts' 2018 analysis of the Remaining Patents did not rely on the '305 discovery, permitting the '305 discovery to be used affirmatively at trial would allow Finjan to improperly augment discovery it should have obtained in 2018.  Finjan's change in attorneys does not provide an excuse to re-do the depositions conducted by Finjan's former counsel.  Accordingly, all discovery obtained during the '305 discovery period should be barred from affirmative use by either party at trial.[1]

#### 1.  Procedural and Factual Background

As this Court will recall, the '305 patent was initially stayed due to institution of ESET's IPR against the '305 patent.  Discovery relating to the other five patents (at that time) was *complete* and trial had already begun.  Due to the Covid-created mistrial, this Court reopened discovery related *solely to the '305 patent* to permit all six patents to be tried together in the event of a retrial.

On June 23, 2020 this Court "lift[ed] the stay on the '305 patent" and stated that "discovery may commence."  D.I. 802.

On September 1, 2020, Magistrate Judge Skomal issued a scheduling order that required the parties to "meet and confer regarding *'305 patent discovery* to identify what discovery they need *that is not cumulative or duplicative of discovery already completed* and when it can be completed."  D.I. 811 at 2 (emphasis added).

---
[1] Nothing in this request prohibits use of this discovery for impeachment purposes.

On October 9, 2020, as part of a joint filing, Finjan proposed an expedited discovery schedule for the '305 patent stating "discovery for the other patents…has already been completed." D.I. 820 at 1. Finjan also resisted depositions of its own witnesses regarding the '305 patent because the witnesses had already been deposed. *Id.* at 2 ("Eset [sic] already deposed [Mr. Touboul] in this case on July 23, 2018 and Finjan informed Eset [sic] that his deposition would be Eset's [sic] sole opportunity to ask him questions about the '305 [sic] patent and that he would not be made available again.").

On December 12, 2020, following ESET's request for an additional deposition of Mr. Touboul, one of the named inventors on the '305 patent, Magistrate Judge Skomal cautioned that the additional deposition time he was granting was "not an opportunity to revisit previous requests by asking for some of the same documents again or to revisit any issues with the prior productions." D.I. 836 at 7. In addition, the Court "require[d] Eset [sic] to **narrow the scope** of the topics of the deposition **to those specific to the '305 Patent**." *Id* (emphasis added). The Court went on to state that it "expects the questioning will **strictly address only the '305 patent**. This is **not an opportunity to revisit topics previously covered or clarify prior testimony** with further questioning." *Id* (emphasis added).

As part of the reopened discovery period related to the '305 patent, between February 16-21, 2021, Finjan took 4 depositions of ESET witnesses.

On May 3, 2023, this Court granted the joint stipulation of the parties dismissing the '305 patent with prejudice.

Finjan's pretrial disclosures to ESET include deposition designations from the four depositions conducted in 2021.

2. Argument

Despite the '305 patent no longer being involved in the case, Finjan seeks to use discovery obtained strictly related to the '305 patent in its case in chief. During the meet and confer process, Finjan claimed that the testimony obtained in 2021 related to the '305 patent **and** the Remaining Patents. But if the testimony obtained in 2021 related to the

49070035.2

'305 patent *and* the Remaining Patents, Finjan should have asked those questions of the ESET witnesses back in 2018. Finjan's failure to ask the questions then is not a basis for Finjan to "do over" or augment the testimony on the Remaining Patents now.

Magistrate Judge Skomal made clear that when ESET sought to obtain additional deposition testimony of Finjan's witnesses, ESET had to "***narrow the scope*** of the topics of the deposition ***to those specific to the '305 Patent***." D.I. 836 at 7 (emphasis added). ESET was also warned that the questioning had to "***strictly address only the '305 patent***" and that the additional deposition time was "***not an opportunity to revisit topics previously covered or clarify prior testimony***." *Id* (emphasis added).

Finjan evidently believes that the rules set forth by this Court for the scope of discovery during the '305 discovery period do not apply to it. By Finjan's own admission, its questions did not "strictly address only the '305 patent." Indeed, if the testimony sought applied to more than the '305 patent, the questioning to elicit that testimony was improper as beyond the scope of permissible discovery. Such questions could have and should have been asked of ESET's witnesses in 2018. Moreover, Finjan's efforts to use the 2021 deposition testimony for patents other than the '305 patent demonstrate that Finjan, despite the admonition to the contrary by this Court, intentionally violated this Court's proscription not to "revisit topics previously covered or clarify prior testimony."

During the meet and confer, Finjan suggested that it would "stipulate that neither party affirmatively use discovery ***exclusively*** related to the '305 patent obtained during the '305 discovery period." Penner Declaration in Support of ESET's Motions *in Limine* A & B ("Penner Decl."), Ex. A (emphasis added) at 1. But Finjan's mere offer demonstrates that it went beyond the permissible scope of discovery during the '305 discovery period because ***all*** discovery was supposed to be "exclusively related" to the '305 patent. Finjan's proposal is additionally unworkable because it would require this Court to make a determination as to which questions were "dual use" and which were not, thereby diving into the similarities and/or differences between the patents, the

3                                                                      17cv0183

49070035.2

claims, and ESET's technology.

It is clear that any testimony that relates "exclusively" to the '305 patent is no longer relevant because the '305 patent is out of the case. And with respect to discovery that did not "exclusively" relate to the '305 patent, it was outside the scope of permissible discovery and therefore should be excluded on that basis as well.[2]

None of the discovery, deposition or otherwise, obtained during the period meant exclusively for discovery pertaining solely to the '305 patent is relevant. The parties should therefore be precluded from affirmatively relying on any such discovery.

### B.  Motion *in Limine* B – The Parties Should Be Precluded from Making Any Reference to ESET's Patents.

ESET is innovator in the malware detection field whose cyber security products have won numerous awards and worldwide acclaim. ESET's innovations are mostly regulated as highly protected trade secrets. ESET opts to protect its novel detection and security algorithms by preventing disclosure of its algorithms and processes to the public. As such, ESET generally does not participate in patenting its innovations, instead preferring to retain those innovations as trade secrets. ESET keeps its innovations hidden from public view to prevent attackers from learning the specific methods and processes that ESET uses to successfully protect over one hundred million users worldwide.

Finjan's exhibit list includes two ESET patents, one a design patent (U.S. Patent No. D600,965 S) relating to a type of foldable CD jewel cases (clearly having nothing to do with cyber security methods) and one related to detecting software exploitation (U.S. Patent No. 8,943,592).

During the meet and confer relating to this MIL, Finjan informed ESET that the only basis for its intended use of these patents is to challenge ESET's recognition and acclaim as an innovative company.

Use of these patents, or any reference to the number, type, or kinds of patents that

---

[2] ESET made Finjan aware that the testimony it was eliciting in 2021 was beyond the scope of the '305 patent. For example, during Mr. Kosinar's February 22, 2021 deposition, ESET objected to nearly every designation that Finjan attempts to offer as being outside the scope of the permissible '305 discovery. Penner Decl. at ¶ 3.

ESET has is wholly irrelevant, unduly prejudicial, and has a high likelihood of promoting jury confusion. The relative number (or even existence) of a company's patent portfolio does not in any way relate to the company's status as an industry innovator. While obtaining a great number of patents may tend to demonstrate a propensity to litigate (as here for Finjan), it does not demonstrate that the recipient is a true innovator. Conversely, a paucity of patents does not reasonably negate innovator status, because there are many ways to secure intellectual property (such as trade secrets) that are of greater or equal value. For example, a patent has a 20-year term, while a closely-guarded trade secret may provide protection for many decades. No one would seriously contend that Coca Cola, which has no patent on its formula for Coke, is not innovative or that its intellectual property is not valuable.

As the Federal Circuit explained in the obviousness context, commercial success of a product "speaks to the *merits of the invention*, not to how many patents are owned by a patentee." *Merck Sharp & Dohme Corp. v. Hospira, Inc.*, 874 F.3d 724, 731 (Fed. Cir. 2017). Here, the success of ESET's products is demonstrated over 30 years by its installed base of over 110 million users. Finjan, on the other hand, lasted less than a decade in the marketplace despite its patent portfolio, much of which came into existence long after Finjan ceased having technical employees!

Patents and trade secrets are equally legitimate methods for protecting inventions and innovations. *CVD, Inc. v. Raytheon Co*., 769 F.2d 842, 850 (1st Cir. 1985) ("As with patent law, the rationale behind state trade secret law is to encourage invention, and to provide innovators with protection for the fruits of their labors."). As the Supreme Court has long recognized, "[t]rade secret law and patent law have co-existed in this country for over one hundred years. Each has its particular role to play, and the operation of one does not take away from the need for the other." *Kewanee v. Bicorn*, 416 U.S. 470, 493 (1974). And despite the rationale of encouraging invention and protecting the fruits of labor, when it comes to the rules of disclosure, "patents are the direct opposite of trade secrets." *Interactive Fitness Holdings, LLC v. Icon Health & Fitness, Inc*., No. 1:11-CV-

00075, 2013 U.S. Dist. LEXIS 26039, at *7 (D. Utah Feb. 25, 2013).  But this is because "unlike a patent monopoly, trade secret protections are theoretically unlimited in duration, lasting as long as the information remains a trade secret." *NOVA Chems., Inc. v. Sekisui Plastics Co.*, 579 F.3d 319, 327 (3d Cir. 2009).

Thus, it should come as no surprise that a company in the cyber security field may choose to keep its innovations secret to stay a step ahead of the attackers.  Finjan seeks to ascribe some sort of "fault" to ESET for choosing to protect its innovative products through trade secret versus patent by disparaging the number and/or type of patents that ESET has sought.  Allowing Finjan to raise this issue as denigrating ESET's technological achievements is improper.  First, it would be legally improper to allow Finjan to suggest to the jury that the only way to measure innovation is by the number of patents.  Second, the number of ESET's patents is irrelevant to any issue in the case.  Third, if Finjan were permitted to introduce such erroneous legal theory, ESET would necessarily have to rebut it by expending time at trial explaining the difference between trade secrets and patents, thus adding another layer of additional complexity directed to issues wholly irrelevant to the case.

Because ESET's patent portfolio (or lack thereof) is wholly irrelevant to this case Finjan should be precluded from making any reference to ESET's patents, including any reference to the number of patents, type of patents, or any intimation that a lack of patents is a sign of lack of innovation.

| | |
|---|---|
| Dated: July 20, 2023 | Respectfully submitted,<br><br>**EVERSHEDS SUTHERLAND (US) LLP**<br><br>*/s/ Scott A. Penner*<br>NICOLA A. PISANO, CA Bar No. 151282<br>  NicolaPisano@eversheds-sutherland.com<br>JOSE L. PATIÑO, CA Bar No. 149568<br>  JosePatino@eversheds-sutherland.com<br>JUSTIN E. GRAY, CA Bar No. 282452<br>  JustinGray@eversheds-sutherland.com<br>SCOTT A. PENNER, CA Bar No. 253716<br>  ScottPenner@eversheds-sutherland.com<br>12255 EL CAMINO REAL, SUITE 100<br>SAN DIEGO, CALIFORNIA  92130<br>TELEPHONE:     858.252.6502<br>FACSIMILE:      858.252.6503<br><br>Attorneys for Defendants and Counter-Plaintiffs ESET, LLC and ESET, SPOL. S.R.O. |

49070035.2