## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN LLC, ) | |
| ) | |
| Plaintiff, ) | **FILED** |
| ) | 9/11/2023 |
| v. ) | CLERK, U.S. DISTRICT COURT |
| ) | SOUTHERN DISTRICT OF CALIFORNIA |
| ) | BY  s/ L. Hernandez      DEPUTY |
| ) | |
| ESET, LLC and ESET SPOL. S.R.O. ) | No. 17-cv-183-CAB-BGS |
| Defendants. ) | |
| ) | |
| ) | |

## JURY INSTRUCTIONS

Dated:  September 8, 2023

Hon. Cathy Ann Bencivengo
United States District Judge

1

## COURT'S INSTRUCTION NO. 1

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

## COURT'S INSTRUCTION NO. 2

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

## COURT'S INSTRUCTION NO. 3

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

## COURT'S INSTRUCTION NO. 4

The evidence that you are to consider in deciding what the facts are consists of:

1. The sworn testimony of any witness (either by live witnesses or by previously recorded testimony);
2. the exhibits that are admitted into evidence;
3. any facts to which the parties have agreed; and
4. any facts that I instruct you to accept as proved.

## COURT'S INSTRUCTION NO. 5

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you must not consider them in deciding the facts of this case:

1. Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they said in their opening statements, will say in their closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2. Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3. Any testimony that is excluded or stricken, or that you were instructed to disregard, is not evidence and must not be considered.

4. Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

6

## COURT'S INSTRUCTION NO. 6

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

## COURT'S INSTRUCTION NO. 7

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1.   the opportunity and ability of the witness to see or hear or know the things testified to;
2.   the witness's memory;
3.   the witness's manner while testifying;
4.   the witness's interest in the outcome of the case, if any;
5.   the witness's bias or prejudice, if any;
6.   whether other evidence contradicted the witness's testimony;
7.   the reasonableness of the witness's testimony in light of all the evidence; and
8.   any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

8

## COURT'S INSTRUCTION NO. 8

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.

Portions of the deposition testimony of a number of witnesses were presented a trial.   Insofar as possible, you should consider deposition testimony presented to you in court in lieu of live testimony in the same way as if the witness had been present to testify.

## COURT'S INSTRUCTION NO. 9

You have heard testimony from Dr. Eric Cole, Dr. Michael Mitzenmacher, Mr. Kevin Arst, Dr. Eugene Spafford, Mr. Thomas Britven, and Dr. Trent Jaeger who testified to opinions and the reasons for those opinions. This opinion testimony is allowed, because of the education or experience of these witnesses.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

## COURT'S INSTRUCTION NO. 10

As I did at the start of the case, I will give you a summary of each side's contentions in this case. Then I will provide detailed instructions on what each side must prove to establish its contentions.

Finjan alleges patent infringement by ESET, LLC and ESET spol. s.r.o. As I go through these instructions with you, I will refer to the defendants jointly as the ESET Entities.

Finjan seeks money damages from the ESET Entities for allegedly infringing the '844, '780 and '086 Patents by making, importing, using, selling or offering for sale systems and methods that Finjan argues are covered by Claims 1, 7, and 15 of the '844 Patent; Claims 9 and 13 of the '780 Patent; and Claim 24 of the '086 patent. Collectively, the patents may be referred to as the Asserted Patents and the claims as the Asserted Claims.

The products and services that are alleged to infringe one or more of the Asserted Claims are:

1. The ESET Gateway Security Product
2. ESET Server Products: ESET Mail Security and ESET File Security
3. ESET Endpoint Products: NOD32 Antivirus, Smart Security, Endpoint Security, Endpoint Antivirus, Cyber Security, and Internet Security
4. The Cloud Malware Protections System ("CMPS")
5. The LiveGrid Feedback System
6. The LiveGrid Reputation System.

The ESET Entities deny that they infringe the Asserted Claims of the Asserted Patents, and they further contend that the Asserted Claims are invalid.

Your job is to decide whether each of the accused products and/or services infringed an Asserted Claim, whether any of the Asserted Claims are invalid and whether certain other defenses raised by the ESET Entities have been established.

If you decide that any of the Asserted Claims was infringed and is not invalid, and not subject to any other defense, you will then need to decide monetary damages to awarded to Finjan to compensate for the infringement.

## COURT'S INSTRUCTION NO. 11

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

To know what a claim covers, a claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are often referred to as "claim elements" or "claim limitations." The coverage of a patent is assessed claim-by-claim. When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The first step is to understand the meaning of the words used in the patent claim.

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions of the terms I have construed to the issues that you are asked to decide in this case. Therefore, I have determined the meaning of certain claim terms and I will provide to you my definitions of certain claim terms. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

The beginning portion, also known as the preamble, of a claim often uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed. This is true even if the accused product contains additional elements.

12

For any words in the claims for which I have not provided you with a definition, you should apply the ordinary meaning of those terms in the field of the patent. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity. These issues are for you to decide.

I will now explain to you the meaning of some of the words of the claims in this case.

When deciding the issues you are being asked to decide, you must apply my definitions of the following claim terms:

A "**Downloadable**" as used in all three Asserted Patents is "**an executable or interpretable application program which is downloaded from a source computer and run on a destination computer**."

The phrase "**before the web server makes the Downloadable available to web clients**" appearing in the '844 patent means "**before the Downloadable is available on a web server to be called up or forwarded to a web client**."

The phrase "**software components required to be executed by the Downloadable**" appearing in the '780 patent means "**components of code that the Downloadable is required to execute**."

The phrase "**fetch**" appearing in the '780 patent means "**to retrieve**" the components of code.

The phrase "**performing a hashing function on the Downloadable and the fetched software components to generate a Downloadable ID**" appearing in the '780 patent means "**performing a hashing function on the Downloadable together with its fetched software components**."

## COURT'S INSTRUCTION NO. 12

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, claims 1 and 15 of the '844 Patent, Claim 9 of the '780 Patent, and Claim 24 of the '086 Patent are each independent claims.

The remaining asserted claims, Claim 7 of the '844 Patent and Claim 13 of the '780 patent are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim to which it refers. A product [or process] that meets all of the requirements of both the dependent claim and the claim to which it refers is covered by that dependent claim.

## COURT'S INSTRUCTION NO. 13

I will now instruct you how to decide whether or not Finjan has proven that each of the ESET Entities has infringed the Asserted Claims of the Asserted Patents. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another.

In this case, Finjan has alleged that each ESET entity directly infringed the Asserted Claims of the Asserted Patents.

In order to prove infringement, Finjan must prove that the requirements for infringement are met by a preponderance of the evidence, i.e., that it is more likely than not that all of the requirements of infringement have been proved.

## COURT'S INSTRUCTION NO. 14

In order to prove direct infringement by literal infringement, Finjan must prove by a preponderance of the evidence, i.e., that it is more likely than not, that each ESET Entity made, used, sold, offered for sale within, or imported into the United States a system or method that met all the limitations of an Asserted Claim and did so without the permission of Finjan during the time the Asserted Patent in which the Asserted Claim appears was in force. You must compare the Accused Products with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met by an Accused Product.

You must determine, separately for each asserted claim, whether or not there is infringement. For dependent claims, if you find that a claim to which a dependent claim refers is not infringed, there cannot be infringement of that dependent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the Accused Product meets the additional requirement(s) of any claim that depends from the independent claim to determine whether the dependent claim has also been infringed. A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirement(s) of its own.

## COURT'S INSTRUCTION NO. 15

Direct infringement requires that the accused system include every element recited in the claim.

Finjan claims that infringement occurred within the United States even though some (but not all) of the elements of the claim were located outside of the United States. For infringement to occur within the United States, Finjan must prove by a preponderance of the evidence that the control of the system was exercised and the benefit of the system was enjoyed in the United States.

## COURT'S INSTRUCTION NO. 16

I will now instruct you on the rules you must follow in deciding whether or not the ESET Entities have proven that any of the Asserted Claims are invalid. To prove that any claim of a patent is invalid, the ESET Entities must persuade you by clear and convincing evidence, i.e., the ESET Entities must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

## COURT'S INSTRUCTION NO. 17

In order for someone to be entitled to a patent, the invention must actually be "new" and not obvious over what came before, which is referred to as the prior art. Prior art is considered in determining whether any of the Asserted Claims of the '844, '780, or '086 Patents are anticipated or obvious. Prior art may include items that were publicly known or that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention before the "date of invention" of the claims at issue.

The ESET Entities contend that the following is prior art to the '844 Patent: U.S. Patent No. 5,983,348 to Ji ("the Ji Patent"); ThunderBYTE Antivirus ("ThunderByte"); and MIMEsweeper.

The ESET Entities contend that the following is prior art to the '780 Patent: U.S. Patent No. 6,157,721 to Shear ("the Shear Patent").

The ESET Entities contend that the following is prior art to the '086 Patent: ThunderByte; MIMEsweeper; NOD iCE 7.0; and U.S. Patent No. 6,804,780 to Touboul ("Touboul '780")

You must determine whether any of the above references are prior art that can be considered in determining whether any of the Asserted Claims are anticipated or obvious. There are different types of prior art, and I will instruct you on the relevant types that you need to consider.

The ESET Entities contend that the Ji Patent, ThunderByte, MIMEsweeper, the Shear Patent, NOD iCE 7.0, and Touboul '780 are prior art because they were known to or used by others in the United States or patented or described in a printed publication anywhere in the world before the date of the invention for each of the Asserted Patents. An invention is known when the information about it was reasonably accessible to the public on that date. A description is a "printed publication" only if it was publicly accessible.

The ESET Entities contend that the Ji Patent, ThunderBYTE, MIMEsweeper, the Shear Patent, NOD iCE 7.0, and Touboul '780 are prior art because they were already patented or described in a printed publication, anywhere

in the world more than a year before the date of invention for each of the Asserted Patents.

The ESET Entities contend that ThunderByte, MIMEsweeper, and NOD iCE 7.0 are prior art because they were publicly used, sold, or offered for sale in the United States more than one year before the date of invention for each of the Asserted Patents. An invention was publicly used when it was either accessible to the public or commercially exploited. An invention was sold or offered for sale when it was offered commercially and what was offered was ready to be patented, i.e., it was reduced to practice or it had been described such that a person having ordinary skill in the field of the technology could have made and used the claimed invention, even if it was not yet reduced to practice or publicly disclosed.

## COURT'S INSTRUCTION NO. 18

In order for someone to be entitled to a patent, the invention must actually be "new." The ESET Entities contend that the Asserted Claims of the Asserted Patents are invalid because the claimed inventions are anticipated. The ESET Entities must convince you of this by clear and convincing evidence, i.e., that the evidence highly probably demonstrates that the claims are invalid.

Specifically, the ESET Entities contend that the following piece of prior art anticipates the Asserted Claims of the '844 Patent: the Ji Patent.

The ESET Entities contend that the following piece of prior art anticipates the Asserted Claims of the '780 Patent: the Shear Patent.

The ESET Entities contend that the following piece of prior art anticipates the Asserted Claims of the '086 Patent: Touboul '780.

Anticipation must be determined on a claim-by-claim basis. The ESET Entities must prove by clear and convincing evidence that all of the requirements of a claim are present in a single piece of prior art. To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed and arranged as in the claim. The claim requirements may either be disclosed expressly or inherently—that is, necessarily implied—such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference, could make and use the claimed invention.

Where the ESET Entities are relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant that the prior art that the PTO did consider. If you decide it is different and more relevant, you may weight that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity.

If a dependent claim is anticipated by the prior art, then the claims from which it depends are necessarily anticipated as well.

## COURT'S INSTRUCTION NO. 19

The ESET Entities contend that certain products are prior art to the inventions recited in the Asserted Claims, because those products were publicly used in the United States more than one year before the earliest effective filing date of the claimed invention.

If an embodiment of the claimed invention was both (1) accessible to the public or commercially exploited in the United States and (2) ready for patenting more than one year before the effective filing date of the patent, it will be prior art to the claimed invention.

An invention is publicly used if it is used by the inventor or by a person who is not under any limitation, restriction, or obligation of secrecy to the inventor. Factors relevant to determining whether a claimed invention was in public use include: the nature of the activity that occurred in public; public access to the use; confidentiality obligations imposed upon observers; commercial exploitation; and the circumstances surrounding any testing and experimentation. The absence of affirmative steps to conceal the use of the invention is evidence of a public use. However, secret use by a third party is not public, unless members of the public or employees of the third party have access to the invention.

To be a public use, the invention also must have been ready for patenting at the time of the alleged public use. The invention is ready for patenting when there is reason to believe it would work for its intended purpose. An invention is ready for patenting either when it is reduced to practice or when the inventor has prepared drawings or other descriptions of the invention sufficient to allow a person of ordinary skill in the art to make or use the invention. An invention is reduced to practice when it has been (1) constructed or performed within the scope of the patent claims, and (2) determined that it works for its intended purpose.

The ESET Entities must show by clear and convincing evidence that the alleged products using the claimed invention were publicly used, i.e., sold or offered for sale in the United States where there were no confidentiality restrictions, and that claimed invention was ready for patenting (e.g., reduced to practice), before the earliest effective filing date of the claimed invention.

A manual is not itself evidence of the public accessibility of a product. Oral testimony by an interested party on its own will generally not suffice as clear and convincing evidence. Rather, such oral testimony must be corroborated by some other evidence, including documents and testimonial evidence of disinterested parties.

## COURT'S INSTRUCTION NO. 20

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

The ESET Entities may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made in the field of computer science.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of computer science that someone would have had at the time the invention was made, the scope and content of the prior art, and any differences between the prior art and the claimed invention, and, if present, so-called secondary considerations of non-obviousness, which I will describe shortly. Do not use hindsight; consider only what was known at the time of the invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you should consider whether, at the time of the claimed invention, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in the prior art in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions. To find it rendered the claimed invention obvious, you must find that the prior art provided a reasonable expectation of success.

In determining whether the claimed invention is obvious, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on whether or not the claimed invention is obvious, such as:

a. Whether the claimed invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);
b. Whether the claimed invention satisfied a long-felt need;
c. Whether others had tried and failed to make the claimed invention;
d. Whether others invented the claimed invention at roughly the same time;
e. Whether others copied the claimed invention;
f. Whether there were changes or related technologies or market needs contemporaneous with the claimed invention;
g. Whether the claimed invention achieved unexpected results;
h. Whether others in the field praised the claimed invention;
i. Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention;
j. Whether others sought or obtained rights to the patent from the patent holder; and
k. Whether the inventor proceeded contrary to accepted wisdom in the field.

In determining whether the claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well.

The ESET Entities contend that the following pieces of prior art alone or in combination render the Asserted Claims obvious and therefore invalid:

a. For the '844 Patent: the combination of ThunderByte and MIMEsweeper
b. For the '780 Patent: the Shear Patent
c. For the '086 Patent: the combination of ThunderByte and MIMEsweeper; and the combination of NOD iCE and MIMEsweeper

## COURT'S INSTRUCTION NO. 21

The ESET Entities contend that claims 9 and 13 of the '780 Patent are invalid because they claim subject matter that is not eligible for patent protection. The ESET Entities must prove this contention by clear and convincing evidence, in other words, that it is highly probable that claims 9 and 13 of the '780 Patent are directed to unpatentable abstract ideas. The law establishes that abstract ideas are ineligible for patenting. A non-exhaustive list of abstract ideas includes (1) methods of organizing human activity, such as fundamental economic practices, (2) claims to mental processes, even if performed on a computer rather than in the human mind, and (3) claims to results rather than to a means of achieving the claimed result. Claims that are directed to technical solutions to technical problems are not directed to abstract ideas, however. In determining whether the asserted claims are directed to abstract ideas, the jury may consider how the asserted claims differ from the prior art.

If the jury concludes that an asserted claim is directed to an abstract idea, then it should consider whether it is evident in the claim that the claim contains an inventive concept sufficient to transform the abstract idea into patent eligible subject matter. In doing so, the jury should consider the claim elements individually and as an ordered combination to determine whether any additional limitations amount to significantly more than an ineligible concept. For this inquiry, the jury should be mindful that a claim is not rescued and saved merely by: (1) using generic or off-the-shelf components to implement an abstract idea; (2) relying on abstract idea or functionally-oriented claim limitations; or (3) applying an abstract idea in a narrow way.

To succeed on their claim, the ESET Entities must show by clear and convincing evidence that claims 9 and 13 involve only activities which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional as of the priority date of the '780 Patent. Whether a particular technology was well-understood, routine, and conventional goes beyond what simply was known in the prior art. The mere fact that something is disclosed in a piece of prior art does not mean that it was well-understood, routine, and conventional. At the same time, the specification of the '780 Patent may be such evidence, if you find that the specification shows that the claimed activities of claims 9 and 13 were well-understood, routine, and conventional.

## COURT'S INSTRUCTION NO. 22

In deciding what the level of ordinary skill in the field of computer science is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) the rapidity with which innovations are made; and (5) the sophistication of the technology.

In this case, the Court instructs that the level of ordinary skill in the field was a person having at least a bachelor-level degree in computer science (or equivalent) and two to three years of experience in the design and development of computer security/anti-virus software.

## COURT'S INSTRUCTION NO. 23

In considering whether the claimed invention was obvious, you must first determine the scope and content of the prior art.

The scope and content of prior art for deciding whether the invention was obvious includes at least prior art in the same field as the claimed invention. It also includes prior art from different fields that a person of ordinary skill in the art would have considered when trying to solve the problem that is addressed by the invention.

Where the ESET Entities are relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether the ESET Entities have carried its clear-and-convincing burden of proving invalidity.

**COURT'S INSTRUCTION NO. 24**

In this case, the ESET Entities contend that the '086 patent is invalid because of improper inventorship. A patent is invalid if it fails to meet the requirement that all of the actual inventors, and only the actual inventors, be named as inventors in the patent. This is known as the "inventorship" requirement.

To be an inventor, one must make a significant contribution to the conception of at least one of the claims of the patent, even if that claim has not been alleged to be infringed. Whether the contribution is significant in quality is measured against the scope of the full invention.

If someone only explains to the actual inventors well-known concepts or the current state of the art, he or she is not an inventor. Merely helping with experimentation, by carrying out the inventor's instructions, also does not make someone an inventor. What is required is some significant contribution to the idea claimed.

Persons may be inventors even if they do not make the same type or amount of contribution, and even if they do not contribute to the subject matter of each claim of the patent. Persons may be joint or co-inventors even though they do not physically work together, but they must have some open line of communication during or at approximately the time of their inventive effort.

## COURT'S INSTRUCTION NO. 25

The ESET Entities allege that a written agreement between Finjan, Inc. and Microsoft Corporation entitles the ESET Entities to a royalty-free license to particular asserted patents.

One who owns a patent as a patentee or assignee has the right to exclude others from making, using, or selling the patented invention. A patent owner may contractually waive that right by granting a license to another party to make, use, or sell the patented invention.

If you determine that a license has been granted, you must further look to the circumstances to determine the scope of the license. If a license extends to a third party under the Finjan-Microsoft agreement, the scope must be based on the terms of that agreement.

The ESET Entities have the burden to show, by a preponderance of the evidence, that its products are licensed under the Finjan-Microsoft agreement.

## COURT'S INSTRUCTION NO. 26

If you find that an ESET entity infringed any valid Asserted Claim of the Asserted Patents, you must then consider what amount of damages to award to Finjan. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that the ESET Entities have not infringed any valid claim of the Asserted Patents, then Finjan is not entitled to any damages.

The damages you award must be adequate to compensate Finjan for the infringement. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put Finjan in approximately the same financial position that it would have been in had the infringement not occurred.

Finjan has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Finjan establishes that it more likely than not suffered. While Finjan is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

In this case, Finjan seeks a reasonable royalty. A reasonable royalty is defined as the money amount Finjan and an ESET entity would have agreed upon as a fee for use of the invention at the time just prior to when infringement began. Finjan is entitled to recover no less than a reasonable royalty, but you must be careful to ensure that award is no more and no less than the value of the patented invention.

## COURT'S INSTRUCTION NO. 27

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

## COURT'S INSTRUCTION NO. 28

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

1. The value that the claimed invention contributes to the accused product.
2. The value that factors other than the claimed invention contribute to the accused product.
3. Comparable license agreements or other transactions, such as those covering the use of the claimed invention or similar technology.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

## COURT'S INSTRUCTION NO. 29

Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

The hypothetical license is deemed to be a voluntary agreement. When determining if a license agreement is comparable to the hypothetical license, you may consider whether the license agreement is between parties to a lawsuit and whether the license agreement was a settlement influenced by a desire to avoid further litigation.

## COURT'S INSTRUCTION NO. 30

To be an "acceptable, non-infringing substitute or alternative," a product must have the advantages of the patented invention that were important to people who purchased an alleged infringer's product. If purchasers of an alleged infringer's product were motivated to buy that product because of covered by the Asserted Claims available only from that product, then some other, alternative product may not be an acceptable substitute.

In determining whether a non-infringing alternative is available, you may consider whether the defendant could readily obtain all of the material needed to implement the non- infringing alternative and whether the defendant had all of the necessary equipment, know-how, and experience to use the non-infringing alternative. The ESET Entities bear the burden to prove that a supposed non-infringing alternative is both technically and economically feasible at the time when the infringement first began.

To the extent that you determine that there is an acceptable non-infringing alternative, a reasonable royalty is not capped at the cost of implementing the non-infringing alternative.

## COURT'S INSTRUCTION NO. 31

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

## COURT'S INSTRUCTION NO. 32

Some of you have taken notes during the trial. Whether or not you took notes, you should rely on your own memory of what was said. Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

## COURT'S INSTRUCTION NO. 33

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in

38

court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

## COURT'S INSTRUCTION NO. 34

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by any one or more of you.

No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court.

If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question.

Remember that you are not to tell anyone—including the court— how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

## COURT'S INSTRUCTION NO. 35

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the bailiff that you are ready to return to the courtroom.