NICOLA A. PISANO, CA Bar No. 151282
    NicolaPisano@eversheds-sutherland.com
JOSE L. PATIÑO, CA Bar No. 149568
    JosePatino@eversheds-sutherland.com
SCOTT A. PENNER, CA Bar No. 253716
    ScottPenner@eversheds-sutherland.com
REGIS C. WORLEY, CA Bar No. 234401
    RegisWorley@eversheds-sutherland.com
**EVERSHEDS SUTHERLAND (US) LLP**
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA  92130
TELEPHONE:      858.252.6502
FACSIMILE:      858.252.6503

Attorneys for Defendants and Counter-Plaintiffs
ESET, LLC and ESET, SPOL. S.R.O.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN LLC, | Case No. 3:17-cv-0183-CAB-BGS |
| Plaintiff, | **ESET, LLC AND ESET, SPOL. S.R.O.'S MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285** |
| v. | |
| ESET, LLC, et al., | |
| Defendants. | Date:      November 1, 2023 |
| | Judge:    Hon. Cathy Ann Bencivengo |
| AND RELATED COUNTERCLAIMS. | PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

17cv0183

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ................................................................................................. 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ......................................... 3

    A.   Finjan's Shifting Sands Infringement Theories ........................................ 3

        1.   The '780 Patent ............................................................................. 3

        2.   The '844 Patent ............................................................................. 5

        3.   The '086 Patent ............................................................................. 7

        4.   Finjan's Other Asserted Patents ................................................... 8

    B.   Finjan's Irrational Replacement Code Damages Theory ........................... 9

    C.   Finjan's Misconduct Before And During The 2023 Trial......................... 10

III. LEGAL STANDARD ........................................................................................ 12

IV.  ARGUMENT ..................................................................................................... 13

    A.   ESET, spol. s.r.o. and ESET LLC are the prevailing parties. ................. 13

    B.   This Case Is Exceptional. ........................................................................ 13

        1.   Finjan's Shifting Sands Approach to Infringement Was Exceptional. ................................................................................. 13

        2.   Finjan's Damages Theories Were Unserious and Exceptional. ................................................................................. 18

        3.   Finjan's Trial Misconduct Was Exceptional. .............................. 19

        4.   ESET Should Be Awarded $9,700,000 in Reasonable Attorneys' Fees. ........................................................................... 22

V.   CONCLUSION ................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3form, Inc. v. Lumicor, Inc.*,
No. 2:12-cv-293, 2018 WL 4688348 (D. Utah Sept. 28, 2018) ...................................18

*Ameranth, Inc. v. Domino's Pizza, Inc.*,
No. 12cv0733 DMS (WVG), 2021 U.S. Dist. LEXIS 22566 (S.D. Cal. Feb. 5, 2021) .........................................................................................16

*CliniComp Int'l, Inc. v. Cerner Corp.*,
No. 17-cv-02479-GPC (DEB), 2023 U.S. Dist. LEXIS 19000 (S.D. Cal. Feb. 3, 2023) ...........................................................................16

*Dolby Labs., Inc. v. Lucent Techs., Inc.*,
No. C 01-20709 JF, 2006 U.S. Dist. LEXIS 52756 (N.D. Cal. July 17, 2006) .......................................................................................23

*Finjan, Inc. v. Blue Coat Sys.*,
No. 13-cv-0399-BLF, 2014 U.S. Dist. LEXIS 149077 (N.D. Cal. Oct. 20, 2014) ...................................................................................6, 14

*Finjan, Inc. v. Juniper Network*,
No. C 17-o5659 WHA, 2021 U.S. Dist. LEXIS 138945 (N.D. Cal. Jul. 26, 2021) .........................................................................20

*Finjan, Inc. v. Juniper Network*,
No. C 17-05659 WHA, 2021 U.S. Dist. LEXIS 5051 (C.D. Cal. Jan. 9, 2021) .......................................................................................*passim*

*Freshub, Inc. v. Amazon.com, Inc.*,
576 F. Supp 3d 458 (W.D. Tex. 2021) ...........................................................20

*IPS Grp., Inc. v. Duncan Sols. Inc.*,
No. 15-cv-1526-CAB (MDD), 2018 U.S. Dist. LEXIS 81864 (S.D. Cal. May 14, 2018)...........................................................................16

*Ketab Corp. v. Mesriani & Assoc., P.C.*,
734 F. App'x 401 (9th Cir. 2018) ...................................................................17

*Kilopass Tech., Inc. v. Sidense Corp.*,
82 F. Supp. 3d 1154 (N.D. Cal. 2015) ...........................................................22

# TABLE OF AUTHORITIES
## (*Continued*)

**Page(s)**

**Cases (*Cont'd*)**

*Mathis & Vico Prods. Mfg. Co. v. Spears*,
   857 F.2d 749 (Fed. Circ. 1988) ................................................... 22, 23

*Nilssen v. Osram Sylvania, Inc.*,
   528 F.3d 1352 (Fed. Cir. 2008) ......................................................... 13

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   572 U.S. 545 (2014)..................................................................... 12, 13

*In re PersonalWeb Techs., LLC*,
   2020 WL 5910080 (N.D. Cal. Oct. 9, 2020) ............................ 16, 17, 18

*Phigenix, Inc. v. Genentech, Inc.*,
   No. 15-cv-1238, 2018 WL 3845998 (N.D. Cal. Aug. 13, 2018)................ 16

*Raniere v. Microsoft Corp.*,
   887 F.3d 1298 (Fed. Cir. 2018) ......................................................... 13

*Straight Path IP Grp., Inc. v. Cisco Sys., Inc.*,
   411 F. Supp.3d 1026 (N.D. Cal. 2019)............................................ 16, 17

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
   726 F.3d 1306 (Fed. Cir. 2013) ...................................................... 16, 19

**Statutes**

35 U.S.C. § 285 .......................................................................*passim*

**Other Authorities**

Federal Rules of Civil Procedure:
   Rule 50(a)...................................................................................... 5
   Rule 54 ........................................................................................ 22
   Rule 54(d)(2)(B)(iii) ...................................................................... 22

Procedure for the Award of Attorney's Fees,
   10 Fed. Prac. & Proc. Civ. § 2680 (4th ed.) ....................................... 22

17cv0183

# I. __INTRODUCTION__

As the prevailing party, ESET, spol. s.r.o. and ESET LLC (collectively, "ESET") respectfully request this Court to order Finjan LLC ("Finjan") to pay a portion of ESET's reasonable attorneys' fees under 35 U.S.C. § 285.  ESET is only seeking fees for the period following the Court's October 2, 2017 claim construction order.  As of that date, Finjan knew or should have known that its infringement theories were unsupported and unreasonable.  Finjan's refusal to dismiss its case in the face of undisputed evidence regarding the operation of ESET's products and the Court's clear rulings on the scope of the claims was "exceptional" under § 285 and warrants an award of attorneys' fees.

In January 2015, Finjan contacted ESET, identified several patents that Finjan alleged to be relevant to ESET's anti-malware products, and invited ESET to engage in license discussions.  ESET, spol. s.r.o.'s North American subsidiary, ESET LLC, executed a non-disclosure and mutual standstill agreement with Finjan, and the parties began a protracted negotiation in which Finjan serially identified multiple patents as requiring a license.  Tr. at 1017:23-1018:16.  The parties twice amended their agreement to include both ESET entities and to extend the standstill expiration date.  During several meetings, ESET shared with Finjan the reasons for its belief that ESET's products did not infringe and thus did not require a license.  Finjan, however, would not take "no" for an answer.

In July 2016, the day the standstill agreement expired, Finjan sued ESET in the Northern District of California, while ESET filed a non-infringement declaratory judgment suit in the Southern District of California.  This Court dismissed the ESET suit as in favor of the Northern District filing, after which the Court in the Northern District granted ESET's motion to transfer the matter to this venue where the U.S.-based ESET defendant resides.  Thus began a seven-year saga of expansive and disruptive litigation over 57 claims of six Finjan patents, encompassing 63 depositions, 51 fact witnesses, and 12 (mostly Finjan) experts.  Along the way, Finjan was required to re-do its thousand-page expert reports, which had improperly reproduced hundreds of pages of ESET's

source code in violation of the operative Protective Order.

Trial was scheduled for March 2020 on five patents (the '844, '780, '086, '621, and '755 patents) but ended in a mistrial when the world (and this Court) shut down for the COVID pandemic. Following a hiatus occasioned by grant of ESET's motion for summary judgment on invalidity for indefiniteness and subsequent appeal, discovery was re-opened for Finjan's '305 patent, which had been stayed. The parties jointly submitted a stipulated order to dismiss with prejudice the '305, '621, and '755 patents, which order was granted on May 3, 2023. D.I. 928. From August 28, 2023 through September 8, 2023, the case proceeded to trial on three patents, the '844, '780, and '086 patents. Despite Finjan's relentless efforts to confuse the jury about operation and interaction of ESET's accused products, the jury rejected Finjan's infringement claims. As ESET knew seven years earlier, Finjan had no good faith basis for its infringement accusations, and ESET has since been fully vindicated by the jury's verdict.

This was not a case in which a plaintiff, after discovery, realized that it had no case and sought to minimize the defendant's defense costs. On the contrary, Finjan maintained and expanded its asserted claims based on ever-shifting views of its alleged factual bases, none of which comported with this Court's claim constructions.

ESET is entitled to reasonable attorneys' fees of about $9,700,000 in this case because Finjan chose to maintain its objectively baseless claims in an unreasonable manner. The requested amount is much less than ESET incurred for its defense. Moreover, despite changing counsel following the March 2020 mistrial, Finjan ramped up its punitively wasteful litigation practices throughout the '305 patent discovery period and continued its wasteful practices even to conclusion of the 2023 trial. As just one example, Finjan designated almost 30 hours of deposition video for use in its case-in-chief, despite being limited to 20 hours in total, thus ensuring a waste of precious trial resources and the Court's time through its review of the parties' objections. Finjan also engaged in a "shifting sands," trial-by-ambush litigation strategy, in which it continually changed its alleged factual bases of infringement. Finjan's conduct throughout this

litigation, irrespective of its counsel, went far beyond ordinary litigation conduct and thus renders this case exceptional pursuant to 35 U.S.C. § 285.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Finjan's Shifting Sands Infringement Theories

Throughout this litigation, Finjan moved seamlessly from one alleged basis of infringement to another, none of which comported with this Court's claim constructions for key limitations of the asserted patents.  Finjan pursued its infringement claims with complete disregard not only for the Court's claim constructions, but also without regard as to the undisputed facts regarding operation of the accused ESET products.  Finjan's "show us the code and we'll show you the infringement" attitude, explicitly stated during the parties' pre-suit discussions, infected every aspect of Finjan's conduct in this litigation.

### 1.   *The '780 Patent*

Amongst multiple contenders, Finjan's assertion of its '780 patent perhaps provides the most egregious example of Finjan's disregard for this Court's claim construction and the undisputed evidence of the operation of ESET's products.  As early as October 2, 2017, this Court had issued a preliminary construction that the limitation of claim 9 "performing a hashing function on the Downloadable and the fetched software components to generate a Downloadable ID" meant "performing a hashing function on the Downloadable together with its fetched software components."  D.I. 178-1 at 3.  At that point, Finjan was on notice that if it could not identify a Downloadable and an external referenced component being hashed together in ESET's products, and Finjan should have abandoned assertion of the '780 patent.  Finjan ignored that warning.  Instead, consistent with Mr. Hartstein's testimony at the 2023 trial that he could not identify an instance in which Finjan had not sued a potential licensee who refused to take a license (Tr. at 227:20-21), Finjan adopted a scorched-earth litigation campaign designed to convince ESET that settlement would be less costly than defending itself.

Notwithstanding this Court's claim construction, Finjan's infringement expert for

the '780 patent, Dr. Mitzenmacher, opined in his expert report that claim 9 was satisfied by hashing a Downloadable and ***separately*** hashing its referenced component(s).  ESET's original motion for summary judgment of non-infringement of the '780 patent pointed out that Dr. Mitzenmacher's opinions entirely ignored the requirement that the Downloadable be hashed ***together*** with its referenced component.  D.I. 488-1 at 8.  In its opposition, Finjan mischaracterized ESET's argument as "insert[ing] words into the claims that do not exist in a futile attempt to avoid infringement."  D.I. 551-1 at 10.  Finjan further argued that although this Court had adopted Judge Alsup's construction, his reasoning that "a hashing function [be] performed on a Downloadable 'together with' its referenced components *must operate across the combination* of a Downloadable and its fetched components" somehow applied only in "the context of th[at] specific case."  *Id.* at 10-11.  The Court denied ESET's motion as involving fact issues.  D.I. 699.

In May 2023, based on ESET's proffer that Judge Alsup's construction for the '780 patent had been affirmed by the Federal Circuit in the *Juniper* case (D.I. 929), the Court granted ESET leave to renew its motion of summary judgment of non-infringement.  D.I. 931.  In that renewed motion, ESET explained that Finjan had argued for, ***and lost***, its infringement contention in *Juniper* on the same basis as Finjan asserted against ESET.  ESET's renewed motion cataloged dozens of instances where Finjan's expert alleged infringement based on an "ID of hashes [plural]."  *See, e.g.*, D.I. 937 at 5-10.  Unwilling to relinquish a patent that had been so lucrative in prior cases, Finjan opposed ESET's motion by highlighting a few paragraphs in Dr. Mitzenmacher's 800-plus-page expert report that referred ambiguously to hashing a "stream" of data.  D.I. 942 at 3-4.  But Finjan knew only too well that it could not adduce evidence of any ESET product hashing together multiple data streams.  *See, e.g.*, D.I. 945 at 3-5.  Yet, once again, Finjan had created enough confusion to survive summary judgment.  D.I. 950.

At the 2023 trial, Finjan shifted gears, and its infringement bases, yet again.  At trial, Dr. Mitzenmacher testified that the claims of the '780 patent were infringed when an ESET product hashed a file having internally-referenced embedded components.  Tr.

at 547:20-23. Finjan abandoned both its "hashed separately" and its "data stream" arguments for which Finjan had no factual basis. Tr. at 548:2-4. Instead, Finjan blue-penciled claim 9 of the '780 patent to remove the requirement that the ID generator fetch referenced components of the Downloadable, and argued that the claims were met by hashing internal components. *See, e.g.*, Tr. at 1792:7-18. On cross-examination, Dr. Mitzenmacher acknowledged that he had not identified any ESET product that hashed a Downloadable together with its referenced (external) component, the very point of alleged novelty of the claims of the '780 patent. Tr. at 548:2-4. During ESET's motion for a directed verdict under Rule 50(a) as to non-infringement of the '780 patent, the Court expressed its "serious reservations" concerning Dr. Mitzenmacher's misapplication of the Court's claim construction. Tr. at 1686:2-6. The jury rejected Finjan's effort to squeeze a square peg in a round hole, finding no infringement of the '780 patent.

Finjan had no good faith basis for asserting infringement of the '780 patent at least since as early as October 2, 2017, almost six years ago. Yet it refused to concede that ESET's products did not do what the claims required and repeatedly revised the alleged bases of its infringement claims, all the while ignoring this Court's appellate-affirmed claim construction. In so doing, Finjan deliberately misled this Court and the jury and denied the evidence in the undisputed factual record. Finjan's misconduct in its continued assertion of the '780 patent was exceptional and entitles ESET to recover its attorneys' fees for defense of that patent incurred since at least October 2017.

### 2. *The '844 Patent*

Finjan's bad faith enforcement of the '780 patent, as chronicled above, was not an isolated instance, but was rather of a piece with its strategy throughout this litigation. Finjan should have withdrawn its claims on the '844 patent promptly after this Court issued its construction on the claim limitation "before the web server makes the Downloadable available to web clients" on October 2, 2017. D.I. 178-1. Finjan immediately recognized it was in trouble and twice sought reconsideration of the Court's construction of that limitation. *See generally*, D.I. 188-1; D.I. 212-1. While unsuccessful

17cv0183

in those efforts, Finjan nevertheless aggressively continued to assert the '844 patent against ESET's gateway products and the Slovakian-based Cloud Malware Protection System.  Tr. at 376:16-24.

Finjan's assertion of the '844 patent against ESET's network gateway products was all the more remarkable because in other cases, Finjan had agreed to a construction of the claimed "inspector" that specified it was a "non-network gateway."  *See, e.g., Finjan, Inc. v. Blue Coat Sys.*, No. 13-cv-0399-BLF, 2014 U.S. Dist. LEXIS 149077, *33-37 (N.D. Cal. Oct. 20, 2014).   Contrary to Finjan's approach throughout this litigation, the meanings of its patent claim terms are not infinitely flexible, nor do they depend on the nature of the accused products.  Notwithstanding Finjan's misapplication of the "before the web server" limitation, its purported evidence of infringement by ESET's gateway products and Backend Systems (LiveGrid Feedback System, CMPS, and LiveGrid Reputation System) was entirely lacking.  Dr. Cole pointed only to the Proxy Cache in ESET's Gateway Security product as the "web server," which proxy cache is not present in ESET's Mail Security and File Security products.  Tr. at 1002:3-1003:17.  Dr. Cole understood that the proxy cache is not actually "a web server" because even he realized as an expert he could not make that claim.  Instead, Dr. Cole testified that "the proxy cache is ***acting*** as the web server."  *Id.* at 318:11-12.  But Finjan did not have a DOE argument, and therefore Finjan's arguments ***could never*** have demonstrated infringement.  Instead, as Dr. Spafford's unrebutted testimony explained, a person of skill in the art would not reasonably understand a "proxy cache" to correspond to the claimed "web server."  Tr. at 1118:3-1119:24.

Finjan's purported infringement proofs for ESET's Backend Systems with respect to the '844 patent established only that the operation of those systems took place entirely outside the United States.  The evidence is unrebutted that no user in the United States had beneficial control of any ESET backend service.  Tr. at 897:19-898:15.  Once again, Finjan was aware of all of these facts at least by the close of fact discovery on September 17, 2018.  Finjan's continued assertion of the '844 patent in the face of a dispositive

17cv0183

claim construction ruling, compounded with a complete absence of facts supporting its infringement claims, was exceptional.

### 3.   *The '086 Patent*

Finjan's Patent L.R. 3-1(a) disclosures dated June 12, 2017 asserted infringement of claims 1, 2, 9, 10, and 24 of '086 patent.  Independent claims 1 and 9 each required generation of an "appended Downloadable," which this Court construed in its October 2, 2017 claim construction order to mean "a Downloadable with a representation of the DSP data *attached to the end of the Downloadable*."  Subsequently, on April 27, 2018, Finjan served its Third Amended Disclosure under Patent L.R. 3-1(a), expanding its list of asserted claims for the '086 patent to include claims 1, 2, 9, 10, 14, 24, 37, 38, 40, and 42, of which claim 40 also required generating an appended Downloadable.[1]

Finjan *never* had a good faith basis for asserting that any ESET product or service generated an appended downloadable as required by all but claims 24 and 42 of the '086 patent.  By the close of fact discovery in September 2018, it was plain that Finjan could point to no evidence supporting its infringement contentions.  ESET's motion for summary judgment of non-infringement of the '086 patent, filed on April 23, 2019, demonstrated that Finjan's expert, Dr. Mitzenmacher, had identified no evidence that any ESET product or service creates an "appended Downloadable" or otherwise provides support for alleged infringement of claim 42.  D.I. 484-1 at 6-10.  Finjan opposed that motion by pointing to disparate, unrelated portions of ESET's system.  *See generally*, D.I. 547.  Finjan's disingenuous arguments enabled it to survive summary judgment on the '086 patent.  And Finjan continued to assert its "appended Downloadable" claims right up to the eve of trial in March 2020.  D.I. 762 at 1.  During that trial, Finjan jettisoned with prejudice all but claims 24 and 42 of the '086 patent (claims 24 and 42 lack the "appended Downloadable" limitation).  2020 Trial Tr. at 390:11-12.

Finjan continued asserting claims 24 and 42 of the '086 patent as the parties headed into the 2023 trial.  D.I. 957 at 1.  Indeed, just two nights before Dr.

---

[1] Independent claims 24 and 42 do not require generation of an "appended Downloadable."

7

Mitzenmacher took the stand, Finjan served demonstratives on ESET showing that Dr. Mitzenmacher intended to assert claim 42. But during his testimony, as both ESET and the Court observed, Finjan failed to mention, much less have Dr. Mitzenmacher opine on, alleged infringement of claim 42. Tr. at 516:1-7, 556:16-18. After five years asserting claim 42 of the '086 patent – for which ESET incurred considerable defense cost – Finjan dropped that claim at the 2023 trial without a whimper.[2]   Finjan's failure to timely dismiss claims for which it knew it could not possibly meet its burden of proof renders this case exceptional as to the '086 patent.

### 4.   *Finjan's Other Asserted Patents*

Finjan's Complaint asserted infringement of numerous claims of the '621, '755, and '305 patents. The '621 and '755 patent issued on November 17, 2015 and December 22, 2015, respectively, and both expired on January 29, 2017. Both patents were asserted for no apparent reason other than to increase ESET's defense costs. Likewise, the asserted claims of the '305 patent required a database of parser and analyzer rules, for which Finjan could never have adduced evidence.[3] Unfazed, Finjan continued to assert the '305 patent, generating additional separate expert reports on infringement, invalidity, and damages, necessitating preparation and service of responsive expert reports by ESET's technical and damages experts.

Finjan continued to assert the '305 patent until it became impractical to do so. On July 2, 2018, the USPTO issued an Office Action during an ex parte reexamination rejecting claims 1, 2, 5, and 13. Finjan appealed to the Federal Circuit, which affirmed the rejection on September 6, 2019. Thus, well before COVID cancelled the first trial, and well before Finjan sought to reopen discovery on the '305 patent, Finjan was fully aware that the claims it sought to pursue against ESET were insubstantially different

---

[2] Nor was this a case of Finjan dropping claims because it lacked sufficient time to present its case at trial. Finjan had several *hours* of its allotted time remaining at the close of evidence.

[3] The parties' agreed construction for the term "database" in the '844 patent as "a collection of interrelated data organized accordingly to a database schema to serve one or more applications" rendered proof of infringement of the '305 patent an impossibility.

from claims already determined to be unpatentable by the Federal Circuit. Yet Finjan persisted. Following nearly a year of additional discovery, on April 4, 2023, the Court granted ESET leave to file a motion for summary judgment that the asserted claims of the '305 patent were insubstantially different from other claims of the '305 patent that had been adjudged invalid during reexamination. D.I. 907; D.I. 908. ESET filed its motion on April 17, 2023. D.I. 916-1. Shortly before Finjan's opposition was due, Finjan offered to dismiss with prejudice its claims on the '305 patent. ESET agreed to so stipulate, provided that the '621 and '755 patents also be dismissed with prejudice and with the caveat that ESET reserved the right to seek its attorneys' fees for Finjan's assertion of the '305, '621, and '755 patents. D.I. 926. The stipulation was filed the day Finjan's opposition was due. After filing the joint stipulation that mooted further proceedings on the '305 patent, Finjan inexplicably proceeded to file an opposition to ESET's motion. D.I. 927.

Finjan's continued assertion of the '305 patent until May 2023, 44 months after the claims had been definitively confirmed unpatentable in September of 2019 by the Federal Circuit, demonstrated that Finjan had no good faith basis for asserting the '305 patent; Finjan's conduct was exceptional.

## B.   Finjan's Irrational Replacement Code Damages Theory

In connection with the exchange of expert reports, Finjan's former counsel, Kramer Levin, had submitted an expert report by Dr. Ricardo Valerdi that purported to quantify Finjan's alleged damages not with respect to other Finjan licenses, but based on his estimation of the "replacement cost" to ESET to recreate ESET's allegedly infringing source code. In so doing, Dr. Valerdi estimated the number of lines of code in ESET's products, assigned a cost per line of code, and arrived at a value without any effort to correlate the total number of lines of replacement code with the source code allegedly embodying the infringing features. Dr. Valerdi estimated the cost of such replacement code at between two and four billion dollars. *See* D.I. 490-1 at 1. As the Court noted at the September 26, 2019 hearing on the parties' *Daubert* motions: "Why are we using this

made up billions of dollars numbers, ***which seems completely insane*** given that it's more than anybody would have possibly spent to do that?"   Hearing Tr. at 70 (emphasis added).

Finjan's damages expert, Mr. Arst, also relied upon Dr. Valerdi's numbers to opine that ESET had realized cost savings of more than $300 million during the damages period – multiples of ESET's ***actual sales*** during the damages period.  *See* D.I. 467-1 at 10.  As observed by ESET in its *Daubert* motion to exclude that testimony of Mr. Arst, his estimate of a "reasonable royalty" amounted to more than ***116%*** of ESET's ***total revenue*** during the damages period.  *Id.* at 1.

Consequently, the Court excluded Dr. Valerdi's proposed testimony as lacking sound theory or support.  D.I. 699-1 at 6-7.  The Court also excluded Mr. Arst's damages opinions based on "cost savings" to ESET, but granted Finjan leave for Mr. Arst to re-do his damages report to the extent it could be based on his analysis of Finjan's prior licenses, and without reference to Dr. Valerdi's opinions and computations.  *Id.* at 9-10.

Finjan's initial demand for damages, fueled by its "insane" approach to evaluating damages, was untethered from objective reality and therefore exceptional.

## C.    Finjan's Misconduct Before and During the 2023 Trial

Shortly after the March 2020 mistrial, Finjan replaced its counsel, Kramer Levin, with Fish & Richardson.  Although the retention of new counsel should have provided Finjan with an opportunity to re-evaluate the merits of its case against ESET, that didn't happen.  Instead, Finjan ramped up discovery on its ill-fated '305 patent infringement claims, notwithstanding that similar claims of that patent had been previously adjudicated unpatentable, and moreover, Finjan had no credible read of those claims on any ESET product or service.  The similarly deficient '621 and '755 patents also were maintained in the case until the last possible moment, ensuring that ESET's cost to defend against those patents remained on-going.  Indeed, even two nights before Dr. Mitzenmacher took the stand, Finjan provided a set of demonstratives showing Finjan intended to assert claim 42 of the '086 patent, only to drop it, without alerting ESET, as Dr. Mitzenmacher took the

stand.

Throughout the 2023 trial, Finjan's current counsel and its expert witnesses engaged in a carefully choreographed effort to mislead and confuse the jury. With respect to the '844 and '086 patents, Finjan sought to create confusion about what constituted a "DNA Detection" or "DNA Signature" – created by human malware analysts located in Europe – and what Finjan referred to as "DNA profiles" alleged to be created by ESET's end-user products. *See, e.g.*, Tr. at 368:13-373:16. Finjan's experts deliberately and unashamedly tried to mislead the jury as to what was created by whom (or what), where and why. *Cf., e.g.*, 370:6-15 *with* 385:9-20; 529:4-19. Fortunately, Dr. Spafford was able to pierce the fog created by Finjan and provide the needed clarity to the jury. Tr. at 1125:3-1127:7. Finjan knew, or should have known, since at least the close of fact discovery, that there was no basis for its infringement claims.

Finjan's efforts to mislead the jury climaxed with Dr. Mitzenmacher's testimony about "fetching" referenced components from within a Downloadable with respect to the '780 patent. Tr. 490:18-492:2. Finjan knew it had no infringement case based on hashing a Downloadable together with its referenced component, and so did not even try to present any evidence that comported with this Court's claim construction. *Id.*; 547:20-23. As revealed during cross-examination of Dr. Jaeger, even Finjan's current counsel recognized, in describing the alleged invention of the '780 patent in the *Juniper* appeal to the Federal Circuit, that the fetched referenced components are ***remote***. Tr. at 1605:19-1606:19. Dr. Jaeger's convenient ignorance of Finjan's infringement theory for the '780 patent offered "plausible deniability" for his opinion that the multi-segment load module disclosed in FIG. 9 of Shear did not invalidate, when that was exactly the basis of Finjan's infringement claim against ESET. *See, e.g.*, Tr. at 1617:8-1618:15.

Finjan's damages theories at trial were no more sensible than those that the Court had excluded prior to the March 2020 trial. As revealed during cross-examination, Mr. Arst bafflingly opined that if ESET infringed only the '844 patent, ESET should have been willing to pay $6.8 million during a hypothetical negotiation in 2005 for sales that a

decade later would amount to less than a half million dollars.  Tr. 675:22-678:14.

Finjan's counsel's conduct during trial also featured such theatrics as non-impeachment "impeachments" based on witnesses' prior **consistent** statements during deposition (*see, e.g.*, Tr. at 1045:13-25) and an attempt to mislead the jury whether Dr. Spafford had overlooked Finjan's purported presentation on the ScriptAlg source code module (Tr. at 1253:5-25), necessitating a curative instruction by the Court (Tr. at 1700:10-24).  Worth further mention was Finjan's effort, when it rightly gauged that the jury probably was not buying what Finjan was selling, to try to provoke a mistrial.  Tr. at 1240:10-1241:14.  Still further, Finjan refused to confirm whether or not its secondary considerations of non-obviousness expert, Dr. Orso, would testify until ESET had to make the call for its rebuttal expert, Roger Thompson, to travel to San Diego to potentially testify.  Tr. at 38:7-22.  All of these tactics jeopardized ESET's investment in the 2023 trial, needlessly increased ESET's defense costs, and rendered Finjan's conduct exceptional.

## III.   <u>LEGAL STANDARD</u>

The court in exceptional cases may award reasonable attorney fees to the prevailing party.  35 U.S.C. § 285.  An "exceptional" case is "simply one that *stands out from others with respect to the substantive strength* of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014) (emphasis added).  "[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to be 'exceptional.'"  *Id.* at 546.  The *Octane* Court also directed district courts to determine exceptionality "in the case-by-case exercise of their discretion, considering the totality of the circumstances," including "frivolousness" and "objective unreasonableness (both in the factual and legal components of the case)."  *Id.* at 545, 554, n.6.  Because "Section 285 demands a simple discretionary inquiry" and "imposes no specific evidentiary burden, much less such a high one," litigants need only satisfy "*a*

*preponderance of the evidence standard*." *Id.* at 557 (emphasis added).

## IV.   ARGUMENT

### A.   ESET, spol. s.r.o. and ESET, LLC Are the Prevailing Parties.

ESET prevailed on every patent and claim asserted by Finjan in this case. Specifically, (1) the jury found that no ESET product or service infringed any asserted claim of the '844, '780, or '086 patents; and (2) Finjan dismissed its claims on the '305, '621, and '755 patents with prejudice.  D.I. 1016 at 1-2.  In contrast, Finjan did not prevail on any of its claims.  *Id.*  Thus, ESET is the prevailing party in this case.  *See, e.g., Nilssen v. Osram Sylvania, Inc.*, 528 F.3d 1352, 1354-56 (Fed. Cir. 2008) (affirming award of attorneys' fees where defendant prevailed at trial); *Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1307-08 (Fed. Cir. 2018) (dismissal with prejudice renders defendant prevailing party).

### B.   This Case Is Exceptional.

#### 1.   *Finjan's Shifting Sands Approach to Infringement Was Exceptional.*

Given its prior successful track record of litigating companies in the anti-malware field into submission by acquiring unneeded patent licenses, Finjan must have concluded that it could achieve the same result with ESET.  Since inception of this case in July 2016, Finjan never wavered in its efforts to pursue ESET, irrespective of the relevant claim constructions issued by this Court or the evidence established during fact discovery regarding the structure and operation of ESET's products and services.  Quite simply, none of that mattered to Finjan.

As discussed for the '780 patent above, Finjan acknowledged this Court's claim construction but then studiously ignored application of that construction to its alleged infringement proofs.  Initially, and up to discontinuation of the March 2020 trial, Finjan (and its expert, Dr. Mitzenmacher) argued that the claim requirement that the referenced components be hashed "together" with the Downloadable could be satisfied by hashing the separately computed hashes of the referenced component and the Downloadable.  D.I.

17cv0183

484-1 at 8-9.  The Court warned Finjan during the March 2020 trial that it would not permit Finjan's expert to testify to purported infringement that ignored the Court's construction.  March 2020 Tr. at 392:9-393:11; D.I. 929 at 2-3.  ESET's renewed motion for summary judgment of non-infringement of the '780 patent detailed Dr. Mitzenmacher's evidence that the Downloadable ID could be an "ID of hashes."  D.I. 937-1 at 5-10.  Finjan opposed that motion by highlighting ambiguous citations in Dr. Mitzenmacher's report that purportedly showed hashing of *data streams*.  D.I. 942 at 3:22-5:12.

Finjan knew that its canard regarding hashing data streams, while sufficient to evade summary judgment, could not withstand scrutiny at the 2023 trial.  So Finjan again changed its alleged basis of infringement, this time having Dr. Mitzenmacher base his infringement analysis on hashing of a Downloadable that included internal components. Tr. at 547:20-23.  In so doing, Finjan ignored the claim requirement that the components were ***referenced*** components, *sine qua non* there would be no alleged invention disclosed in the '780 patent.  D.I. 488 at 2:1-3:6; D.I. 511-18.  Finjan also ignored its own prior admission in the *Juniper* case, by its current counsel, that ***fetching remote*** referenced components was the inventive crux of the '780 patent.  Tr. at 1605:19-1606:19.

To add further insult to injury, Finjan made sure that its invalidity expert, Dr. Jaeger, was ignorant of Finjan's interpretation of the '780 patent claims as applied in its infringement claim.  Through this artifice, Dr. Jaeger could attempt to deny that hashing the multi-segment load module of Shear was identical to ESET's hashing of a multi-component Downloadable, as opined by Dr. Mitzenmacher.  *Cf., e.g.*, Tr. at 547:20-23 *with* 1617:8-1618:15.

With respect to the '844 patent, as discussed above, Finjan's accusations of infringement by ESET's network gateway products was on equally shaky ground.  Finjan persisted in its infringement claims for the '844 patent even though Finjan has disavowed coverage of the network gateway of the Ji '348 patent.  *See generally*, D.I. 807-1; *Blue Coat Sys.*, 2014 U.S. Dist. LEXIS 149077, at *33-37.  Finjan also sought to mislead the

17cv0183

jury regarding the structure and operation of ESET's Backend services – LiveGrid Feedback System, CMPS, and LiveGrid Reputation System – by ignoring that those completely separate and asynchronous systems are entirely located  and controlled outside the United States.  Tr. at 376:16-24.  Indeed, Dr. Mitzenmacher was precluded from even offering evidence of "control" from within the United States as it was not something he opined on in his expert report, leaving Finjan with no basis for demonstrating any form of control from the United States for the system claims of the '780 and '086 patents.  Tr. at 501:24-504:2.  Similarly for the '086 patent, Finjan's unrelenting efforts to mislead the jury regarding operation of ESET's products by relying on ambiguous marketing descriptions of DNA Detections and by mischaracterizing the testimony of ESET's engineers was not due to misunderstanding ESET's technology. *Cf., e.g.*, 370:6-15 *with* 385:9-20; 529:4-19.  Instead, the confusion that Finjan sought to create was the primary element of Finjan's trial strategy, and the only possible way it could have fooled the jury into finding infringement.

Likewise, Finjan's assertions of the '305, '621, and '755 patents, by close of fact discovery in September 2018, never could have been maintained in good faith.  Instead, those patent assertions were mere make-work designed to force ESET to concede or incur significant defense costs.  ESET refused to bend the knee, and Finjan should now at least partially make ESET whole for the cost of defending against Finjan's multi-year campaign of bad faith assertions.

None of Finjan's foregoing conduct was coincidental or unintended.  With the advantage of hindsight, it is plain that Finjan's conduct in asserting its patents had no good faith basis since by at least October 2017, when the Court issued its claim construction for the '780 patent (which had been affirmed on appeal in the *Juniper* case) and also, importantly, for the '844 and '086 patents.  D.I. 178-1.  Finjan long ago was in possession of all of the facts it needed to recognize that the three patents it would put before the jury in this case should be abandoned.  Finjan chose not to do so, instead gambling that its "war of attrition" against ESET would eventually prevail, or at worst,

the jury could be misled.  The gambit failed to ESET's great financial injury; Finjan's time of reckoning is now at hand.

Courts have repeatedly held that "shifting sands" tactics adopted by Finjan render a case exceptional.  *See, e.g.*, *CliniComp Int'l, Inc. v. Cerner Corp.*, No. 17-cv-02479-GPC (DEB), 2023 U.S. Dist. LEXIS 19000, at *27 (S.D. Cal. Feb. 3, 2023) (determining that plaintiff "repeatedly shifted its theory of infringement," thus rendering the case exceptional); *Ameranth, Inc. v. Domino's Pizza, Inc.*, No. 12cv0733 DMS (WVG), 2021 U.S. Dist. LEXIS 22566, at *29-31 (S.D. Cal. Feb. 5, 2021) (finding that the case qualified as exceptional in part due to the plaintiff shifting its position on key claim terms during the course of litigation); *Finjan, Inc. v. Juniper Network*, No. C 17-05659, 2021 U.S. Dist. LEXIS 5051, at *6 (C.D. Cal. Jan. 9, 2021) (finding an exceptional case, in part, because "on the eve of trial Finjan flip flopped and came up with a new infringement theory"); *Straight Path IP Grp., Inc. v. Cisco Sys., Inc.*, 411 F. Supp. 3d 1026, 1028 (N.D. Cal. 2019) (finding that "the shifting sands of the patent owner's [arguments]" rendered the case exceptional); *In re PersonalWeb Techs., LLC*, 2020 WL 5910080, at *9 (N.D. Cal. Oct. 9, 2020) ("A patent litigant's repeated changes in its litigation positions in a case may support a finding of exceptional conduct."); *Phigenix, Inc. v. Genentech, Inc.*, No. 15-cv-1238, 2018 WL 3845998, at *5 (N.D. Cal. Aug. 13, 2018) (finding that litigation conduct "became 'exceptional'" where plaintiff tried to change its infringement theory in response to summary judgment ruling).

Finjan's persistence in pursuing multiple baseless and misleading infringement theories, and its attempts to obscure the facts and confuse the jury, independently render this case exceptional under § 285.  *See, e.g.*, *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013) ("[A] party cannot assert baseless infringement claims and must continually assess the soundness of pending infringement claims, especially after an adverse claim construction."); *CliniComp Int'l, Inc.*, 2023 U.S. Dist. LEXIS 19000, at *29 (finding that plaintiff "pursued a claim for patent infringement that became objectively baseless following the Court's issuance of the claim construction

order in this action"); *IPS Grp., Inc. v. Duncan Sols. Inc.*, No. 15-cv-1526-CAB (MDD), 2018 U.S. Dist. LEXIS 81864, at *8-9 (S.D. Cal. May 14, 2018) (finding the plaintiff's "assertion and continued litigation of its frivolous claim" warranted an award of attorney's fees); *Straight Path IP Grp.*, 411 F. Supp. 3d at 1034 (finding case exceptional and awarding fees where "[a]t bottom, the record shows that Straight Path pursued an objectively baseless infringement theory against defendants"); *In re PersonalWeb,* 2020 WL 5910080, at *20 (finding case exceptional where plaintiff pursued "objectively baseless" infringement theories); *Ketab Corp. v. Mesriani & Assoc., P.C.*, 734 F. App'x 401, 412 (9th Cir. 2018) (affirming finding case was exceptional where party "pursued groundless, frivolous, and unreasonable arguments").

As another example, Finjan's experts' reports were replete with references to HIPS and Exploit Blocker.  Finjan included multiple exhibits relating to HIPS and Exploit Blocker on its exhibit list and designated multiple portions of witness testimony related to those features.  And so, ESET incurred the expense of bringing its key witnesses on HIPS and Exploit Blocker to trial.  When ESET put on Mr. Wojcik to explain why Exploit Blocker could never infringe, Finjan's sole questions to Mr. Wojcik were about whether he saw "Exploit Blocker" listed in the Accused Products that Finjan presented to the jury by means of a demonstrative during Finjan's opening.  Tr. at 935:21-936:13.  Even the Court recognized Finjan's shifting sands approach, noting that ESET put up a witness on HIPS, Finjan's cross examination was limited to "We are not alleging HIPS," and as the Court further noted "well, you did in the pretrial order."  Tr. at 1048:21-1049:1.  Finjan's bait-and-switch approach to HIPS was just another example of its egregious conduct. Finjan's actions needlessly prolonged this litigation and forced ESET to incur considerable expense litigating (and winning) a jury trial on the '780, '844, and '086 patents.  Finjan also needlessly increased ESET's costs of defense by asserting the '305, '621, and '755 patents, which Finjan ultimately jettisoned with prejudice.

17

17cv0183

## 2. *Finjan's Damages Theories Were Unserious and Exceptional.*

Since the inception of this litigation, Finjan's damages theories were unserious. *Supra* at 10. Finjan's initial "cost-savings" approach to damages proffered by Mr. Arst called for a "reasonable royalty" that was greater than ESET's total revenue during the damages period. *Id.* And Dr. Valerdi's estimates, based on the cost of regenerating the allegedly infringing source code, resulting in a number between about 2 and 4 **billion** dollars, had no basis in logic, and plainly was intended only to prejudice the jury. *Id.*

The Court properly excluded Dr. Valerdi's "insane" theory and similarly rejected Mr. Arst's cost-savings damages model as untethered from Finjan's prior actual licensing practices. *Id.* The Court permitted Mr. Arst a "do-over" on his damages opinions, so long as he could tie his revised opinion to Finjan's prior licenses. *Id.* Nonetheless, Mr. Arst arrived at trial with a revised damages theory that remained unserious.

In fact, Mr. Arst's "reasonable royalty" damages estimate for the three asserted U.S. patents, for a 2.8-year damages period, exceeded the amount that Microsoft **actually** paid for a **worldwide** license under 50-plus patents for a 24-year period in a contemporaneous license. *Cf.* Tr. at 628:5-18 *with* 1300:5-24. Moreover, Mr. Arst's damages amount failed to take into account that Microsoft's market share was 10 times larger than that of ESET at the parties' agreed time of the hypothetical negotiation in 2005. Tr. at 632:12-20, 1391:10-25. Moreover, as Mr. Arst admitted during cross-examination, his damages claim for the '844 patent, should the jury have found that only that patent was infringed, was almost **fifteen times** the actual revenue that ESET would obtain for products allegedly practicing that patent a decade later. Mr. Arst's damages claim, quite simply, doesn't compute. Tr. 675:22-678:14.

Finjan repeatedly advanced damages theories that were without basis and persisted in these attempts even after the Court granted ESET's *Daubert* motions on Dr. Valerdi and Mr. Arst. Finjan's repeated attempts to present legally improper damages theories – in the face of rulings by this Court – was unreasonable. *See In re PersonalWeb*, 2020 WL 5910080, at *20 (finding case "exceptional" where "PersonalWeb frequently

18                                                                    17cv0183

changed its infringement positions to overcome the hurdle of the day" and "unnecessarily prolonged this litigation after claim construction foreclosed its infringement theories"); *3form, Inc. v. Lumicor, Inc.*, No. 2:12-cv-293, 2018 WL 4688348, at *5 (D. Utah Sept. 28, 2018) (case exceptional where party "ignored repeated warnings about the inconsistency of its very weak position"). Indeed, Finjan disregarded its duty to reassess its damages position in light of the Court's exclusion of its cost-savings theory (D.I. 699-1 at 6-7) and instead pursued additional unserious theories at trial. *See Taurus IP*, 726 F.3d at 1328 (affirming award of attorneys' fees where party failed to "assess the soundness" of its claims and continued to assert baseless theories).

### 3.   *Finjan's Trial Misconduct Was Exceptional.*

Finjan's conduct in this litigation during discovery and at trial, as implemented through the actions of both former and current counsel, provide an additional basis for finding this case exceptional.

During discovery, Finjan's former counsel engaged in repeated violations of the Protective Order, for example, by electronically reproducing large swaths of ESET's Highly Confidential – Attorney's Eyes Only – Source Code into the expert reports of its infringement experts, Dr. Cole, Dr. Mitzenmacher, and Dr. Medvidovic. Magistrate Judge Skomal offered ESET a Hobson's choice of either pursuing a motion for a violation of the operative Protective Order or having Finjan re-do its expert reports to excise the source code and for its counsel to attest that all electronic copies had been purged from its system. In view of the potential risk to ESET's source code, ESET opted for the latter choice. D.I. 419.

Finjan's former counsel persisted in its abuse of the Protective Order by attempting to mark as an exhibit at a deposition of ESET's engineer a schema describing the relationship of the various source code modules in ESET's Endpoint products, a further violation of the plain text of the Protective Order. D.I. 292. Once again, the Magistrate Judge ordered Finjan to destroy the schema and to confirm that it had purged its network of the offending document. D.I. 306. It was against this background that ESET sought to

17cv0183

exclude the testimony of Dr. Bims prior to trial (D.I. 474) for his apparent access to ESET confidential information, although he was not a signatory to the Protective Order, as explored during his cross examination at the March 2020 trial. *See* March 2020 Tr. at 268:10-273:22. Finjan's mishandling of ESET's source code under the Protective Order demonstrated that it was not a serious anti-malware company and hadn't been for at least a decade.

As yet another example of misconduct by Finjan's former counsel, Finjan had retained Include Security to do a so-called examination of ESET's products but did not produce that report or make the personnel at Include Security available for deposition during fact discovery. Instead, Finjan first surfaced the Include Security report in connection with the reliance by Finjan's experts, Dr. Cole, Dr. Mitzenmacher, and Dr. Medvidovic, on that report. D.I. 448; D.I. 454; D.I. 456; D.I. 458. As detailed in ESET's Motion in Limine # 6 (D.I. 745 at 5-7), Finjan attempted to ambush ESET with Finjan's reliance on that report, in complete disregard of this Court's Local Rules. Although the Court reserved decision on ESET's Motion in Limine #6, Finjan elected not to attempt to introduce that report at either the March 2020 or 2023 Trials. Notwithstanding, ESET was forced to expend considerable time and resources attempting to obtain discovery on the non-analysis described in the Include Security report to demonstrate that Finjan's experts had mis-read and misunderstood the alleged findings of that report.

Misconduct by Finjan's counsel was not the sole province of Kramer Levin, although other courts have criticized that firm's litigation conduct. *See generally, Finjan, Inc. v. Juniper Network*, No. C 17-o5659 WHA, 2021 U.S. Dist. LEXIS 138945 at *13-14 (N.D. Cal. Jul. 26, 2021) ("Their conduct was improper and frustrated the fairness of the proceedings. Judges in the future should take this into account when dealing with them in future cases."); *Freshub, Inc. v. Amazon.com, Inc.*, 576 F. Supp 3d 458, 466-67 (W.D. Tex. 2021) (ordering attorneys Andre, Hannah, and Kobialka to complete 30 hours of CLE). During pre-trial negotiations to streamline videotape designations and objections thereto, ESET pared down its designations to 3 hours, while Finjan identified

almost **30 hours** of videotaped deposition designations.   Tr., Telephonic Status Conference Aug. 10, 2023 at 10:19-14:14.  Finjan's bad faith identification of videotaped deposition designations took many hours for ESET's counsel to review to identify counter designations – unnecessary make-work by Finjan as the parties prepared for trial.

At the 2023 Trial, Finjan's counsel and experts worked tirelessly to mislead and confuse the jury about the structure and operation of ESET's products and backend services.  *Supra* at 14-15.  Given the intellectual horsepower of Finjan's experts, it cannot have been a mistake that, for example, Dr. Cole did not know the difference between a DNA Detection (created by a human malware analyst in Europe) and a so-called "DNA profile" (created by ESET's scanner).  *Id.*  Indeed, Dr. Mitzenmacher basically testified that Dr. Cole's opinion regarding certain documents was incorrect.  Tr. at 524:25-525:25.  But Dr. Mitzenmacher engaged in outright fiction with respect to other of his infringement opinions.  Tr. at 545:15-20.  Fortunately, ESET's engineers and its technical expert, Dr. Spafford, were able to cut through the haze created by Finjan's presentation to clarify how ESET's products actually work.  Tr. at 1125:3-1127:7.

It was not a mistake that Finjan tried mightily to create other misimpressions in the minds of the jury, for example, insinuating without a scintilla of evidence that ESET's commercial success was somehow the result of copying of Finjan's products.  Tr. at 1711:12-1712:19.   Finjan's counsel also engaged, with great fanfare, in "fake" impeachments of ESET's witnesses, including showing a witness a deposition transcript that said, practically verbatim, what the witness had just testified on the stand.  Tr. at 1045:13-25.  Finjan's counsel also purported to question ESET's witnesses based on misstatements of the applicable law.  Tr. at 774:22-775:3.  Finjan's counsel also attempted to create a false impression amongst the jury suggesting that Dr. Spafford had not fully considered Dr. Mitzenmacher's analysis of ESET's ScriptAlg source code module, necessitating a curative instruction by the Court.  Tr. at 1253:5-25; 1700:10-24.  Finally, when Finjan realized its infringement case had collapsed, Finjan's counsel attempted to incite panic amongst the jury by suggesting that ESET's witness could have

17cv0183

jeopardized the health of the jury.  Tr. at 1240:10-1241:14; 1648:1-19 (the Court noting that Finjan's attempt to raise COVID was "not the high road," "disappointing," and "could have ended up with me having jurors saying 'I'm not coming back tomorrow because I may get COVID.'").

None of the foregoing should ever have happened.   Finjan's and its counsels' efforts to violate the Protective Order, evade its discovery obligations, misrepresent the facts and law to the jury, "create" infringement theories out of thin air, and attempt to provoke a mistrial, go far beyond zealous advocacy and render Finjan's conduct exceptional.

### 4. *__ESET Should Be Awarded $9,700,000 in Reasonable Attorneys' Fees.__*

As detailed above, Finjan never had a good faith basis for instigating or maintaining this litigation.  Finjan knew, or should have known, that it had no basis for continuing to pursue the '780 patent after this Court's claim construction.  Similarly, Finjan had no basis for pursuing the '844 and '086 patents at least as early as October 2, 2017, and certainly no later than the close of fact discovery in September 2018.  By then, Finjan also knew or should have known that it had no good faith claims based on the '305, '621, or '755 patents.

Had Finjan fairly evaluated its case in September 2018, expert discovery never need have taken place.  Since then, ESET has incurred attorneys' fees in connection with defense of this case of about $9,700,000.[4]   ESET also seeks its fees for bringing this motion.  *Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1172-73 (N.D. Cal. 2015) (granting fees for defendant's original motion for attorneys' fees and its renewed motion for fees after appeal).  In addition, ESET seeks prejudgment and post-judgment interest on any amount awarded pursuant to 35 U.S.C. § 285.  *See, e.g., Mathis & Vico*

---

[4] Consistent with Federal Rule of Civil Procedure 54(d)(2)(B)(iii), ESET provides this fair estimate of the amount sought.  Upon issuance of an order or schedule by the Court, ESET will provide the underlying evidentiary material bearing on the appropriate fee award.  *See* Notes of Advisory Committee on Rules – 1993 Amendment, Paragraph (2), Fed. R. Civ. P. 54; *see also* § 2680 Procedure for the Award of Attorney's Fees, 10 Fed. Prac. & Proc. Civ. § 2680 (4th ed.).

17cv0183

*Prods. Mfg. Co. v. Spears*, 857 F.2d 749, 761 (Fed. Circ. 1988) ("a district court [has] authority, in cases of 'bad faith or other exceptional circumstances,' to award prejudgment interest on the unliquidated sum of an award made under Section 285."); *Dolby Labs., Inc. v. Lucent Techs., Inc.*, No. C 01-20709 JF, 2006 U.S. Dist. LEXIS 52756, at *11-12 (N.D. Cal. July 17, 2006).

## V.   **CONCLUSION**

For the foregoing reasons, ESET respectfully requests that the Court grant ESET's motion, find this case to be "exceptional," and award ESET its reasonable attorneys' fees incurred after the parties' completed fact discovery.

Dated:  September 27, 2023

Respectfully submitted,

**EVERSHEDS SUTHERLAND (US) LLP**

*/s/ Nicola A. Pisano*
NICOLA A. PISANO, CA Bar No. 151282
    NicolaPisano@eversheds-sutherland.com
JOSE L. PATIÑO, CA Bar No. 149568
    JosePatino@eversheds-sutherland.com
SCOTT A. PENNER, CA Bar No. 253716
    ScottPenner@eversheds-sutherland.com
REGIS C. WORLEY, CA Bar No. 234401
    RegisWorley@eversheds-sutherland.com
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA  92130
TELEPHONE:     858.252.6502
FACSIMILE:     858.252.6503

Attorneys for Defendants and Counter-Plaintiffs
ESET, LLC and ESET, SPOL. S.R.O.