Juanita R. Brooks (SBN 75934) brooks@fr.com
Roger A. Denning (SBN 228998) denning@fr.com
Jason W. Wolff (SBN 215819) wolff@fr.com
Michael A. Amon (SBN 226221) amon@fr.com
K. Nicole Williams (SBN 291900) nwilliams@fr.com
Megan A. Chacon (SBN 304912) chacon@fr.com
Tyler R. Train (SBN 318998) train@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070 / Fax: (858) 678-5099

Lawrence Jarvis (*pro hac vice*)
FISH & RICHARDSON P.C.
1180 Peachtree Street, NE
21st Floor
Atlanta, GA 30309
Tel: (404) 891-5005 / Fax: (404) 892-5002

*Additional Counsel Listed on Signature Page*

Attorneys for Plaintiff and Counter-Defendant
FINJAN LLC

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN LLC,<br><br>             Plaintiffs,<br><br>   v.<br><br>ESET, LLC and ESET SPOL. S.R.O.,<br><br>             Defendants.<br><br>_____<br><br>AND RELATED COUNTERCLAIMS | Case No. 17-cv-0183 CAB (BGS)<br><br>**FINJAN LLC'S OPPOSITION TO ESET, LLC AND ESET, SPOL. S.R.O.'S MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285**<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT<br><br>Hearing Date: November 1, 2023<br>Courtroom: 15A<br>Judge: Hon. Cathy Ann Bencivengo |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>**TABLE OF CONTENTS**</u>

I.  INTRODUCTION ................................................................................1

II.  LEGAL STANDARDS ......................................................................1

III.  ARGUMENT .....................................................................................2

    A.  ESET Is Not the Prevailing Party .............................................2

    B.  Finjan Did Not "Mislead" the Court or Jury............................3

    C.  ESET is Not Entitled to Fees for the '780 Patent ....................5

    D.  ESET is Not Entitled to Fees for the '844 Patent ...................9

    E.  ESET is Not Entitled to Fees for the '086 Patent .................16

    F.  ESET is Not Entitled to Fees for the Patents Dropped Before Trial ....19

    G.  Finjan's Damages Theories Do Not Support an Exceptional Case Finding or Attorneys' Fees........................................21

IV.  CONCLUSION .................................................................................24

FINJAN LLC'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES
Case No. 17-cv-0183 CAB (BGS)

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*Ameranth, Inc. v. Domino's Pizza, Inc.*,
    No. 12cv0733 DMS (WVG), 2021 U.S. Dist. LEXIS 22566 (S.D.
    Cal. Feb. 5, 2021). ...............................................................................7

*Avid Tech., Inc. v. Harmonic, Inc.*,
    812 F.3d 1040 (Fed. Cir. 2016) ........................................................12

*Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*,
    858 F.3d 1371 (Fed. Cir. 2017) ...........................................................2

*CliniComp Int'l, Inc. v. Cerner Corp*
    No. 17-cv-02479-GPC (DEB), 2023 WL 1767008 (S.D. Cal. Feb. 3,
    2023) .....................................................................................................7

*DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*,
    2015 WL, 1284826 (Mar. 20, 2015) ..................................................23

*Fate Therapeutics, Inc. v. Shoreline Biosciences, Inc.*,
    22-cv-00676-H-MSB, Doc. No. 396 (S.D. Cal. Oct. 16, 2023) ......2, 6

*Finjan, Inc. v. Bitdefender Inc.*,
    No. 17-CV-04790-HSG, 2019 WL 634985 (N.D. Cal. Feb. 14,
    2019) .....................................................................................................8

*Finjan, Inc. v. Blue Coat Sys.*,
    No. 13-cv-03999-BLF, 2014 U.S. Dist. LEXIS 149077 (N.D. Cal.
    Oct. 20, 2014) ...............................................................................11, 12

*Finjan, Inc. v. Juniper Network*,
    2021 U.S. Dist. LEXIS 5051 (C.D. Cal. Jan. 9, 2021).  ......................7

*Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*,
    790 F.3d 1369 (Fed. Cir. 2015) .........................................................23

*Hanson v. Alpine Valley Ski Area, Inc.*,
    718 F.2d 1075 (Fed. Cir. 1983) .........................................................23

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Lifescan Inc. v. Home Diagnostics, Inc.*,
    No. CIV. A. 96-597-JJF, 2001 WL 1339405 (D. Del. Oct. 30, 2001) ................. 2

*Mass. Inst. of Tech. v. Shire Pharms., Inc.*,
    839 F.3d 1111 (Fed. Cir. 2016) .......................................................... 14

*Medicinova, Inc. v. Genzyme Corp.*,
    No. 14-CV-2513 JLS (KSC), 2021 WL 3054874 (S.D. Cal. July 20,
    2021) ................................................................................ 1, 2, 16, 23

*Neville v. Found. Constructors, Inc.*,
    No. SACV1702507AGAGR, 2019 WL 8195559 (C.D. Cal. Dec. 2,
    2019) ........................................................................................ 17

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014) ...................................................................... 1, 2

*Omega Eng'g, Inc, v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003) .................................................... 13, 14

*OneSubsea IP UK Ltd. v. FMC Techs., Inc.*,
    68 F.4th 1285 (Fed. Cir. 2023) ......................................................... 10

*OptoLum, Inc. v. Cree, Inc.*,
    2022 WL 3576945 (Aug. 19, 2022 M.D.N.C.) ..................................... 23

*Pacing Techs., LLC v. Garmin Int'l, Inc.*,
    No. 12-CV-1067-BEN JLB, 2015 WL 4756669 (S.D. Cal. Aug. 10,
    2015) ........................................................................................ 12

*In re PersonalWeb Techs., LLC*,
    2020 WL 5910080, at *9 (N.D. Cal. Oct. 9, 2020). ................................. 7

*Phigenix, Inc. v. Genentech, Inc.*,
    No. 15-cv-1238, 2018 WL 3845998, at *5 (N.D. Cal. Aug. 13,
    2018) ......................................................................................... 7

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
    930 F.3d 1295 (Fed. Cir. 2019) ...................................................... 1, 2

*Straight Path IP Grp., Inc. v. Cisco Sys., Inc.*,
    411 F. Supp. 3d 1026 (N.D. Cal. 2019)................................................ 7

*Whitewater W. Industries, Ltd. v. P. Surf Designs, Inc.*,
   2021 WL 1265210 (S.D. Cal. Apr. 5, 2021) ....................................................4, 5

**Statutes**

35 U.S.C. § 285 ................................................................................................1, 24

Patent Act Section § 285 .........................................................................................1

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) .........................................................................................6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.     INTRODUCTION

Finjan LLC (hereinafter "Finjan") submits this opposition to ESET, LLC and ESET SPOL. S.R.O.'s (collectively "ESET") Motion for Attorney Fees pursuant to 35 U.S.C. § 285.

This was a hard-fought case.  Litigation spanned seven years and multiple firms and counsel.  There was a mistrial, an appeal, and a retrial.  When the case was remanded from the Federal Circuit there were six patents at issue.  At the scheduling conference the Court urged the parties to pare down the case.  Finjan heeded the Court's request and cut the number of asserted patents in half.  ESET, on the other hand, continued to assert a multitude of defenses.  The evidence was put to the Court in multiple summary judgment motions by ESET, which were denied. Ultimately, the jury returned a verdict for ESET regarding non-infringement, and for Finjan regarding ESET's many other defenses including invalidity and license.

## II.    LEGAL STANDARDS

Section § 285 of the Patent Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  An "exceptional" case under § 285 is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1310 (Fed. Cir. 2019) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)).  "[A] case may warrant a fee award if the litigation is objectively baseless or is brought in subjective bad faith.  *Medicinova, Inc. v. Genzyme Corp.*, No. 14-CV-2513 JLS (KSC), 2021 WL 3054874, at *5 (S.D. Cal. July 20, 2021). "District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).  Hard-

1  fought and contentious litigation does not automatically result in vexatious or bad

2  faith conduct. *Medicinova*, 2021 WL 3054874, at *5.

3  The party seeking fees must prove that the case is exceptional by a

4  preponderance of the evidence, and the district court makes the exceptional case

5  determination on a case-by-case basis considering the totality of the circumstances.

6  *SRI Int'l*, 930 F.3d at 1310; *Octane Fitness*, 572 U.S. at 557.  [E]ven if a court

7  determines that a case is "exceptional," the court still has discretion to deny

8  attorneys' fees. *Medicinova*, 2021 WL 3054874, at *5.  Fees should not be awarded

9  solely because a party did not prevail, as "fee awards are not to be used 'as a penalty

10  for failure to win a patent infringement suit.'"  *Fate Therapeutics, Inc. v. Shoreline*

11  *Biosciences, Inc.*, 22-cv-00676-H-MSB, Doc. No. 396 (S.D. Cal. Oct. 16, 2023)

12  (citing *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1376 (Fed. Cir.

13  2017) (quoting *Octane Fitness*, 572 U.S. at 548)).

14  ## III.  ARGUMENT

15  ### A.  ESET Is Not the Prevailing Party

16  As explained in Finjan's Opposition to ESET's Bill of Costs (Doc. No. 1031),

17  both parties filed suit against each other at the same time, ESET in S.D. Cal. and

18  Finjan in N.D. Cal.  After hearing and denying multiple summary judgment motions

19  on the many claims in this case, at trial, the jury returned a verdict of non-

20  infringement in ESET's favor, but rejected ESET's claims of anticipation,

21  obviousness, § 101 ineligibility, inventorship, and license—all of which ESET

22  demanded be presented to the jury for determination irrespective of the jury's

23  infringement determination.  *See* Doc. No. 1016, Redacted Final Jury Verdict.  As

24  such, ESET should not be considered *the* prevailing party.  *See, e.g.*, *Lifescan Inc. v.*

25  *Home Diagnostics, Inc.*, No. CIV. A. 96-597-JJF, 2001 WL 1339405, at *2 (D. Del.

26  Oct. 30, 2001) ("I conclude that neither party has prevailed because the accused

27  product was found not to infringe, and the patent was found to be valid and

28

enforceable."); *see also* Doc. No. 1031, Finjan's Opposition to ESET's Bill of Costs.

**B.      Finjan Did Not "Mislead" the Court or Jury.**

Throughout ESET's motion ESET makes numerous unsupported claims that Finjan "deliberately misled th[e] Court and the jury and denied the evidence in the undisputed factual record." *See e.g.*, Mot. at 5.  Not so. This was a highly technical, and fact intensive case, with dueling experts offering different opinions with respect to accused product operation.  ESET's CTO, Mr. Malcho testified about why information was so obtuse and compartmentalized at ESET—largely reflecting the need to avoid a single point of failure:

> Q:  And again, why does ESET compartmentalize knowledge about its source code?
> A:  So, it's about our protection and, generally, about when we talk about security, it's always related to protection of some data. . . . For example, imagine, someone leaves, and it is not on good terms. By not having knowledge or access to all of the source code, such a person wouldn't be able to significantly impair our product.
> And, of course, should there be a leak of our intellectual property or the source code, any leak that would happen . . . -- obviously, you wouldn't lose all of the information at the same time.

Exh. A (2023 Trial Tr.) at 801:8–21.

Moreover, little about the record was "undisputed" as ESET claims.  In fact, the operation of the accused products was heavily disputed, as recognized by the Court numerous times in denying motions for Summary Judgment. *See e.g.*, Doc. Nos. 695, 699, 950.

ESET's factual witnesses further reinforced the sharp divide between the parties regarding product operation.  ESET's CTO, Juraj Malcho, went as far as stating that the public facing materials provided to customers were intentionally inaccurate.  Exh. A (2023 Trial Tr.) at 804:2–5.  Deposition testimony played for the jury further reinforced the unreliability of ESET's documents.  Exh. B (Bono Dep.

Tr.) at 14:19–24.  ESET disputed the accuracy of its own internal documents, with some ESET technical witnesses contradicting each other about certain internal schematics.  *Compare* Exh. A (2023 Trial Tr.) at 882:6–884:5 (Mr. Sucansky discussing an internal email where he stated that he "like[d]" the schema of ESET's product operations to be shared internally at ESET), *with id.* at 900:22–901:20 (Mr. Janosik describing the same schema that Mr. Sucansky testified about as "wrong"). This disputed evidence was something the jury had to weigh and consider in reaching its ultimate decision.

ESET's argument that "Finjan sought to create confusion about what constituted a 'DNA Detection' or 'DNA Signature' is likewise misguided.  A "DNA Detection," Dr. Cole noted, is not created inside the ThreatSense engine.  Exh. C (2023 Trial Tr.) at 370:13–15.  And DNA Detections are distinct from DNA profiles.  *See id.* at 370:17–19.  Any perceived "confusion" was driven by the fact that many of these terms are similar, and, as Dr. Cole noted, used interchangeably. *Id.* at 368:13–22.  Far from attempting to create confusion, sensing that confusion was being created by the various terms surrounding DNA, Dr. Mitzenmacher attempted to clarify the differences on cross-examination.  Exh. E (2023 Trial Tr.) at 524:2–14.

Moreover, if ESET genuinely believed Finjan, either through its counsel or trial witnesses, was "deliberately" misleading the jury, the "appropriate time to address the issue was during trial . . . not [a] month[] later in a motion for attorney's fees."  *See Whitewater W. Industries, Ltd. v. P. Surf Designs, Inc.*, No. 317-CV-01118-BEN-BLM, 2021 WL 1265210, at *3 (S.D. Cal. Apr. 5, 2021).  ESET's failure to raise this alleged impropriety at trial suggests that ESET only crafted its theory of impropriety in an attempt to bolster its fees motion.  *See id.* ("As Defendants have the burden of showing this case is exceptional for purposes of awarding attorney's fees, their failure to address this issue during trial indicates Defendants believed the misstatement to be immaterial to the case.") (internal

1   citations omitted).  And although ESET carries the burden of showing that this case
2   is exceptional, ESET provides no evidence of Finjan directing its witnesses to
3   mislead the jury.  *See id.* ("Moreover, Defendants do not provide any evidence
4   Whitewater's counsel "directed" this alleged misstatement.  It could be just as likely
5   that Dr. Stevick made any alleged misstatements on his own accord. For this reason
6   too, Defendants have not carried their burden of proof on this allegation.").

7              **C.    ESET is Not Entitled to Fees for the '780 Patent**

8         ESET presents a number of arguments in support of fees for the '780 patent.
9   First, ESET argues, as it did in its multiple denied summary judgment motions, that
10  Finjan and its expert, Dr. Mitzenmacher, failed to apply the Court's claim
11  construction. Mot at 5, 14.  Second, ESET relatedly argues that Finjan "changed its
12  alleged basis of infringement." *Id.*  Third, ESET argues for a post-trial claim
13  construction, opining that the '780 patent claims apply only to "external"
14  components and therefore Finjan's theory of hashing internally referenced
15  components was somehow improper. *Id.*

16        First, ESET is mistaken that Dr. Mitzenmacher did not apply the Court's
17  claim construction order.  The Court previously considered this argument ESET
18  makes in its fees motion, and it rejected it on summary judgment.  *See* Doc. Nos.
19  699, 950 (denying summary judgment of non-infringement).  Dr. Mitzenmacher's
20  report both acknowledges and states that he applied the Court's claim construction
21  order. Exh. D (Mitzenmacher Rpt.) at ¶¶ 69, 89.  ESET takes issue with opinions
22  presented in Dr. Mitzenmacher's report that are based on an alleged separate hash of
23  a Downloadable with its referenced software components. *See* Mot. at 4.  However,
24  ESET previously made this argument at summary judgment and lost. *See* Doc. Nos.
25  699, 950 (denying summary judgment of non-infringement).  Dr. Mitzenmacher did
26  not present any infringement theory at trial which was based on any separate
27  hashing done by ESET products, which ESET acknowledges. *See* Mot. at 4–5
28  (complaining that Finjan "abandoned" its separate hashing theory).

Dr. Mitzenmacher provided multiple examples of infringement in his report, including theories and supporting evidence based on scenarios where a Downloadable is hashed together with its referenced software components, which were presented at trial. *See, e.g.*, Exh. D (Mitzenmacher Rpt.) at ¶¶ 269, 278, 280, 313, 314, 336, 358, 386, 388, 390, 396. The Court's repeated denial of ESET's summary judgment motions further shows that Finjan's infringement theories were not objectively baseless or frivolous. *See Fate Therapeutics, Inc. v. Shoreline Biosciences, Inc.*, No. 22-cv-00676-H-MSB, Doc. No. 396, at *9 (S.D. Cal. Oct. 16, 2023) ("Plaintiffs' claims for patent infringement were not objectively baseless or frivolous. Plaintiffs' claims for patent infringement withstood both Shoreline's Rule 12(b)(6) partial motion to dismiss and Shoreline's early partial motion for summary judgment.").

Second, ESET is incorrect that Finjan "repeatedly revised the alleged bases of its infringement claims." Mot. at 5. ESET, all while accusing Finjan of misleading the Court and the jury (*see* Mot. at 5), suggests that it was somehow ambushed at trial with a new infringement theory it did not object to at trial. Again, not so. Dr. Mitzenmacher did not offer any new or previously undisclosed theory of infringement at trial. In particular, Dr. Mitzenmacher's theory of infringement based on hashing a file having internally-referenced embedded components was (1) adequately disclosed in his report via repeated discussion of dropper files (*see, e.g.*, Exh. D (Mitzenmacher Rpt.) at ¶¶ 269, 290, 292–298, 306–314, 358, 381, 386, 387, 390, 396, 397); and (2) compliant with the court's claim construction order (*id.* at ¶¶ 69, 89 (discussing the court's claim construction)). As Dr. Mitzenmacher explained both in his report and at trial, the internally embedded components are hashed together with the parent file and fetched for analysis/scanning by the ThreatSense engine. *See, e.g.*, *id.* at ¶¶ 386, 387; Exh. E (2023 Trial Tr.) at 490:18–493:1; 493:5–494:5; 494:11–24.

1        Related to this argument, ESET cites a number of cases which it contends

2   support the argument that "shifting" infringement theories make a case exceptional.

3   *See* Mot. at 16.  None of these cases are on-point as Finjan did not change its

4   infringement theories.  For example, *CliniComp Int'l, Inc. v. Cerner Corp* involved

5   a plaintiff presenting four different theories of infringement, ***three of which were***

6   ***not disclosed***.  *See* No. 17-CV-02479-GPC-DEB, 2023 WL 1767008, at \*10 (S.D.

7   Cal. Feb. 3, 2023).  *Ameranth, Inc. v. Domino's Pizza, Inc.* involved a plaintiff

8   taking contradictory claim construction positions across different litigations and a

9   patent of questionable validity.  No. 12cv0733 DMS (WVG), 2021 U.S. Dist.

10  LEXIS 22566, at \*29–31 (S.D. Cal. Feb. 5, 2021).  *Finjan, Inc. v. Juniper Network*

11  involved a new infringement theory added on the eve of trial.  No. C 17-05659,

12  2021 U.S. Dist. LEXIS 5051, at \*6 (C.D. Cal. Jan. 9, 2021).  *Straight Path IP Grp.,*

13  *Inc. v. Cisco Sys., Inc.* was found exceptional because of the patent owner's

14  inconsistent positions regarding the scope of the claimed invention, not because of

15  infringement theories.  411 F. Supp. 3d 1026, 1028 (N.D. Cal. 2019).  *In re*

16  *PersonalWeb Techs., LLC* involved a plaintiff who repeatedly changed positions

17  regarding which sub-system its infringement allegations were really based upon.

18  2020 WL 5910080, at \*9 (N.D. Cal. Oct. 9, 2020).  Finally, *Phigenix, Inc. v.*

19  *Genentech, Inc.* involved a plaintiff who concocted a new infringement theory, and

20  thereafter failed to timely disclose it to defendants.  No. 15-cv-1238, 2018 WL

21  3845998, at \*5 (N.D. Cal. Aug. 13, 2018).  Despite what ESET's sweeping

22  parentheticals would suggest, these cases do not stand for the proposition that a

23  Plaintiff pursuing disclosed theories of infringement makes a case exceptional.

24

25

26

27

28

7

FINJAN LLC'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES
Case No. 17-cv-0183 CAB (BGS)

ESET next complains that Finjan narrowed its case at trial because it "abandoned both its 'hashed separately' and its data stream[1] arguments," and with no evidence, asserts that Finjan did so because the arguments "had no factual basis." Mot. at 4–5. Simply because Finjan did not present evidence of one of its multiple infringement examples, of which ESET was on notice, does not mean that Finjan had no factual basis for that theory to begin with. For example, in Finjan's opposition to ESET's motion for summary judgment, Finjan pointed to numerous pieces of evidence cited in Dr. Mitzenmacher's report that supported the "data stream" argument. *See* Doc. No. 941 at 3–5. The Court denied ESET's motion for summary judgment. Doc. No. 950.

Third, ESET, in a belated effort to further construe the claims of the '780 patent, argues that Finjan's infringement theory based on the hashing of a Downloadable and its internally referenced components is improper because the '780 claims are directed to externally referenced components. Mot. at 14. Yet nothing in the '780 patent or claims requires that the referenced components be "external." Notably, the new construction now advanced by ESET supposedly supporting this argument has already been rejected by another court. *See Finjan, Inc. v. Bitdefender Inc.*, No. 17-CV-04790-HSG, 2019 WL 634985, at *10 (N.D. Cal. Feb. 14, 2019) (rejecting Bitdefender's argument that the fetched components must be external stating "To start, the specification supports the parties' agreement that fetching means retrieving, and that the software component retrieved at least could be within the Downloadable" (internal quotation omitted)). Just as it did at trial, ESET is improperly reading limitations into the claims. There was nothing

---

[1] In its opposition to ESET's motion for summary judgment, Finjan pointed to numerous pieces of evidence cited in Dr. Mitzenmacher's report that showed that a buffered stream resulted in the hashing together of a downloadable and its fetched software components. *See* Doc. No. 941 at 3-5. This was not "creat[ing] enough confusion to survive" as ESET claims (Mot. at 4), but presenting Dr. Mitzenmacher's opinions and cited evidence to the court. The court properly recognized that this was a classic fact issue of competing experts. *See* Doc. No. 950 (denying ESET's motion for summary judgment of non-infringement).

1    improper about Finjan's infringement theory based on internally referenced

2    components, which was consistent with the Court's construction.  *See* Doc. No. 950

3    (denying ESET's motion for summary judgment which argued that Dr.

4    Mitzenmacher misapplied the Court's claim construction).

5          **D.     ESET is Not Entitled to Fees for the '844 Patent**

6          ESET provides several reasons Finjan's assertion of the '844 Patent was in

7    "bad faith."  Each is unavailing.

8          First, ESET is incorrect that the Court's claim construction precluded Finjan's

9    infringement theory for the '844 Patent.  ESET argued at the *Markman* hearing that

10   its "deployment" based construction meant that "the availability has to be after the

11   linking, and **availability is available to a single web client anywhere, not a**

12   **specific web client**."  Exh. F (2017-09-25 Claim Construction Hearing Tr. Vol. 1) at

13   81:19–21 (emphasis added).  ESET's 2017 Proposed Claim Construction is

14   juxtaposed with the Court's construction in the table below:

| ESET's 2017 Proposed Claim Construction | The Court's Claim Construction |
|---|---|
| before deployment of the Downloadable to a web server where web server means the server on which the Downloadable is deployed and which responds to requests from web clients for content | Before the Downloadable is available on a web server to be called up or forwarded to a web client |

23   Doc. No. 195 at 4 (2017-11-14 Claim Construction Order).  Undeterred by the

24   Court's rejection of its construction, and bolstered by Finjan's denied motions for

25   reconsideration, ESET decided that it "won" claim construction, and thus *any*

26   infringement theory was contrary to the Court's construction.  *See, e.g.*, Doc. Nos.

27

28

1  188-1, 212-1.  But as shown above, this Court *rejected* ESET's proposed

2  construction and "deployment"-based theory.

3  Nevertheless, ESET clung to its rejected construction.  Before the first trial,

4  ESET filed a motion for summary judgment of non-infringement of the '844 Patent

5  premised in large part on the basis that Dr. Cole's infringement theory was

6  inconsistent with this Court's claim construction.  Doc. No. 482 at 6.  ESET had

7  presented the same figure-based argument it presented to the jury at the 2023 Trial

8  to the Court in 2019 at the hearing on its summary judgment motion.  *See* Exh. G

9  (2019-09-26 MSJ Hearing Tr.) at 47:18–20.  In *denying* ESET's motion at summary

10  judgment, the Court explained: "The inspector—thank you—being in a box separate

11  from the web server box.  *This is just a diagram*.  And it does say on the patent that

12  these are examples.  These things happen in all kinds of different places." *Id.* at

13  47:17–20 (emphasis added).  The Court continued: "if the Downloadable is in a

14  system and there's someone in the system that's inspecting it before it goes to the

15  client and that's who they're calling the web server, *I'm not sure that's contrary to*

16  *the Court's construction as long as it's happening before it gets to the client*." *Id.*

17  at 47:25–48:4 (emphasis added).  Recognizing that Finjan's infringement theory

18  conformed to the Court's construction, the Court acknowledged that "[t]he idea that

19  they didn't apply my construction I'm not sure is apparent to me on its face." *Id.* at

20  48:20–22; *see also* Doc. No. 695 (Order denying ESET's MSJ re '844 Patent).  The

21  fact that the Court denied ESET's motion for summary judgment of non-

22  infringement on this basis is a sign that Finjan's theory was not objectively baseless.

23  *OneSubsea IP UK Ltd. v. FMC Techs., Inc.*, 68 F.4th 1285, 1296 (Fed. Cir. 2023)

24  ("When a district court, fully aware of the competing contentions of the parties,

25  declines to end the case on summary judgment and allows a plaintiff's case to

26  proceed, the district court may have effectively determined that the position of the

27  party opposing summary judgment is not objectively baseless, making it nearly

28

1   impossible for the plaintiff's case (on the issue that was the subject of the summary

2   judgment motion) to "stand out" as lacking substance at that time.").

3          ESET continues to represent that its "deployment" construction, argued for

4   and lost during claim construction, is ***required*** by the Court's construction.  During

5   Finjan's case-in-chief, the Court again recognized that ESET's proposed

6   construction would read out embodiments from the claim: "There are also, however,

7   descriptions, particularly, at Column 5, where it talks about if there's no signed

8   inspected downloadable, then the network protection engine would generate the

9   DSP and compare it against local security processes policies." Exh. C (2023 Trial

10  Tr.) at 427:4–8.  In the '844 Patent, this Court recognized, "there was an opportunity

11  for an inspector to [link the Downloadable security profile] if the Downloadable

12  came after the request from the client but before it was delivered to create the

13  downloadable—to create the DSP." *Id.* at 427:12–15.

14         Just as ESET did at the summary judgment hearing, Dr. Spafford on direct

15  presented the jury with figures from the '844 Patent, Figure 1, and Figure 6.  *See*

16  Exh. H (2023 Trial Tr.) at 1109:8–1111:24. Then, Dr. Spafford explicitly stated that

17  the Court's construction "imposes a timing constraint on when the Downloadable is

18  available, and it also points out **it's a web server, which in plain and ordinary**

19  **sense is a web server anywhere**." *Id.* at 1114:4–8.  The Court's construction

20  imposes no such requirement—a fact that, as discussed above, the Court has

21  recognized.

22         The Federal Circuit in *Blue Coat* noted that the primary issue with Blue

23  Coat's argument was that it was raising a claim construction argument for the first

24  time at the JMOL stage. Its commentary on the claim limitation, however, is still

25  instructive.  *Id.*  At trial, this Court recognized that the Federal Circuit's opinion in

26  *Blue Coat* was informative on this limitation.  Exh. C (2023 Trial Tr.) at 429:15–22

27  ("THE COURT: [A]lthough it wasn't addressed specifically by the Federal Circuit

28  in *Blue Coat*, because apparently they raised [the claim construction argument] a

little late in the game, at least the inference from there was that it could reasonably be understood to require that the linking occurred at some point before users are permitted to access the downloadable, but not necessarily before the downloadable is made available on the Internet.").  Nothing about asserting an infringement theory a party believes is consistent with the Court's construction provides a basis for fees. *Pacing Techs., LLC v. Garmin Int'l, Inc.*, No. 12-CV-1067-BEN JLB, 2015 WL 4756669, at *2 (S.D. Cal. Aug. 10, 2015) ("This case does not stand out from the rest.  Here, there is no evidence that Pacing clearly knew that the arguments it raised were meritless.").

Second, ESET hurls a grab bag of attacks apparently directed at Finjan's maintaining its claim of infringement against ESET's network gateway and Backend systems.  ESET claims that "Finjan had agreed to a construction of the claimed 'inspector' that specified it was a 'non-network gateway,'" and cites to the *Blue Coat* case.  Nowhere in the cited *Blue Coat* claim construction order is there any indication that Finjan agreed to a construction of "inspector."  To the contrary, plainly evident from the portion of the opinion cited by ESET, which refers to the term "before [a/the] web server make[s] the Downloadable available to web clients," is (1) that Finjan proposed plain and ordinary meaning for the term, and (2) that the Court ***construed*** the term—there was no agreement.  *Finjan, Inc. v. Blue Coat Sys.*, No. 13-cv-03999-BLF, 2014 U.S. Dist. LEXIS 149077, at *36 (N.D. Cal. Oct. 20, 2014) ("Accordingly, the term 'before [a/the] web server make[s] the Downloadable available to web clients' is construed as 'before [a/the] non-network gateway web server make[s] the Downloadable available to web clients.'").

It is simply untrue that Finjan "disavowed coverage of the network gateway of the Ji '348 Patent."  Mot. at 14.  The standard for finding disclaimer is both "demanding" and "high." *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016) (citation omitted).  For example, the Federal Circuit has found that a patentee disclaimed a patent scope covering "triple superphosphate," where the

patentee cancelled a claim covering "triple superphosphate" and expressly disclaimed that compound in his arguments to the examiner to gain patent allowance. *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003) (citing *Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319, 1325 (Fed. Cir. 2002).

In the '844 Patent's prosecution history, there are two relevant portions of the "Remarks" at issue here. Exh. I (DTX-2006.0218). In the Remarks it reads "Ji teaches a method performed on a network gateway **of examining application programs for lines of code that the client computer should monitor for security policy violations**." *Id.* (emphasis added). The sentence says nothing about the scope of the '844 Patent claims—only about what the applicant understood Ji to teach.

There are also two discrete grounds on which the applicant actually distinguished Ji. The applicant argued:

> Ji does not teach generating the Downloadable security profile or linking the Downloadable security profile to a Downloadable before the web server makes the Downloadable security profile available to web clients. Further, Ji does not teach examining an already linked Downloadable security profile by network gateways, if the profile is deemed trustworthy. In Ji's system, the burden of examining a Downloadable for the suspicious code is always on the network gateway, and must be done every time. In Applicant's system, some of the burden may be transferred to the inspector, and generation of the Downloadable security profile may be performed only once.

Exh. I (DTX-2006.0218). The second ground, beginning "[f]urther, Ji does not teach examining an already linked Downloadable security profile," distinguishes Ji based on an "already linked Downloadable," which applies to claims not at issue in this case. *See, e.g.*, Exh. J (PTX 901, '844 Patent) at cl. 22.

The first ground is amenable to multiple reasonable interpretations. It is unclear whether the underlined phrase "before the web server makes the Downloadable security profile available to web clients" modifies "generating the

Downloadable security profile," or "linking the Downloadable security profile to a Downloadable," or both—there is no comma in the sentence.  Given that it is the "linking" step that contains the "before a web server" limitation in claim 1 as amended and issued, it is more likely that the "before a web server" phrase modifies only the "linking" step in Applicant's statement distinguishing Ji.  But where the applicant's statements are "ambiguous, or even amenable to multiple reasonable interpretations," prosecution disclaimer is not established.  *Mass. Inst. of Tech. v. Shire Pharms., Inc.*, 839 F.3d 1111, 1119 (Fed. Cir. 2016).  Indeed, neither of the first two grounds ("generating" and "linking") say anything at all about a "network gateway" or otherwise expressly exclude an inspector on the network gateway from the scope of the '844 Patent.  Disavowal must be "unequivocal." *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003).  No such disclaimer exists in Applicant's Remarks.

ESET has continuously asserted to the Court that the PTAB found that Finjan is estopped from arguing that Claim 1 reads on a network gateway.  First, at the summary judgment hearing in this case, ESET told the Court: "The PTAB has said yes to that" [where "that" refers to prosecution history estoppel].  Exh. G (2019-09-26 MSJ Hearing Tr.) at 49:4. Second, at trial, ESET referenced a "final written decision" that might be helpful to the Court.  Exh. C (2023 Trial Tr.) at 430:13–14. As ESET is aware, the '844 Patent has been challenged in four IPRs, only one of which received a Final Written Decision: IPR2019-00026.  In that IPR, it is true that the PTAB stated that it was "not persuaded by an argument by Patent Owner that inspection and linking at a network gateway *necessarily* could satisfy this claim limitation."  Exh. K (IPR2019-00026 Final Written Decision) at 19 (emphasis added).  But the PTAB declined to reach the claim construction issue in rejecting the challenge to the '844 Patent, stating explicitly in the Final Written Decision that "we conclude that there is no need to construe this term, ***including whether or not the recited "linking" may occur "at [a] network gateway," to resolve the controversy***

*before us.*" *Id.* at 20 (emphasis added). At bottom, an issue where both parties have reasonable arguments for and against prosecution disclaimer, does not come anywhere near the requisite proof necessary to demonstrate that this issue renders the case extraordinary and therefore justifies an award of attorney fees.

ESET also claims that Finjan's "purported evidence of infringement by ESET's gateway products and Backend Systems (LiveGrid Feedback System, CMPS, and LiveGrid Reputation System) was entirely lacking." Mot. at 6. Such an assertion is once again, unsupported. First, with respect to "web server," ESET crafts a strawman and then faults Finjan for not proving it. "Web server" in the claims of the '844 Patent is a passive limitation. The patent's asserted claims require only that linking take place before a web server makes the Downloadable available to web clients. Infringement of the '844 Patent does not require that Finjan **point** to the web server in each of ESET's products—only that Finjan show that the products *link* the Downloadable security profile "before a web server makes the Downloadable available to web clients" (as construed by the Court).

Regardless, there was evidence presented at trial from which the jury could conclude that ESET's products "link" with the requisite timing. As ESET admits, Dr. Cole pointed to the "proxy cache" in a diagram in the manual for ESET Gateway Security as the web server in the "particular case" of ESET Gateway Security. Exh. L (2023 Trial Tr.) at 318:7–12. Dr. Cole's statement that the proxy cache was "acting as the web server" was not an acknowledgment that the proxy cache was not a web server—to the contrary, Dr. Cole affirmed the labeling of that part of the diagram as the "web server.". *Id.* at 318:13–14; *see also id.* at 285:3-286:21 (explaining the operation of the ESET Gateway in view of the ESET Gateway diagram and ESET's witness testimony, including how the proxy cache is the claimed "web server"). For the other gateway products, ESET File Security and Mail Security, there was no need for a "proxy cache"—those products run on servers, which is evident from later exhibits similar to the exhibit relied on by Dr.

1   Cole for ESET Gateway Security.  *See, e.g.*, Exh. M (DTX-2299) at DTX-

2   2299.0001 ("For Microsoft Windows Server").

3          Contrary to ESET's assertion, Finjan did present evidence of infringement of

4   the Backend Systems, which were only accused for the system claim of the '844

5   Patent, claim 15.  Dr. Cole opined that users in the United States received the benefit

6   of ESET's extraterritorial Backend Systems.  *See, e.g.*, Exh. C (2023 Trial Tr.) at

7   375:21–24; 376:16–22.  Evidence was presented from which the jury could

8   conclude that these systems were controlled by users in the United States.  The

9   Court acknowledged that it heard such testimony before the beginning of the next

10   trial day.  Exh. E (2023 Trial Tr.) at 437:18–21 ("[M]y takeaway was that at least

11   with regard to the cloud-based review that is happening in—outside of the United

12   States, and the testimony was but the benefits of that are being used in the United

13   States.").  ESET's complaints thus ring hollow.  Attorneys' fees are not proper

14   merely because ESET disagrees with Finjan as to the weight of the evidence, even if

15   the jury ultimately agreed with ESET—Finjan's infringement theories regarding the

16   '844 Patent were not "objectively baseless."  *Medicinova*, 2021 WL 3054874, at *5.

17          **E.     ESET is Not Entitled to Fees for the '086 Patent**

18          ESET presents yet another jumble of arguments for fees relating to the '086

19   patent.  First, ESET argues that Finjan never had any good faith basis for asserting

20   that any ESET product generated an appended downloadable.  Mot. at 7.  Second,

21   ESET complains that Finjan dropped claim 42 of the '086 patent.  Third, ESET

22   argues that Finjan "deliberately" tried to "mislead" and "create confusion" about

23   "DNA Detection[s]" and "DNA Signatures."

24          First, ESET is incorrect that Finjan never had a good faith basis for asserting

25   the appended downloadable claims of the '086 patent against ESET.  As illustrated

26   in both Dr. Mitzenmacher's infringement report and Finjan's infringement

27   contentions, Finjan identified sufficient evidence to form a good faith basis for

28   asserting infringement by ESET's products.  *See, e.g.*, Exh. D (Mitzenmacher Rpt.)

at ¶¶ 845–1782; *see also Neville v. Found. Constructors, Inc.*, No. SACV1702507AGAGR, 2019 WL 8195559, at *1 (C.D. Cal. Dec. 2, 2019) (finding case not exceptional where instead of "challeng[ing] Plaintiffs' final infringement contentions," "Defendants continued litigating the matter, including with highly substantive summary judgment motions on the merits of almost all issues in the case"). ESET further argues that Finjan only survived summary judgment on the appended downloadable claims by pointing to "disparate, unrelated portions of ESET's system" and by offering "disingenuous arguments." This is also untrue. As the Court properly recognized, factual issues precluded summary judgment on these claims. In its opposition, Finjan identified a number of paragraphs in Dr. Mitzenmacher's infringement report explaining Finjan's bases for asserting infringement of these claims. *See* Doc. No. 547 at 6–12. As illustrated at trial, whether ESET's systems are truly "disparate" and "unrelated" as ESET claims was a factual question hotly contested by both experts and other ESET fact witnesses. *Compare* Exh. C (2023 Trial Tr.) at 400:11–401:6 (Dr. Mitzenmacher explaining the operation of ESET's multilayered system); Exh. E (2023 Trial Tr.) at 465:3–466:12 (Dr. Mitzenmacher explaining how PTX-180 shows that ESET's products and systems "are all coupled together; that is, they are sending information back and forth to each other") *with* Exh. H (2023 Trial Tr.) at 1087:14–1088:11 (Dr. Spafford testifying that ESET's back-end systems are independent and do not depend on each other). Moreover, ESET conveniently fails to cite a single example of Finjan's so-called "disingenuous" arguments. Finally, ESET complains that Finjan asserted the "appended Downloadable" claims right up to the "eve of trial" in March 2020. Mot. at 7. While Finjan ultimately dropped the appended downloadable claims, it did so for case narrowing and timing purposes, not because of any lack of evidence.

Second, ESET's complaints regarding Finjan dropping claim 42 of the '086 patent are without merit. To begin with, ESET offers no explanation as to how it was somehow burdened or otherwise prejudiced by Finjan dropping claim 42. For

example, ESET fails to explain how defending against claim 42 is meaningfully different than defending against claim 24 of the '086 Patent.  Moreover, ESET contested the presence of numerous elements of claim 42, which would have resulted in significantly more time spent on this patent due to those disputes.

For example, ESET contested the presence of both a database of security profiles and a database manager, among other elements.  *See* Doc. No. 485 at 13–15 (Mot. for Summary Judgment of Non-Infringement of '086 Patent).  One of ESET's witnesses admitted there was a database in his deposition.  Exh. N (Somlo Dep. Tr.) at 20:2–8, 10–11, 13–14; *see also* Exh. O (DTX 2017.1) (showing numerous databases).

Faced with the additional time it would have taken to explore these contested elements when ESET used different witnesses to rebut what their own witnesses testified to, and general apprehension about the length of ESET's impending rebuttal case and numerous witnesses ESET represented it brought to trial to testify, Finjan chose to streamline its case in order to avoid exceeding its allotted time.  By dropping claim 42, Finjan was able to further reduce the claims at issue, issues for the jury, and time spent on the standby expert and factual witnesses.  Further, in light of the Court's guidance and strong recommendation to narrow the case, Finjan made the decision to drop claim 42.  *See* Exh. P (2023-01-26 – Case Status Conference Tr.) at 3 (strongly recommending to further narrow the case).  If dropping claims—as ESET itself did—in order to streamline a case becomes a basis for awarding attorney fees, parties will be discouraged from narrowing their cases.

Third, ESET's argument that Finjan sought to create confusion and "deliberately and unashamedly tried to mislead the jury" regarding DNA Detections and DNA Signatures is baseless.  *See* Mot. at 11.  Notably, ESET provides no evidence of this allegedly impropriety.  In fact, it was ESET—not Finjan—who repeatedly used different terminology to obfuscate what was created by the accused products and what it was compared with to determine if it was potentially malicious,

e.g., DNA Signatures.  *See, e.g.*, Exh. E (2023 Trial Tr.) at 523:19–527:24 (ESET repeatedly asking Dr. Mitzenmacher about signatures despite him repeatedly testifying that he was not pointing to DNA Signatures as satisfying the claim limitation).

As Dr. Mitzenmacher explained, DNA Signatures (later renamed "Detections" by ESET) are what the generated DNA profile is compared to.  Exh. E (2023 Trial Tr.) at 527:22–24 ("But to be clear, where a [] signature is created doesn't matter, because I'm looking at the security profile, and that's created at the EndPoint or the Gateway.").  This is also consistent with Dr. Cole's testimony provided during his direct examination.  *See* Exh. L (2023 Trial Tr.) at 296:1–10 (pointing to DNA profiles).  And for good measure, Dr. Mitzenmacher repeatedly explained that the "DNA profile" was generated by the ThreatSense engine, ***not*** human malware analysts.  Exh. C (2023 Trial Tr.) at 418:7–18; Exh. E (2023 Trial Tr.) at 454:9–456:19; 523:19–527:24.

**F.    ESET is Not Entitled to Fees for the Patents Dropped Before Trial**

ESET argues that it is entitled for attorneys' fees for three patents Finjan dropped months before trial.  ESET's position is unreasonable and unsupported for several reasons.  First, the Court explicitly requested at the case management conference that Finjan narrow its case for trial and reduce the issues before the jury given the limited amount of trial time available to cover the issues.

> ***I would strongly recommend to plaintiffs' counsel***, you're new faces in this, that you meet with your client and determine if you can streamline your case any further.
> ***Do we actually need to try six patents in this case? Is each one necessary to cover some accused device, or are we just piling on?*** Because my recollection of this is it's a very complicated technology. It will be a challenge for any jury to follow and understand it all. And the more patents and more claims, and more complicated it gets, the harder it's going to be to avoid potential trial error issues in the case.
> ***So you know you can try what you want to try, but you need to appreciate that you have 25 hours to put this case on, including damages, opening and closing statements. And so I think there may***

***be room here to look at the number of patents and claims being asserted and determine if all of them are actually required to get the remedy especially since they are all now expired***. So it's not like you need to assert them forward-looking injunctive relief.

Exh. P (2023-01-26 – Case Status Conference Tr.) at 3 (emphasis added).

Finjan complied with the Court's request by dropping three patents and adjoining issues, which the Court acknowledged and appreciated. Exh. Q (2023-08-10 – Pretrial Conference Hearing Tr.) at 10 ("THE COURT: ***Yes. And I do appreciate the efforts the parties have made, at my request, to narrow the focus of this case***, bring it down to a two-week trial, which will be much easier to sit a jury and keep their attention on what is very complex technology.") (emphasis added).

Second, ESET incorrectly asserts that this narrowing did not result in a significant time savings for trial. ESET ignores that Finjan would have had to present at least three additional experts and potentially a fourth expert had it maintained its assertion of these patents. By dropping the three patents, the Court was able to cut the time for trial from three weeks to two.

Finally, ESET's arguments regarding the '305 Patent miss the mark. ESET again repeats arguments about the lack of a database despite copious amounts of evidence (i.e., source code, documents, and witness testimony) showing the presence of a database in accordance with the claims. *See, e.g.*, Exh. R (2023-03-24 – Excerpts of Medvidovic Rpt.) at ¶¶ 184–189, 196, 198–199, 201–209, 230 (showing the presence of a database); Exh. N (Somlo Dep. Tr.) at 20:10–11 (admitting the presence and usage of a database). Further, ESET assumes it would have succeeded in winning its motion for summary judgment, which was replete with misrepresentations by ESET and factual issues that precluded summary judgment. For example, collateral estoppel did not apply to the claims of the '305 Patent because the asserted claims (i.e., claims 6, 7, 11, 21, 23, and 25) had not been held invalid, nor had any judicial or administrative body evaluated their validity and

1    determined they are invalid.  Indeed, the PTO had found a subset of the '305 Patent

2    asserted claims (i.e., claims 6, 11, 25) patentable during a 2020 *ex parte*

3    reexamination proceeding, which ESET ignored in its brief.  Exh. S (FINJAN-ESET

4    690838–842 – *Ex Parte* Notice of Intent to Issue ReExam Cert.).  Furthermore,

5    ESET's complaint about Finjan filing its opposition to ESET's MSJ regarding the

6    '305 Patent is a red herring that should be disregarded.  ESET did not incur any fees

7    from Finjan filing its opposition, as ESET never had to file a reply since the Court's

8    Order on the Parties' stipulation was entered the next day.  *See* Doc. No. 928, Order

9    on Stipulation for Dismissal of Certain Claims.  ESET ignores that there was no way

10   Finjan could be sure an Order on the stipulation would be entered the same day the

11   dismissal was filed, which meant Finjan needed to file its opposition or risk the

12   potential entry of summary judgment.

13         ESET is not entitled to any attorney's fees for the dropped patents and its

14   arguments to the contrary are unavailing since Finjan had a good faith basis to

15   continue asserting these patents.

16   **G.    Finjan's Damages Theories Do Not Support an Exceptional Case**

17   **        Finding or Attorneys' Fees**

18         Finjan presented reasoned damages theories based on established

19   methodologies during this case and at the 2023 trial.  ESET ignores the entirety of

20   the record and the law, instead taking a kitchen-sink approach to its motion for

21   attorneys' fees.  ESET's arguments should be rejected and its motion denied.

22         ESET's position that Finjan's expert, Mr. Arst, arrived at trial with an

23   "unserious" damages theory (Doc. No. 1026 at 18), is the only unserious aspect of

24   this dispute.  In his original expert report, revised expert report, and at trial, Mr. Arst

25   set forth a well-reasoned damages opinion based on a reasonable royalty, having

26   assessed various Finjan's licenses for the patented technology in dispute, both

27   around the 2005 hypothetical negotiation date and thereafter as permitted by the

28   *Georgia-Pacific* factors.  ESET's expert, Mr. Britven admitted, both he and Mr. Arst

1   conducted similar analyses looking at various licenses and agreed on the basic tenets

2   underlying Mr. Arst's analysis. *See also* Exh. T (2023 Trial Tr.) at 598:5–600:6;

3   1327:3–1330:7.

4        ESET's Motion selectively focuses on Mr. Arst's assessment of a 2005

5   license between Finjan and Microsoft. Doc. No. 1026 at 18. There can be no

6   dispute that Mr. Arst, both in his reports and at the 2023 trial, considered and

7   discussed his analysis of the 2005 Microsoft License. *See* Exh. T (2023 Trial Tr.) at

8   612:11–613:21. Mr. Arst explained why ESET's and Mr. Britven's narrow and

9   over-simplistic view of the 2005 Microsoft License was wrong. For example, Mr.

10  Arst explained how the purpose of the 2005 Microsoft License was differently

11  situated than other more comparable licenses:

12         Q: Is the 2005 Microsoft agreement informative for determining
    the reasonable royalty that ESET owes to [Finjan]?

13         A: It is not really very helpful at all. It is a totally different

14  economic context. This agreement involves almost like a partnership,
    where Finjan was getting a business partner, in Microsoft, that it was

15  going to use to grow and enhances its reputation. The hypothetical
    license with ESET offered none of those benefits. It's totally different,

16  in my opinion.

17

18  Exh. T (2023 Trial. Tr.) at 613:13–21; *see also id*. at 625:11–22. At trial and now,

19  ESET glosses over the reputational value of the 2005 Microsoft License to Finjan.

20  *See* Doc. No. 1026 at 18–19; Exh. T (2023 Trial Tr.) at 636:5–15. Mr. Arst also

21  explained how looking at ESET's market share in 2005, an assumption that largely

22  underlies ESET position both at trial and in its Motion, was unreasonable and failed

23  to take into consideration ESET's growth due to its use of Finjan's technology. *See*

24  Exh. T (2023 Trial Tr.) at 625:23–628:3; *see also* Exh. U (2023 Trial Tr.) at

25  1345:17–23 (ESET's expert agreeing). ESET's assertion that "Mr. Arst's damages

26  amount failed to take into account that Microsoft's market share was 10 times larger

27

28

1  than that of ESET at the parties' agreed time of the hypothetical negotiation in

2  2005" is simply wrong.  Doc. No. 1026 at 18.

3         As for Finjan's cost savings approach to damages to which ESET also points,

4  Finjan did not litigate this theory in an unreasonable or vexatious manner.

5  *Medicinova*, 2021 WL 3054874, at *5.  Nor did Finjan engage in any misconduct or

6  misrepresentations.  ESET relies heavily on the excluded testimony of Finjan's

7  experts Mr. Valerdi and Mr. Arst related to their cost saving damages theory—one

8  of two alternatives to Finjan's central damages theory.  While the Court did exclude

9  Mr. Valerdi's and Mr. Arst's opinions regarding the cost approach to determining

10  damages in this case, the Court did acknowledge that a cost savings approach is a

11  reasonable methodology for determining a reasonable royalty.  Doc. No. 699 at 6

12  (citing *Hanson v. Alpine Valley Ski Area, Inc*., 718 F.2d 1075, 1080–81 (Fed. Cir.

13  1983)).  And exclusion of expert opinion by itself does not mean a defendant is

14  entitled to attorneys' fees.  *Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*,

15  790 F.3d 1369, 1373 (Fed. Cir. 2015) ("[F]ees are not awarded solely because one

16  party's position did not prevail.").  Indeed, courts have routinely found the exclusion

17  of damages expert opinions do not justify a finding of exceptional case and award of

18  attorneys' fees.  *See, e.g.*, *OptoLum, Inc. v. Cree, Inc.*, 2022 WL 3576945 (Aug. 19,

19  2022 M.D.N.C.) (denying defendant's motion for attorneys' fees despite exclusion

20  of a portion of plaintiff's damages expert's opinion.); *DietGoal Innovations LLC v.*

21  *Chipotle Mexican Grill, Inc.*, 2015 WL, 1284826 (Mar. 20, 2015) ("It is not unusual

22  for evidence set forth in an expert's report to be limited or excluded altogether by

23  the Court, but cases in which evidence is restricted or struck do not thereby become

24  exceptional cases in which fee awards are granted.")

25         Any suggestion by ESET that it is entitled to a finding of exceptional case and

26  attorneys' fees based on Finjan's damages theories is both unsupported by the facts

27  and the law.  Finjan presented a reasoned, well-supported reasonable royalty theory

28  of damages at trial that considered and assessed the 2005 Microsoft License upon

which ESET bases the majority of its argument.  That Finjan and ESET's experts had differing views on the assumptions related to that license, and others, is not sufficient for ESET to meet its burden here.  Nor is the mere fact that the Court struck Mr. Valerdi's and Mr. Arst's cost savings damages theories.  These cannot and should not serve as bases for the extraordinary relief ESET seeks here and the Court should deny ESET's Motion accordingly.

## IV.   CONCLUSION

For the reasons set forth above, the Court should deny ESET's motion for fee-shifting under § 285 in its entirety.

1    DATED:  October 18, 2023                Respectfully Submitted,

2                                            By:    */s/ Juanita R. Brooks*
                                                    Juanita R. Brooks, brooks@fr.com
3                                                   Roger A. Denning, denning@fr.com
4                                                   Jason W. Wolff, wolff@fr.com
                                                    Michael A. Amon, amon@fr.com
5                                                   K. Nicole Williams, nwilliams@fr.com
6                                                   Megan A. Chacon, chacon@fr.com
                                                    Tyler R. Train, train@fr.com
7                                                   FISH & RICHARDSON P.C.
8                                                   12860 El Camino Real, Suite 400
                                                    San Diego, CA 92130
9                                                   Tel: (858) 678-5070
10                                                  Fax: (858) 678-5099

11                                                  Lawrence Jarvis (*pro hac vice*)
12                                                  jarvis@fr.com
                                                    Nicholas A. Gallo (*pro hac vice*)
13                                                  gallo@fr.com
14                                                  FISH & RICHARDSON P.C.
                                                    1180 Peachtree Street, NE
15                                                  21st Floor
16                                                  Atlanta, GA 30309
                                                    Tel: (404) 891-5005
17                                                  Fax: (404) 892-5002
18
19                                                  Riley J. Green (*pro hac vice*)
                                                    rgreen@fr.com
20                                                  FISH & RICHARDSON P.C.
21                                                  1717 Main Street, Suite 5000
                                                    Dallas, TX 75201
22                                                  Tel: (212) 747-5070
23                                                  Fax: (212) 747-2091

24                                                  Attorneys for Plaintiff & Counter-
25                                                  Defendant Finjan LLC

26

27

28

### <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on October 18, 2023, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

*/s/ Juanita R. Brooks*
Juanita R. Brooks

FINJAN LLC'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES
Case No. 17-cv-0183 CAB (BGS)