NICOLA A. PISANO, CA Bar No. 151282
    NicolaPisano@eversheds-sutherland.com
SCOTT A. PENNER, CA Bar No. 253716
    ScottPenner@eversheds-sutherland.com
REGIS C. WORLEY, CA Bar No. 234401
    RegisWorley@eversheds-sutherland.com
**EVERSHEDS SUTHERLAND (US) LLP**
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA  92130
TELEPHONE:    858.252.6502
FACSIMILE:    858.252.6503

JOSE L. PATINO, CA Bar No. 149568
    JPatino@buchalter.com
**BUCHALTER, APC**
655 WEST BROADWAY, SUITE 1600
SAN DIEGO, CA 92101
TELEPHONE:    619.219.5335
FACSIMILE:    619.219.5344

Attorneys for Defendants and Counter-Plaintiffs
ESET, LLC and ESET, SPOL. S.R.O.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN LLC,<br><br>Plaintiff,<br><br>v.<br><br>ESET, LLC, et al.,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No. 3:17-cv-0183-CAB-BGS<br><br>**REPLY BRIEF IN SUPPORT OF ESET, LLC AND ESET, SPOL. S.R.O.'S MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285**<br><br>Date:    November 1, 2023<br><br>Judge:   Hon. Cathy Ann Bencivengo<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

17cv0183

49396478

## I. INTRODUCTION

Finjan's memorandum ("Br."), although styled as an "Opposition," glides silently past the abundant misconduct by both Finjan, and its counsel, chronicled in ESET's Opening Brief. Finjan could not justify its outrageous conduct, so it didn't even try. Finjan's memorandum is replete with mischaracterizations of its conduct throughout this litigation, much of it rivaled only by its unwillingness to address the result of Finjan's long-term misconduct against ESET. With equal measures of temerity and bravado, Finjan shifts blame for its misdeeds to ESET and this Court, never once acknowledging, much less evincing contrition for wasting ESET's resources and this Court's time.

Finjan says this was "hard fought" litigation, but that is only true as to ESET. This was a contest between a company (ESET) striving to make the cyber world a safer place and a non-practicing entity (Finjan) seeking to extract money by asserting meritless, expired patents. Finjan did so with "experts" whose pre-ordained "opinions" were assigned by Finjan's counsel and had no factual basis. ESET fought to vindicate its reputation and recognized contributions to society at considerable expense and disruption to its business. In a classic battle of good versus evil, the good guys prevailed this time.

Finjan's brief is emblematic of its approach to litigation, which resulted in Finjan's former counsel's earning well-deserved opprobrium. For example, Finjan misstates the relevant law by citing (Br. at 8:17-22) to a **2019** district court opinion in *BitDefender* while ignoring the Federal Circuit's **2020** affirmance of Judge Alsup's detailed explanation in *Juniper*. This Court should not countenance such conduct. Finjan denies that it engaged in a trial-by-ambush strategy, but no one present in the courtroom could have overlooked Finjan's antics. "The baby is missing!" Ms. Brooks willfully exclaimed regarding Finjan's evidence-free assertion that ESET's success after 2005 was somehow tied to Finjan inventions ESET did not learn about until 2015. Finjan knew it had no case eight years ago but relentlessly pursued ESET anyway, to ESET's grievous financial injury.

49396478

## II. ARGUMENT

### A. ESET, spol. s.r.o. and ESET, LLC Are the Prevailing Parties.

Finjan says that ESET is not the prevailing party because Finjan "won" on ESET's invalidity and license defenses. Br. at 2. Finjan's sole citation is *Lifescan, Inc. v. Home Diagnostics, Inc.*, a decades old Delaware district court case rendered irrelevant by a Federal Circuit ruling 4 years later. Where a defendant receives a verdict of non-infringement but loses on invalidity, the defendant is the only prevailing party. *See, e.g., Brooks Furniture Mfg. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005) ("Thus when Brooks established its non-infringement … it prevailed in the litigation. That other defenses, such as invalidity … were unsuccessful … does not change the outcome ….") (abrogated by *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014) on other grounds). *See also Golden Bridge Tech. v. Apple Inc.*, Case No. 5:12-cv-04882-PSG, 2015 U.S. Dist. LEXIS 170424, at *3-4 (N.D. Cal. Dec. 21, 2015) ("In patent infringement cases, a party that establishes non-infringement and avoids liability may be the prevailing party even though it is unsuccessful on an invalidity defense."). Finjan's argument that there can be more than one prevailing side is mistaken. *See Shum v. Intel Corp.*, 629 F.3d 1360, 1363 (Fed. Cir. 2010) ("We agree that there can be, by definition, only one prevailing party"); *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, No. 3:17-cv-01781-HZ, 2018 U.S. Dist. LEXIS 64694, at *2 (S.D. Cal. Apr. 17, 2018) ("The Federal Circuit has found that, 'by definition' there can be 'only one prevailing party.'") (quoting *Former Emps. of Motorola Ceramic Prod. v. United States*, 336 F.3d 1360, 1363 (Fed. Cir. 2003)). Surely, as counsel in *Columbia Sportswear,* Finjan's counsel knows this is the law.

But there is another reason why Finjan's contention fails. Throughout trial, ESET crafted its non-infringement and invalidity arguments for each patent to be opposite sides of the same coin. With respect to the '780 patent, if hashing an embedded file was found to infringe, as Finjan contended, then that patent necessarily must be invalid over hashing of a multi-component load module, as disclosed in Shear. *See, e.g.* Tr. at 1500:11-1502:12.

49396478

For the '844 patent, if the asserted claims were to be found to cover network gateways, as Finjan contended, than those claims necessarily were invalid over Ji.  *See, e.g.,* Tr. at 1427:22-1430:23.  And if ESET's products did not infringe the asserted claims of the '780 and '086 patents, then those products did not supply a claim element bringing them within the scope of the Microsoft License.  *See generally*, Tr. at 1760-1175.  Accordingly, based on ESET's presentation, the jury's choice of non-infringement resulted in a finding of no invalidity or license.  Having won on non-infringement, there was nothing more ESET could have achieved by an invalidity finding because, first, the opposite side of the coin necessarily failed, and second, it was moot because the patents had long-ago expired.

### B.  Finjan Ignores Its Trial Misconduct Detailed in ESET's Opening Brief.

Finjan argues that it did not try to mislead the jury, but rather, any confusion was ESET's fault because Finjan's experts were entitled to rely on ESET's marketing materials.  This contention is unavailing.  Even Finjan's "pioneer" inventor, Mr. Touboul, acknowledged during his deposition that "marketing materials don't have technical meaning" but only "marketing meaning." Tr. at 1077:1-13.  Dr. Spafford was well aware of this lack of context by Finjan before the jury. Tr. at 1076:14-1078:8.  Yet Finjan's experts chose to rely on marketing material over source code.  Finjan's infringement case, built almost entirely on internal drafts of marketing materials that ESET's engineers testified were out of date or never implemented, was never anything but, at best, an effort to mislead the jury.  Finjan's effort to confuse "DNA detections" (DNA signatures created by malware analysts in Europe) with DNA profiles (created by ESET's products) was pervasive.  *See, e.g.*, Tr. at 297:12-22, 369:6-9 (Dr. Cole stating "So a DNA detection is where you're detecting something malicious in the file, and then a signature, normally, when they say a DNA signature, that's referring to one or many of the genes or suspicious code that's in the DNA profile.")  Other examples abound.  Finjan's experts and counsel either deliberately tried to mislead or were grossly ignorant regarding operation of ESET's products.  The jury saw through Finjan's ruse, but the unnecessary expense incurred by ESET to provide the needed clarity is the reason Section 285 exists.

Finjan's contention that ESET should have objected at trial to Finjan's misleading efforts is problematic.  Per the Court's *in limine* rulings, ESET's proper remedy to address Finjan's bad faith assertions was impeachment of Finjan's experts on cross-examination, which ESET did.  Further, ESET's expert, Dr. Spafford, provided all the clarity needed for the jury to arrive at the right conclusion.  Had Finjan not willfully mischaracterized the factual record and its own experts' "opinions" in opposing ESET's motions for summary judgment, this case would have concluded several years and many millions of dollars ago.

### C. Finjan Ignores Its Shifting Sands Approach to Infringement.

Finjan shamelessly argues that it did not repeatedly shift its infringement theories and the alleged bases of infringement throughout the course of this litigation.  Finjan's arguments cannot withstand even nominal scrutiny.  Finjan accused a number of features of ESET's products, including ScriptAlg, Exploit Blocker, HIPS, Advanced Memory Scanner ("AMS"), EDTD, and Threat Intelligence of infringing the asserted claims, only to discard those features before trial as having outlived their usefulness, and as a consequence, raising ESET's costs of defense.  *See, e.g.*, Tr. at 936:2-13, 1048:21-23, 1693:18-1694:2.  Finjan knew years ago that it had no claim regarding those technologies, yet persisted.

Finjan's effort, Br. at 7, to distinguish ESET's case citations fails.  Rather, those cases directly support ESET's contentions:  Finjan changed infringement theories multiple times, as in *CliniComp*; Finjan took inconsistent positions on infringement with Dr. Mitzenmacher and invalidity with Dr. Jaeger, just like in *Ameranth*; as in *Juniper,* Finjan adopted a new theory on the eve of trial, switching from multiple hashes in the 2020 trial, to hashing a "data stream" (to defeat ESET's 2023 summary judgment motion), to "fetching" from within a single file; Finjan took inconsistent positions whether the '844 patent covered a network gateway (for infringement, yes, for invalidity, no), as in *Straight Path IP Grp.*; Finjan kept shifting its alleged bases of infringement (Exploit Blocker and HIPS were accused, then not), as in *In re PersonalWeb*; and Finjan changed its infringement theory in response to ESET's summary judgment motion (*e.g.*, for the '780

49396478

patent, abandoning the "ID of hashes" to pursue embedded files), like in *Phigenix*. Under the Federal Circuit's "totality of the circumstances" test, Finjan's misconduct was exceptional. *See Eko Brands, LLC v. Adrian Rivera Maynez Enters.*, 946 F.3d 1367, 1375 (Fed. Cir. 2020) (surviving summary judgment does not preclude a finding of exceptional case).

    *The '780 Patent*

Finjan presented multiple versions of the "hashing ... together" limitation of claim 9 for the '780 patent during the dispositive motion phase, including: (1) separately hashing a Downloadable and its referenced components and then hashing those hashes to create a Downloadable ID (the ID of hashes, *see* D.I. 937-1); and (2) a source-code free contention that ESET's products hash a "data stream" including a Downloadable and its referenced components (*see* D.I. 942 at 4:19). At trial, Finjan abandoned both those arguments, instead asserting that hashing a single Downloadable infringed. In so doing, Finjan denied ESET notice during its preparation for trial, but more importantly, Finjan denied the very purpose of the "invention." As admitted in Finjan's brief to the Federal Circuit in its *Juniper* case, that object of the '780 patent was to reassemble referenced – external (or "remote") – components with the Downloadable before hashing both together. *See* Tr. at 1604:19-1606:10. Judge Alsup's opinion in that case explicitly described that the objective of the '780 patent was to collect and reassemble the Downloadable with its **missing** referenced components to provide a single unique Downloadable ID: "[t]he perceived solution [of the '780 patent] was **to fetch the missing components**, incorporate them into the executable, and then hash the combination." D.I. 511-18 at 9:1-3 (emphasis added).

Despite Finjan having lost this very issue in the *Juniper* case, which decision was affirmed on appeal by the Federal Circuit in 2020, Finjan willfully advanced this known baseless argument at the 2023 trial against ESET. The Court recognized this ploy during the discussion on the JMOL for the '780 patent: "The Court is going to reserve on this one as well and let it go to the jury, **but I have serious reservations about whether this claim was met based on the way your expert applied the Court's claims construction**, because

1  I don't believe he necessarily applied it appropriately. But I am not going to take it away
2  from the jury after they have invested all this time." Tr. at 1686:2-8 (emphasis added).

3  Finjan's infringement claims for the '780 patent were never genuine, did not
4  comport with the appellate-affirmed claim construction adopted by this Court, and lacked
5  factual support in the record.  Finjan's assertion of the '780 patent was the epitome of bad
6  faith litigation; Finjan now should reimburse ESET's cost of defense for that patent.

*The '844 Patent*

Finjan's various infringement contentions for the '844 patent fare no better.  It was plain during discovery that ESET's CMPS system, located entirely in Europe, was never under the control of U.S. users of ESET's Endpoint products.  While Dr. Cole dutifully interjected his assigned opinion that "It's done on the CMPS, but the benefit is received in the United States," Tr. at 376:16-23, Finjan offered no evidence to rebut Dr. Spafford's non-infringement opinion, nor Mr. Janosik's testimony that *he* alone controlled operation of CMPS.  *See, e.g.*, Tr. at 1100:11-1102:20, 897:18-24 ("Q. Who controls the rules of which files go from -- get into CMPS? A. So, that will be me. And it's me, and it's still me, to this day. Q. Can an end user ever force a file to be processed by CMPS? A. No. End user couldn't do that.").  Accordingly, ESET's Backend systems could never be found to support infringement of the '844 patent, as the method of claim 1 was not employed in the U.S., and as to apparatus claim 15, as there was no beneficial use *and* control in the U.S.

Finjan's contentions about ESET's network gateway products likewise were disingenuous and made in bad faith.  First, because Finjan perceived its patent claims as an infinitely malleable nose of wax, it saw no issue in asserting claims 1 and 15 against network gateways, even though Judge Freeman in Finjan's *Blue Coat* litigation had ruled that network gateways were specifically excluded from the scope of the claimed inspector. *See* D.I. 1026-1 at 4-8; D.I. 1040 at 14-23.  Second, Finjan saw no problem in asserting its claims against ESET's Mail and File Server products even though those claims **entirely lack** the proxy server that Dr. Cole mistakenly identified in ESET's Gateway Security product as corresponding to the "web server" required by the asserted claims.  In an attempt

49396478

to overcome this glaring deficiency in its proofs, Finjan argues that it need not "point to the web server in each of ESET's products" to meet its burden of proving infringement of the '844 patent – though that is precisely Finjan's burden as plaintiff.

Finjan's other efforts, Br. at 9-16, to relitigate its infringement proofs on the '844 patent are equally without merit and do not warrant further consideration. The jury disposed of Finjan's nonsensical presentation in just two days of deliberation, rejecting Finjan's assertions made against ESET for seven long and costly years.

*The '086 Patent*

Regarding the '086 patent, Finjan improperly asserted claim 42 for many years and asserted it in the jointly-filed Pretrial Order shortly before the recent trial. Finjan abandoned that claim at trial with no warning to either ESET or the Court. Finjan first blames this on ESET, arguing ESET should have challenged Finjan's infringement claims. ESET did. *See* D.I. 492-1 at 1. Moreover, Finjan's argument that it had "sufficient evidence to form a good faith belief" that ESET's products created "appended Downloadables" is palpably untrue. Despite Dr. Mitzenmacher's opinions, he never identified source code in ESET's products that met the Court's construction of an "appended Downloadable" for the simple reason that no such code had ever existed. Similarly, at Br. at 18:8, Finjan tries to defend having asserted claim 42, arguing that an ESET witness "admitted there was a database." But that is far short of an admission that any ESET product contained a database meeting the limitations of claim 42.

Finjan, Br. at 18:11-22, also faults the Court for Finjan belatedly dropping claim 42 of the '086 patent, arguing that the Court encouraged the parties to streamline the case so as not to waste the jury's time. But Finjan saw no issue in wasting ESET's time and money for seven long years by dragging around an infringement claim that Finjan had every reason to know it could never prove. ESET's observations above regarding Finjan's experts' efforts to deliberately confuse the jury about DNA detections (man-made signatures) and DNA profiles (created by ESET's products) for the '844 patent apply with equal weight to Finjan's infringement "proofs" for the '086 patent and demonstrate that those Finjan

arguments too never had a good faith basis.

*The '621, '755, and '305 Patents*

Finjan argues, Br. at 20, that it dropped these patents shortly before trial to comply with the Court's request. It requires no mindreading to understand that wasn't Finjan's reason for doing so. Just days before Finjan's opposition to ESET's motion for summary judgment of invalidity of the asserted claims of the '305 patent was due, D.I. 916-1, Finjan contacted ESET's counsel and entreated ESET to agree to dismiss that patent with prejudice. ESET refused. Finjan then sweetened the offer by agreeing to dismiss the '621 and '755 patents, while agreeing to ESET's caveat that ESET reserve its right to seek attorneys' fees as to those patents. D.I. 1026-1 at 9:2-13.

Finjan desperately wanted to take the '305 and '621 patents off the board, the claims of which were palpably unenforceable in view of prior litigation ('621 patent, D.I. 531-1) and a reexamination ('305 patent, D.I. 916-1). Finjan knew it could only embarrass itself before the jury by asserting those patents and plainly sought to preserve a fig-leaf of credibility before the jury by dismissing them. Finjan further argues, Br. at 20:12-15, that it would have had "insufficient time" to address these patents, as doing so required testimony from several additional Finjan experts. But the Court originally had scheduled 3 weeks for trial and only reduced the amount of time to 2 weeks at ESET's insistence in connection with Finjan's agreement to drop the three patents. Finjan's complaint that there would not have been enough time is belied by the record. Finjan had a full extra week of time to present its case; it chose instead to drop the patents because there was never a likelihood of success on them. Notwithstanding, Finjan pursued the '305 patent during the additional discovery period, with full knowledge that it could not make out an infringement case or survive an invalidity challenge. Indeed, if there was "copious amounts of evidence" of infringement of that patent, it is remarkable that Finjan did not dismiss one of the '780, '844, or '086 patents from the case in favor of pursuing the '305 patent.

Finjan should never have asserted the '621, '755, or '305 Patents. There is no explanation for pursuing those patents until the eve of trial except to increase ESET's costs

49396478

of defense, including requiring ESET to rebut the expert reports of Finjan's experts Dr. Medvidovic, Dr. Goodrich, and Mr. McDuff. This greatly burdened ESET, and is properly a component of an exceptional case finding by the Court.

### D. Finjan's Indefensible Damages Theories Were Exceptional.

ESET's Opening Brief recounts Finjan's original damages claim allegedly supported by Dr. Valerdi's code-replacement theory that "supported" a claim for **billions** of dollars. D.I. 1026 at 9:19-10:16. Finjan, Br. at 23:3-4, contends that Finjan did not litigate its "cost saving approach ... in an unreasonable or vexatious manner" and that "the Court did acknowledge that a cost-savings approach is a reasonable methodology for determining a reasonable royalty." But Finjan's argument fails to consider this Court's characterization of Finjan's cost-savings approach *in this case* as "*insane*": "Why are we using this made up billions of dollars numbers, which seems completely insane given that it's more than anybody would have possibly spent to do that." *Daubert* Hearing Transcript of September 26, 2019 at 70. Finjan's effort to defend the indefensible, Br. at 21:2-4, is itself a basis for awarding attorneys' fees in this case, if not also sanctions.

Further, Finjan argues that ESET's observations about Mr. Arst's damages theories *presented at trial* were taken out of context. They weren't. As ESET's damages expert, Mr. Britven, testified when asked what he thought about Mr. Arst's "approach of using the Sophos license and the Trend Micro license together": "I have been doing this a long time, over 35 years, and *I have never seen this before*. I am having a hard time following it. And if the jury is having a hard time following it, I am right there with you. I am going to talk about it a little later on, but it's tough to comprehend." Tr. at 1296:21-1297:3. As further detailed in ESET's Opening Brief, 27:13-28:9, Mr. Arst's damages opinions were neither reasoned nor well-supported. Like the opinions of Finjan's technical experts, Mr. Arst's opinions clearly were assigned to him by his client to attempt to monetize its ill-conceived effort to pursue ESET. After striking Finjan's initial damages opinions, this Court graciously provided Finjan a do-over. D.I. 699-1 at 6-7. Finjan ignored that opportunity and persisted in pursuing an unreasonable damages claim.

### D. Finjan's Opposition Pretends Its Trial Misconduct Did Not Happen.

Finjan's brief reimagines this litigation, and simply ignores its misconduct as chronicled in ESET's Opening Brief. Apart from pursuing meritless claims, Finjan and its counsel engaged in other overt acts of misconduct, including without limitation:

- Multiple violations of the Protective Order in this case, *see, e.g.*, D.I. 1026-1 at 19:14-20:6; *see also* D.I. 288 and D.I. 292 (violations by Finjan counsel); D.I. 306 (same), D.I. 419 (misuse of source code in expert reports); D.I. 474 (misuse of confidential ESET information in Dr. Bims's expert report); D492-1 at 2:26-3:3 (recap);
- Submission of thousand-page expert reports replete with references to features and systems that did not exist in its products, *see, id.* at 6:77-19;
- Failure to produce materials relied upon by Finjan's experts until after close of fact discovery, *see* D.I. 1026-1 at 20:7-19; D.I. 745 at 5-7;
- Designation of 30 hours of video-taped deposition of ESET's engineers despite that Finjan was allotted only 20 hours for trial, *see* D.I. 1026-1 at 20:27-21:4;
- The evidence-free argument that ESET copied Finjan's inventions at trial, *see* D.I. 1026-1 at 21:16-19 and Tr. at 1711:12-1712:19 ("What would we have been able to confirm had we been able to find the actual baby?");
- Multiple "fake" impeachments and misstatements of law to witnesses and the Court, *see* D.I. 1026-1 at 21:19-23, Tr. at 1045:13-25, 774:22-775:3, 1190:25-1191:6;
- Efforts to confuse Dr. Spafford and the jury about Dr. Mitzenmacher's alleged testimony regarding ScriptAlg source code, *see*, D.I. 1026-1 at 21:23-26, Tr. at 1253:5-25, 1700:10-24; and
- Effort to incite panic amongst the jury, potentially causing a mistrial, *see* D.I. 1026-1 at 21:27-22:4; Tr. at 1240:10-1241:14, 1648:1-19.

Finjan's brief discusses none of this, most certainly because it has no defense.

### III. CONCLUSION

For the foregoing reasons, ESET respectfully requests that the Court grant ESET's motion, find this case to be "exceptional," and award ESET its reasonable attorneys' fees.

49396478

Dated: October 25, 2023

Respectfully submitted,

**EVERSHEDS SUTHERLAND (US) LLP**

*/s/ Nicola A. Pisano*
NICOLA A. PISANO, CA Bar No. 151282
   NicolaPisano@eversheds-sutherland.com
SCOTT A. PENNER, CA Bar No. 253716
   ScottPenner@eversheds-sutherland.com
REGIS C. WORLEY, CA Bar No. 234401
   RegisWorley@eversheds-sutherland.com
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA 92130
TELEPHONE:   858.252.6502
FACSIMILE:   858.252.6503

JOSE L. PATINO, CA Bar No. 149568
   JPatino@buchalter.com
**BUCHALTER, APC**
655 WEST BROADWAY, SUITE 1600
SAN DIEGO, CA 92101
TELEPHONE:   619.219.5335
FACSIMILE:   619.219.5344

Attorneys for Defendants and Counter-Plaintiffs ESET, LLC and ESET, SPOL. S.R.O.